**WALTON & WALTON, LLP**
L. RICHARD WALTON, ESQ. (SBN 226703)
   *RWalton@taxtriallawyers.com*
BRIAN M. KANDEL, ESQ. (SBN 180952)
   *BKandel@taxtriallawyers.com*
13700 Marina Pointe Drive, Suite 920
Marina del Rey, CA 90292
Ph: (310) 363-7321
Fax: (310) 464-3057

*Attorneys for Defendant Bank of Utah*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

| | |
|---|---|
| ED BAEZA, an individual, et al.<br><br>Plaintiffs,<br><br>v.<br><br>RELIANT LIFE SHARES, LLC, a California limited liability company, et al,<br><br>Defendants. | Case No. 2:23-cv-474<br><br>**NOTICE OF REMOVAL BY DEFENDANT BANK OF UTAH, TRUSTEE OF THE RELIANT LIFE SHARES SERIES STATUTORY TRUST (ERRONEOUSLY SUED AS BANK OF UTAH), PURSUANT TO 28 U.S.C. §§ 1331, 1332, 1441 & 1446**<br><br>Action Filed:  Dec 5, 2022<br>Complaint Served:  Dec. 21, 2022<br>Date Removed:  Jan. 20, 2023 |

**TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND ITS CLERK, TO PLAINTIFFS AND TO THEIR ATTORNEY OF RECORD, TO ALL OTHER DEFENDANTS AND THEIR RESPECTIVE COUNSEL OF RECORD, AND TO ALL OTHERS TAKING AN INTEREST IN THESE PROCEEDINGS:**

**PLEASE TAKE NOTICE** that Defendant Bank of Utah, Trustee of the Reliant Life Shares Series Statutory Trust (erroneously sued as Bank of Utah, and

herein "Bank of Utah"), hereby removes this lawsuit from the Superior Court of California in and for the County of Los Angeles, where it is currently pending as Case No. 22STCV38080, to the United States District Court in and for the Central District of California, pursuant to 28 U.S.C. §§ 1441 and 1367.  As set forth below, Defendants have complied with the statutory requirements of removal under 28 U.S.C. §§ 1331, 1332, 1367, 1441, and 1446, and removal is proper because: (1) the Court has original jurisdiction under the Class Action Fairness Act of 2005, pursuant to 28 U.S.C. §§ 1332(d), 1453, and 1446; and (2) the Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1441.  As to the non-Federal question causes of action, those claims are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution.  As such, this Court should exercise supplemental jurisdiction over them, pursuant to 28 U.S.C. § 1367.

Attached hereto, as Exhibits 1-47, are true and correct copies of all filings in the Los Angeles Superior Court, as follows:

| Exhibit | Description | Date Filed |
|---------|-------------|------------|
| 1. | Complaint | 12/6/2022 |
| 2. | Civil Case Cover Sheet | 12/6/2022 |
| 3. | ADR Packet | 12/6/2022 |
| 4. | First Amended General Order | 12/6/2022 |
| 5. | Voluntary Efficient Litigation Stipulatoin | 12/6/2022 |
| 6. | Notice of Case Assignment | 12/6/2022 |
| 7. | Summons | 12/7/2022 |
| 8. | Minute Order | 12/16/2022 |
| 9. | Certificate of Mailing | 12/16/2022 |
| 10. | Minute Order | 12/19/2022 |

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

| Exhibit | Description | Date Filed |
|---------|-------------|------------|
| 11. | Certificate of Mailing | 12/19/2022 |
| 12. | Proof of Service | 12/20/2022 |
| 13. | Minute Order | 12/20/2022 |
| 14. | Certificate of Mailing | 12/20/2022 |
| 15. | Proof of Service | 12/20/2022 |
| 16. | Proof of Service | 12/20/2022 |
| 17. | Proof of Service | 12/20/2022 |
| 18. | Proof of Service | 12/20/2022 |
| 19. | Proof of Service | 12/20/2022 |
| 20. | Proof of Service | 12/20/2022 |
| 21. | Proof of Service | 12/20/2022 |
| 22. | Proof of Service | 12/20/2022 |
| 23. | Proof of Service | 12/20/2022 |
| 24. | Proof of Service | 12/20/2022 |
| 25. | Proof of Service | 12/21/2022 |
| 26. | Proof of Service | 12/22/2022 |
| 27. | Proof of Service | 12/22/2022 |
| 28. | Proof of Service | 12/23/2022 |
| 29. | Notice of Case Management Conference | 12/23/2022 |
| 30. | Proof of Service | 12/23/2022 |
| 31. | Proof of Service | 12/23/2022 |
| 32. | Proof of Service | 12/23/2022 |
| 33. | Proof of Service | 12/23/2022 |
| 34. | Proof of Service | 12/23/2022 |
| 35. | Proof of Service | 12/23/2022 |
| 36. | Proof of Service | 12/27/2022 |

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

NOTICE OF REMOVAL

| Exhibit | Description | Date Filed |
|---------|-------------|------------|
| 37. | Notice of Ruling (Case is Not Complex) | 12/27/2022 |
| 38. | First Amended Complaint | 12/27/2022 |
| 39. | Notice of Ruling | 12/27/2022 |
| 40. | Proof of Service | 12/27/2022 |
| 41. | Proof of Service | 12/27/2022 |
| 42. | Notice of Lodging of Exhibits to First Amended Complaint | 12/28/2022 |
| 43. | Proof of Service | 12/29/2022 |
| 44. | Proof of Service | 1/6/2023 |
| 45. | Proof of Service | 1/6/2023 |
| 46. | Proof of Service | 1/10/2023 |
| 47. | Proof of Service | 1/17/2023 |

**PLEASE TAKE FURTHER NOTICE** that all defendants consent to this removal.

**PLEASE TAKE FURTHER NOTICE** that, as required by 28 U.S.C. § 1446(d), a copy of this Notice of Removal will be filed with the Clerk of the Superior Court of California in and for the County of Los Angeles, and Defendant will supplement this Notice with a copy of that Notice when a conformed copy is received.

**PLEASE TAKE FURTHER NOTICE** that Defendant today served this Notice of Removal on counsel for plaintiff via electronic mail. A true and correct copy of that proof of service is attached hereto at the end of this Notice of Removal.

///
///
///
///
///

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

## MEMORANDUM IN SUPPORT OF REMOVAL

## I.

## CAFA REMOVAL IS PROPER

### A.  Removal is Timely

On December 6, 2022, Plaintiff commenced this Action by filing a lawsuit in the Superior Court of the State of California for the County of Los Angeles, case number 22STCV38080 ("the State Court Action").  A copy of the Complaint is attached as **Exhibit 1** hereto.  On December 13, 2022, Plaintiffs mailed a copy of their Summons and Complaint to the Bank of Utah, pursuant to Code of Civil Procedure Section 415.40.  Service was thus completed on December 23, 2022 under Code of Civil Procedure Section 415.40.  A copy of the Summons in the State Court Action is attached hereto as **Exhibit 7** and a copy of the Proof of Service of Summons on the Bank of Utah by mail is attached hereto as **Exhibit 45**.

Bank of Utah filed an Answer on January 17, 2023, a copy of which is attached hereto as **Exhibit 47**.  Bank of Utah files this notice of removal within 30 days of being served. (*See* **Exhibit 45**).  Thus, this Notice of Removal is timely filed.  (*See* 28 U.S.C. § 1446(b)(1)).

### B.  Jurisdiction Exists Under the Class Action Fairness Act

A class action may be removed under the Class Action Fairness Act ("CAFA") when: (a) there is minimal diversity (*i.e.*, the citizenship of at least one plaintiff is diverse from the citizenship of at least one defendant); (b) there are at least 100 putative class members; (c) the amount in controversy based upon the class members' aggregated claims exceeds $5,000,000 exclusive of interest and costs; (d) the primary defendants are not states, state officials, or other governmental entities against whom the district court may be prevented from ordering relief; and (e) the 30-day deadline for removal is satisfied.  (28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(A)–(B), 1446(b)).

All of these requirements are met here.

///

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

### 1.   *There Is Minimal Diversity Amongst the Parties*

CAFA requires only minimal diversity, and in class action lawsuits, "[t]he district courts shall have original jurisdiction of any civil action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant." (28 U.S.C. § 1332(d)(2)(A)).  Diversity of citizenship exists here.

All Plaintiffs are citizens and residents of California.  (*See* **Exhibit 1**, ¶¶ 16-35).  As such, the putative class set forth in Plaintiff's complaint is defined by its representatives, all of whom are California residents for diversity purposes.

Defendant Bank of Utah is registered, has its principle place of business and does business, in the state of Utah.  (Complaint at ¶ 53).  (*See also* 28 U.S.C. § 1332(c)(1). A corporation's "principal place of business" refers "to the place where a corporation's officers direct, control, and coordinate the corporation's activities" and "it should normally be the place where the corporation maintains its headquarters…" (Hertz Corp. v. Friend, 559 U.S. 77, 92–3 (2010). Utah is the location of Bank of Utah's headquarters, and Utah is the location of Bank of Utah's "nerve center." Thus, Bank of Utah is a citizen of Utah within the meaning and intent of 28 U.S.C. § 1332.

Accordingly, there is diversity of citizenship between Plaintiff and Bank of Utah, and the prerequisite of minimal diversity under CAFA is met.

### 2.   *The Alleged Putative Class Exceeds 100 Members*

Plaintiffs allege that "there are hundreds or thousands of members of the proposed Class."  (*See* **Exhibit A**, Compl. ¶ 239).  They further allege that "[t]he members of the Class are so numerous that joinder of all members is impracticable." (*See* **Exhibit A**, Compl. ¶ 239).  According to Plaintiffs, "Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class." (*See* **Exhibit A**, Compl. ¶ 242).

Because the Complaint pleads that "hundreds" and "perhaps thousands" of individuals purchased insurance products in California from Reliant Life Shares, LLC during the putative class period, the size of the putative class well

NOTICE OF REMOVAL

exceeds 100 members. Accordingly, CAFA's class size requirements are satisfied and this factor supports CAFA removal.

### 3. The Amount in Controversy Is at Least $5,000,000.

Bank of Utah denies all liability alleged in the Complaint and denies that any class should be certified in this Action. However, if Plaintiff's allegations are accepted as true and damages or restitution were awarded class-wide on Plaintiff's claims as pled, the aggregate amount as to the putative class would exceed $5,000,000, exclusive of interests and costs. (Compl. at ¶ 293).

A defendant's notice of removal under CAFA "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." (Dart Cherokee Operating Co., LLC v. Owens, 574 U.S. 81, 89 (2014); *see also* Arias v. Residence Inn, 936 F.3d 920, 924 (9th Cir. 2019) ("when a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied.")). Evidence establishing the amount in controversy is only required once the plaintiff challenges, or the court questions, the defendant's allegation. (Id.)

"[T]he amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." (*See* Chavez v. JPMorgan Chase & Co., 888 F.3d 413, 414–15 (9th Cir. 2018)). The Complaint therefore is necessarily reviewed by the Court to ascertain the amount in controversy. (*See* La Cross v. Knight Transportation, Inc., 775 F.3d 1200, 1202 (9th Cir. 2017)).

Further, for the limited purpose of determining whether an action satisfies the federal amount in controversy requirement, "[t]he amount in controversy in cases dealing with life insurance policies necessarily is the face amount of the policy." (Jefferson v. Liverpool & London Globe Ins. Co., 167 F. Supp. 389, 392 (S.D. Cal. 1958) ("The criterion for ascertaining the existence of our monetary jurisdiction in

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

cases where the validity of a life policy is at issue is, therefore, properly the face amount of the policy"); <u>Elhouty v. Lincoln Benefit Life Co.</u>, 886 F.3d 752, 756 (9th Cir. 2018) ("the policy's face amount is the measure of the amount in controversy"); <u>Sandstrom v. Protective Life Ins., Co.</u>, 2013 WL 12123308, at \*2 (C.D. Cal. Mar. 14, 2013) ("The criterion for ascertaining the existence of our monetary jurisdiction in cases where the validity of a life policy is at issue is, therefore, properly the face amount of the policy").

Here, Reliant holds life insurance policies with total face values in excess of $150 million. The face value is the maximum death benefit payable upon the death of the insured. Thus, the alleged amount in controversy in the aggregate well exceeds the amount in controversy threshold under CAFA.

Accordingly, all of CAFA's prerequisites are met, and this case is properly removed.

## II.

## FEDERAL QUESTION REMOVAL IS PROPER

### A. <u>Removal is Timely</u>

On December 6, 2022, Plaintiff commenced this Action by filing a lawsuit in the Superior Court of the State of California for the County of Los Angeles, case number 22STCV38080 ("the State Court Action"). A copy of the Complaint is attached as **Exhibit 1** hereto. On December 13, 2022, Plaintiffs mailed a copy of their Summons and Complaint to the Bank of Utah, pursuant to Code of Civil Procedure Section 415.40. Service was thus completed on December 23, 2022 under Code of Civil Procedure Section 415.40. A copy of the Summons in the State Court Action is attached hereto as **Exhibit 7** and a copy of the Proof of Service of Summons on the Bank of Utah by mail is attached hereto as **Exhibit 45**.

Bank of Utah filed an Answer on January 17, 2023, a copy of which is attached hereto as **Exhibit 47**. Bank of Utah files this notice of removal within 30 days of

being served. (*See* Exhibit 45).  Thus, this Notice of Removal is timely filed.  (*See* 28 U.S.C. § 1446(b)(1)).

**B.**    **Removal is Proper under Federal Question & Supplemental Jurisdiction**

This lawsuit is properly removable to this Court under 28 U.S.C. § 1441 and 28 U.S.C. § 1331, because it was filed in Los Angeles County Superior Court, and repeatedly presents a Federal question as to which this Court has original (and as to Causes 11 and 16, at a minimum) exclusive jurisdiction.  To wit, Plaintiff repeatedly pleads for Federal question relief in the:

(1)    Fifth Cause of Action (Complaint 52:1),

(2)    Sixth Cause of Action (Complaint 53:10-11),

(3)    Tenth Cause of Action for Violation of the Securities Act (Complaint 62:5-16),

(4)    Eleventh Cause of Action for Violation of the Exchange Act (Complaint 63:9-16), as to which this Court has both original and exclusive jurisdiction (15 U.S.C. § 78aa), and

(5)    Sixteenth Cause of Action for Violation of SEC Rule 10b-5 (Complaint 71:5-20).

As to all the other causes of action, those claims are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy under Article III of the United States Constitution.  As such, this Court should exercise supplemental jurisdiction over them, pursuant to 28 U.S.C. § 1367.

**C.**    **Venue**

Venue lies in the United States District Court in and for the Central District of California under 28 U.S.C. §§ 1391(b) and 1441(a).  Under 28 U.S.C. § 1441(a), this case may be properly removed to the Central District of California, because Plaintiff filed this case in the California Superior Court in and for the County of Los Angeles.  Plaintiff also alleges this Action arose in the State of California, as well as the relevant fractional interests in life insurance policies being issued and/or delivered in

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

the State of California. (*See* **Exhibit 1**, Compl. ¶ 31 & Murrin Decl. Pursuant to Cal. Civ. Code § 1780 ¶¶ 3-4).

**D.**     **Consent to Removal**

All defendants have consented to the removal of this matter.

### III.

### RESERVATION OF DEFENSES & REQUEST FOR
### FURTHER BRIEFING OR HEARING

Nothing in this Notice of Removal or its accompanying Exhibits shall be interpreted as a waiver or relinquishment of any right or legal remedy or affirmative defense available to the Bank of Utah, or a relinquishment of any right to compel arbitration.  Should the Court have any question regarding the propriety of this Notice, Bank of Utah asks that an evidentiary hearing be set, and an opportunity be given to more fully brief the Court on the propriety of this removal.

### IV.

### CONCLUSION

WHEREFORE, Defendant Bank of Utah, Trustee of the Reliant Life Shares Series Statutory Trust (erroneously sued as Bank of Utah, and herein "Bank of Utah"), requests that the action now pending in the Superior Court of California, County of Los Angeles, case number 22STCV38080, be removed to this Court and that this Court accept this Notice of Removal for filing in accordance with the provisions of 28 U.S.C. §§ 1331, 1332(d), 1441 and 1446.

Respectfully submitted,

DATED: January 20, 2023          WALTON & WALTON, LLP

By:    /s/ L. Richard Walton
L. Richard Walton
*Attorneys for Defendant Bank of Utah*

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

# EXHIBIT "1"

Assigned for all purposes to: Spring Street Courthouse, Judicial Officer: Carolyn Kuhl

Electronically FILED by Superior Court of California, County of Los Angeles on 12/06/2022 03:13 PM Sherri R. Carter, Executive Officer/Clerk of Court, by G. Carini,Deputy Clerk

J. Owen Murrin (SBN 75329)
**Murrin Law Firm**
7040 E. Los Santos Drive
Long Beach, California 90815
Phone:  562-342-3011
Fax:  562-724-7007
**E-mail: jmurrin@murrinlawfirm.com**
Attorneys for PLAINTIFF INVESTORS

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES - SPRING STREET COURTHOUSE

PLAINTIFFS:
ED BAEZA, an individual;
CONCEPCION BAEZA, an individual;
PAUL BUGLER, an individual;
WALTER BUGLER, an individual;
JAMES CIRILE, an individual;
NATHAN COLEMAN, an individual;
GAMAN, LLC;
GENE GOLDEN, an individual;
JOSEPH GOODALE, an individual;
RACHEL GILA, an individual;
TRUDY BELINDA JOHNSON, an individual;
CHARLES LAWRENCE, an individual;
ORSON K. LEONG, an individual;
PETER J. LOWE, an individual;
BARBARA THORSELL, an individual;
MARK THORSELL, an individual;
CLIFFORD RITZ, an individual;
STEVEN C. ROEMER, an individual;
GREG SCHMITT, an individual;
JOHN STOCKSDALE, an individual;
JENNIFER VANCE, an individual
YEYO, LLC;

            Plaintiffs,

        v.

RELIANT LIFE SHARES LLC aka RELIANT
CAPITAL, RLS FINANCIAL SERVICES,
INC.;

Case No. 22STCV38080
**COMPLAINT**

1. VIOLATION OF CORPORATE CODE §§25401 & 25501
2. BREACH OF FIDUCIARY DUTY
3. CONVERSION
4. NEGLIGENCE – GROSS NEGLIGENCE
5. SELLING UNREGISTERED SECURITIES
6. VIOLATIONS OF CORPORATE CODE §§25004 & 25501.5; AND C.C.P. §1029.8
7. INTENTIONAL MISREPRESENTATION /FALSE PROMISE
8. VIOLATION OF CORPORATE CODE 3372
9. ACCOUNTING
10. VIOLATION OF SECTION 5 OF THE SECURITIES ACT (UNREGISTERED SECURITY)
11. VIOLATION OF SECTION 15 OF THE EXCHANGE ACT BY ACTING AS A BROKER-DEALER OR AGENT OF SAME WITHOUT REGISTRATION
12. BREACH OF CONTACT/RECISSION
13. UNFAIR COMPETITION AND VIOLATION OF CODE SECTION 17200 et seq.
14. FINANCIAL ELDER ABUSE (Welfare and Institutions Code § 15600 et seq.)
15. AIDING AND ABETTING FRAUD AND BREACH OF FIDUCIARY DUTY
16. VIOLATION OF SEC RULE 10-B-5
17. CONSPIRACY

1
**COMPLAINT**

RMS TRUST;
PRINCIPLE FINANCIAL SERVICES, INC.;
SCOTT GRADY;
PAUL ROY;
DAVID UNDERWOOD;
SHAWN DAVENPORT;
LARRY BAGBY;
BRENT BORCHERT;
MARK SANSOUCY;
LARRY TUPLER;
JOEL KLEINFELD;
RLM TRUST;
VINCENT BOVINO;
UMB BANK N.A.;
BANK OF UTAH;
FIRST WESTERN TRUST BANK;
PACIFIC LIFE INSURANCE COMPANY;
LINCOLN FINANCIAL GROUP;
PRINCIPAL FINANCIAL GROUP;
AVIVA LIFE AND ANNUITY;
NASSAU LIFE INSURANCE COMPANY
AKA REINSURANCE GROUP HOLDINGS,
L.P, .AND FORMERLY KNOWN AS
PHOENIX COMPANIES; THE PENN
MUTUAL LIFE INSURANCE COMPANY;
LINCOLN BENEFIT LIFE;
BENEFICIAL LIFE INSURANCE CO.;
PHL VARIABLE INSURANCE COMPANY;
RELIASTAR LIFE INSURANCE COMPANY;
AXA EQUITABLE LIFE INSURANCE
COMPANY;
ZURICH AMERICAN LIFE INSURANCE
COMPANY;
JOHN HANCOCK LIFE INSURANCE
COMPANY OF NEW YORK;
and DOES 1-20

Defendants

18. VIOLATION OF CONSUMER LEGAL
    REMEDIES ACT
19. CONSTRUCTIVE TRUST/RECEIVERSHIP
20. ALTER EGO
21. FRAUDULENT TRANSFER
22. CONSTRUCTIVE FRAUD
23. RESCISSION
24. VIOLATION OF PENAL CODE §496


**JURY TRIAL REQUESTED**

PLAINTIFFS, referred to as investors or customers (singular or plural), allege the following for themselves but also for others similarly situated, the following based upon personal knowledge, and

2

**COMPLAINT**

upon information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through their attorneys, which included among other things, a review of the Defendants' records, public documents, announcements, United States Securities and Exchange Commission (S.E.C.) filings, wires and releases issued by Defendants, and information obtained on the Internet. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth hereinafter after reasonable discovery as follows:

## NATURE OF CASE

1.      Defendants are categorized into three groups for ease of understanding. One group is the Reliant Defendants.  When the term Defendants is used hereinafter, by default that is referring to the Reliant Defendants, the first group of Defendants, and includes all Defendants who are not Insurance Companies or Bank/ escrow companies and include persons or entities engaged in developing, selling, or servicing the life settlement products to Plaintiffs which products are the subject matter of this suit. Specifically it includes all Defendants except defendants in the next two groups. The second group of Defendants are the Insurance company Defendants, generally referred to as such. The third group of Defendants are those acting as bank/escrow companies and named such. It is alleged, upon information and belief that the Reliant Defendants movement of their policies of insurance that they sell to investors from Christiana Bank to UMB Bank, to Bank of Utah, to First Western Trust Bank is indicative of issues that are disturbing and go to revealing acts of impropriety of the sort alleged herein and go to show that the Reliant Defendants used these banks to further their deceptive practices against investors generally and these investors in particular.   The latter two groups are mainly sued as accessories, aiders and abettors and are also liable for themselves not doing due diligence, monitoring and oversight.

2.      The reason there is confusion over who the Reliant Defendant are is because Defendants have purposefully made it so. Defendants frequently use the term "Reliant" but what and who Reliant is, is something these Defendants try to maintain as a mystery. This confusion is the crux of various deceptive causes of action alleged herein especially the cause of action alleging violation of the Civil Code §1770 et seq.    Reliant uses different names and including deviations of the name "Reliant" or its

3

**COMPLAINT**

initials including Reliant Life Shares or RLM.  Sometimes especially in commercials, it uses Reliant
Capital. Reliant uses all sorts of other terms covered in the complaint. Even if they are not part of
Reliant, if they are not an insurance company or a Bank/escrow company, they are considered a Reliant
Defendant for this complaint.    Also, when Reliant is used, it refers to any number these Reliant
Defendants which includes companies that work with and through Reliant.  For example, found in a
Reliant purchase agreement in 2016, is reference to a 2010 Irrevocable Trust of the BBC, the RLM
Trust, and Joel Kleinfeld so they come under the umbrella of the term Reliant when used in this
complaint.  Later in a purchase agreement dated July 13, 2017, there is reference to the RLM Trust and
Joel Kleinfeld. Therefore the are also included in the umbrella of the term Reliant for purposes of this
complaint   By February of 2018, there is reference to a RLM Trust and RLS Trust in a Reliant
purchase agreement, and a month later there is reference to an SLG Trust in a purchase agreement, so
these entities are included in the term Reliant when used in this complaint. How all these defendants are
related is not explained to the investors by Reliant or its sales force, although it is believed that these
individuals or entities are controllers and operators of an "endeavor" or "enterprise" that for purpose of
this complaint are referred to as Reliant as well.   Also when terms like "endeavor" or "enterprise" are
used in this complaint, they are included under the term Reliant as used in this complaint.  Note
whenever the term "investors" is used, it refers to Plaintiffs)

3.    At the same time that all the above  individuals and entities are in the Reliant umbrella, they
all will want to  declare themselves independent, separate, and apart from Reliant.  While Plaintiffs
dispute this, it does not matter, because for purposes of this complaint, Reliant by definition refers to all
but the insurance companies, the bank and escrow companies. The facts will show that all these entities
and individuals are not separate and distinct from themselves no matter what name they use or who they
try to create legal distinctions.  The endeavor or enterprise these individuals and entities work for is
shrouded in mystery.  Some of these companies claim to be separate and apart from Reliant but the facts
will show they are not.   They work together and use each other's staff, and they will claim some of
these investments are not operated by Reliant Defendants, but operated by RLS Financial Services, Inc,
Principle Financial Services, Inc., and any of the other Reliant Defendants. These companies will try to
claim a separate existence from Reliant, but that separate existence appears blurry and is a sham,  as the

4

**COMPLAINT**

companies are so intertwined that it leaves Plaintiffs or any consumer confused an tricked thereby. Also it appears these companies were formed to appear separate in light of the impending downfall or complaints surrounding Reliant are a conduit to continue in a different form-thus the fraudulent transfer causes of action as to these companies.    Investors (including the Plaintiffs herein) are led to believe that they are dealing with Reliant when these other companies appear on the paperwork. Also the same persons seem to be operating having arisen from Reliant and Principle Financial Services, Inc or RLS Financial Services.  They share and operate together in such a way that it is alleged there is a merger of identity. Therefore, whenever there is a reference to Reliant, it applies equally to Principle Financial Services, RLS Financial Services Inc. and the other companies listed herein and these companies.

4.    As a result of the above, these Reliant Defendants misrepresented themselves to the investors as far as the source, sponsorship, approval, or certification of services with one another, all-in violation of Civil Code §1770 et seq. It is alleged that these Defendants are also moving targets, as Reliant is constantly being reconfigured or is a loose group of people who want to claim that they do their own thing separately, but they are all interrelated and sued as such, thus the terms "endeavor" or "enterprise" are appropriate terms for Reliant or the group of people behind the scenes that operate Reliant. They all use the same model of making insurance policies on others as a syndicated item to multiple investors. These insurance policies are sourced from the same methods.    They all use the same sales techniques, and misrepresentations regarding the need for future premiums.  It is alleged upon information and belief that they all procure their policies from the same source, which source is alleged to be a criminal enterprise.   As will be seen, one investor on the same day, bought two groups of Life settlement investments, one from Reliant and the other from Principle Financial Services. As far as he knew, it was the same company with which he was dealing. This is a problem because it means that there is uncertainty of how and who will handle the distributions if and when the policies mature, and who is responsible to keep the investors informed. This is true even though they all claim to use the independent bank or trust model.

5.    The above-mentioned Defendants (the Reliant Defendants along with their endeavor and enterprise) developed a misleading narrative about how good the investments and how extraordinary their services were that were they sold to Plaintiffs.  These Defendants engaged in conduct that created

5

**COMPLAINT**

the false impression that the life settlements were restructured and sold with minimal risks and would pay off within the expected time period. These Defendants misrepresented the risk to the investors of having to pay future of out-of-pocket payments to keep the policies in force.  These Defendants told the Investors, "it rarely if ever happens," that the projected premium reserves would not cover future premiums.  These Defendants failed to disclose material information that future premiums would increase substantially as the insured got older or who the premiums are calculated.  These defendants misled investors about their projected annual returns and falsely represented to investors that their investments were safe and were independently protected.    Investors were kept in the dark as to information about the insured, including the names and other important characteristics of the insureds they were supposedly investing in and how that policy was procured.  If they knew how the policy was procured, they would be alarmed and would not want to be a part of this investment and/or it would have exposed this investment for what it is, a devious investment in a devious industry.

6.    The only way that Reliant Defendants could sell this investment to anyone is if they overstated the safety and benefits of the investments, if they did not adhere to security and other laws, and if they hid all the bad facts and bad reviews on the internet, and if they emphasized the occasional winners to make new investors believe, he or she he will benefit from a quick death benefit and high return on investment.  The reality is that there is a higher probability that investors will have to pay additional premiums, than what was represented or implied in the sales materials.  They were deceived about the need to pay additional premiums, how those premiums might affect them and their heirs, and the return on this would on this investment, sometimes to the point that that the return would be negative.  Unfortunately, Defendants do not tell Plaintiffs the real odds of realizing a distribution right away. Early distributions do not seem to happen that often, as many investors have become extremely disappointed over the years for having to pay a premium that they were not expecting based upon the sales presentation.   Having to pay premiums saddles the investor and/or their heirs with obligations that are often unpredictable and hard to meet.  This is not fully explained by Defendants in the sales presentation,  and makes the investment not suitable or in the investor's best interests.   The attrition rate (investors who drop out of this investment because of the hardship to pay additional premium) is alleged to be significant and is not disclosed but this is a deceit too because Defendants sales pitch to

**COMPLAINT**

new investors includes the opportunity to get out of the investment with their money back whenever they want, but this has been turned around to not be honored  except upon onerous conditions that do not make sense.   Again this is another big deceit.  What this means is that the only way Defendants can sell this investment to investors like this plaintiff is if Defendants are deceptive and that is how they sold this to Plaintiffs.

7.   Any adverse reviews or criticism of the Reliant program is monitored by these defendants and manipulated out of public view so Defendants will not be tainted by negative internet reviews.  This manipulation which is a purge of bad internet reviews is not only deceptive but also violates securities and other laws because it involves the concealment of material facts. All Defendants need to be held accountable- this includes the Reliant Defendants but any of the Insurance companies, named herein and or the bank/escrow companies to the extent they allow the above all-around deception program to be perpetrated on innocent investors which in this case is what happened to these Plaintiffs.

8.   Defendants misrepresented material facts and omitted to disclose material facts. The real odds of how well a person will do in the Reliant Defendants' investment is not properly conveyed to the investors by Defendants, nor are the problems.  What happens if the insured outlives the investor?  Are the heirs of the investor on the hook?  How often are investors paying out more in premiums than they will realize once the death benefit is distributed, or how often is there a negative return on investment? Defendants characterize these investments as mainstream investments, and "better than the stock market" when they know or should know otherwise.   In fact, they claim these investments do not correlate with the stock market. Defendants claim in their marketing material and on their website that big time investors, such as Warren Buffet and Bill Gates,  invest in these kinds of investments. First of all, that is not true that Warren Buffet or Bill Gates invests in this kind of fractional  life settlement investment. Warren Buffet  or Bill Gates only invests in undivided interests in such death benefits and then  in multiple policies at once which is not what these investors can do.  He does not invest in fractionalized portfolios of policies,  which carries a load.  Still, even if Warren Buffet did invest in the same type of investment, it does not justify selling a product that is not suitable for the Plaintiffs herein who are not in the same position as Warren Buffet to cover premiums indefinitely in the future.

**COMPLAINT**

9.      Reliant Defendants also do not give basic information about the insureds.  Defendants do this under the justification that the insureds' privacy is paramount. That does not justify violating security and other laws that obligate promoters of investments (of securities) to make full disclosure. Failure to disclose material facts is a securities violation even if an insured is entitled to his privacy. The solution is don't sell it.  Defendants keep the investor from being able to do any inquiry, or have any specific knowledge of the insured, a determinative and material factor of the investment.  Although this is a deceit because it is well known in the industry that this information can be obtained and is available when defendants or their agents bought the policy, so under these circumstances this information needed to be disclosed and should be disclosed right now.

10.      Another deception perpetrated by Defendants is that investors can get their principal back at any time. See Exhibit 27 which is  a letter from one of the plaintiff investors described how he was represented to have been told this in more detail and how this was a misrepresentation.  This has turned out to be false, because if true, this suit could have been averted by returning the principal which was requested and declined by Defendants.  In other words Defendants were given the opportunity to rescind the agreement but did not do so, even without having to pay interest which is normally required. Therefore Defendants had the opportunity to avoid this suit completely and chose otherwise. Defendants  blatantly claim people can get their money back at any time during the sales presentations as Exhibit 27 exemplified. The Plaintiffs, especially Mr. Goodale, indicated they would accept the return of their principal in lieu of bringing the suit, but Defendants were not able to perform within a reasonable amount of time or commit to a satisfactory agreement to do so. Defendants also have a history of reneging on such promises of paybacks for example in the Gerald Frank case where Mr. Frank hired a lawyer to get his money back and Defendants agreed to give it back but they reneged on it. The elephant in the room is the allegation by Plaintiffs, alleged upon information and belief, is that the insurance policies are not what they are represented to be, or the insurance policies are manipulated and do not exist as represented, do not exist or will not be available upon maturity or that Defendants have developed a scheme in the form of a Ponzi scheme where new life settlements (or the back office that procures policies for themselves and others) covers premiums on life settlements sold years earlier which had not matured, and this is what has exhausted the so called "premium reserves". These things

8

**COMPLAINT**

alone are reason to pursue this case because Plaintiffs do not have adequate assurances that any of the above exist and want assurances that the policies they bought are real and in effect, and that the Insurance companies are ready willing and able to pay them as promised.   A factual and legal determination needs to be made on this point, to prove that Defendants have not squandered any of these policies, although this case does not bank on this, just because of the evasiveness of the Reliant Defendants suit is necessary.  Proof of this evasiveness is a compilation of internet complaints against the Reliant Defendants attached hereto as Exhibit 26. Suit on this point is necessary, whether these policies were squandered or not, because Defendants do not respond to these Plaintiff /investors, or when Defendants do not properly answer the questions. As a result of the above, Defendants credibility is lacking such that court determination is necessary as to the existence of these policies.  Alleged on information and belief is that members of the Reliant Defendant's enterprise have taken advantage of the polices in the investment that have not matured for their benefit, and not for the investors' benefit, and not properly disclosed such facts and doing such things, for example, alleged upon information and belief, using the policies for collateral, or misappropriating the death benefit for themselves.

11.    The Reliant Defendants claim that they have a series of policies on insureds, that the insureds have assigned the policies to Plaintiffs (i.e., assigned their death benefit), but that the assignment does not go into effect until the insured dies. Defendants claim that these are individual investments, but each of the Plaintiff's investment seems to involve two or more life settlements policies/death benefits and no two groups of investors are generally exactly the same. These life settlements assigned to Plaintiffs are sold to Plaintiffs as an investment and some of the policies are from other disgruntled Reliant investors who want out.  This is not revealed to Plaintiffs when they purchase. Since the insured are insured by insurance companies, not the Reliant Defendants, these insurance companies become accessories to Defendants' wrongful and illegal endeavor. Defendants use these various insurance companies to bolster Defendants' credibility and to suggest that the investment is safe, using these insurance companies net worth to substitute for the lack of their own net worth. They do the same when they use the name of Defendant Banks/Escrow Company but this is deception because they have moved from bank to bank and no explanation for that is given.  It is alleged that if the explanation was given it would be an additional fact that would be a material fact that an investor

9

**COMPLAINT**

should have known that was deprived these Plaintiffs.  This itself is another deception because it not revealed properly and still has not.  Further Reliant Defendant's net worth is not disclosed and still has not. The bank/escrow and the insurance companies are a part of this deception which violates Civil Code §1770 et seq. because  all defendants are passing off  (or allowing the passing off of) goods and services as those of another. The defendants are merged together to create confusion over the other origin and source of the product, or the goods or services purchased in violation of Civ. Code, § 1770(a)(4) which is a deceptive representation or designation.

12.    The Reliant Defendants use the real insurance companies (referring to the defendant insurance companies) as well as Warren Buffet and Bill Gates to bolster Reliant' s credibility and the company's credibility wrongfully, improperly, and illegally. This confuses investors as to who is the sponsor and who owns the investment, who is in charge and so many more thing as outlined in Civil Code §1770 et seq. and in other causes of action.

13.     This complaint alleges Defendants, and their endeavor or enterprise, are rife with violations of the Deceptive Trade Practices Act including violating Civ. Code, § 1770(a)(9) [advertising goods or services with intent not to sell them as advertised].) The insurance companies are implicated even more because they have been allowing this to happen apparently because it provides cash flow directly to them on insurance policies that might otherwise lapse.  Defendants as well as the insurance companies are sued because they are both furthering Reliant Defendants' investment program(s) which they know are preying on innocent, mostly older, victims who are struggling with all these issues set forth throughout this Complaint. It is not just the insurance companies that are intertwined, and implicated, it is the banks, trust companies, and the escrow companies; and under securities laws they are issuers or agents of the issuers, and as a result they are liable for any security law causes of action and other causes of action for the acts of the Reliant Defendants.  Therefore, these non-Reliant Defendants are sued in this capacity as well as aiders and abettors and co- conspirators.

14.    It is irrelevant that the individuals that make up the Defendants and the entities named in this complaint have gone their separate ways, re-organized or have their own disputes between themselves. If they were a part of the mix that allowed this investment to be peddled illegally or improperly, to any of these innocent people, they are alleged to be at fault and responsible.    Each Defendant is sued for

10

**COMPLAINT**

his, her, or its own wrongful conduct or for participating in selling this product, aiding, and abetting it, and not putting an end to it when they had a chance.   This investment was a scheme then and is a scheme now designed to take advantage of innocent investors and to enrich themselves.

15.    It is alleged that everyday this investment continues, it is perpetrating a new wrongful act or breach of contract to the extent that Defendants are carrying on a deceptive program and are not allowing Defendants to cash out as promised and to the extent that premiums mean the purchase is still not a completed transaction.

## PARTIES

16.    At all times herein, PLAINTIFF INVESTOR PAUL BUGLER (hereinafter referred to as "INVESTOR PAUL BUGLER" was and is a resident of the City of South San Francisco, County of San Mateo, State of California.

17.    At all times herein, PLAINTIFF INVESTOR WALTER BUGLER (hereinafter referred to as "INVESTOR WALTER BUGLER" was and is a resident of the City of South San Francisco, County of San Mateo, State of California.

18.    At all times herein, PLAINTIFF INVESTOR CONCEPCION BAEZA (hereinafter referred to as "INVESTOR CONCEPCION BAEZA" was and is a resident of the City of Los Angeles, County of Los Angeles, State of California.

19.    At all times herein, PLAINTIFF INVESTOR ED BAEZA (hereinafter referred to as "INVESTOR ED BAEZA" was and is a resident of the City of Los Angeles, County of Los Angeles, State of California.

20.    At all times herein, PLAINTIFF INVESTOR JAMES CIRILE (hereinafter referred to as "INVESTOR JAMES CIRILE" was and is a resident of the City of Los Angeles, County of Los Angeles, State of California.

21.    At all times herein, PLAINTIFF INVESTOR NATHAN COLEMAN (hereinafter referred to as "INVESTOR NATHAN COLEMAN" was and is a resident of the City of Murrieta, County of Riverside, State of California.

**COMPLAINT**

22.     At all times herein, PLAINTIFF INVESTOR GAMAN LLC (hereinafter referred to as "INVESTOR GAMAN LLC" is a company operating pursuant to the laws of the State of California doing business in Los Angeles, County of Los Angeles, State of California.

23.     At all times herein, PLAINTIFF INVESTOR GENE GOLDEN (hereinafter referred to as "INVESTOR GENE GOLDEN" was and is a resident of the City of Winnetka, County of Los Angeles, State of California.

24.     At all times herein, PLAINTIFF INVESTOR JOSEPH GOODALE and RACHEL GILA (hereinafter referred to as "INVESTOR JOSEPH GOODALE and RACHEL GILA" were and are residents of the City of Rohnert Park, County of Sonoma, State of California.

25.     At all times herein, PLAINTIFF INVESTOR TRUDY BELINDA JOHNSON (hereinafter referred to as "INVESTOR TRUDY BELINDA JOHNSON" was and is a resident of the City of Carson, County of Los Angeles, State of California.

26.     At all times herein, PLAINTIFF INVESTOR CHARLES LAWRENCE (hereinafter referred to as "INVESTOR CHARLES LAWRENCE" was a resident of the City of San Pedro, County of Los Angeles, State of California.  He currently lives in Orange County.

27.     At all times herein, PLAINTIFF INVESTOR ORSON K. LEONG (hereinafter referred to as "INVESTOR ORSON K. LEONG" was and is a resident of the City of Pleasanton, County of Alameda, State of California.

28.     At all times herein, PLAINTIFF INVESTOR PETER J. LOWE (hereinafter referred to as "INVESTOR PETER J. LOWE" was and is a resident of the Union City, County of Alameda, State of California.

29.     At all times herein, PLAINTIFF INVESTOR MARK THORSELL and BARBARA THORSELL (hereinafter referred to as "INVESTOR MARK THORSELL and BARBARA THORSELL" were and are residents of the City of Sacramento, County of Sacramento, State of California. They currently live in Arizona.

30.     At all times herein, PLAINTIFF INVESTOR CLIFFORD RITZ (hereinafter referred to as "INVESTOR CLIFFORD RITZ" was and is a resident of the City of Richmond, County of Contra Costa, State of California.

**COMPLAINT**

31.     At all times herein, PLAINTIFF INVESTOR STEVEN C. ROEMER (hereinafter referred to as "INVESTOR STEVEN C. ROEMER" was and is a resident of the City of San Anselmo, County of Marin, State of California.

32.     At all times herein, PLAINTIFF INVESTOR GREGORY SCHMITT (hereinafter referred to as "INVESTOR GREGORY SCHMITT" was and is a resident of the City of San Rafael, County of Marin, State of California.

33.     At all times herein, PLAINTIFF INVESTOR JOHN STOCKSDALE (hereinafter referred to as "INVESTOR JOHN STOCKSDALE" was and is a resident of the City of Santa Rosa, County of Sonoma, State of California.

34.     At all times herein, PLAINTIFF INVESTOR JENNIFER VANCE (hereinafter referred to as "INVESTOR JENNIFER VANCE" was and is a resident of the City of Corte Madera, County of Marin, State of California.

35.     At all times herein, PLAINTIFF INVESTOR YEYO LLC (hereinafter referred to as "INVESTOR YEYO LLC" is a company operating pursuant to the laws of the State of California doing business in Los Angeles, County of Los Angeles, State of California.

36.     At all times herein, Defendant RELIANT LIFE SHARES LLC (herein referred to as "RELIANT") was a limited liability corporation operating pursuant to the laws of the State of California. Reliant Capital is a trade name or term RELIANT uses to market itself. It is not associated with the collection company.

37.     RLS FINANCIAL SERVICES, INC. is interrelated with RELIANT and serves as its agent of records. When RLS FINANCIAL SERVICES, INC. (hereinafter "RLS") is referred to, RLS is interdependent on RELIANT and is a sham and a manipulation of reality to separate it from RELIANT because they play off of each other to do the same thing by making money off of investors who purchase RELIANT marketed life shares like the ones purchased herein. In the alternative, it is alleged that RLS is the alter ego of RELIANT behind the scenes ratifying or covering up the bad outcomes for investors. This entity is also referred as a RELIANT associated company. When RELIANT is referred to hereinafter generally, it includes RLS FINANCIAL SERVICES, INC. unless otherwise noted.

38.     RMS TRUST is a trust operating in the state of California that had control over the perpetrators of all endeavors described herein who permitted, condoned, and allowed wrongful things to happen.

39.     At all times herein, Defendant PRINCIPLE FINANCIAL SERVICES, INC.; (herein referred to as "PFSI") was a corporation operating pursuant to the laws of the State of California. It is believed operating through or with Reliant and posing itself as Reliant.

40.     At all times herein, Defendant SCOTT GRADY (hereinafter GRADY) was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent and associate of RELIANT and/or JOEL KLEINFELD or his company, believed to be RMS Trust, or together they controlled the investments described herein. In the alternative, GRADY is the decision-maker and chief salesperson when it comes to the sale of these life settlement products which are the subject matter of this complaint. He controlled some of the events herein. GRADY has ratified or maintained all the wrongful conduct set forth in this Complaint. Although he was a seller of these products, he is not licensed to sell Life Settlement and his involvement to do so is believed illegal.  More about him below.

41.     At all times herein, Defendant PAUL ROY was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL KLEINFELD or his company above mentioned. He controlled some of the events herein. ROY was a decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint.

42.     At all times herein, Defendant DAVID UNDERWOOD was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL KLEINFELD or his company above mentioned. He controlled some of the events herein. He was a decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint.

43.     At all times herein, Defendant SHAWN DAVENPORT was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL

14

**COMPLAINT**

KLEINFELD or his company above mentioned. He controlled some of the events herein. He was a decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint.

44.     At all times herein, Defendant LARRY BAGBY was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL KLEINFELD or his company above mentioned. He controlled some of the events herein. He was a decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint.

45.     At all times herein, Defendant BRENT BORCHERT was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL KLEINFELD or his company above mentioned. He controlled some of the events herein. He was a decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint. More about him below.

46.     At all times herein, Defendant MARK SANSOUCY was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL KLEINFELD or his company above mentioned. He controlled some of the events herein. He was a decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint. More about him below.

47.     At all times herein, Defendant LARRY TUPLER was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL KLEINFELD or his company above mentioned. He controlled some of the events herein. He was a decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint.

**COMPLAINT**

48.     At all times herein, Defendant VINCENT BOVINO was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL KLEINFELD or his company above mentioned. He controlled some of the events herein. He was a decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint.

49.     At all times herein, Defendant JOEL KLEINFELD has been and is the owner, operator, and controller of the enterprise known as RELIANT and either individually or through his company Doe 1 controlled or manipulated the outcomes affecting the investments contained and referenced in this complaint. He or his company are alleged to be a Reliant associated company and operator and controller of RELIANT, RELIANT associated companies, and Defendants herein when it comes to these life share investments. More about him below.

50.     At all times herein, Defendant RLM TRUST (herein referred to as "RLM") is a trust owned and operated by JOEL KLEINFELD and is operative in or around the United States and is believed to be a responsible entity allowing the occurrences (including wrongdoing) set forth in this complaint to happen. It is alleged upon information and belief that it is a RELIANT associated company.

51.     Doe 1 is JOEL KLEINFELD 's company used to manipulate, and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint. It is alleged upon information and belief that he is or was during relevant times the founder, operator, and controller of RELIANT or Reliant associated companies and Defendants herein when it comes to these life share investments.

52.     UMB BANK N.A. acts as RELIANT'S escrow agent and is believed to be located 1010 Grand Blvd, 4th Floor., Kansas City, MO. It is believed to be responsible and liable for the wrongdoing set forth in this complaint because of its association, ratification, and knowledge of this wrongdoing..

53.     BANK OF UTAH acts as RELIANT'S escrow agent and is believed located at 200 East South Temple, Suite 210, Salt Lake, Utah. It is believed to be responsible and liable for the wrongdoing set forth in this complaint because of its association, ratification, and knowledge of this wrongdoing.

54.     FIRST WESTERN TRUST BANK acts as RELIANT'S escrow agent and has locations in Colorado, Wyoming, Arizona, and California. It is believed to be responsible and liable for the

16

**COMPLAINT**

wrongdoing set forth in this complaint because of its association, ratification, and knowledge of this wrongdoing.

55.     PACIFIC LIFE INSURANCE COMPANY is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

56.     LINCOLN FINANCIAL GROUP is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

57.     PRINCIPAL FINANCIAL GROUP is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

58.     AVIVA LIFE AND ANNUITY is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

59.     NASSAU LIFE INSURANCE COMPANY AKA REINSURANCE GROUP HOLDINGS, L.P, .AND FORMERLY KNOWN AS PHOENIX COMPANIES.   Phoenix is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

60.     THE PENN MUTUAL LIFE INSURANCE COMPANY is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

61.     LINCOLN BENEFIT LIFE is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

62.     BENEFICIAL LIFE INSURANCE CO. is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

**COMPLAINT**

63.     PHL VARIABLE INSURANCE COMPANY is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

64.     RELIASTAR LIFE INSURANCE COMPANY is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

65.     AXA EQUITABLE LIFE INSURANCE COMPANY is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

66.     ZURICH AMERICAN LIFE INSURANCE COMPANY is an insurance company used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint and is a company authorized to do business in the State of California

67.     JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

68.     PLAINTIFFS are informed and believe and upon such information and belief allege that Defendants, DOES 1-20, inclusive, and at all relevant times were, residents of Los Angeles County, California. PLAINTIFFS do not know the true and accurate names and capacities of DOES 1-20, thus DOES 1-20 are fictitiously named. PLAINTIFFS will seek leave to amend this Complaint to allege their true names when ascertained.

69.     PLAINTIFFS are unaware of the true names and capacities of DOE Defendants sued herein as DOES 1-20, and therefore sue those Defendants by such fictitious names. PLAINTIFFS will seek leave to amend this Complaint to allege their true and accurate names and capacities when ascertained. PLAINTIFFS are informed and believe and upon such information and belief allege that each of the fictitiously named Defendants are responsible for the acts and/or omissions herein alleged, and that PLAINTIFF 's injuries and damages as herein alleged were proximately caused by the acts and/or omissions of such fictitiously named Defendants

**JURISDICTION**

18

**COMPLAINT**

70.     DEFENDANTS reside or do business in California, so California is the proper forum.  Los Angeles County, California is where the most sales and transactions took place and where the chief DEFENDANTS congregate, live, work and are headquartered. Therefore, California Superior Court of Los Angeles County is the proper court and forum for this case.

## ALTER EGO, AGENCY, AND SUCCESSOR IN INTEREST

71.     Plaintiffs are informed and believe, and thereon allege that there exists such a unity of interest and ownership between DEFENDANTS and DOES 2-20, that the individuality and separateness of DEFENDANTS have ceased to exist.

72.     Plaintiffs are informed and believe, and thereon allege that the DEFENDANTS and/or DOES 2-20 conspired to break the laws alleged herein.  This is part of a joint activity, joint endeavor, joint enterprise, and/or joint adventure, carried out by all DEFENDANTS and DOES 2-20.

73.     Plaintiffs are informed and believe, and based thereon allege that despite the formation of purported corporate existence, DEFENDANTS and/or DOES 2-20 are in reality, one and the same Defendant, because of, but not limited to, the following reasons:

a.  DEFENDANTS are completely dominated and controlled by one another and DOES 2-20, who personally committed the frauds and violated the laws as set forth in this complaint, and who have hidden and currently hide behind DEFENDANTS to perpetrate frauds, circumvent statutes, or accomplish some other wrongful or inequitable purpose.

b.  DEFENDANTS and DOES 2-20, derive actual and significant monetary benefits by and through one another's unlawful conduct, and by using one another as the funding source for their own personal expenditures.

c.  DEFENDANTS and DOES 2-20, while really one and the same, were segregated to appear as though separate and distinct for purposes of perpetrating a fraud, circumventing a statute, or accomplishing some other wrongful or inequitable purpose.

d.  DEFENDANTS do not comply with all requisite corporate formalities to maintain a legal and separate corporate existence.

e.  The business affairs of DEFENDANTS and DOES 2-20 are, and at all times relevant were, so mixed and intermingled that the same cannot reasonably be segregated, and the same are in

inextricable confusion. DEFENDANTS are, and at all times relevant hereto were, used by DEFENDANTS, one and another, and DOES 2-20 as a mere shell and conduit for the conduct of certain of DEFENDANTS' affairs, and are, and were, the alter ego of DEFENDANTS, one and another and DOES 2-20.  The recognition of the separate existence of DEFENDANTS would not promote justice, in that it would permit DEFENDANTS to insulate themselves from liability to PLAINTIFFS for violations of the Labor and Government Codes and other statutory regulations. The corporate existence of any Corporate DEFENDANTS and DOES 2-20 should be disregarded in equity and for the ends of justice because such disregard is necessary to avoid fraud and injustice to PLAINTIFFS herein.

74.     Accordingly, DEFENDANTS constitute the alter ego of other DEFENDANTS, one and another, DOES 2-20, and the fiction of their separate corporate existence must be disregarded.

75.     As a result of the aforementioned facts, Plaintiffs are informed and believes, and based thereon alleges that DEFENDANTS and DOES 2-20 are joint employers by virtue of a joint enterprise, and that DEFENDANTS are employees of other DEFENDANTS and DOES 2-20.  DEFENDANTS performed services for each other to the mutual benefit of all DEFENDANTS who shared control, either directly or indirectly, of the manner in which DEFENDANTS' business was and is conducted.

## GENERAL ALLEGATIONS

76.     Upon information and belief, RELIANT is a conduit for getting rid of the least desirable viatical or life settlement in the business. DEFENDANTS take these "left over" viaticals and fractionalize and syndicate them which creates a higher load on the investment compared to lump sum purchase of a viatical or a lump sum purchase of multiple viaticals like Warren Buffett or Bill Gates does. Yet DEFENDANTS not only do not disclose this, but they actively equate their product to the viaticals that Warren Buffett and Bill Gates have purchased.  Defendants website and oral representations suggest that Warren Buffett and Bill Gates endorse this product. DEFENDANTS intentionally use the  fact that Warren Buffett and Bill Gates bought viaticals as a selling point to all Plaintiffs, in newsletters,  and on their website, making Plaintiffs think falsely that what RELIANT offers is equivalent to what Warrant Buffett and Bill Gates bought,  and that if it is good for Buffett and Gates, it is good for RELIANT investors. Buffett and Gates buy great quantities of viaticals without as

20

**COMPLAINT**

many middlemen and the load that RELIANT products carry. Buffett and Gates did not purchase fractionalized or syndicated viaticals like the kind RELIANT sold to these investors. Buffett and Gates bought true viaticals. What Plaintiffs were sold are life settlements fractionalized as a pool and syndicated. Examples where these kinds of investments lead to poor outcomes, including a string of failures are exemplified in the Oxford Financial and Pacific West Group programs, which is material information about this industry that was not disclosed to these investors. DEFENDANTS did not make a full, complete, fair, and balanced disclosure of its industry and portrayed it as all upsides. That is false and deceptive. Warren and Gates are portrayed in marketing materials as if they are sponsors for RELIANT, which they are not. This is a material deception that caused people to buy when they normally would not have had they been given full and complete disclosure of the material facts.

77.     RELIANT groups viaticals and puts them into a purported trust and then sells a fractional interest in another person's life insurance policy or an "insured's" death benefit. The investment value is based upon the life expectancy of the insured because the premium has to be paid each year. The premium is often more expensive the older the insured gets. This investment is not suitable for people approaching retirement, and especially those who are already retires if they are living on a modest or fixed income, as retirees often do. There is an ongoing obligation to pay a premium that may be burdensome to retirees, or their heirs. The RELIANT product has inherent problems that regular viaticals do not have because RELIANT pools and fractionalizes the viatical, it has overhead to carry and hold them, and RELIANT has to pay a salesperson which adds to the load to market the viatical. This load is not disclosed at least as far as how that impacts the rate of return compared to a standalone or large quantity viatical purchase.

78.     PLAINTIFFS have found the process to be oppressive for several reasons including the continuing and sometimes ever-increasing premiums that were never fully disclosed prior to PLAINTIFFS investing.

79.     PLAINTIFFS are bringing this suit to obtain PLAINTIFFS' money back plus damages. PLAINTIFFS were told that this was a guaranteed investment, but the investment is not guaranteed to vest until the insured dies. It does not vest if the premiums lapse, plus the return on investment can be diminished the longer the insured lives. Also, an insurance death benefit does not usually last beyond a

**COMPLAINT**

certain date, typically it lapses if the insured reaches 100 years old. This was not properly disclosed. The rate of return of past investments was not disclosed, and the creditworthiness of RELIANT or the companies behind the scenes supporting it were not disclosed. Also not disclosed were the companies and circumstances relating to investor buyouts. None of these risk factors were sufficiently communicated to PLAINTIFFS. All of these things were not properly explained. These things were misrepresented or concealed to PLAINTIFFS and would be material to any decision to invest.

80.    RELIANT and its enterprise used untrained and unqualified (or not adequately trained or supervised) salespeople who do not understand the product, did not understand securities law and the obligation to provide balanced information, and did not adequately endeavor to know one's customer before selling these RELIANT products. RELIANT salespeople were not bound (like FINRA salespersons) by the obligation to conduct business with high standards of commercial honor and just and equitable principles of trade. The salespersons would have been bound by the above concepts and securities rules and regulations had they been properly licensed as securities agents, and if they were licensed/registered brokers and operated through a broker dealer (which they should have been and were not). Instead, this was a renegade sales operation that violated securities law when selling these securities as was done here. Further, these sales were the result of salespeople who did not know or did not follow basic security rules, regulations, and ethical requirements. If this sales force was legitimately and properly trained and registered, these sales would not and could not be made. None of this was explained to PLAINTIFFS.

81.    RELIANT's program implies Warren Buffett and other prominent persons endorse or use its product. There is a picture of Warren Buffett on the RELIANT website and mention of Buffet on a RELIANT's radio advertisements referencing Warren Buffett in a way that causes investors to believe Warren Buffett endorses and or uses RELIANT's products or products like it. It is believed that this was put on RELIANT'S website without Warren Buffett's permission or consent and is deceptive for this reason further set for herein.

82.    RELIANT's website reads, "The flexibility of this account allows investors to withdraw their money any time without a penalty." This caused Plaintiffs to invest when they otherwise would not. Customers and Plaintiffs were led to believe that they could get their money back. This is not true.

**COMPLAINT**

83.     This product is touted as the "best kept secret in Wall Street." Reliant' s website also contains a picture of Warren Buffett.  However, this product is cloaked with secrecy and sold as if premiums and transfer at death are not issues, however these are major issues of material facts that were not properly communicated or explained.

84.     DEFENDANTS failed to give all necessary, relevant, and material information about this product necessary for a reasonable investor to properly evaluate this investment  including providing 1) overall rate of return historically, 2) the percentage of time RELIANT estimated the life expectancy (reserves) correctly, 3) the average age of death of an insured historically, 4) the number of these investments that have gone full circle, 5) the number of repeat customers, 6) the number and percentage of people and all their investment that made money, 7) the load on the investment, 8) the number of persons that put money in a RELIANT program or the fact that people did invest and took losses to get out of the program. DEFENDANTS failed to provide basic statistics and information regarding the insureds living beyond the premium reserve, or how RELIANT projects life expectancies as less than the social security life expectancy to create the false impression that the investment is better than it is. Again, DEFENDANTS failed to provide information as to how many insureds exceeded RELIANT's disclosed life expectancy, which is a basic fact any investor needs to know before investing in these products. DEFENDANTS failed to disclose how many investors dropped out, forfeited, or had to suffer a restructuring of their investment due to premium requirements. Defendants did not tell Plaintiffs that RELIANT acquired abandoned insurance policies that are not taken by higher end investors or that they acquire insurance policies in less than appropriate circumstances. Investors are not told that fractional share programs, is an aberration and not allowed in many other states.

85.     RELIANT is ingenuine and manipulative when it comes to posting references and ratings about itself. It uses a service to rid itself of negative but important information that should be in the public domain or be accessible to future investors.

86.     RELIANT falsely claims it does better than Wall Street without statistics to back that up. RELIANT sells viaticals, life settlements, or Fractional Shares to consumers through an advertising program designed to lure in persons without regard to their knowledge and sophistication about viatical

or life settlements and fractional and syndicated interests and without presenting a fair and balanced picture of this investment.

87.     Most RELIANT investors are elderly or approaching retirement and are encouraged to use retirement monies to invest in RELIANT products.  This results in a loss of liquidity, which is not in a customers' best interest nor is it suitable for retirement. The product RELIANT offers is not suitable to anyone and certainly not these PLAINTIFFS.

88.     RELIANT wrongfully encouraged PLAINTIFFS to use their IRA or 401k protected money to buy these products. This is inappropriate and negligent and violative of security laws. It violates the principle requiring a seller of securities to know their customer and to observe just and equitable principles of trade.

89.     Comparing these investments with shares of a stock in a publicly traded company is erroneous and deceptive. Yet this is done on Reliant' s website and in numerous radio and other marketing endeavors. RELIANT is also acknowledging that it engages in the sale of securities as stock in a publicly traded company, a clear reason why a security needs significant regulation.

90.     Most PLAINTIFFS were influenced to invest after hearing several RELIANT radio advertisements, many played on a Christian radio station. PLAINTIFFS assumed that hearing the advertisement on the Christian radio station meant that the station had vetted and endorsed RELIANT. RELIANT played that up to their benefit in a way that was deceptive. These commercials are false, misleading, and deceptive under all the circumstances.

91.     The RELIANT investment program fails to meet all of the provisions of the Corporate Code §25102(q) and other provisions of California law. Because of that, they cannot claim an exemption.  In violation of registration and qualification laws of the State of California, as DEFENDANTS wrongfully claim, an exemption for all syndication which is contrary to law and practice.

92.     Corporate Code §25102(q)(F) requires that the issuer adequately describe the issue and fully disclose the directors, officers, partners, members, or trustees of the issuer.  This was not done. It is also believed that the failure to disclose SCOTT GRADY'S disbarment violates security provisions of full disclosure and the requirement of full and balanced disclosure.

93.     Corporate Code §25102(q)(3)(E) requires that if the issuer retains ownership or becomes the beneficiary of the insurance policy, the following must be obtained: an audit report of an independent certified public accountant together with a balance sheet and related statements of income, retained earnings, cashflow sheets that reflect the issuer's financial position, the documents that show the results of the issuer's operations, and the issuer's cashflows as of a date within 15 months before the date of the initial issuance of the securities. This was not done even though RELIANT or its personnel and or agents (vendors) took over policies and effectively became owners or arranged for others to do it with improper and undisclosed kick back arrangements. RELIANT or associated persons or entities constructively acted as owners of the insurance policies and/or controlled them tantamount to owners.

94.     Corporate Code §25102(q)(3)(Q) requires that Defendants provide the names, addresses, telephone numbers of the persons who will be insurance policy owners and/or the persons who will be responsible for the premiums. Defendants failed to provide this. RELIANT has interfered with investors' ability to obtain information from each other, advocate for themselves, organize, and have access to their rights available by law.

95.     RELIANT also violated the provisions of Corporate Code §25102(q)(3)(O) which requires that the insurance policy premiums and terms of premium payments be disclosed. They were not adequately disclosed, or were disclosed in a fashion that was misleading, inaccurate, sloppy, or dishonest.

96.     Corporate Code §25102(q)(3)(L) requires that Defendants advise investors of the rate of increased premiums as the insureds become older.  This was not disclosed or adequately addressed and constitutes misrepresentation and deception. This also violates Corporate Code §25102(q)(U) because the commissioner requires full disclosure. The omission of these material facts becomes a form of deceit and violated the suitability requirement and the requirement that the investment be in the best of PLAINTIFFS.

97.     Upon information and belief, several investors were told that RELIANT does not check the net worth of its investors. Corporate Code §25102(q)(1) requires that the sales of securities should be made only to qualified purchasers, and that the issuer must make a reasonable inquiry as to qualifications of the purchaser, including net worth, and the percentage of net worth these investments

would constitute to their total net worth. RELIANT in doing the above has failed to properly qualify purchasers to the program, which is reflective of RELIANT'S failure to comply with securities laws or "knowing one's customer." A failure to follow the above makes the whole program vulnerable to failure and deceit on all investors.

98.     Upon information and belief, Defendants failed to take reasonable steps to verify if PLAINTIFFS were qualified purchasers and or had knowledge and experience in financial and business matters and that PLAINTIFFS were capable of evaluating the merits and risks of the prospective investment. Also, DEFENDANTS did not verify whether or not PLAINTIFFS had a large enough portfolio so that PLAINTIFFS' total investments in these policies did not exceed 10% of their portfolio. It is alleged upon information and belief that RELIANT allowed people to invest who were not accredited or made purchases of these investments which constituted more than 10% of their net worth.

99.     DEFENDANTS failed to have appropriate backup plans if and when certain investors failed to make premiums. If they had a backup plan, it needed to be disclosed but it was not. The plan also involved a conflict of interest to the extent that it allowed RELIANT associates or affiliates to profit when an investor quits the program. It also makes the entire program vulnerable when investors leave; it means someone has to cover that person's premium. How this was to be handled when an investor fails to pay premiums or drops out or dies was not disclosed as it is a material fact that all investors need to know because it affects the viability and saying power of the program.

100.     It is further believed that the whole method of selling these investments was brought about by Defendants acting as brokers or broker dealers without licenses or registration and without proper authority to act as broker dealers or agents of broker dealers under the law and regulations governing securities. That is illegal and grounds for disgorgement and other remedies asserted herein. Whether licensed or not, the salesmen (Defendants) were employing tactics to misrepresent these investments as more legitimate and profitable than they truly were in order to make a sale. They did not disclose the full dark side of this industry and deceit that pervades it. The sales were based on taking advantage of insureds' desperate situation by a player who takes a lot of the profit themselves before either in the acquisition of the policy, set-up, and syndication of it.

101.    Upon information and belief, various investors were excused from having to pay premiums while other investors were not excused. This is not disclosed, and it creates inequality among investors in the program. It creates a conflict of interest, and it is an unpredictable arrangement used at the whim of the promoter as a manipulation device.

102.    PLAINTIFFS were induced into this program by manipulated reviews that did not represent a true status of the RELIANT situation. This is an additional deception where DEFENDANTS used deceptive reviews wrongfully. It was deceit to manipulate these reviews.

103.    The sale of this product violates securities laws that require full disclosure. Full disclosure cannot be given or was not given because the name of the insureds were not given to protect the identity of the insured. In addition, DEFENDANTS used this as an excuse not to give out insured medical records. This is per se a violation of security laws which requires full disclosure. By withholding names of the insured like RELIANT did, the most material fact, the name of the insured, is not disclosed that violates the first principal of securities law; full disclosure.

104.    DEFENDANTS further misrepresented that this investment is state and federal tax exempt, which it is not.

105.    DEFENDANTS used improper general solicitation and marketing and misleading advertising to sell these investments to PLAINTIFFS. This involved meeting investors personally to make sales at restaurants, in their homes, and other places in violation of personal solicitation roles.

106.    DEFENDANTS' prior model of selling viatical life policies consisted of selling one policy to one group at a time. To make themselves less obligated to group participation, DEFENDANTS moved away from that model, and in these investments, they sold each person an interest in multiple policies, like a package of fractionalized interests in several policies. The previous model allowed investors to know each other, to band together and communicate. The present model used in these investments make it almost impossible or difficult for any investor to interact with other investors to advocate together. This new arrangement allows RELIANT to keep investors in the dark as far as investors knowing and contacting each other. This violates security laws which requires full disclosure and the right of investors to organize, participate and advocate for each other. In a publicly traded stock company, a shareholder can vote out management to change things and/or to improve events and

27

**COMPLAINT**

outcomes. This program was intentionally designed to prevent any power and information to leak to investors, the PLAINTIFFS herein.

107.   This investment hails from a tortured history where dishonesty is part of its culture. This is depicted in the attached declaration of Gloria Wolk that was available to Reliant from previous litigation. See Exhibit A all the allegations of which are incorporated by reference as though fully set forth hereat.   RELIANT and DEFENDANTS had a duty to disclose all material facts. Without disclosing the information contained in Wolk's declaration, RELIANT's self-serving version of its products is not fair and balanced nor is it in compliance with securities law. RELIANT also was involved in a series of litigation involving American General Insurance Policy PSH 20052L, which it did not disclose to these investors, which was a material concealment. Failure to fully disclose all material facts that investors needed to know constitutes intentional negligence or grossly negligent concealment of material facts.

108.   RELIANT and its associated Defendant and persons and entities have gone to great lengths and are still going to great lengths by hiring a reputational improvement company to scrub or make information about RELIANT and investor experiences unavailable to the public.  This is contrary to what is required, which is full and balanced disclosure where the investors have access to all facts. In fact, negative reviews are deemed negative for sales. This is an anathema to what should be allowed and is an indicator of purposeful intent by RELIANT and other Defendant associated persons and entities alleged herein to deceive and manipulate this investment by controlling information available.

109.   On October 10, 2016, PLAINTIFF INVESTOR PAUL BUGLER was sold five policies.

110.   PLAINTIFF INVESTOR PAUL BUGLER was influenced, in addition to the allegations above, as well as the allegations in this Complaint, to invest by being told that RELIANT's investments were not correlated to the stock market. PLAINTIFF BUGLER was led to believe that an investment in RELIANT's product would be a way to diversify his investment portfolio. But the investment arranged by RELIANT had issues that were not explained as described above. This PLAINTIFF INVESTOR PAUL BUGLER (as well as the other PLAINTIFFS herein) was led to believe that this RELIANT investment had less risk than the stock market. This turned out not to be true and his investment in RELIANT left him undiversified.

**COMPLAINT**

111.    This PLAINTIFF (as well as the other PLAINTIFFS) was influenced by the rate of return that RELIANT promised, but this rate turned out to be a misrepresentation of a material fact and not true.

112.    Reputable securities salespeople and securities professionals would not sell these investments to PLAINTIFFS.

113.    PLAINTIFFS put DEFENDANTS to their proof to prove that RELIANT is a legitimate organization, that RELIANT actually has life insurance policies behind these investments and that life insurance policies are not being manipulated by RELIANT in conjunction with the life settlement industry. PLAINTIFFS find it hard to believe that so many investors can be carrying investments for years, where so many insured have lived longer than what was represented or projected.  PLAINTIFFS find it hard to believe that the projected reserves have not been manipulated by RELIANT and associated persons and entities. In the alternative, it is negligence to set reserves determining the life expectancy (or creating the impression) that there is a shorter life expectancy than what is reasonable. This is alleged to be a fraud, or else another aspect of negligence in creating a false message and not knowing and describing one's product honestly.

114.    PLAINTIFFS were influenced to invest by hearing that RELIANT's investments were not correlated to the stock market, so PLAINTIFFS were led to believe that an investment in RELIANT's product would be a way to diversify their investment portfolio. But the investment arranged by RELIANT had its own diversity issues and problems that were not explained and properly disclosed.

115.    DEFENDANTS failed to disclose in a more transparent and prominent manner that if premiums were not continually paid, that PLAINTIFFS could lose their entire investment, which is not synonymous with the advertised representation that allows PLAINTIFFS to get their money back at any time. This exemplifies RELIANT's policy and those associated with it that allows it to portray it in the way most helpful to sell rather than in a consistently fair, balanced, and honest way. This is fraud, deceit, and violation of securities law.

116.    DEFENDANTS misrepresented that this investment would have little to no risk as the insured would eventually pass away and the policy would pay off. DEFENDANTS stated that there would be little to no risk of the investor not receiving a return on their investment, it would only be a

29

**COMPLAINT**

matter of when. PLAINTIFFS reasonably relied on this misrepresentation, not realizing that the premium payments would escalate prohibitively.  This was not adequately disclosed or explained to PLAINTIFFS, in fact the exact opposite was told to PLAINTIFFS, that very rarely are premiums needed beyond the prepaid reserves.

117.   DEFENDANTS allowed PLAINTIFFS to invest in several policies. PLAINTIFFS were influenced by the fact that RELIANT allowed them to invest in several different polices of different insured to spread out risk and chance for return on investments. This diversification did not substantially lower the risk of the investment.

118.   PLAINTIFF INVESTOR PAUL BUGLER originally purchased $50,000 of viatical life settlement investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled or allowed him and the other investors to be swindled.

119.   INVESTOR PAUL BUGLER should never have been sold this or any RELIANT investment. DAVID UNDERWOOD sold INVESTOR PAUL BUGLER this investment under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

120.   PLAINTIFF PAUL BUGLER was 49 years old when he first invested in RELIANT in 2016.

121.   PLAINTIFF INVESTOR WALTER BUGLER originally purchased $50,000 of viatical life settlement investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR WALTER BUGLER.

122.   INVESTOR WALTER BUGLER should never have been sold this or any RELIANT investment. DAVID UNDERWOOD sold INVESTOR WALTER BUGLER this investment under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

123.   PLAINTIFF WALTER BUGLER was 50 years old when he first invested in RELIANT in 2016.

124.   INVESTOR WALTER BUGLER invested in 5 policies.

125.   In 2020, PLAINTIFF INVESTORS ED BAEZA and CONCEPCION BAEZA were sold fourteen policies by LARRY TUPLER.

**COMPLAINT**

126.    PLAINTIFFS INVESTORS ED BAEZA and CONCEPCION BAEZA were 67 and 61 years old respectively when they first invested in 2020.

127.    <u>PLAINTIFF INVESTORS ED BAEZA and CONCEPCION BAEZA originally purchased $982,138 of viatical life settlement investments through</u> DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTORS ED BAEZA and CONCEPCION BAEZA.

128.    INVESTORS ED BAEZA and CONCEPCION BAEZA should never have been sold this or any RELIANT investment. LARRY. TUPLER sold INVESTORS ED BAEZA and CONCEPCION BAEZA this investment under the auspices of SCOTT GRADY, VINCENT BOVINO, JOEL KLIENFELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST and others.

129.    INVESTORS ED BAEZA and CONCEPCION BAEZA invested in approximately policies.

130.    <u>PLAINTIFF INVESTOR JAMES CIRILE originally purchased $40,000 of viatical life settlement investments through DEFENDANTS.</u> DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR JAMES CIRILE.

131.    INVESTOR JAMES CIRILE should never have been sold this or any RELIANT investment. MARK SANSOUCY and BRENT BORCHERT sold INVESTOR JAMES CIRILE this investment under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST. On further examination, the contract as against CIRILE was unsigned so it is invalid and justifies return of his money back.

132.    INVESTOR JAMES CIRILE invested into policies.

133.    PLAINTIFF JAMES CIRILE was 47 years old when he first invested in RELIANT in 2013

134.    In 2017, PLAINTIFF INVESTOR NATHAN COLEMAN was sold six policies by LARRY TUPLER and PAUL ROY acting under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

135.    PLAINTIFF INVESTOR NATHAN COLEMAN should never have been sold this or any RELIANT investment.

136.    INVESTOR NATHAN COLEMAN invested in 6 policies.

**COMPLAINT**

137.   PLAINTIFF COLEMAN was 57 years old when he invested in RELIANT in 2017.

138.   PLAINTIFF INVESTOR NATHAN COLEMAN originally purchased $60,000 of viatical life settlement investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR NATHAN COLEMAN.

139.   In 2018, PLAINTIFF INVESTOR GENE GOLDEN was sold eleven policies by LARRY TUPLER under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

140.   INVESTOR GENE GOLDEN should never have been sold this or any RELIANT investment.

141.   INVESTOR GENE GOLDEN invested and 11 policies.

142.   PLAINTIFF GOLDEN was 69 years old when he invested in RELIANT in 2018.

143.   DEFENDANTS represented that this investment was beneficial for retirement accounts, which at that time PLAINTIFF GOLDEN had to liquidate from his American Standard IRA account to invest in RELIANT'S product. Recommending and allowing this was improvident or at least negligent on the part of RELIANT and associate persons and entities.

144.   PLAINTIFF GOLDEN was influenced by RELIANT salesperson LARRY TUPLER who stated several times that the investments were so sound and predictable that premium calls were very rare. This turned out not to be true. LARRY TUPLER also assured PLAINTIFF GOLDEN that if there were premiums due, the premiums would only amount to a few hundred dollars per year

145.   RELIANT salesperson LARRY TUPLER guaranteed PLAINTIFF GOLDEN that there was a theoretical risk that the policies PLAINTIFF invested in would extend beyond the reserve date, but it would actually never happen. However, there have been premium "calls" for more money since the reserves have run out in most of the insurance policies in this matter. This was a serious misrepresentation of material fact.

146.   PLAINTIFF was influenced to invest by RELIANT's Agent LARRY TUPLER who assured him that the investments always pay out. As it has later turned out, no Plaintiff has actually gotten paid out and almost all are continuing to get premium calls. It is believed that it is a misrepresentation or a

deceit to say there is a guaranteed fixed rate of return when there is a possibility investor will pay out more than they will receive from this investment.

147.    Defendant MARK SANSOUCY was also present for several of the discussions and he facilitated or assisted and was aware of the bad sales tactics.

148.    All of the salespersons on this matter were under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

149.    <u>PLAINTIFF INVESTOR GENE GOLDEN originally purchased $103,000 of viatical life settlement investments through DEFENDANTS.</u> DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR GENE GOLDEN.

150.    In 2016, PLAINTIFFS INVESTORS JOSEPH GOODALE and RACHEL GILA were sold two policies by LARRY TUPLER.

151.    INVESTORS JOSEPH GOODALE and RACHEL GILA should never have been sold this or any RELIANT investment.

152.    INVESTORS JOSEPH GOODALE and RACHEL GILA invested into policies.

153.    PLAINTIFFS GOODALE and RACHEL GILA invested in RELIANT in 2016.

154.    PLAINTIFFS were pressured and harassed by Defendant LARRY TUPLER. They were coerced into investing in RELIANT. Defendant LARRY TUPLER even guaranteed PLAINTIFFS that insureds usually die in the first 2 years of their policies and the return of this investment is guaranteed. This is another example how RELIANT's people manipulate the truth or say favorable things whether they are true or not.

155.    <u>PLAINTIFFS INVESTORS JOSEPH GOODALE and RACHEL GILA originally purchased $30,000 of viatical life investments through</u> DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTORS JOSEPH GOODALE and RACHEL GILA. LARRY TUPLER was acting under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

156.    In 2015, PLAINTIFF INVESTOR TRUDY BELINDA JOHNSON was sold four policies by SHAWN DAVENPORT, who was acting under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

**COMPLAINT**

157.    INVESTOR TRUDY BELINDA JHNSON should never have been sold this or any RELIANT investment.

158.    INVESTOR TRUDY BELINDA JOHNSON invested in 4 policies.

159.    PLAINTIFF JOHNSON was 53 years old when she first invested in RELIANT in 2015.

160.    PLAINTIFF INVESTOR TRUDY BELINDA JOHNSON originally purchased $38,000 of viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR TRUDY BELINDA JOHNSON.

161.    In 2016, PLAINTIFF INVESTOR CHARLES LAWRENCE was sold five policies by LARRY TUPLER under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

162.    INVESTOR CHARLES LAWRENCE should never have been sold this or any RELIANT investment.

163.    INVESTOR CHARLES LAWRENCE invested in 5 policies.

164.    PLAINTIFF LAWRENCE was 59 years old when he first invested in RELIANT in 2016. When PLAINTIFF LAWRENCE's company closed its 401K program, PLAINTIFF LAWRENCE needed to find a safe place to roll his 401K, consisting of $249,000. TUPLER and others from RELIANT assured PLAINTIFF LAWRENCE that the investment was safe and authorized by the State of California as appropriate for retirement funds, and that there was minimal risk.   All of PLAINTIFF LAWRENCE's 401K consisting of $249,000 was rolled over and invested in RELIANT.

165.    DEFENDANTS represented that this investment was beneficial for retirement accounts. PLAINTIFF reasonably relied on this representation but was not aware that the premiums would be continually escalating and difficult to pay on a fixed retirement income. PLAINTIFF was forced to postpone his retirement because of the lack of performance of these investment products.

166.    DEFENDANTS misrepresented that this investment would have little to no risk as the insured would eventually pass away and the policy would pay off. DEFENDANTS stated that there would be little to no risk of the investor not receiving a return on their investment, it would only be a matter of when. This PLAINTIFF (as well as all PLAINTIFFS) reasonably relied on this misrepresentation, not realizing that the premium payments would escalate in a way that could take any

34

**COMPLAINT**

profit from the investment. If there is not profit, then the concept behind this investment makes no sense, which makes this investment a deception.

167.   PLAINTIFF was further influenced by the fact that the investment qualified for use of 401K money. That gave PLAINTIFF a false sense of security. He was wrongly encouraged to use this account, a non-compatible retirement investment that is against prudent investment advice and the law.

168.   PLAINTIFF INVESTOR CHARLES LAWRENCE originally purchased $249,400 of viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR CHARLES LAWRENCE.

169.   In 2015, PLAINTIFF INVESTOR ORSON K. LEONG was sold four policies by PAUL ROY who was operating under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

170.   INVESTOR ORSON K. LEONG should never have been sold this or any RELIANT investment.

171.   ORSON K. LEONG was 60 years old when he first invested in RELIANT in 2015.

172.   PLAINTIFF was influenced by DEFENDANTS DAVID UNDERWOOD and PAUL ROY to invest in this scheme and claimed that these policies have a 90% statistical chance of paying within the time before the reserves ran out.

173.   PLAINTIFF INVESTOR ORSON K. LEONG originally purchased $80,000 of viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR ORSON K. LEONG.

174.   In 2016, PLAINTIFF INVESTOR PETER J. LOWE was sold five policies by LARRY TUPPLER who was operating under the auspices of SCOTT GRADY, JOEL KLIENFELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

175.   INVESTOR PETER J. LOWE should never have been sold this or any RELIANT investment.

176.   PETER J. LOWE was 79 years old when he first invested in RELIANT in 2016.

177.   PLAINTIFF was influenced by DEFENDANT LARRY TUPPLER to invest in this scheme and claimed that these policies have a 90% statistical chance of paying within the time before the reserves ran out.

178.   PLAINTIFF INVESTOR PETER J. LOWE originally purchased $100,000 in five viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR PETER J. LOWE.

179.   Between 2014 and 2015, PLAINTIFFS INVESTORS MARK THORSELL and BARBARA THORSELL were sold four policies by DAVID UNDERWOOD who was acting under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

180.   INVESTORS MARK THORSELL and BARBARA THORSELL should never have been sold this or any RELIANT investment.

181.   INVESTORS BARBARA THORSELL and MARK THORSELL but 4 policies.

182.   PLAINTIFFS BARBARA THORSELL and MARK THORSELL first invested in RELIANT in 2014.

183.   PLAINTIFFS INVESTORS MARK THORSELL and BARBARA THORSELL originally purchased a total of $60,000 of viatical life investments through DEFENDANTS. PLAINTIFF INVESTOR MARK THORSELL invested $40,000 while PLAINTIFF INVESTOR BARBARA THORSELL invested $20,000. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTORS MARK THORSELL and BARBARA THORSELL.

184.   In 2016, PLAINTIFF INVESTOR CLIFFORD RITZ was sold five policies by LARRY BAGBY who was acting under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

185.   INVESTOR CLIFFORD RITZ should never have been sold this or any RELIANT investment.

186.   INVESTOR CLIFFORD RITZ but 5 policies.

187.   PLAINTIFF RITZ was 55 years old when he first invested in RELIANT in 2016.

**COMPLAINT**

188.     PLAINTIFF INVESTOR CLIFFORD RITZ originally purchased $100,000 of viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR CLIFFORD RITZ out of PLAINTIFF's money.

189.     In October of 2015, PLAINTIFF INVESTOR STEVEN C. ROEMER was sold four policies.

190.     INVESTOR STEVEN C. ROEMER should never have been sold this or any RELIANT investment by DAVID UNDERWOOD who was acting under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

191.     INVESTOR STEVEN C. ROEMER 4 policies.

192.     PLAINTIFF ROEMER was 59 years old when he first invested in RELIANT in 2015.

193.     PLAINTIFF was influenced by Defendant DAVID UNDERWOOD by stating that he himself invested in RELIANT and assured PLAINTIFF that the policies were almost certain to mature within 4 to 5 years.

194.     Defendant DAVID UNDERWOOD had assured PLAINTIFF that premium calls are highly improbable to happen and further claimed that in his seven years with RELIANT, Defendant DAVID UNDERWOOD only experienced 2 premium calls upon information that this is not true and deceptive.

195.     DEFENDANTS failed to disclose in a more forceful and prominent manner that if premiums were not continually paid, that PLAINTIFF could lose their entire investment.

196.     PLAINTIFF INVESTOR STEVEN C. ROEMER originally purchased $130,000 of viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR STEVEN C. ROEMER.

197.     Between 2016 and 2019, INVESTOR GREGORY SCHMITT was sold five policies by DAVID UNDERWOOD who was acting under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

198.     INVESTOR GREGORY SCHMITT should never have been sold this or any RELIANT investment.

199.     INVESTOR GREGORY SCHMITT bought 5 policies.

200.     PLAINTIFF SCHMITT was 49 years old when he first invested in RELIANT in 2016.

201.    PLAINTIFF was influenced by Defendant DAVID UNDERWOOD to invest in these policies after being assured that these investments were very low risk with a guaranteed 12% return upon information that this is not true.

202.    PLAINTIFF INVESTOR GREGORY SCHMITT originally purchased $100,000 of viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR GREGORY SCHMITT.

203.    In 2016, PLAINTIFF INVESTOR JOHN STOCKSDALE was sold five policies by DAVID UNDERWOOD who was acting under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

204.    INVESTOR JOHN STOCKSDALE should never have been sold this or any RELIANT investment.

205.    INVESTOR JOHN STOCKSDALE but 5 policies.

206.    PLAINTIFF STOCKSDALE was 68 years old when he invested in RELIANT in 2016.

207.    PLAINTIFF was influenced to invest after hearing several RELIANT radio advertisements played on the San Francisco Giants radio station. PLAINTIFF assumed that hearing the advertisement on the radio station meant that the station had vetted and endorsed RELIANT.

208.    DEFENDANTS told PLAINTIFF STOCKSDALE that premium payments would be between $300 to $500 per year. This was misleading, as premiums on a $12,000 investment have been as high as $2300 per year.

209.    PLAINTIFF INVESTOR JOHN STOCKSDALE originally purchased $60,000 of viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR JOHN STOCKSDALE.

210.    In 2016, PLAINTIFF INVESTOR JENNIFER VANCE was sold three policies by DAVID UNDERWOOD.

211.    INVESTOR JENNIFER VANCE should never have been sold this or any RELIANT investment.

212.    INVESTOR JENNIFER VANCE bought 3 policies.

213.    PLAINTIFF VANCE was 55 years old when she first invested in RELIANT in 2016.

38

**COMPLAINT**

214.    <u>PLAINTIFF INVESTOR JENNIFER VANCE originally purchased $30,000 of viatical life investments</u> through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR JENNIFER VANCE.

215.    This investment does not represent a viable retail investment by any of the above.

216.    When dealing with an unethical sales force like this one, with no training, guidelines, standards, supervision, policy and procedures and all other factors alleged, it is easy to make sales, but it is unfair. That is what happened here. It is alleged that the participating DEFENDANTS are responsible for this. Without the above training, guidelines, standards, supervision, policy and procedures, DEFENDANTS were able to represent and promise anything whether completely true or not. That is what happened here to all these PLAINTIFFS. RELIANT and associated person or entities were able to slant things in an untruthful manner, which is what was done here in all of the above areas but especially suggesting that these viaticals covered the life of someone who is terminally ill or in that category of very poor health. As it turns out, the people making up the insureds in this investment were relatively healthy but, by ingenuously using medical records, DEFENDANTS were able to make an insured appear close to their death, but the life expectancies used to project premium reserves in these policies are far less than the social security life expectancy that it bespeaks of fraud, deceit, manipulation, or negligence.

217.    It is alleged upon information and belief that this investment, in the way it was procured and sold, has Ponzi-like characteristics, and is tantamount to a criminal enterprise.

218.    Even if this investment can be suitable and defendable as a viable investment product, DEFENDANTS did not make sure the above-mentioned PLAINTIFFS did not overconcentrate PLAINTIFF'S portfolio with RELIANT products. Along these lines, when purchasing this product, DEFENDANTS needed to assure that investors set aside monies or have other investments sufficient to cover premiums comfortably. DEFENDANTS did not do this, which is part of their negligence or fraud alleged herein.

219.    Civil Code §1770(a)(19) prohibits inserting an unconscionable provision in the contract. Many unconscionable provisions are covered in this compliant in detail.

**COMPLAINT**

220.    Civil Code §1770(a)(26) prohibits advertising, offering for sale, or selling a financial product that is illegal under state or federal law.

221.    For all the reasons set forth in this complaint including the fact that this financial product is not registered under state and federal law and does not have an exemption from registration.  This makes it illegal, which further supports the fact that the salesforce selling a security without a SEC license or registration makes this financial product illegal. Even if the stock can be exempt from registration, it is still illegal if it violates the anti-fraud provisions under securities laws. There have been plenty of allegations above of violations of the anti-fraud provisions making the financial product illegal. To avoid the anti-fraud provisions in the sale of securities requires full disclosure. Going around and hiding facts that are important to investors are not permitted, yet that is exactly what Defendants did. They scrubbed negative ratings from the internet so that when people looked online, they could not get the real facts. Plus, a lot of facts as outlined in the Gloria Wolk declaration, was known to Defendants but none of that is portrayed on their website, making their story one-sided, unfair, and unbalanced. This is a violation of the anti-fraud provision.

222.    Plaintiffs sent key Defendants via certified mail on July 19, 2022, a letter notice giving them the required 30 days to correct, repair or rescind, and/or do any of what is allowed or required by California Civil Code §1770 et seq.  Defendants have not done anything to respond.  Defendants still have the chance to make good as Plaintiffs will give any Defendant served herewith 30 days from the date this complaint is served upon them to comply with California Civil Code §1770 et seq.  Assuming Defendants do not comply, Plaintiffs are therefore entitled to the damages and remedies set forth in California Civil Code § 1780 and related sections, against all Defendants.

223.    The activities described above are the backbone of a fraudulent enterprise that has been fostering fraud for about a decade. Although not the first criminal  type activity, the enterprise, including Grady, Borchert, Murphy Kleinfeld, and successors, preyed on investors and have taken money from investors or put them in bad investments for years. In the alternative, it is alleged upon information and belief that Defendants have squandered investor money on investments that make more sense for Defendants than investors and it is alleged, upon information and belief , that this  fraudulent enterprise includes a procurement process that includes fraud , on its own, in acquiring policies for

40

**COMPLAINT**

these investments that are later sold in the fractional interest program that these Plaintiffs are part of. This allows Defendants to cherry pick policies and send the better policies elsewhere rather than into the kind of fractional interest investments that became part of this program.   What happens is Plaintiff/ investors only get the left-over policies and policies Defendants manipulated for their advantage to the disadvantage of these Plaintiff defendants.   They also tapped into these policies; policies that were supposed to be set aside for investors.   All this is fraud, abuse of trust and tantamount to theft and conversion.    There has been at least many occasions where this happened already. One was the taking of the Duffy policy, which became the subject of a court case in L.A. Superior Court. In a statement of decision, Judge Frank Johnson said, "The sale of the Duffy policy was also accompanied by an attempt to withhold hundreds of thousands of dollars in the form of continued legal bills or used investor money as a set aside fund for future legal defense, none of which was warranted or allowed under the trust or purchase agreement and was tantamount to an outright theft." See statement of decision in the case known as Reliant Life Shares, LLC vs. Brad Lawrence (hereinafter referred to as the Duffy case), Court file number LC098847, Superior Court State of California, County of LA (consolidated with other cases). As a result of that case and the prosecution of a case by the Securities and Exchange Commission (SEC) against Andrew Calhoun and Pacific West Capital Group, (US Dist. Ct of the Central District of California, (case 2:15:-cv-02563(FMO) (FFM) Defendants tried  to develop  a legally compliant program, but Defendants culture was so warped that it fails on many fronts which are the subject of the following causes of action, primary of (all incorporated into all causes of action)  is the failure of Defendants to present a balanced product, which is a basic mandate of those that sell securities and which Defendants to not abide by precisely because there is no  appropriate over sight either by themselves of the sales force, a requirement of securities law, or because they claim to be able to operate unregistered and unlicensed except for the insurance license which is not a security license, and it is alleged does not allow defendants even those with this license to operate as full on securities sales organization of life settlement products.

224.    The new model created did attempt to make it harder for investors to contact each other and to organize for their own good.  This was done by no longer putting the same investors into the same policies but placing investors in many different policies with different investors (which makes each

41

**COMPLAINT**

investors interest unique and not as unified as before).   Plaintiffs in this case, are in multiple polices and do not know each other except by extraordinary efforts that happened to allow these Plaintiffs to come together for this suit. This makes it harder for investors to organize and file a joint lawsuit based on one policy that may have been wrongfully manipulated by Defendants.  .This is also a violation of required in securities which requires complete transparency.    Now,  the way this matter is now set up, it takes many investors dealing with many different policies to obtain Defendants' attention and it makes it harder and more laborious to check many policies when no one investor shares the same mix of policies with any other investor. This is part of the plan of deception which is the hallmark of defendants' conspiracy or enterprise.

225.    It is alleged on information and belief that this is the state this investment was in when it was sold to Gerald Frank.  Exhibit 26 exemplifies and what happened in the case of Gerald Frank. Frank invested about $40,000, one in a series trust known as Trust MW8350, Account CH145206-0, and Policy number VF51798350, which closed on or about May 12, 2015. This case (called the Frank case) along with the Duffy, above mentioned are examples that show the Reliant Defendants have been engaged in a continuity of deceptive practices over time.

226.    Frank effectively invested approximately $40,000 and lost it all to the enterprise or these Defendants were based upon false pretenses. For proof that he was criminally swindled, see Exhibit 25, which is a letter to Andrew Murphy of the Reliant organization and/or enterprise where he is realizing he was deceived and cheated and Mark Sansoucy is further defrauding him or depriving him when it comes to the premium issue.

227.    Since the Duffy and Frank matters, the Reliant Defendant enterprise was on notice that it obligated people to premiums especially the elderly that were not handling it well. This should have been a red flag that needed to be fully disclosed, rectified, or not sold to others as unsuitable even with a full explanation if just is right.   Unfortunately, the enterprise was okay with a minimal disclosure in writing but allowing salesperson to represent it was assessable when it was not without a penalty as described by one the Plaintiffs as set forth in Exhibit 27 which arose out of a sale in 2016.   This  did not deter the Reliant Defendants but they only doubled down.   Complaints continue to mount from investors as noted in Exhibit 26, yet the Reliant Defendants continue their course.   By 2020, one would

42

**COMPLAINT**

think they had gotten the message and clamped down on misinformation about an investor being able to cash in or cancel or get out of the plans with money back.  That is not the case as shown in Exhibit 16, a letter from Ed Baeza to the California Department of Financial Protection and Innovation.   Ed Baeza and his wife and or their business/trust(s) invested about a $1,000,000 in Defendants fractional life settlement in many policies.   Mr. Baeza outlined in this letter how the Reliant Defendants had told him basically, that (paraphrased) he could " evacuate" or "cancel" at any time and get his money back plus principal.   Similar stories and or other irregularities and deceptions can be found in the cases of Raymond E. Douglass, Ed Baeza, Paul Bugler, James Cirile, Gene Golden, Joseph Goodale, Rachel Gila, Trudy Johnson, Charles Lawrence, Orson Leong, Barbara Thorsell, and many more. All were utilized by the Reliant Defendant enterprise to sell investments under false pretenses to innocent people. These investments were not suitable, did not pay out as promised, saddled investors with nebulous premiums, and not fully explained. The results were that investors were cheated and continue to be cheated each day by suggesting there is a buyout but presenting one with penalties. The most recent was presented to them within the last six months which is a continuation of the deceitful enterprise against Plaintiffs.   All of these sales, frauds, and thefts were at a criminal level such that they are ongoing and constitute racketeering activity. They are continuing to this day. The facts alleged herein reflect the intentional and willful acts surrounding Defendants' continuing attempt to bait and switch – that is now that the time is coming for investors to need to cash in the Reliant investors are not coming through and or changing the terms.

228.    Reliant, the name most often used by the criminal enterprise, is far from a respected business. It is the umbrella for the Defendant Principle Financial Services, Inc.  Its operator, Mark Sansoucy, is one of the higher-level administrator of the Reliant enterprise.   He and Scott Grady, unlicensed are point men for the enterprise. They are fully aware of what is happening, and all the things alleged above, They are continuing to carry on the deception and without them it could not continue. They have involved in all activities of the enterprise since nearly the beginning of its existence.

229.    Brent Borchert masquerades as a compliance officer for Reliant Life Shares, LLC but in reality, he is providing protection and covers for all of Reliance wrongful and deceptive activity. He has

43

**COMPLAINT**

full knowledge of all the facts but continues to operate and assist the enterprise carry on the above deceit. The money comes to the Reliant Defendants' enterprise when a sale is made, whether or not the investment benefits the investor.

230.    Joe Kleinfeld was the founder of the enterprise or a funder who provided funding and assistance knowing all the wrongful and deceitful conduct that went on as above alleged.  He is therefore a perpetrator of the alleged false pretenses and wrongful conduct.   He has profited off of it. He works behind the scenes for the enterprise. Alleged on information and belief is that he and/or other members of the Reliant Defendant's enterprise have taken advantage of the polices in the investment that have not matured for their benefit, and not for the investors benefit, and not properly disclosing this fact and doing such things, for example alleged upon information and belief, using the policies for collateral, or misappropriating the death benefit for themselves. It is alleged upon information and believe that he is not licensed to sell life settlements.

231.    Andrew Murphy has had his hand in all aspects of most of the sales alleged herein, and  was involved in high level operations maintaining  and setting policy for Reliant -wide operations and assisting in personally making sales including perpetrating false pre-tenses to make the sales on unsuitable persons for these investments. It is alleged upon information and believe that he is not licensed to sell life settlements.

232.    All the named Defendants in this cause of action know they are selling this investment or allowing it to be sold without disclosing the downsides and all the above matters in a balanced and full disclosure manner. Also, Defendants and the enterprise ignore and go out of their way to buy down, pay off, or eliminate bad reviews or criticism. The fact that they do this means that they see and/or know about their deficiencies as disclosed in the reviews, but they would rather silence them or buy the review off rather than stop selling investments under false pretenses. These named individuals in this cause of action continue to make money off the backs of investors who struggle with this investment because they are not candid and forth coming.

233.    It is also believed that leftover policies are given to the investors and one of the things the enterprise does is acquire more policies with bitter prospects, which they keep for themselves.

234.    It is believed that this enterprise is kept alive by taking on its critics by either buying them off or entering into confidential settlements that prevent public and investor knowledge of the truth of the enterprise's activities and its track record.

235.    Each act of wrongdoing, fraud, or negligence, noted above and which make up the causes of action could not be discovered with reasonable diligence nor was it even possible or capable of being discoverable under the circumstances whereby Defendants hid these things and it took the attorney to discover and appreciate them.  In other words,  none of the above were truly capable of being discovered without attorney assistance in light of the evasiveness of Defendants and therefore were not discovered until not more than within the applicable statute of limitations assuming they even accrued, which it is alleged they did  not until within the same time period. Even if they did equity applies to toll the Statute of limitations where Defendants had notice and acted in a way to thwart their rights by engaging in misrepresentations as Exhibit 27 indicates.  Defendants used further deceit to deter action on behalf of Defendants, including eliminating contact between investors, manipulating reviews, and purging and or buying down bad comments and public criticism. In addition to this thwarting suit, it gave investors the false impression that there is nothing that can be done.  In addition, the parties entered into negotiations with each other through their attorneys, or attorneys that represented their interest, such that at the time the suit was filed, the statute of limitations was tolled by agreement or implied agreement of the parties.   By reason of equity and fairness, the court should declare and /or permit this action to proceed. Of course, because of the continuing nature of this case and because such a program needs to be shut down as it continues every day, injunctive relief is not affected by any statute of limitation. Nor does the statute of limitations apply to matters where breaches and violations are happening every day.

236.    Part of the deceit is that many of the high-level persons that are creating, administering, conducting oversight of the sale of the investment to Plaintiffs  were not licensed as life agents, none of them are registered as having security licenses.  Also the Reliant Defendant entities that are creating and syndicating the life settlements set forth herein and sold to Plaintiffs were and are not properly registered or licensed with the Department of Insurance as a providers such that they are allowed to make life settlement sales. Therefore all sells are not authorized and therefore must be set aside. This is

**COMPLAINT**

another reason why there is a breach of contract, why rescission is appropriate, why these investments should not have been sold, and why the companies associated with them should be shut down or enjoined from further activity. It is a deceit and fraud to characterize or even imply that these insurance policies became owned by Plaintiff investors, which is what was done here.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

237.    This is a class action on behalf of persons or entities who purchased or otherwise acquired investments (also called securities) from Defendants (the "class."). Plaintiff seeks to recover comprehensible damages caused by Defendants' violation of all causes of action especially the violations of Civil Code 1770 et seq.

238.    Plaintiff brings this action as a class action. The class includes persons, trusts, or entities who purchased a life settlement investment (also called securities) from any Defendant named herein (the "class."). It is believed and alleged that all the Defendants named herein are in some way related to "Reliant" or purposely pawned off from Reliant or came from its formal or informal network, but it will take discovery to obtain the full details.   Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest. Excluded also are any entities or persons not associated or identified with "Reliant" or its network or came from "Reliant" or its network.

239.    The members of the Class are so numerous that joinder of all members is impracticable. The exact number of Class members is unknown to Plaintiff at this time. They can be ascertained only through appropriate discovery.  Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

240.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of laws and causes of action set forth herein.

241.    The Representative Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

242.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.   Whether Defendants' acts as alleged against the law;

b.   Whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

c.   Whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

d.   Whether the Individual Defendants caused the Company to issue false and misleading statements during the Class Period;

e.   Whether Defendants acted knowingly or recklessly in issuing false and misleading statements during the Class Period;

f.   Where the money went and what assets are viable

g.   Whether the members of the Class have sustained damages and, if so, what is the proper measure of damages?

h.   Whether injunctive relief is necessary for the benefit of all and the public.

243.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will little difficulty in the management of this action as a class action.

**COMPLAINT**

**FIRST CAUSE OF ACTION**
**VIOLATION OF CORPORATE CODE §§ 25401 & 25501**
**Against**
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO;**

244.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint.

245.    DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC., RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC. , SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY, LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO, by reason of the of above mentioned facts as set forth in the General Allegations and contained in allegations subsequently helped sell, are selling, or sold PLAINTIFFS securities in violation of Corp. Code § 25401, which prohibits offers or sales of securities including investment opportunities by means of a written or oral communication that contain: "Untrue statement[s] of a material fact or omits to state a material fact necessary in order to make the statement[s] made, in light of the circumstances under which they were made, not misleading."

246.    Since the investment requires premium payments, the sale is not final.

247.    The areas of untrue statements, concealment and or violations that also go to the elements of fraud, breach of fiduciary duty, and wrongdoing, include:

a.    The investment per se violates California Corporate Code §25401 and full disclosure because the names of the insureds were not and are not provided meaning there is withholding and concealment material facts ( which is an omission of material facts necessary in order to make statements about this investment not misleading or necessary to fully understand the investment.)

b.    Paperwork does not match up indicating manipulation of documents.

48
**COMPLAINT**

c.   DEFENDANTS selling the above-described RELIANT death benefit without the proper back- up policy as represented or supposed to be associated with it and/or not explaining the circumstances or properly giving the background to the buyer that would explain such a long time for the policy to mature.

d.   DEFENDANTS failure to describe the various aspects of this investment to Plaintiffs that make it unsuitable or not in their best interest like continuing and rising premiums, like the possibility the insured may live longer than certain plaintiffs, like the inability of heirs to inherit without the obligation that could render the entire investment worthless or lost.

e.   DEFENDANTS representing that the above-mentioned RELIANT investments were equivalent to the viatical investments that Warren Buffett and Bill Gates have bought or buy on the open market. This is further explained in the General allegations of the complaint but it is even more deceptive and false when DEFENDANTS failed to describe some of the failures of similar investments like this that failed namely the Oxford financial, Pacific West ones, and further by not describing Defendant's involvement in shady activities and a shadow industry as set forth in the Gloria Wolk's declaration attached hereto.

f.   DEFENDANTS sold this to PLAINTIFF investors knowing it would likely not serve the purposes needed nor do what it represented it would do-provide a quick return that did not correlate to the stock market.

g.   DEFENDANTS impliedly represented that these RELIANT investments were better than a stock market investment without providing any evidence or proof, and not advising it was not true in certain cases.

h.   DEFENDANTS did not properly portray the statistics associated with prior RELIANT investments concerning its ability to meet its life expectancy estimates after a decade of being in business and not portraying truthfully the consequences of what happens when the life expectancy premium reserves are used up.

i.  DEFENDANTS failing to advise it had an untrained, inexperienced, incompetent, unlicensed and unregistered salesforce, and/or a salesforce that was not be bound by the ethical standards required in the securities industry.  As a result, concepts that would have protected plaintiffs, were not available to plaintiffs and plaintiffs were sold this investment when they should not have been. These concepts included the salesforce should "know your customer" and the requirement that the salesperson must "observe just and equitable principles of trade."

j.  DEFENDANTS indicate on their website "the flexibility of this account allows investors to withdraw their money any time without penalty." Investors were specifically told they could get their money back at any time albeit they would lose the upside of this investment.   This has not been allowed to the PLAINTIFF investors, so it is believed this is not the policy and is a false statement.

k.  DEFENDANTS failing to give the specific rate of return one would likely to expect based upon RELIANT' s previous ten-year history.  Defendants otherwise glossed over the rate of return and glossed over the fact that this investment lacked liquidity and diversity (being captive to only RELIANT selected life settlements).

l.  DEFENDANTS failing to disclose that this investment was not exempt and violated securities laws.

m.  DEFENDANTS failed to provide the required information of Corporate Code §225102q about the issuer and or information about the issuer important to know including but not limited to the information required in Corporate Code §225102q (3) (A—G)-especially omitted were the names directors, officers, partners, members, or trustees of the issuer. In effect Defendants fail to explain who owns and operates the issuer as required by law.

n.  DEFENDANTS failure to advise or disclose of Scott Grady's disbarment.

o.  DEFENDANTS failure to provide proper audited reports as required by law and needed to understand the investment.

p.  DEFENDANTS failure to advise of fellow investors names and contact information.

q. DEFENDANTS failure to advise in advance the need for insurance premiums and terms of premiums associated with all of Plaintiffs' investments.

r. DEFENDANTS failure to enforce the net worth requirements required by securities law of Plaintiffs, which put this entire investment at risk, and /or failing to disclose to investors that they permitted unqualified investors.  Again this put the investment at risk for multiple reasons.

s. DEFENDANTS covering up important details up, even though such details were requested prior to the filing of this complaint.

t. DEFENDANTS orchestrating and manipulating false, deceptive, or less than complete reviews and ratings.

u. DEFENDANTS failing to disclose their policy of preventing investors knowledge or each other and thwarting transparency.

v. DEFENDANTS not advising or disclosing their policy of paying premiums and placating some investors but not other investors, and their policy of letting some investors out of the investment (or bailing them out) while letting others fend for themselves and take the loss. Defendants also "agreed" to buy out some investors, but never actually did they pay Plaintiffs as promised in the "buy out." All this constituted fraudulent and deceptive manipulation.

w. DEFENDANTS telling Plaintiffs prior to their purchasing,  that there was a theoretical risk that the insurance policies that Plaintiffs invested in would extend beyond the reserves but in the same breath, as part of the selling process to Plaintiffs, telling most investors that premium calls hardly ever happens or if a premium call does happen,  that premiums are minimal around $300 or $500. In reality, premiums can be as high as $12,000 which RELIANT knew or should have known but purposely deceived Plaintiff investors.

x. DEFENDANTS failed to advise that the sale is not complete until all premiums are paid in full.  This does not happen until all the insured are dead.  Some insured live longer than the investors themselves.

**COMPLAINT**

248.     DEFENDANTS sold fractional life settlements by making false and misleading statements as set forth above and subsequently. DEFENDANTS knew or should have known that the statements were false and/or that they were concealing material facts. DEFENDANTS knew or should have known that there were important facts that needed to be known to make a proper informed decision on the investments. As a result, the investments were portrayed in a false light and Plaintiffs did not have sufficient material facts to make an informed decision.

249.     It was also an improper, deceitful, or negligent to do the above and take INVESTOR's money under the circumstances set forth in this Complaint. DEFENDANTS intentionally failed to describe the investment truthfully especially when describing how debilitating the premiums can become as the insured ages, and how the rising premiums affects the rate of return, and that premiums are still required if the investment is passed to the heirs. Also, the history, culture, and illegal nature of the salesforce and the unregistered, unqualified nature of the stock are all things that needed to be disclosed that were not. Further, it is believed that this whole investment scheme is a sham as it presented no viable investment opportunity within the reasonable life spans of the insured in light of the premiums.

250.     Selling securities and/or an investment opportunity like this under these false pretenses or while omitting material facts is a deception and involved misrepresentation of material facts in violation of the law. PLAINTIFFS contributed money to DEFENDANTS thinking they had made an investment that would perform better than it was capable of performing because of DEFENDANTS misstatements, deceit, and/or the unsupervised negligence of the salesforce. DEFENDANTS are less than candid not to explain how monies are distributed from paid out death benefits when one investor loses the investment when that investor's premiums were not paid. This portion of the payout does not appear to go to the other investors. Not explaining this is a lack of material disclosure and if this portion of the payout goes to benefit the DEFENDANTS, or RELIANT, that is a conflict of interest.

251.     All DEFENDANTS listed above knew that they were part of an organization which sold PLAINTIFFS the product while knowing all the above deficiencies and nuances which they did not disclose.

252.    PLAINTIFFS relied upon the above to make these investments. The reliance was reasonable and justified based upon their circumstances.

253.    By reason of the above, PLAINTIFFS are entitled to rescission and damages, and or the damages set forth in Civil Codes §25501 or 25501.5, or according to all remedies available by law.

254.    DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFF and constitutes oppression, fraud, and malice such that punitive damages are appropriate, and hereby requested under either Civil Code 3294 or 3345 or both.

255.    PLAINTIFFS seek all damages allowed by law for the above-described wrongdoing including costs of suit, investigation, and attorneys' fees.

256.    PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statute.

## SECOND CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
### Against
**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

257.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

258.    DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC., RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC. , LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO were in a fiduciary relationship and had a fiduciary duty to PLAINTIFFS when presenting the product, they sold to retail investors like PLAINTIFFS. This product was not suitable for these PLAINTIFF INVESTORS. It was a violation of DEFENDANTS' fiduciary duty to put their own economic interest to make money over the best interest of the customers. There was an over concentration of PLAINTIFFS' assets in RELIANT products based on PLAINTIFFS' net worth. This eliminated proper diversity or the ability of the investor

53

to have money set aside to pay premiums. This eventually became a hardship for PLAINTIFFS, a matter that the PLAINTIFFS should have been better informed of. DEFENDANTS were also in a conflict-of-interest situation that was not fully advised.

259.    Under the circumstances DEFENDANTS wrongfully took PLAINTIFFS' money. The money became illiquid. PLAINTIFFS would not have consented to their money being taken had they known all the facts and full truth about this investment. PLAINTIFFS were tricked and became the subject of undue influence by DEFENDANTS. DEFENDANTS did not obtain sufficient informed consent because they did not make full disclosures. Fiduciaries have a duty not to make a sale when the situation presents as above stated. DEFENDANTS did so anyway because it served their own financial interests.

260.    Selling securities and/or an investment opportunity like this under these false pretenses or while omitting material facts is a deception and involved misrepresentation of material facts in violation of the law. PLAINTIFFS contributed money to DEFENDANTS thinking they had made an investment that would perform better than it was capable of performing because of DEFENDANTS' misstatements, concealment, deceit, and/or unsupervised negligence which all violate fiduciary duties. DEFENDANTS are less than candid not to explain how monies are distributed from paid out death benefits when one investor loses the investment when that investor's premiums were not paid. This portion of the payout does not appear to go to the other investors. Not explaining this is a lack of material disclosure and if this portion of the payout goes to benefit the DEFENDANTS, or RELIANT, that is a conflict of interest. Not explaining this is a lack of material disclosure and is a further breach of its fiduciary duty and a conflict of interest.

261.    DEFENDANTS, together, breached their fiduciary duty in association with each other.

262.    The areas of untrue statements, concealment and or violations that also go to the elements of fraud, and breach of fiduciary duty, and wrongdoing, and which have been alleged elsewhere in detail, include:

    a.    The investment per se violates California Corporate Code §25401 and full disclosure because the names of the insureds were not and are not provided meaning there is withholding and concealment material facts (which is an omission of material facts

**COMPLAINT**

necessary in order to make statements about this investment not misleading or necessary to fully understand the investment.

b. Paperwork does not match up indicating manipulation of documents.

c. DEFENDANTS selling the above-described RELIANT death benefit without the proper back- up policy represented or supposed to be associated with it and/or not explaining the circumstances or properly giving the background to the buyer that would explain such a long time for the policy to mature.

d.  DEFENDANTS failure to describe the various aspects of this investment to Plaintiffs that make it unsuitable or not in their best interest like continuing and rising  premiums, like the possibility the insured may live longer than certain plaintiffs, like the inability of heirs to inherit without the obligation of paying continuing premiums that could render the entire investment worthless or lost.

e. DEFENDANTS representing that the above-mentioned RELIANT investments were equivalent to the viatical investments that Warren Buffett and Bill Gates have bought or buy on the open market. This is further explained in the General allegations of the complaint but it is even more deceptive and false when  DEFENDANTS failed to describe some of the failures of similar investments like this that failed namely the Oxford financial, Pacific West  ones, and further by not describing Defendant's involvement in shady activities and a shadow industry as set forth in the Gloria Wolk's declaration attached hereto.

f. DEFENDANTS sold this to PLAINTIFF investors knowing it would likely not serve the purposes needed or do nor what it represented it would do-provide a quick return not correlated to the stock market.

g. DEFENDANTS impliedly represented that these RELIANT investments were better than a stock market investment.

h. DEFENDANTS not properly portraying the statistics associated with prior RELIANT investments concerning its ability to meet its life expectancy estimates in a decade of

being in business and not portraying truthfully the consequences of using up the life expectancy premium reserve.

i.  DEFENDANTS failing to advise it had an untrained, inexperienced, incompetent, unlicensed and unregistered salesforce, and/or a salesforce that was not be bound by the ethical standards required in the securities industry.  As a result, concepts that would have protected plaintiffs, were not available to plaintiffs and plaintiffs were sold this investment when they should not have been. These concepts included the salesforce should "know your customer" and the requirement that the salesperson must "observe just and equitable principles of trade."

j.  DEFENDANTS indicate on their website "the flexibility of this account allows investors to withdraw their money any time without penalty." Investors were specifically told they could get their money back at any time albeit they would lose the upside of this investment.   This has not been allowed to the PLAINTIFF investors, so it is believed this is not the policy and is a false statement.

k.  DEFENDANTS failing to give the specific rate of return likely to expect based upon RELIANT' s previous ten-year history.  Defendants otherwise glossing over the rate of return and glossing over the fact that this investment lacked liquidity and diversity (being captive to only RELIANT selected life settlements).

l.  DEFENDANTS failing to disclose that this investment was not exempt and violated securities laws.

m.  DEFENDANTS failed to disclose the directors, officers, partners,  members or trustees of the issuer of these investments as well as RELIANT and RLS Financial Services, Inc., and JOEL KLEINFELD 'S companies that control this investment and to also fail to explain who the issuer was or when it comes to the owner and operator of this investment,  obfuscating that issue and being non-responsive about it.

n.  DEFENDANTS failure to advise or disclose of Scott Grady's disbarment.

o.  DEFENDANTS failure to provide proper audited reports as required by law and needed to understand the investment.

**COMPLAINT**

p.   DEFENDANTS failure to advise of fellow investors.

q.   DEFENDANTS failure to advise of insurance premiums and terms of premiums of associated with all of Plaintiffs' investments.

r.   DEFENDANTS failure to enforce the net worth requirements required by securities law of Plaintiffs, which put this entire investment at risk, and/or failing to disclose to investors that they permitted unqualified investors.  Again this put the investment at risk for multiple reasons.

s.   DEFENDANTS covering up important details up, even though such details were requested prior to the filing of this complaint.

t.   DEFENDANTS orchestrating and manipulate.  false, deceptive, or less than complete reviews and ratings.

u.   DEFENDANTS failing to disclose their policy of preventing investors knowledge or each other and thwarting transparency.

v.   DEFENDANTS not advising or disclosing their policy of letting some investors out of the investment and not letting some out and or covering the premium for them and not others.   In addition, Defendants "agree" to buy out some investors, but never actually pay the Plaintiff investor.

w.   DEFENDANTS telling people that there was a theoretical risk that the insurance policies that plaintiffs invested in would extend beyond the reserves but in the same breath, as part of the selling process to Plaintiffs, telling them that this never happens. This is less than honest rendition of DEFENDANTS' policy.

263.   PLAINTIFFS were harmed because of the above-mentioned reasons as set forth in the General Allegations section of this complaint and in subsequent allegations. PLAINTIFFS investments are now illiquid and are forced to sell at a distressed sale or lose their investment. By reason of the above-described breach of fiduciary duty, DEFENDANTS have caused substantial harm to PLAINTIFFS INVESTOR.

264.   PLAINTIFFS suffered from pain, suffering, and mental anguish for which reimbursement is sought.

265.   DEFENDANTS'   conduct was in reckless disregard for the rights and safety of PLAINTIFFS, and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested under either Civil Code 3294 or 3345 or both.

266.   PLAINTIFFS seek all other damages allowed by law for the above-mentioned wrongdoing including costs of suit, investigation, and attorneys' fees.

267.   PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statue.

**THIRD CAUSE OF ACTION**
**CONVERSION**
**Against**

**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

268.   PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

269.   DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC., RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC. , SCOTT GRADY; PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO engaged in a course of conduct as described above that swindled INVESTORS out of their money. Presently, PLAINTIFFS' investments are lost to their immediate use for all of the reasons above and subsequently alleged.

270.   PLAINTIFFS were told by some DEFENDANTS that PLAINTIFFS could get a total refund of their investment, including fees and surrender charges. LARRY TUPLER told some PLAINTIFFS he could not do it in two weeks' time, but thirty days' time would not be a problem. LARRY TUPLER was asked to put that in writing, he did put it in writing, but did not perform on his promise. PLAINTIFFS have demanded the money back to no avail. Several PLAINTIFFS have never received any money back pursuant to this promise by LARRY TUPLER.

58
**COMPLAINT**

271.     In addition, if premiums are not paid by one or more parties, it puts stress on the investment. No one has disclosed how the premium situation is handled if a person cannot make their payment. This is tantamount to theft by swindle, and conversion.

272.     PLAINTIFFS seek all other damages allowed by law and/or the return of the money.

273.     DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFFS, and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested.

**FOURTH CAUSE OF ACTION**
**NEGLIGENCE/GROSS NEGLIGENCE**
**Against**
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL; RLS FINANCIAL SERVICES;  RMS TRUST; RLS FINANCIAL SERVICES, INC.; SCOTT GRADY; BRENT BORCHERT; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; LARRY BAGBY; JOEL KLEINFELD; RLM TRUST; VINCE BOVINO; DOES 1-20)**

274.     PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

275.     DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, RMS TRUST, RLS FINANCIAL SERVICES, INC. , SCOTT GRADY, BRENT BORCHERT; PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, LARRY BAGBY, JOEL KLEINFELD, RLM TRUST, and VINCE BOVINO were negligent for the reasons above mentioned because they failed to engage in conduct up to industry standards while selling securities to PLAINTIFFS. In fact, what was done was so extreme that it constitutes gross negligence. This investment should not have been sold to these PLAINTIFFS for all of the reasons set forth subsequently and for all of the reasons set forth in the general allegation section of this complaint. The cumulative violations contribute to making this a grossly negligent operation, activity, and endeavor. DEFENDANTS carried out their negligence in association with each other, compounding the negligence.

276.    As a result of the abovementioned acts of DEFENDANTS, PLAINTIFFS are damaged by reason of the above allegations, as well as the loss of property, money, and expenses necessary to get this money back.

277.    As a result of the above acts, PLAINTIFFS claim general damages for mental and emotional distress, pain, and suffering, caused by DEFENDANTS subject to proof at the time of trial.

278.    DEFENDANTS'   conduct was a substantial factor in causing PLAINTIFFS harm as described above. PLAINTIFFS seek reimbursement for the costs and expenses of having to handle, figure out and recover these investments, including legal fees incurred for having to recover the property.

279.    PLAINTIFFS seek all other damages allowed by law for the above-mentioned wrongdoing including costs of suit, investigation, attorneys' fees, and especially the value of the loss of their investments.

280.    Plaintiffs seek attorney fees as it is provided by the parties' contract and also by statue.

**FIFTH CAUSE OF ACTION**
**SELLING UNREGISTERED SECURITIES**
**VIOLATION OF CORPORATE CODE §§ 25401 & 25501**
**Against**
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; UMB BANK N.A.; BANK OF UTAH; FIRST WESTERN TRUST BANK DOES 1-20)**

281.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

282.    The above- mentioned facts show, and it is alleged that the DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPAL FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL

60

**COMPLAINT**

KLEINFELD, RLM TRUST, VINCENT BOVINO, UMB BANK N.A., BANK OF UTAH, and FIRST WESTERN TRUST BANK sold or instituted a process of sale of the various life settlements above alleged PLAINTIFF INVESTORS unregistered or unqualified securities in violation of Corporations Code, particularly§§ 25110, 25130, & 25102(q) and/or in violation of other provisions of federal law requiring registration of securities. As described above, DEFENDANTS claimed exemptions did not exist as the excuse for having an unregistered security.

283.    It was below the standard of care for a seller to sell unregistered securities in this manner. When an unregistered security is sold, the transaction must be unwound, and rescission be mandated and or damages allowed.

284.    By reason of the above, DEFENDANTS are liable to PLAINTFF INVESTORS and PLAINTFF INVESTORS are entitled to get their money back through rescission or damages for violating the allegations of this cause of action.

285.    It was also improper, illegal, deceitful, or negligent to sell unregistered or unqualified securities to PLAINTIFFS and take PLAINTIFFS' money under these circumstances.

286.    By reason of the above, and as a proximate result of selling unregistered or unqualified securities, PLAINTIFFS have been harmed because if the securities were registered or qualified, there would have been more protections and disclosures provided to allow an investor to make a more informed investment decision. Even if PLAINTIFFS would have been no better off, RELIANT's failure to register or qualify this security automatically allows for damages or rescission with or without showing prejudice. It is illegal and against the law to sell unregistered or unqualified securities. By reason of the above, PLAINTIFFS are entitled to rescission and damages. They seek their money back with interest thereon. Additionally, they seek all damages allowed by law for selling unregistered/unqualified securities.

287.    By reason of the above-mentioned conduct, PLAINTIFFS are entitled to treble damages and attorneys' fees and costs in the discretion of Court, which they request.

288.    DEFENDANTS'   conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice such that punitive damages are appropriate, and hereby requested under either Civil Code 3294 or 3345 or both.

**COMPLAINT**

289.     PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statue

**SIXTH CAUSE OF ACTION**
**VIOLATIONS OF CORPORATIONS CODE §§ 25004 & 25501.5; and C.C.P. § 1029.8**
**Against**
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20)**

290.     PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

291.     DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPAL FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, VINCENT BOVINO, especially, MARK SANSOUCY, and RELIANT acted and still act as brokers and broker-dealers. Yet, under Corp. Code §§ 25004 & 25501.5 and comparable Federal Law, they are not allowed to have sold this security to these PLAINTIFFS and RELIANT and other DEFENDANTS were not properly licensed but were and are engaged in allowing a business to engage in the act of being a broker-dealer without a license. This itself is a violation of the law and justifies voiding this transaction and returning PLAINTIFFS the return of all monies given to DEFENDANTS. As a result, DEFENDANTS are also in violation of Code Civil Procedure § 1029.8. Also, DEFENDANTS acted as AGENTS of broker-dealers, even if they can claim they are broker-dealers, which they cannot, they are still just as liable for acting as agents of broker-dealers without a license or registration.

292.     Code Civil Proc. § 1029.8 states "unlicensed persons who cause injury or damage … as a result of providing goods or services for which a license is required… shall be liable to the injured person for treble the amount of damages… "Had PLAINTIFFS been dealing with a licensed person instead of unlicensed people such as DEFENDANTS, PLAINTIFFS would have been protected and

62

**COMPLAINT**

this situation would not have happened because no reputable licensed person would sell these securities to persons preparing for retirement. Even if that is not the case these sales by unlicensed persons activate the statute and allow for the remedies set forth in Corporate Code §25501.5, which PLAINTIFFS seek.

293.    In addition to the above-mentioned remedies, PLAINTIFFS have been damaged, in having to suffer significant losses as above described, including pain and suffering, loss of interest or the loss of the value of a well-managed account, loss of this principal, in the amount of $5,000,000

294.    By reason of the above-mentioned conduct, PLAINTIFFS are entitled to treble damages and attorneys' fees and costs at the discretion of Court, which they request.

295.    DEFENDANTS'   conduct was in reckless disregard for the rights and safety of PLAINTIFFS, and constitutes oppression, fraud, and malice and justifies punitive damages under either Civil Code 3294 or 3345 or both.

296.    PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statue.

**SEVENTH CAUSE OF ACTION**
**INTENTIONAL MISREPRESENTATION/FALSE PROMISE**
**Against**
**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

297.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

298.    This cause of action relates to the following DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPAL FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company

PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO.

299.   DEFENDANTS' conduct was fraudulent because not all the necessary information was provided, and what was provided was not truthful or complete. All this has been outlined before. There was omission of material facts and misrepresentation of material facts. There was material concealment as well. DEFENDANTS sold PLAINTIFFS a product that was inappropriate for these investors, Plaintiffs.

300.   DEFENDANTS also provided and sold these products to PLAINTIFFS as investments that DEFENDANTS know could not do what was claimed and was less attractive than represented especially as set forth in the General Allegation where DEFENDANTS represented these fractionalized life settlements as the same or equivalent to the kind of viatical investments Warren Buffett and Bill Gates bought.  See Exhibit B. This amounts to intentional misrepresentation and based on this and other matters set forth in the general allegations as a false promise. DEFENDANTS did not intend that the product they were providing would meet PLAINTIFFS' needs or was suitable for them, yet DEFENDANTS sold the product as if it would with knowledge that it was inadequate.

301.   These DEFENDANTS also failed to advise this was a poor vehicle for a retirement investment because it placed a burden on retirees, or their heirs to pay the continuing premium something that would make the investment undesirable for PLAINTIFF Investors. It is also a purposeful deception and lack of disclosure not to be able to quantify the inadequacy of the life expectancy reserves.

302.   PLAINTIFFS reasonably relied upon DEFENDANTS' promises.

303.   DEFENDANTS did not perform on their promises. DEFENDANTS gave PLAINTIFFS a sub-standard product and sub-standard service. In fact, DEFENDANTS sold what they knew was inappropriate, unsuitable, onerous, and deceptive to PLAINTIFFS.

304.   PLAINTIFF INVESTORS were harmed.

305.   PLAINTIFF INVESTORS' reliance on DEFENDANTS' promise was a substantial factor in causing the present harm.

306.   PLAINTIFF INVESTORS suffered pain, and mental anguish as a result of the above.

**COMPLAINT**

307.    By reason of the above-mentioned conduct. PLAINTIFFS are entitled to treble damages and attorneys' fees and costs in the discretion of Court, which they request.

308.    DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice and justifies punitive damages under either Civil Code 3294 or 3345 or both.

309.    PLAINTIFFS seek all damages available by law.

310.    Plaintiff seeks all other damages allowed by law including as an alternative remedy an accounting of all policies each defendant has in association with Reliant as to any Plaintiff named  in this complaint, this would include dates and policies that has lapsed, time left to next premium, the length of any restatement period, how many times has any policy gone into lapse, who paid premiums and when. The date the policy was taken out, prior owners, date converted from term if applicable, all agents of record for the insurance, how many times has any insurance company dealt with other policies where any of the Defendants in this case were involved.

311.    PLAINTIFF requests the full and complete accounting of all records related to the programs as well as all PLAINTIFFS' transactions so a complete picture can be seen and so PLAINTIFF will have all records related to what was purchased.

312.    PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statute.

### EIGHTH CAUSE OF ACTION
### VIOLATION OF CIVIL CODE §3372
#### Against
**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; RLM TRUST; VINCENT BOVINO; DOES 1-20**

313.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

314.    DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO held themselves out as investment advisors, financial advisors, and related terms. DEFENDANTS held themselves out as persons engaged in the business of advising others for compensation and as experts with respect to investments, generally, and particularly in the viatical life settlement space.  DEFENDANTS did a poor job and allowed PLAINTIFFS to purchase unsuitable products. In particular, DEFENDANTS represented themselves to be an expert with respect to the investment decisions in such viatical life settlement space and implied that they were acting in the capacity of the terms listed in Civil Code §3372 such as financial adviser, financial counselor, or investment adviser. As a result, DEFENDANTS are liable to PLAINTIFFS under that law.

315.    DEFENDANTS obtained compensation as a result of the financial advice rendered to PLAINTIFFS, but they failed to render the financial advice with due care and skill reasonably expected of a person who is an expert as defined by and required by Civil Code §3372. DEFENDANTS were not properly licensed and/or registered to act as an expert, as defined in Civil Code §3372, or as they represented or implied.  This is further against the law for which DEFENDANTS are liable.

316.    PLAINTIFFS relied on DEFENDANTS' services and advice to be at a level reasonable expected and set forth in Civil Code §3372. PLAINTIFFS were damaged by reason of PLAINTIFFS' reliance on DEFENDANTS' services in the form of losing his entire principal invested.

317.    DEFENDANTS' services were not rendered with due care as reasonably expected because of the expertise portrayed. DEFENDANTS' services were instead rendered through fraud, deceit, dishonesty, ignorance, and/or lack of due diligence. PLAINTIFFS expected DEFENDANTS to render sound financial advice. DEFENDANTS did not.

318.    PLAINTIFFS were to be the recipient of DEFENDANTS' advisory services as defined above by reason of the above-mentioned statue. DEFENDANTS are liable to PLAINTIFFS for the

**COMPLAINT**

damages caused to PLAINTIFFS to the tune of $5,000,000 or to be determined according to proof at trial.

319.    PLAINTIFFS also requests all damages afforded by law including disgorgement of fees covered by this statue and/or as allowed by law including attorney's fees and costs of suit.

320.    DEFENDANTS'   conduct was in reckless disregard for the rights and safety of Plaintiff and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested under either Civil Code 3294 or 3345 or both.

**NINTH CAUSE OF ACTION**
**ACCOUNTING**
**(Against all Defendants)**

321.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

322.    PLAINTIFFS request the full and complete accounting of all records to support the fact that these are current polices in effect validating and supporting each of the PLAINITFFS' investments and the policy or policies that have not lapsed and that RELIANT and UMB or BANK OF UTAH are in line to receive the death benefit to support each of the above investments.

323.    PLAINTIFFS are entitled to this information.  Accounting is a normal right of any investor on the subject matter of their investment and where DEFENDANTS are holding a death benefit for the benefit of another.

324.    Plaintiff seeks all other damages allowed by law including as an alternative remedy an accounting of all policies each defendant has in association with Reliant as to any Plaintiff named  in this complaint, this would include dates and policies that has lapsed, time left to next premium, the length of any restatement period, how many times has any policy gone into lapse, who paid premiums and when. The date the policy was taken out, prior owners, date converted from term if applicable, all agents of record for the insurance, how many times has any insurance company dealt with other policies where any of the Defendants in this case were involved.

67
**COMPLAINT**

325.   PLAINTIFF requests the full and complete accounting of all records related to the programs as well as all PLAINTIFFS' transactions so a complete picture can be seen and so PLAINTIFF will have all records related to what was purchased.

326.   PLAINTIFFS seek attorney's fees and costs in obtaining a full accounting.

### TENTH CAUSE OF ACTION
### VIOLATION OF SECTION 5 OF THE SECURITIES ACT (UNREGISTERED SECURITY)
### Against
### VIOLATION OF CORPORATE CODE §§ 25401 & 25501
### (RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20)

327.   PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

328.   By reason of above mentioned conduct, DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, VINCENT BOVINO,  willfully violated Section 5 of the Securities Act (15 U.S. Code § 77(e) and 15 U.S. Code § 17), which states that "[unless] a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly, (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such securities or a medium of any perspective, or (2) to carry or cause to be carried through the mails for an interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for the delivery after sale." Also, similar sections of federal law were violated.

329.    As a result of the conduct described above, DEFENDANTS, willfully violated Section 5 of the Exchange Act, which states that "[it] shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any perspective or otherwise any security, unless a registration statement has been filed as to such security."

330.    By reason of the above, the remedy is rescission or disgorgement of all monies paid.

331.    PLAINTIFFS seek all damages allowed by law by reason of DEFENDANTS acting and selling unregistered securities.

332.    DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice and justify punitive damages under either Civil Code 3294 or 3345 or both.

333.    PLAINTIFFS seeks all damages available by law.

334.    By reason of the above, PLAINTIFFS are entitled to rescission and damages, and or the damages set forth in Civil Codes §25501 or 25501.5, or whatever else is available by law.

**ELEVENTH CAUSE OF ACTION:**
**VIOLATION OF SECTION 15 OF THE EXCHANGE ACT BY ACTING AS A BROKER-DEALER OR AGENT OF SAME WITHOUT REGISTRATION**
**Against**
**VIOLATION OF CORPORATE CODE §§ 25401 & 25501**
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; VINCENT BOVINO; DOES 1-20)**

335.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

336.    DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT

69
**COMPLAINT**

GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT

BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.,

LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO, were acting as

unregistered brokers selling securities which is illegal but which was done in this case. This violates

Section 15 of the Exchange Act. As a result of the conduct described above, DEFENDANTS

POWELL and TOTH willfully violated Section 15of the Exchange Act (15 U.S. Code § 780.3), which

makes it unlawful for any broker or dealer "to effect any transactions in, or to induce or attempt to

induce the purchase or sale of, any security . . . unless such broker or dealer is registered in accordance"

with Section 15(b) of the Exchange Act. Section 3(a)(4) of the Exchange Act defines "broker" generally

to mean "any person engaged in the business of effecting transactions in securities for the account of

others."

337.    DEFENDANTS acted as brokers without being registered.

338.    By reason of the above, the remedy is rescission of all monies paid plus interest.

339.    In the alternative PLAINTIFFS seek all damages allowed by law by reason of

DEFENDANTS acting as brokers, being unregistered, and selling in the way above mentioned.

340.    PLAINTIFFS seek all damages allowed by law.

341.    PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statue.

**TWELFTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
**Against**
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY;**
**DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; UMB BANK N.A.; BANK OF UTAH;FIRST WESTERN TRUST BANK DOES 1-20)**

342.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth

herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general

allegations section of this complaint and such allegation in any previous cause of action.

70
**COMPLAINT**

343.    PLAINTIFFS were promised certain benefits above described including the right to receive their money back at any time during the investment.

344.    Defendants are refusing to honor the above although demand. Defendants refuse to return the Plaintiffs money except on terms not disclosed and not favorable to Plaintiffs. This is a breach of contract.

345.    As to PLAINTIFF JAMES CIRILE, who never received a signed contract from RELAINT, so there is no contract or it is void and his money needs to be returned.

346.    Plaintiffs now seek their money back plus interest for not returning it promptly when requested or as a result of their breach.

347.    DEFENDANTS' failure to deliver the money as promised, or an investment that met with the promise made is a further breach of the contract for which return of Plaintiffs money is requested.

348.    Also Defendants have failed to deliver a life settlement policy that did not mature in the time represented, which also constitutes a breach.

349.    Plaintiffs now seek their money back plus interest for not returning it promptly when requested or as a result of their breach or whatever is the proper remedy for breach of this contract. .

350.    In the alternative, PLAINTIFFS elect to void the contract and seek their money back or seek declaratory relief or damages or they seek the value that their investment was supposed to provide which ever gives them the most value.

### THIRTEENTH CAUSE OF ACTION
### UNFAIR COMPETITION AND VIOLATION OF CODE SECTION 17200 et seq.
### Against
**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

351.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

**COMPLAINT**

352.    PLAINTIFFS suffered an injury in the form of loss of money, loss of value of money, the loss of use of money, the loss of capital to use for other investments, and a return of a property performing investment.

353.    DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO acted unlawfully, unfairly, and fraudulently in their business and practice consisting of engaging an unfair business practice. This all the things referenced above and in the General Allegations part of this complaint and includes running an unregistered broker dealer and selling unregistered and unqualified securities without an exemption. This and the other things set forth in this complaint, violates Business and Professions Code 17200 and constitutes unfair business practices.

354.    As a result of this practice, DEFENDANTS have benefited from the use of PLAINTIFFS' money, which is equivalent to receiving ill-gotten gains. It gives DEFENDANTS an unfair advantage in raising money compared to businesses that obey the law.

355.    It is unfair because it allows DEFENDANTS' businesses to reap the benefit of money that could have gone to legitimate businesses that could have truly benefited investors and provided a just return to PLAINTIFFS. Instead PLAINTIFFS money is tied up or lost.

356.    It is further fraudulent because of the specific fraud allegations set forth above.

357.    There is a direct link between the alleged unfair competition including unlawful, unfair, or fraudulent business practices and PLAINTIFFS' loss of use of their money and the diminishment of the value of that money compared to if the money was invested or loaned elsewhere.

358.    As a further result, PLAINTIFFS have sustained harm due to DEFENDANTS' actions as described throughout this complaint.

359.    PLAINTIFFS seek relief against DEFENDANTS preventing DEFENDANTS from spending the money PLAINTIFFS contributed until the case is resolved.

**COMPLAINT**

360.    PLAINTIFFS seek all other remedies allowed by law including restoration of lost monies or the value of the loss of monies or money lost including the loss of money PLAINTIFFS would have made if PLAINTIFFS's money was placed in a proper (legal and non-fraudulent) investment, security, or business.

361.    PLAINTIFFS seek restitution to be restored to the status as Plaintiff would have been had their money not been placed in DEFENDANTS'  unfair business endeavor.

362.    PLAINTIFFS seek equitable and injunctive remedies including attorney fees necessary to force DEFENDANTS to follow the law or their closure.

363.    PLAINTIFFS seek all damages and relief allowed by law including punitive damages under either Civil Code 3294 or 3345 or both as allowed by law as DEFENDANTS action involved fraud, malice, and oppression.

364.    Attorney's fees are requested as it is allowed in the parties' contract.

**FOURTEENTH CAUSE OF ACTION**
**FINANCIAL ELDER ABUSE (Welfare and Institutions Code § 15600 et seq.)**
**(JOHN STOCKSDALE; GENE GOLDEN; JOSEPH GOODALE; ED BAEZA; PETER J. LOWE)**
**Against**
**SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; ANDREW MURPHY; LARRY TUPLER**

365.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

366.    As a "elder," within the meaning of Welf. & Inst. Code § 15610.27, JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA were entitled to the heightened rights and special statutory protections provided by California's Elder and Dependent Adult Civil Protection Act ("EADACPA"), set forth in Welf. & Inst. Code § 15600 et sec.  Under Welf. & Inst. Code § 15610.30, a person is liable for financial elder abuse or for assisting financial elder abuse if they obtained the elder's property when they knew or should have known that the conduct is likely to be harmful to the elder, including: (1) hiding, taking, retaining, obtaining and/or misappropriating Plaintiff's property, which is what has been alleged, or (2) assisting in doing the above. DEFENDANTS

did not limit the sale to just one sale and to one senior; they conducted multiple sales to multiple persons, including: JOHN STOCKSDALE, GENE GOLDEN, and ED BAEZA. JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA. These people did not need investments that might not materialize in their lifetime and would burden them or their beneficiaries or heirs to pay ongoing, multiple, and exorbitant ever rising premiums to keep the investments alive. JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA did not need a policy that would take so long to mature, possibly out living them without the use of their money for retirement needs. This sale is based on fraud and deceit, wrongdoing and lack of disclosure set forth in the general allegations and prior cause of action. Under the circumstances, it was unconscionable and in bad faith to sell this product to these seniors.

367.    DEFENDANTS SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, ANDREW MURPHY, and LARRY TUPLER's conduct in selling JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA these investments, was a predatory practice employed to take advantage of a vulnerable elderly persons for their own financial gain or if not intended to do so, it had that effect, and after knowing this, these defendants kept doing it, implying total purposeful intent to take advantage instead of protect these individuals.

368.    The Center for Research at Boston College, Aging Brain, says that older people are particularly susceptible to deception and predatory practices. Many elderly adults (roughly half) suffer from cognitive decline, which impacts financial management skills, results in poor decision-making, leaving them particularly vulnerable to fraudulent marketing tactics.

369.    Broker-dealers or people who sell securities or products like this one play a critical role in preventing financial abuse of elderly persons. Reputable broker-dealers or salespersons of securities or this kind of product need to follow the rules and regulations to prevent older people from buying investments that are not right for them or which might be onerous for them to maintain and deal with. It is believed that DEFENDANTS were negligent in not having such rules and regulations or not monitoring their sales force if they did or in preying upon these elderly gentlemen.

370.    DEFENDANTS knew each sale was over the top for a person of JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA's age and financial

74

**COMPLAINT**

sophistication, but DEFENDANTS persisted to continue to sell to older persons before and after wrongfully and egregiously selling it to JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA.

371.     Despite being the only entity or persons in possession of the above facts, DEFENDANTS knowingly assisted and turned a blind eye and callous heart to the outrageous pilfering of JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA's money. JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA's age should have been red flags to DEFENDANTS, but DEFENDANTS did not care and instead were happy to take advantage of them and condoned and contributed to these sales.

372.     DEFENDANTS, including DOES 1-20, committed the above by knowingly assisting financial elder abuse.

373.     DEFENDANTS' financial abuse has caused JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA harm including emotional stress and frustration because of the loss of all the money they spent on this product. This has deprived JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA or their beneficiaries or heirs of financial security. DEFENDANTS knew or should have known that their conduct was likely harmful to JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA all in violation of the Laws particularly Welfare and Institutions Code. § 15600.30.

374.     DEFENDANTS or DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested.

375.     Plaintiffs JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA seek all damages allowed by law including that damages be trebled, and attorney's fees allowed by statute and/or contract between the parties. Defendants' conduct was in reckless disregard for the rights and safety of Plaintiffs and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested under either Civil Code 3294 or 3345 or both.

**FIFTEENTH CAUSE OF ACTION**

**COMPLAINT**

## AIDING AND ABETTING FRAUD AND BREACH OF FIDUCIARY DUTY
### (Against all Insurance Company Defendants and Bank Defendants)

376.   PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

377.   Defendant RELIANT, and Defendant RELIANT associated companies including the named individual DEFENDANTS committed fraud, breach of fiduciary duty, conversion and intentional wrongdoing as set forth in causes of actions number 2, 3, 5, and 7 of this complaint. This includes any above-mentioned DEFENDANTS that participated in a sale not backed or no longer backed by an insurance policy or death benefit as of the date of the filing of this complaint. In addition to the already named DEFENDANTS, the following DEFENDANTS are named as aiders and abettors:

a. UMB, N.A, relating to those RELIANT sales it provided escrow services.

b. Bank of Utah, relating to those RELIANT sales it provided escrow services

c. PACIFIC LIFE INSURANCE COMPANY related to Policy Code MW8350, or any others not known at this time.

d. LINCOLN FINANCIAL GROUP related to DC0249, or any others not known at this time.

e. PRINCIPAL FINANCIAL GROUP related to DL0468, or any others not known at this time.

f. AVINA LIFE AND ANNUITY related to GJ9510, or any others not known at this time.

g. PHL VARIABLE INSURANCE CO. --> NASSAU RE related to PS0272, or any others not known at this time.

h. THE PENN MUTUAL LIFE INSURANCE COMPANY related to MS0229, or any others not known at this time.

i. LINCOLN BENEFIT LIFE related to WP7826, or any others not known at this time.

j. BENEFICIAL LIFE INSURANCE CO. related to MR8412, or any others not known at this time.

k.  PHL VARIABLE INSURANCE COMPANY related to MV4552, or any others not known at this time.

l.  RELIASTAR LIFE INSURANCE COMPANY related to 4014954, or any others not known at this time.

m.  AXA EQUITABLE LIFE INSURANCE COMPANY related to codes SA6304 and LS4268, or any others not known at this time

n.  ZURICH AMERICAN LIFE INSURANCE COMPANY related to FR1977, or any others not known at this time.

o.  JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK related to 2013-2, or any others not known at this time.

372.  These above DEFENDANTS are responsible as aiders and abettors because they:

a.  knew that RELIANT and associated Defendant Companies and the other named individual DEFENDANTS were engaged in the reselling through syndication policy of its insured and knew that the above kinds of things were continuing to be employed by RELIANT and its associated person and entities and allowed it to happen without adequate attempts to stop it from the protection of both the insured and the investors.

b.  gave substantial assistance or encouragement to RELIANT, associated Defendant companies and each individual named defendant, as they continued selling this product to vulnerable people even after knowing there were complaints and issues of wrongdoing associated with the manner, method, integrity, honesty, and type of activity that RELIANT and its people were engaged.  Instead of taking stock, they continued to assist allowing the escrows and relationship to go forward by contributing its policies to a fraudulent endeavor that breaks fiduciary duty at many levels, not the least of which to make sure its policy is being used properly and not to swindle investors as above described. The subsequent sales of the abovementioned policies could not happen without these DEFENDANTS (the ones set forth in the paragraph immediately

preceding this one) participating and issuing their escrows and insurance services to help RELIANT defraud these investors or breach fiduciary duties against PLAINTIFFS.

    c. That the DEFENDANTS (the ones set forth in the paragraph immediately preceding this one) conduct was a substantial factor in causing harm to PLAINTIFFS.

373. DEFENDANTS' (the ones set forth in the paragraph immediately preceding this one) conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested under either Civil Code 3294 or 3345 or both.

374. Plaintiff seeks all other damages allowed by law including as an alternative remedy an accounting of all policies each defendant has in association with Reliant as to any Plaintiff named in this complaint, this would include dates and policies that has lapsed, time left to next premium, the length of any restatement period, how many times has any policy gone into lapse, who paid premiums and when. The date the policy was taken out, prior owners, date converted from term if applicable, all agents of record for the insurance, how many times has any insurance company dealt with other policies where any of the Defendants in this case were involved.

## SIXTEENTH CAUSE OF ACTION
## VIOLATION OF SEC RULE 10-B-5
### Against
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; UMB BANK N.A.; BANK OF UTAH; FIRST WESTERN TRUST BANK; DOES 1-20)**

375. PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

376. DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT

BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, VINCENT BOVINO, UMB BANK N.A., BANK OF UTAH, and FIRST WESTERN TRUST BANK's conduct listed above for this cause of action have engaged in a totality of activities set forth in detail in earlier allegations and causes of action that constitute a violation of Rule 10b-5 which prohibit the use of manipulating and deceptive practices in regard to the purchase and sale of securities. It reads as follows:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

377.    Some of the allegations are misrepresentations, some are lack of full disclosure, and some are omission, all detailed in prior allegations of this complaint. The conduct and activity is in violation of the Rule 10b-5 and is continuing as more money is being demanded and the same allegations of misrepresentation, manipulation, lack of disclosure and omission are still operating and are in play more than ever.

378.    PLAINTIFFS have been and continue to be injured by reason of the loss of their money contributed to this investment and the failure, even if not lost, to realize what was promised.

379.    PLAINTIFFS relied upon on the representations and claims made as outlined above but they were also subject to omissions which caused them injury where reliance is not required but assumed. Where applicable, investor reliance was reasonable and it was DEFENDANTS intent that investors would rely on and they did except where omissions occurred, in which case reliance is not necessary.

380.    PLAINTIFFS have suffered the harm in the loss of use of their money and the loss of an investment that was supposed to return a fixed rate of return sooner than now.

381.    All of the above is material under the law and constitutes what a reasonable investor would consider important.

382.   It was further a deception and manipulation for DEFENDANTS to portray this an appropriate retirement investment for all the reasons set forth above.

383.   DEFENDANTS did not perform on their promises. They gave PLAINTIFFS a sub-standard product and sub-standard service. In fact, DEFENDANTS sold what they knew was inappropriate, unsuitable, onerous, and deceptive to INVESTOR.

384.   PLAINTIFF INVESTORS were harmed.

385.   PLAINTIFF INVESTORS' reliance on DEFENDANTS'   promise was a substantial factor in causing the present harm.

386.   PLAINTIFF INVESTORS suffered pain, and mental anguish as a result of the above.

387.   DEFENDANTS' conduct was in reckless disregard for the rights and safety of INVESTOR and constitutes oppression, fraud, and malice and justifies punitive damages under either Civil Code 3294 or 3345 or both.

388.   PLAINTIFFS seek all damages available by law.

389.   PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statute.

**SEVENTEENTH CAUSE OF ACTION**
**CONSPIRACY**
**Against all Defendants**

390.   PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

391.   DEFENDANTS formed a combination of two or more individuals whose objective was to sell life shares even though it was against securities laws and involved fraud and breach of fiduciary duty and other torts listed in this compliant.

392.   DEFENDANTS had a meeting of mind on the object to be accomplished and the means to which the parties would accomplish it.

**COMPLAINT**

393.    DEFENDANTS each committed one or more unlawful act, namely violating securities laws, and committing the intentional torts including fraud and breach of fiduciary duty relating to causes of action Number 2, 3, 5, and 7.

394.    The agreement to commit these unlawful acts between DEFENDANTS was made orally, sometimes confirmed in writing or implied by written material or the conduct of the parties.

395.    Each Defendant named above was aware of the co-conspirator's plans and conduct. They received calls and letters from frantic investors overs the years.

396.    DEFENDANTS agreed with the other conspirators and intended the wrongful acts be committed. The above conspiracy can be inferred from circumstances including the nature of the acts done, the relationship between the parties, and the interest of the alleged conspirators.

397.    PLAINTIFFS need not prove that DEFENDANTS personally committed a wrongful act or that he or she knew all the details of the agreement or the identities of the participants. In this case, the DEFENDANTS did more than just become aware of what was going on. By agreeing to it, they actually engaged in a wrongful act and further supported it, which is not normally a required element of a conspiracy.

398.    Defendants' conduct was in reckless disregard for the rights and safety of Plaintiffs and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested under either Civil Code 3294 or 3345 or both

### EIGHTEENTH CAUSE OF ACTION
### VIOLATION OF CONSUMER LEGAL REMEDIES ACT
### Against
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; UMB BANK N.A.; BANK OF UTAH; FIRST WESTERN TRUST BANK;  ALL DEFENDANT INSURANCE COMPANIES, DOES 1-20)**

399.    PLAINTIFF incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general

allegations section of this complaint and such allegation in any previous cause of action, especially

information set forth under the heading of "Nature of the Case."

400.    This cause of action refers to the above-named defendants listed in the title to this cause of

action. including DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS

FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT

GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT

BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.,

LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, VINCENT BOVINO, UMB BANK N.A.,

BANK OF UTAH, and FIRST WESTERN TRUST BANK have engaged in activities that violate

California Civil Code 1770 in many ways set forth above and below..

401.    Defendants have violated many aspects of Civil Code §1770 - 1782 et seq. this includes:

passing off goods as those of another, false sponsorship, false or confusing, misrepresentation of

affiliations all outlined in detail above and violating Civil Code §1770a (1) and (2). This is important

because it goes to who is handling the investment and who is going to pay premiums after the premium

reserves are used up.  It also goes to Plaintiffs buying into what it thought was a credible upstanding

organization being a splintering make up of rogue people and companies working in a weird way and

not being reputable, the result being that the investment was anything the salespersons wanted it to be

and not what the organization could deliver and a less than appropriate product and service. Since

Reliant works through various entities like Reliant life Shares,  RLS FINANCIAL SERIVCE, RMS,

RELIANT CAPITAL, RELIANT CAPITAL SHARES, Principle Financial Services, it accentuates

confusion over the source of the product. All of these appear to present a different face on who the

issuer and sponsor is, and who the investor is investing in.   This is not clarified. It is believed that all of

these defendant  entities pawn off their names with others causing the belief that they are all part of an

associated entity- all affiliated with each other and under the umbrella of something called RELIANT,

and regulated by responsible entities and government agencies,  but this is not the case and is deceptive.

402.    Defendants   also violated Civil Code §1770a (9) making it a violation to advertise goods or

services with the intent not to sell them as advertised which as discussed above involved portraying the

product as being able capable of being cancelled with a return of the money back and interest at any

**COMPLAINT**

time with no penalty.  This also violates Civil Code §1770a (14).  There are numerous other bait and switch matters associated with this investment which are nothing more than ploy's used to sell this investment outlined in detail above that bring many aspects of Civil Code §1770   into play including ploys where Defendants misrepresented or concealed the premium effect on the investment, the rate of return, and who all invests in this product like Warren Buffett and Bill Gates.  It is based on getting average investors the benefits that institutional investors receive which is a fiction and a false pretense.

403.    It should be noted that ED BAEZA,  with his wife, bought hundreds and thousands of dollars' worth of life settlements through Defendants in October of 2020.   Their purchases are believed made the same month, one with "RELIANT" (whoever that really is)  and the other with Principal Financial Services, Inc. (whoever that is), all sold by the same Reliant salesmen giving the buyers the belief that they bought from the same entity or enterprise.  It is confusing as to why the purchase agreements appear with different parties as the differences are not explained and apparent to the parties. It creates the question of who is running the operation or enterprise and this is a form of passing off or hiding the real operator which it is alleged is the case. This appears to be passing off goods and services as those of another or misrepresentation of affiliations or connections all in violation of a number of provisions of Civil Code §1770 et seq. It is really deceptive if now these organization claim they are different entities.

404.    In addition to the above, Defendants violate Civil Code §1770a (14) representing itself as having confirming rights and remedies it does not have like being suitable compared to a mainstream investment, and better than an investment in the stock market.

405.    In addition these investments to these Plaintiffs is Reliant investors selling a financial product that is illegal under state or federal law in violation of Civil Code §1770a (26).  It is illegal because the investments are not allowed to be sold or developed,  if sold by unlicensed people and in violation of securities laws.   Violations of this has been set forth in detail in other causes of action incorporated hereto as fully set forth hereat and particularly in causes of action 6, 10, and 11.

406.    Plaintiff relied on the above and it was reasonable and justifiable. They were led to believe that they were dealing with a reputable securities dealers and brokers, but this organization is made up of unlicensed unqualified securities people that are not trained in or skilled in the requirement necessary

83

**COMPLAINT**

to sell securities that people licensed by the SEC or the Financial Industry Regulatory Authority, ("FINRA") are required to follow which requires observance of high standards of commercial honor and principles of trade, a requirement that all presentations be balanced and transparent, and most of all that investments be vetted through the performance of proper due diligence. In fact these investments peddled by Defendants do not meet the suitability requirement and best interest requirements of the SEC and FINRA.   Without proper training and proper information, salesmen are free to use any method to make a sale which is what happened here and is still happening.   Then, investors do not obtain the protection and the quality of services that the securities industry has become known for. Failure to tell customers this limitation in their salesforce is itself a deception and a material omission as it prevents investors from protecting themselves by gong to another investment or hiring their own financial advisor with these qualifications among other things.

407.   Civil Code 1770 (a)(19) prevents inserting an unconscionable provision in the contract. Many unconscionable provisions are covered in in the contracts between the parties particularly in the purchase agreement.

408.   Going around and hiding facts that are important to investors are not permitted, yet that is exactly what Defendants did. They scrubbed negative ratings from the internet so that when people looked online, they could not get the real facts. Plus, a lot of facts as outlined in the Gloria Wok declaration, was known to them but none of that is portrayed on their website, making their story one-sided, unfair, and unbalanced. This is a violation of the anti-fraud provision and many provisions of Civil Code §1770 because it goes to the identity of the product plaintiff bought. Whatever it was and public comments were hidden.

409.   By reason of the above-mentioned facts and all facts set forth in this compliant, activities of Defendants constitute a violation of the Consumer legal remedies act as set forth in Civil Code 1770 et seq. through 1782 et seq.

410.   By reason of the letter Plaintiffs submitted to Defendants dated July 19, 2022, sent via certified mail, and many follow up emails and phone calls to Defendants counsel, Defendants did not provide any correction, repair, replacement, or other remedy including rescission in the 30 days allowed

by the code. Because of these violations of California Civil Code §1770 et seq. Plaintiffs are entitled to the damages and remedies set forth in California Civil Code §17802.

411. Plaintiffs suffered harm by reason of the conduct alleged above in violation of Civil Code §1770 et seq.

412. Plaintiff seeks all damages allowed under Civil Code Section 1780, including actual and punctual damages and other reliefs the Court finds applicable such as attorney's fees.

413. DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFF and constitutes oppression, fraud, and malice such that punitive damages are appropriate, and hereby requested under either Civil Code 3294 or 3345 or both.

**NINETEENTH CAUSE OF ACTION:**
**INJUNCTION/CONSTRUCTIVE TRUST/RECEIVERSHIP**
**Against**
**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

414. Plaintiffs incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

415. This cause of action relates to DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO.

416. Plaintiff investors request constructive trust and/or a necessary receiver be appointed to liquidate Defendants' assets necessary to make Plaintiffs whole and/or to prevent injustice. All proceeds that have been diverted need to be accounted for and distributed to Plaintiffs. Plaintiff investors request a constructive trust be imposed on all proceeds generated by Defendants or their operations to the full

extent of the law. Plaintiff investors seek injunctive relief to shut down Defendants or to prohibit Defendants from continuing to do business in the present form without approval and should only be able to continue to do business on terms that protect the public. Plaintiffs seek preliminary and permanent injunctive and equitable relief. When balancing the end benefit and the harm done by the sale of these investments, the harm outweighs the benefit and the irreparable harm will occur if injunctive and equitable relief is not granted.

417.    Plaintiffs seek any remedies and damages requested in other causes of actions alleged herein or available by law to prevent repeat violations and Defendants from continuing to create public deception surrounding this investment.

418.    In addition to the above-mentioned remedies, Plaintiffs have been damaged, in having to suffer significant losses as above described, including pain and suffering, loss of the use of their money, loss of interest or the loss of the value of a well-managed account, loss of their principal, all to the tune of approximately $20,000,000, including accrued interest, for which Plaintiffs seek reimbursement.

419.    Plaintiff seek attorney fees pursuant to Cal. Civ. Code § 1021.5 for plaintiff's attorney services rendered a significant benefit for the public good as described more fully at Cal. Civ. Code §1021.5.

## TWENTIETH CAUSE OF ACTION:
### ALTER EGO
#### Against
**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

420.  Plaintiffs incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

421.  This cause of action involves DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC., RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT,

LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO.

422.  Defendants' corporate identities should be disregarded. They should all be found vicariously liable for each other's misconduct because they are all a part of it and they have subsumed Plaintiffs' assets (or assets in companies that were for the benefit of Plaintiffs) to their advantage and to the Plaintiff investors' disadvantage, basically leaving Plaintiffs with nothing. Therefore, any of the Defendant corporations or individuals named herein that participated in any way in this should be pierced and/or declared liable under the alter ego doctrine. These entities used the illusion that they were separate entities when they were not, or the law does not consider them such. They used the illusion that they were subsidiaries when they were not. They were all being controlled by the same person or Defendant entity or motivated by some common goal that puts all Defendants in the same category helping solicit or raise investor funds and eventually turning those funds for their own benefit and personal gain contrary to the investment as proposed to Plaintiffs.

423.  Further, a corporate form of legal issues transfers assets out of fraudulent investor situations to self-dealing invasive corporate activities and structures should be set aside and declared illegal. In the alternative, the money should be disgorged, and profits of unjust conduct should be disgorged and returned to investors. Finally, these companies and persons were at all times undercapitalized for what their purposes were to do, and they need to be pierced and disregarded.

424.  Equity requires these companies and persons as one, and it promotes injustice and fraud to do otherwise.

425.  Plaintiffs have been damaged, in having to suffer significant losses as above described, including pain and suffering, loss of the use of their money, loss of interest or the loss of the value of a well-managed account, loss of their principal, all to the tune of approximately $20,000,000, including accrued interest, for which Plaintiffs seek reimbursement add to each and every party and in the investment scheme described in this complaint.

## TWENTY FIRST CAUSE OF ACTION:

87

**COMPLAINT**

## FRAUDULENT TRANSFER
### Against

**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

426.  Plaintiffs incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

427.  This cause of action relates to DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC., RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO.

428.  The Court should find actual or constructive fraud, or voidable activity that occurred here, when it comes to Defendant moving out assets from them to companies that are thought to be out of reach. Defendants are liable here under constructive fraud including California Civil Code 3439.05(A) that says, "A transfer made or obligation occurred by a debtor is voidable as to the creditor whose claim arose before the transfer was made or the obligation occurred if the debtor (in this case, all the Defendants or their predecessor companies) did the transfer and incurred the obligation without receiving reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation." That is alleged upon information and believed to be the case here. Plaintiffs have been damaged in that such activity by Defendants have left Plaintiffs without readily available sources of recourse and damage that are supposed to be paid. It is believed that one or more of the companies or persons named has acquired assets in way so as to constitute actual, constructive fraud or activity voidable by law. What has happened because of the actual or constructed fraud or the voidable activity is that all the money that

1  was available for the investors have been bled out by these Defendants. Plaintiffs herein are directly

2  injured by the activities of these Defendants.

3      429.  Plaintiffs seek all relief available by law including the return of their money, damages,

4  attorney's fees, and any other remedy enumerated herein.

5      430.  In addition to the above-mentioned remedies, Plaintiffs have been damaged, in having to

6  suffer significant losses as above described, including pain and suffering, loss of the use of their money,

7  loss of interest or the loss of the value of a well-managed account, loss of their principal, all to the tune

8  of approximately $20,000,000, including accrued interest, for which Plaintiffs seek reimbursement.

**TWENTY- SECOND CAUSE OF ACTION:**
**CONTRUCTIVE AND FRAUD**
**(Against)**

**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

    431.  Plaintiffs incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

    432.  DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC., RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO were fiduciaries supposed to be acting for the benefit of Plaintiffs.

    433.  The Defendants were the promoters, salesmen and women who were marketing, selling, and operating these investments.

    434.  There was concealment of material facts and omission of material facts that was disclosed covering critical reviews and analysis of their operation that Defendants kept from investors and in fact a concerted effort was utilized to keep basic important information from getting out and so many more things already alleged in  prior causes of action, incorporated by reference as though fully set forth

**COMPLAINT**

hereat. Defendants concealed the fact that their promise that people could get out early from the investment by getting one's principal back was not being honored consistently and was a product of manipulation. These things constitute constructive fraud as defined in Civil Code § 1573 and actionable even if actual fraud is not deemed present.

435. There were many concealments including not disclosing the real and true relationship of all the parties and entities working on the investment and the behind-the-scenes calculations. If the inner working of the investment was described, Plaintiffs would have never invested in these investments. It is believed that this concealment, and the other things referenced in the earlier paragraph was done on purpose.

436. Defendants also knew or were reckless in not knowing, and thus not telling Plaintiffs, that the investments were not a suitable investment for these Plaintiffs or in their best interest, as they were not and they should not have been sold them in violation of the laws, securities, rules, and regulations governing their product. Defendants are further liable for acting as unregistered brokers and using unlicensed people selling the security to Plaintiffs.

437. Also, Defendants did not keep Plaintiffs appraised of basic facts as described in detail above and in fact Defendants purposely made sure negative facts about Defendants and about these investments were to be taken down or scrubbed from the internet. Defendants told people they could get their money back at any time without penalty which really was not true.

438. Plaintiffs were harmed for all the reasons and in all the ways above stated in other causes of action. The above was committed by Defendants to gain an advantage over Plaintiffs.

439. Defendant's actions were a substantial factor in causing Plaintiff's present harm including the loss of their investment.

440. Plaintiff justifiably and reasonably relied on the above to their detriment.

441. Plaintiffs were substantially harmed including from not only the loss of their investment but the suffering, pain, and mental anguish that followed the loss.

442. Defendants' conduct was in reckless disregard for the rights and safety of Plaintiffs and constitutes oppression, fraud, and malice and justify punitive damages under either Civil Code 3294 or 3345 or both.

443.  Plaintiffs seek all damages available by law.

### TWENTY THIRD CAUSE OF ACTION
### RECSISSSION
### Against

**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; UMB BANK N.A.; BANK OF UTAH; FIRST WESTERN TRUST BANK DOES 1-20)**

444.  PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

445.  PLAINTIFFS were promised certain benefits above described including the right to receive their money back at any time during the investment.

446.  Defendants are refusing to honor the above although demand has been made and Defendants will not return their principal as promised except on terms not disclosed and not favorable to Plaintiffs. This is a breach of contract.

447.  Another reason for rescission is the deceit surrounding the fact that there are  high level persons that are creating, administering, conducting oversight of the sale of the investment to Plaintiffs that were and are not licensed as life agents entitled to sell life settlements and none of them are registered as having security licenses.  Also the Reliant Defendant entities that are creating and syndicating the life settlements set forth herein and sold to Plaintiffs were and are not properly registered or licensed with the Department of Insurance as a providers such that they are allowed to make life settlement sales. Therefore all sales are not authorized and therefore must be set aside. This is another reason why there is a breach of contract, why rescission is appropriate, why these investments should not have been sold, and why the companies associated with them should be shut down or enjoined from further activity, and why rescission is appropriate and should accompany this process.

448.    It turns out that other facts make rescission possible by reason of Civil Code 1689, and  the following facts which exist here:

(1)  The consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by

91
### COMPLAINT

or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.

(2)  The consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the Reliant Defendants.

(3)  The consideration for the obligation of the rescinding party becomes entirely void for cause. This is the case where the whole operation is not properly licensed including many of the salespersons as noted above.

(4)  The consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause.

(5)  The contract is unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault.

(6)  The public interest will be prejudiced by permitting the contract to stand.

449.  As to PLAINTIFF JAMES CIRILE, who never received a signed contract from RELAINT, so there is no contract or it is void and his money needs to be returned.

450.  Plaintiffs now seek their money back plus interest for not returning it promptly when requested or as a result of their breach.

451.  DEFENDANTS' failure to deliver the money as promised, or an investment that met with the promise made is a further breach of the contract for which return of Plaintiffs money is requested.

452.  Also Defendants have failed to deliver a life settlement policy that did not mature in the time represented, which also constitutes a breach.

453.  Plaintiff gave Defendants the right to rescind before bringing suit to which Defendants declined.

454.  Plaintiffs now seek their money back plus interest for not returning it promptly when requested or as a result of their breach.

455.  Because of all these reasons, Rescission is an appropriate remedy. PLAINITFFS seek rescission, which is the return of their principal, plus any payments made and interest at the appropriate legal rate. PLAINITFFS seek all fees allowed by law.

456.  PLAINTIFFS elect to void the contract and seek their money back or seek declaratory relief or damages. At a minimum, PLAINTIFFS seek their money back. In a best-case scenario, they seek the value that their investment was supposed to provide.

## **TWENTY FOURTH CAUSE OF ACTION**

**COMPLAINT**

## VIOLATION OF PENAL CODE §496
### SCOTT GRADY; BRENT BORCHERT; MARK SANSOUCY; JOEL KLEINFELD; ANDREW MURPHY

457. PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

458. It is alleged in the alternative that if the facts bear out that these policies are not left untouched in an escrow account for the benefit and protection of Plaintiff but became available for Defendants or their associates to use or manipulate or outright steel, and they in fact did this or allowed this to happen then this is alleged to be conversion and theft. This would be the kind of theft that violates Civil Code Section 496 prohibits and allows a civil penalty. For purposes of this complaint, it is alleged in the alternative, and upon information and belief, that the persons listed above qualify as persons receiving money that has been stolen or has been obtained in a manner constituting theft or extortion, knowing the property to be stolen or obtained, wrongfully.

459. In addition, GRADY, SANSOUCY, MURPHY, BORCHERT, and KLIENFELD engaged in activity that amounts to receiving or buying property that has been stolen or obtained in a manner that constitutes theft or extortion, knowing the property to be stolen or obtained by concealing, selling, and withholding these policies in violation of Penal Code §486. Said activity would involve withholding the property that flowed from investor money. It is alleged that these Defendants did it knowing they were wrongfully using investor money or investor policies and they were not giving them what was represented or the benefit of the death benefit from the multiple insurance policies the Plaintiff investors bought. Also the way Defendants moved these insurance policies around constitutes theft of these policies in violation of Penal Code §486.

460. The named Defendants received a salary or compensation or profit distribution that is derived from the illegal proceeds of Plaintiffs' theft above described.

461. By reason of the above violation and by reason of Plaintiffs losing the value of their money, Plaintiffs seek all relief allowed by this statute, which is three times the amount of their actual loss plus costs and reasonable attorney's fees.

Wherefore, PLAINTIFFS pray for judgment against the DEFENDANTS as follows:

1.  For general damages of no less than $5,000,000 or according to proof at trial;

2.  For special damages according to proof at trial;

3.  Damages for pain suffering and mental anguish;

4.  Declaratory relief;

5.  Rescission/return of all money plus pre-judgement interest;

6.  Injunctive and equitable remedies;

7.  Punitive damages as allowed by law;

8.  For costs of suit incurred herein; and attorney fees as allowed by law;

9.  For such other and further relief as this Court deems just and proper.


Dated: December 6, 2022                         MURRIN LAW FIRM

                                                J. Owen Murrin
                                                Attorney for PLAINTIFF INVESTORS

**COMPLAINT**

**DECLARATION OF J. OWEN MURRIN PURSUANT TO CIVIL CODE §1780 (D):**

I, J. Owen Murrin, make the following declaration on behalf of Plaintiffs, particularly lead Plaintiff Ed Baeza, based upon my own knowledge, and believe the information set forth herein to be reliable and admissible and if called upon as a witness, I could and would testify competently thereto regarding the following:

1. At all times herein, all activities and contacts the subject of this matter occurred in California, and the class is California based.

2.  The lead Plaintiff, Ed Baeza resided in Los Angeles County, in the city of Los Angeles when he bought his securities from the relevent Defendants.  He therefore sustained all his losses in Los Angeles Country.  He presently still lives in Los Angeles, Los Angeles, Country, California. A substantial number of other Plaintiffs in this action also reside or did business related to this matter in Los Angeles County, California.

3. The key Defendants reside in L.A. where the corporate headquarters are.

4. Therefore, jurisdiction and venue is proper in California Superior Court, Los Angeles County. Civil Code § 1780 (d).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.


Dated: December 6, 2022




_____
J. Owen Murrin

**COMPLAINT**

Exhibit A

1   J. Owen Murrin, (75329)
    Murrin Law Firm
2   7045 E. Los Santos Drive
    Long Beach, CA 90815
3   (562) 342-3011
    Fax: 562-724-7007
4

5   Attorney for Plaintiffs
    Brad Lawrence and OFG Investors 1-10
6

7            SUPERIOR COURT OF THE STATE OF CALIFORNIA

8            COUNTY OF LOS ANGELES – NORTHWEST DISTRICT

9

10  RELIANT LIFE SHARES, LLC,  a California )   **Court File No. LC098847**
11  limited liability Company,              )   **[Consolidated: BC500253; BC496876]**
                                            )
12                  Plaintiff,              )   Assigned to: Hon. Frank Johnson
                                            )   Dept. NWT
13          vs.                             )
                                            )   Complaint Filed: November 2, 2012
14  BRAD LAWRENCE, an individual; and       )   Trial Date: August 18, 2014
    Does1 through 10, inclusive,            )
15                                          )
                                            )
16                  Defendants.             )   **DECLARATION OF GLORIA**
                                            )   **GLENING WOLK**
17  AND ALL RELATED CROSS-ACTIONS           )
                                            )
18

19

20          <u>**DECLARATION OF GLORIA GLENING WOLK**</u>

21      Declaration of Gloria Glening Wolk attached hereto as Exhibit "A"

22

23

24

25

26

27

28

### Gloria Grening Wolk MSW
#### Consumer Advocate, Author, Consultant
14460 Falls of Neuse Rd. #149-247      Raleigh, NC 27614
Ph 888.798.BOOK  Fax 815-572-9707  email: ggwolk@Viatical-Expert.net

1.      I declare under penalty of perjury that the following statements are true to the best of my knowledge and belief, and are based on first-hand experience or upon information deemed reliable and admissable.

2.      I am known internationally as the preeminent expert on the viatical and life settlements industry. This is the result of my books, an extensive website (at times as many as 300 pages), and columns written about me by leading financial journalists such as Jane Bryant Quinn of Newsweek and Kathy Kristof of the Los Angeles Times.

3.      My study of this industry began in the early 1990s at AIDS Services Foundation, Orange County, California. As a volunteer at ASF, I combined my training and experience in financial services and social work. When increasing numbers of clients requested advice about selling their life insurance, I decided to learn everything possible about the new industry that offered this unusual financial option.

4.      I sent for information from viatical companies licensed by the California department of insurance (CDI) and conducted phone interviews. California was one of the first states to enact a statute intended to protect terminally ill insureds. Through this research I stumbled on evidence that Life Partners Inc. of Waco, Texas, which was not licensed in this state, illegally transacted business in California. The department of insurance was aware of this, but had no proof. I gave them proof–documents mailed to me by their local broker. An investigator for CDI visited my home and took a deposition. In 1996 CDI conducted an administrative hearing and issued a cease and desist order for Life Partners. I was brought to San Francisco as a witness for the hearing, and Life Partners

-1-

Exhibit A p.2

now knew I was responsible.

5.    Although Life Partners Inc. (LPI) is not a party to this litigation, I intend to describe how their tactics to intimidate and silence witnesses were adopted by other companies, including the Defendants. For example, since the day of the administrative hearing in San Francisco, Life Partners has considered me an enemy. Life Partners filed a SLAPP lawsuit against me in Texas and continues to harass me. It is somewhat consoling to know I am in good company. LPI also sued the SEC attorney who sued the company; the securities commissioner of North Dakota who warned about them; the California department of insurance; the Virginia insurance commissioner; etc. etc. This tactic was adopted by Reliant, as will be shown later in this declaration. In effect, Life Partners won because defending their lawsuits is costly. It is costly not just for individuals like plaintiff Brad Lawrence and me, but costly for state agencies. Life Partners abused the system with success. States and the federal government backed off, with the result that Life Partners operated above the law for years, continuing to defraud insureds as well as investors.

6.    In 1997, months after the San Francisco hearing, I published the first book about this industry. The purpose was to help terminally ill insureds avoid being defrauded when they sold their life insurance. The foreword was written by Ralph Nader, the afterword by J. Robert Hunter of the Consumer Federation of America; there were many laudatory reviews, and the book sold widely throughout the nation.

7.    No other books about the industry existed. Thus, when investors sought a book about viatical investments, some book stores gave them my phone number and advised them to inquire whether such a book was in the pipeline. The inquiries increased and led to the next book, an expose of investment fraud, "Viatical Settlements: An

Investor's Guide."

8.      This is the book that established my reputation world-wide, and led to invitations to address the North American Securities Administrators Association (NASAA), the National Conference of Insurance Legislators (NCOIL), the National Association of Insurance Commissioners (NAIC), and the House of Representatives Financial Services subcommittee.

9.      I agreed to help when George Crawford, senior enforcement attorney with California's department of corporations, asked my assistance with enacting a statute to define viatical investments as securities. I was asked to testify at a hearing of the Indiana legislature for the same purpose. And then came requests from investigators, both state and federal. And from a district attorney in northern California, who hired me as an expert witness against the perpetrator of viatical investment fraud. And requests from attorneys in many states who represented fraud victims, either terminally ill or investors.

10.     I have since published three more books on the industry. I edited, "Viatical Litigation: Principles & Practice," and rewrote the Investor's Guide to include life settlements and new information about predicting life expectancy, and about the problems when a settlement company files for bankruptcy or is placed in receivership. Recently, I published my first fiction, a legal novel based on viatical and life settlement fraud.

11.     I am proud to qualify as a member of Investigative Reporters & Editors, an organization that honors as well as promotes the mission of journalism as a watchdog. I am the most reviled watchdog of this industry—reviled by the con artists who prey on the unsuspecting and the vulnerable. Unlike those who write about this industry from the safety of reporting about what government agencies expose, I expose misrepresentation and deceit and outright fraud when I have proof. I take the risk because no one else will do so,

-3-

and the best way to protect the public is to make them aware of the danger before they step on a land mine.

12.     The investors who are Plaintiffs in this suit stepped on a land mine. If the truth is not revealed in this court, these Plaintiffs will step on another land mine. Their legal advocate is a solo practitioner. Like every other attorney with whom I have worked over the years, he was not familiar with this unusual industry when the clients approached him. He did recognize the fraud inherent in the transaction, but he had a steep learning curve. Can victimized investors who are represented by a solo practitioner prevail when the opponents have millions of dollars and can spend without limit--as deductions on their business tax returns? The history of this industry is replete with these David-Goliath cases. And the con artists who perpetuate these frauds become wealthy not through hard work, not through education, not through any skill or talent other than their ability to deceive.

13.     This is not hyperbole. Several of the Defendants have an unsavory history that, if known to the Plaintiffs before they invested, would have convinced them to lock away their check books.

### BRIAN P. MCGUANE

14.     His claim is true: Brian McGuane was employed as a securities broker for several years. What he does not reveal is that he went through a series of FINRA-registered broker dealers, his tenure rarely lasting longer than a few months. Today, he claims that Raymond James was one of these companies--but not verifiable through FINRA. It is doubtful he was successful during those years, but then McGuane moved into an an unregulated investment arena--viatical and life settlements--and this brought almost overnight wealth. The reason is that sales agents and promoters are paid immediately. They do not have to wait for someone to die. They take no risk.

-4-

- His North Carolina business, Omni Advisor Group, sold fractionalized shares (percentages) of the death benefits of strangers' life insurance to naive investors.

- The sale force was recruited from many states, but McGuane never troubled to register with the securities agency of any state.

15. The year 2002 was pivotal. Maryland issued orders to McGuane and Omni, prohibiting future sales of unregistered securities. Utah charged McGuane and Omni Advisor Group with securities fraud. North Carolina—where McGuane was domiciled—enacted legislation to address viatical investments, and began investigating Omni and McGuane. The McGuanes prepared to flee. In 2002 Mrs. Jeri McGuane filed a corporate name, Oxford Financial Group, in California. It was not a unique name; possibly they planned to tread on the reputations of established companies in other states.

16. Due to numerous inquiries from investors, some of whom sent me their documents, I posted a warning on my website about doing business with McGuane and Omni. And in 2003 North Carolina issued cease and desist orders to McGuane and Omni for violating state securities law. The McGuanes packed up. They rented a luxury house in southern California, where Brian McGuane continued business-as-usual, using the new name of Oxford Financial Group.

17. But he did not elude state regulators. They were barely unpacked when Oregon and Iowa charged McGuane and Omni with sales of unregistered securities (again, fractionalized life insurance policies). The Oregon orders show that McGuane "incorrectly notified the Director that it had 'ceased all advertising'" in Oregon and no longer sold investments to Oregon residents. "Incorrectly" is a mild term. Oregon identified additional investors who were taken in after that date by the sales pitches of Omni agents. Oregon

Exhibit A p.6

charged McGuane with three felony counts, and he was convicted.

18.     February 2004 was when Oregon, Omni and McGuane settled—a civil penalty of $100 thousand plus recission of the investments with refunds that included nine percent interest per annum, payable from the date of the purchase. The Director would oversee and assure that the terms of the settlement were met.

19.     In 2005 investors from Texas, Utah, and Colorado contacted me about their 2002 purchases. None had losses great enough to interest an attorney, nor was the total sufficient for a federal lawsuit. I advised them to file complaints with their state securities regulators. Two years later an attorney contacted me for yet another investor. He was concerned that McGuane seemed to have no assets that would make a lawsuit worth the expense. I could not help; my expertise did not extend to tracing assets. And, of course, McGuane was now operating as Oxford Financial Group. For this business, he employed as escrow trustee a company that had performed these services for many years and for many viatical and life settlement companies—Mills, Potoczak of Ohio.

20.     Then, in June 2010 the Roseberry Family Trust sued McGuane and Omni in federal court in Nevada. Their investment dated from 2002, when Omni operated out of North Carolina. Among other problems, McGuane took cash loans out of the policies. Loans decrease the death benefit and loan interest, if not paid, further decreases the death benefit. Premiums were overdue. The Court ordered the loans repaid and premiums kept up-to-date, and appointed a special master to assure these events occurred.

21.     To track the insureds whose policies were turned into investments, McGuane used Viatical Services, Inc.—an affiliate of the infamous Mutual Benefits Corp. The complaint filed on May 3, 2004 by the Securities and Exchange Commission against Mutual Benefits Corp. (MBC) and affiliates, described Viatical Services, Inc. as "a Florida

-6-

corporation incorporated in March 1996 and located at MBC's principal offices in Fort Lauderdale, Florida. Although VSI's corporate filing lists Ameer Khan as its president, it is in fact controlled by J. Steinger."

22.   Joel Steinger was the "closet" CEO of the companies. Due to a previous fraud conviction, he could not openly control the companies.

23.   The registered agent for MBC, VSI and other entities was attorney Michael J. McNerney. On December 23, 2008 McNerney was indicted by the federal government, along with the Steinger brothers (MBC's principals) and Anthony Livoti, Jr., an attorney who claimed to be an independent "premium trustee." McNerney was MBC's initial escrow agent, among other duties. Thirteen convictions resulted, among them:

- Attorney McNerney took a guilty plea and was sentenced to five years.
- Attorney Livoti was found guilty at trial and sentenced to ten years.
- Peter Lombardi, president of MBC, took a guilty plea and was sentenced to 20 years.
- Steven Steinger was found guilty at trial and sentenced to fifteen years.
- Leslie Steinger died of pancreatic cancer before trial.
- Joel Steinger, the mastermind, took a guilty plea and will be sentenced in July 2014.

24.   Mutual Benefits Corp. was the largest fraud in an industry rife with fraud. It had revenues in excess of $1.3 billion dollars, more than 28 thousand investors world-wide, and many unindicted co-conspirators.

- Among the unindicted co-conspirators is Brian McGuane, who used Oxford Financial Group monies to pay for tracking with MBC's Viatical Services, Inc.
- Evidence of this is at page 6 of the purchase agreement with Brad Lawrence.

26. MBC was shuttered, but McGuane continued to operate Oxford Financial Group–until an investigation by the California department of corporations resulted in desist and refrain orders in 2011. McGuane decided to settle, and on February 2, 2012, represented by attorney Christopher Erwin, McGuane signed an agreement to suspend business. That was all. No penalty. No reimbursement to investors.

- Mrs. McGuane, the president-on-paper for the company, was not a party to the agreement.

- The first thing McGuane did after agreeing to the immediate suspension was to appoint a new trustee for the OFG trust. He chose an attorney under investigation by the bar, David L. Kagel. Christopher Erwin quickly stepped in to advise Kagel. Unlike Kagel, Erwin had experience as trustee for a viatical and life settlements company.

27. As Brian McGuane tries to re-establish himself in this industry, he claimed to be a silent partner of Reliant. When Brad Lawrence's website noted this, Reliant sued Lawrence–not McGuane. And then, quietly, settled with McGuane, allowing him to pay $1 thousand and promise not to do that dastardly deed again.

28. As another effort to become re-established in this industry, McGuane described himself at LinkedIn as an amazing sales person and success, adding one broker-dealer who is not part of his true resume (Raymond James), and deleting anything negative. His move from North Carolina to California took on new meaning:

Brian McGuane brings to clients over fifteen years of experience in the investment field and was among the first to recognize the unique potential of the Life Settlement industry.

Brian earned his series 7 securities broker's license in 1991 and opened his own OSJ

(independent securities office) in 1995 with accounts held by Raymond James. In that endeavor he oversaw ten series 7 licensed securities brokers and managed $50 million in individual stock portfolios for approximately 100 clients.

In 1999 Brian moved his focus to the Life Settlement industry and established a company in Charlotte, NC offering these newly developed investments to individuals and small institutions. His company grew to serve 500 clients and employ 11 agents. Identifying enhanced opportunities with institutional clients, international markets and the life settlement and premium finance markets, Brian moved his company to Southern California in 2002. Since that time he has built a solid and prospering business assisting clients with innovative applications of Life Settlement investments and financing.

In addition to working with individual and institutional investors, Brian's company has expanded to serve international clients with both governmental and private funding sources in Taiwan, London, Netherlands and Cypress. Brian has been directly involved with government officials in developing the first securitized life settlement product for Taiwan. He has prospered in his endeavors because each is built upon the bedrock values of integrity, market knowledge, and respect for his clients.

### DAVID L. KAGEL

28.    Although the agreement with the department of corporations stripped McGuane of authority to take any action on behalf of OFG, he immediately appointed a new trustee. David L. Kagel replaced Mills, Potoczak, which had many years experience as trustee for numerous viatical and life settlement companies. At the time McGuane appointed him, Kagel was under investigation by the California bar. Within months the

Exhibit A p.10

investigation concluded that Kagel had earned a second suspension, that he had a nasty habit of commingling personal funds with client trust accounts, and that

- Kagel wrote checks with insufficient funds in his client trust account.
- On at least one occasion the balance in the client trust account fell to a negative $1,736.
- On August 18, 2012, finding that Kagel engaged in acts of moral turpitude, he was suspended for one year.
- The suspension was stayed and Kagel was placed on two years of probation with an eight-month actual suspension.
- Kagel also was ordered to take the MPRE and comply with rule 9.20 of the California Rules of Court.
- Kagel stipulated that he was grossly negligent in maintaining the account.

29.   Kagel's previous six month suspension, in 1997, was for committing acts of moral turpitude: filing for a client papers containing false and misleading representations with the Securities and Exchange Commission, then attempting to cover up with additional false statements. None of this was disclosed to OFG investors. Investors believed a trustee could be trusted. Nor were investors informed as to whether Kagel carried malpractice insurance.

30.   There is no evidence that Kagel had any qualifications for this important position–unless playing games with other people's money was a requirement. There is no evidence he ever served as a trustee for investors, or had any familiarity with the viatical and life settlements industry. Yet he was entrusted (by McGuane) with a $3 million investment and the future of more than two dozen investors. What is evident–through email exhibits filed with the court and sworn testimony at the deposition of Christopher

-10-

Erwin–Erwin had to advise Kagel.

31.    Kagel's first and most important act as trustee of OFG was to arrange the resale of the $3 million investment policy. It was resold for $350 thousand. Over the next three months he was paid $56,752.50 and Erwin Legal was paid $54,349.65. Investors were informed they could share the remains of the resale–$97 thousand–but only if they signed an agreement not to sue any of the parties.

## CHRISTOPHER ERWIN

32.    Chris Erwin has a predilection for associating with and providing services to unscrupulous settlement companies–as long as they pay well. His name became known through the lawsuit filed against him by the court-appointed receiver for Acelerated Benefits Corp. (dba ABC Viatical).

•    ABC had a long history of state actions against the company–Kansas, Ohio, Florida, Oklahoma, Wisconsin, Virginia, Illinois, Pennsylvania, Tennessee–beginning long before Erwin took over as escrow trustee. Two examples: in 2001 Oklahoma securities commission put all policies sold by ABC into conservatorship. And, in 2001, Florida revoked the company's viatical license and, in effect, drove them out of the state. Accelerated Benefits Corp. relocated its offices to Texas where it used the name ABC Viaticals, and continued business-as-usual. The LaMonda brothers continued to live in Florida but used Texas as a safe haven for another four years.

33.    All this information was readily available on my website. The LaMonda brothers were incensed at the facts being exposed. First, they had my website shut down by claiming copyright infringement. When the Florida department of insurance became aware of this, they issued orders charging ABC with fraud and sent me a copy of the PR.

Exhibit A p.12

- The LaMondas then filed a defamation lawsuit against me in state court in Broward County, Florida, and filed a similar lawsuit against Kiplinger's for extolling the virtues of my book and my website; and threatened a lawsuit against Ralph Nader, unless he withdrew his endorsement of my book.

- Ralph Nader sent them a scathing letter, and the lawsuits against Kiplinger's and me were failing. So the LaMondas filed another defamation lawsuit against Kiplinger's in Orange County, Florida, and a separate one against me in Orange County, Florida.

- Although the LaMondas knew I had an attorney in Broward County, they had a man who claimed to be a process server claim to serve me with the new suit at my California home. He described me as five feet seven with short, gray hair.

- When I saw that, I wrote on my website that I have never stood five-seven unless I stood on a chair, and not had short hair since I was a small child, and would never have gray hair. I saw the description of me after the LaMondas went to court to claim a default against me, and my lawyer had to take over.

- Since I knew nothing about the second lawsuit, the LaMonda's attorney was able to draft the default order. He probably submitted it to the judge on a day when he had one hundred of these to sign and did not read what he was signing. Thus, the order banned the sale of my books everywhere in the world. Had the judge read the order, he would have known better. Aside from First Amendment issues, his jurisdiction was limited to the state of Florida.

- My lawyer had to drive from one end of the state to the other to inform the judge about the facts. As expected, the judge was infuriated by these events and promptly dismissed the LaMonda's lawsuit.

Exhibit A p.13

34.    It should come as no surprise that I was delighted when, in 2005, the LaMonda brothers and their colleague, John Maynard, a disbarred attorney, were indicted in federal court in Florida. In November 2006 the SEC filed suit against ABC Viaticals in Texas and a receiver was appointed. In December 2007 the criminal trial in Florida concluded with convictions. The LaMondas were sentenced, twenty years for one brother, thirteen years for the other, and their associate John Maynard was sentenced to ten years.

35.    This is the company Chris Erwin chose as his employers. And on June 27, 2007 the SEC receiver filed a complaint against Christopher Erwin and his then-law firm, Erwin and Johnson (noted as the last in a series of trustees for ABC).

- Erwin was the one who provided the services to ABC.

- The complaint alleges that Erwin knew the premium account was severely underfunded but did nothing to remedy it other than talk to the LaMondas.

- As the criminal problems surfaced in Florida, Erwin "testified that he was increasingly concerned about both his reputation and his continued participation with ABC."

- "Apparently," the receiver commented, "money cures all because the parties agreed" to the continuation of the trustee/escrow relationship if ABC paid a $500 thousand retainer and gave Erwin & Johnson ownership of a stranger's policy with a death benefit of $1 million.

36.    As an inducement to investors, in ABC marketing materials Erwin touted that his firm carried $2 million in malpractice insurance. But he did not disclose that the premium reserve was underfunded. Nor did he disclose that he allowed the LaMondas to use the premium reserve account as their private piggy bank.

-13-

Exhibit A p.14

37.     For these and other reasons, the receiver concluded that Erwin & Johnson breached the contract with investors when they failed to perform their written obligations under the trust agreements.

38.     By functioning as a trustee, the receiver concluded, Erwin & Johnson owed the trusts and each of the beneficiaries under the trusts a fiduciary duty. Thus, Erwin & Johnson aided and abetted ABC in the breach of ABC's duties to the investors. As attorneys and in their role as trustees, they owed a duty of care to each of the trusts to use the same degree of skill, prudence, and diligence that other members of the legal profession and/or trustees commonly possess and exercise.

39.     After four years of litigation and two full days of mediation, a settlement was reached. Erwin & Johnson agreed to pay $2,250,000 to settle all claims.

40.     If insurance covered the first two million, the incentives paid to them by the LaMondas made this a worthwhile risk for Erwin—except that his partnership with Johnson dissolved soon after. Still, Erwin continued to prosper. He went on to represent Brian McGuane in his settlement with the California department of corporations, and then took on the role of attorney-advisor to McGuane's newly appointed, inexperienced trustee, Kagel. It is likely Erwin pulls the strings but has no obvious culpability.

### SMDC HOLDINGS AND RELIANT LIFE SHARES

41.     SMDC Holdings, LLC was formed September 16, 2011, two days before California issued desist and refrain orders for Oxford Financial. Christopher Erwin, who represented McGuane, also is agent for service of SMDC Holdings, and this company shares the same address as Reliant Life Shares. The two companies also share the same agent for service.

-14-

42.     The principals are SMDC are Sean Michaels and Dan Cooper, both of whom are directors of Reliant Life Shares.

43.     Unless Reliant has resold fractionalized interests, they currently own the $3 million policy purchased by more than two dozen investors. Their brochure and website make some false claims such as:

•     That Reliant was formed in 2010, when in truth it filed with the secretary of state on January 18, 2011. It is likely this "mistake" was motivated by a desire not to appear to be a new company. That may be the reason they claim the management has a combined fifty years in this industry. Five people who each have ten years experience, or ten people who each have five years experience equal fifty years. They also claim to be "pioneers" of the industry. Nope. ABC and MBC were pioneers. There also are a few, very few companies that were pioneers and who earned a good reputation. None of these men qualify as pioneers.

•     Vague statements touting the backgrounds of the managers misrepresent them. Sean Michaels claims various types of expertise as a lawyer but does not mention a single law firm with which he was associated. He also does not explain why Reliant failed to register to sell securities under California Blue Sky Laws.

•     Dan Cooper's insurance experience, supposedly dates from 1997–but this cannot be verified for California, according to the department of insurance.

### KENNETH R. MORRIS, RELIANT LIFE SHARES

44.     Ken Morris has been in the viatical and life settlements industry longer than any other person associated with the Defendants. In the 1990s he associated with Answer Care, a Maryland viatical company placed in receivership in 2000 and the principals indicted for fraud. Then there was his affiliation with Mutual Benefits Corp., the notorious

fraud factory that pulled in more than $1.3 billion from 28 thousand-plus investors worldwide before the feds shut it down in 2006. Since then Morris, who boasts of exceptional selling abilities, bounced around with a few other life settlement companies. Undoubtedly, he was not welcomed by any of the legitimate companies. In 2012 he arrived at Reliant Life Shares, was named Director of Sales and Marketing and Director of New Business. Reliant's web site boasts, "When experience and character count."

45.   In all these endeavors Morris sold viatical and life settlement investments to the public. He usually operated as a broker through companies he set up (e.g., Accelerated Success, Inc. (1996); Assured Solutions International (1996); Assured Life Equity (2004); Life Equity Consulting (2009). A high school graduate with an insurance license, he has published promotional articles in California Broker magazine, and provided training to others who want to sell life settlement investments.

46.   In 2001 Ken Morris, his Accelerated Success Inc., and related, unsavory companies and individuals were ordered to cease and desist violating Arizona securities law. Each was ordered to pay a penalty of $2.5 thousand and to provide restitution to the twelve known Arizona investors who parted with more than half a million dollars. Whatever was not immediately repaid to investors was to be paid in installments at 10 percent per annum annual interest.

47.   In 2004 Morris' Assured Solutions International LLC was served a subpoena by the California dept. of insruance for selling viatical investments without having applied for a license.  The media release from California noted that ASI's website said "the company has been serving clients since 1995 and has more than 200 agents in 21 states from New York to California." That year Morris was one of many named defendants in a class action lawsuit filed against Mutual Benefits Corp.

48.    In New Jersey federal court in August 2006 Thomas Farano, a retired parks services employee, filed suit against Assured Solutions International, Kenneth R. Morris, and several people employees at Mutual Benefits Corp. Five years earlier, in May 2001, Morris solicited Farano's $75 thousand investment, and even introduced him to Peter Lombardi, the president of Mutual Benefits Corp. Since all the events occurred in New Jersey, the lawyers who represented the plaintiff presumed this gave New Jersey jurisdiction. Month after month, they failed to serve the other parties. Although MBC now was in receivership and everyone in Florida had an attorney, these lawyers used the Internet to try to locate residences for service. And failed. As a result, the judge dismissed the suit for failure to prosecute. And Ken Morris got a free pass.

49.    Now that Morris is a key person at Reliant, the company has a duty to disclose his history to investors. It chooses not to do so. Instead, it makes these claims about Ken Morris:

> Prior to assuming his role, Mr. Morris spent much of his tenure (17 years) raising capital for international companies through accredited investors channels. Mr. Morris also owned his own life settlement brokerage firm; he was also instrumental in starting a national life settlement provider firm which ended up securing a $225MM line of credit from one of Germany's largest institutional banks. Ken has negotiated the buys for the providers' portfolio totaling well over $1 billion in face value. In the past couple of decades Mr. Morris has built valuable relationships which are crucial to Reliant Life Shares success. His tenured past compliments Reliant Life Shares desire to continually capitalize on leading and growing the activity level of existing partnerships while establishing new partner relationships.

## SCOTT LAFORCE GRADY OF RELIANT LIFE SHARES

50.   Scott Grady became a disbarred California attorney on July 10, 2009 when he was found to have violated probation conditions from earlier disciplinary orders. Grady had three prior disciplinary hearings, based on charges that included failure to pay court-ordered sanctions, failure to deposit client funds in a trust account. Because Grady did not learn from his mistakes, because he was repeatedly suspended and repeatedly violated probation conditions, the hearing officers concluded that Grady's disbarment was necessary "to protect the public."

51.   Today, Grady is Chief Acquisitions Officer at Reliant. The company brochure describes him as follows:

Over the last eight years, Mr. Grady has reviewed over 10,000 life settlement policies while transacting over $1 billion worth of deals. He has extensive experience selecting these assets from a variety of sources around the globe. Mr. Grady uses this network of life settlement suppliers to review approximately 100 policies per month at Reliant. Often he ends up choosing only one (or none) because he is always in search of the best deals for the benefit of the Investors. Mr. Grady also built this Reliant website, investor video, and brochure.

52.   How does this description protect the public from repeat offenders like Scott Grady? Is the public protected from repeat offenders like Ken Morris, David Kagel, and Chris Erwin? Do Ken Morris and Scott Brady suggest a failure of due diligence on the part of Reliant? Or worse?

-18-

## SHUTTING OFF THOSE WHO CRITICIZE

53.     When investor Brad Lawrence wanted to contact all investors to find a better solution to their loss than what these entities proposed, he was told the law prohibited the release of investor names. This is not true. But he still trusted the people described above, and so he started a sub-website to try to get fellow investors to contact him. One of the comments on the website was that Brian McGuane was working with Reliant.

54.     Reliant filed suit against Lawrence–although he did take down the website, out of fear of that exact thing happening. This is painfully familiar to me. My extensive website, www.Viatical-Expert.net, exposed Mutual Benefits Corp., citing all the states that found MBC violated securities laws and citing many civil lawsuits. MBC then threatened to sue me for trademark violation–the use of their initials. I checked and found MBC had never registered a trademark with either the state of Florida or the federal trademark office.

55.     Although Mutual Benefits Corp. had no proof I violated their trademark, they went ahead and filed suit against me. And also charged me with violations of the Lanham Act–as if I were a competitor and was stealing business from them. But every page of my website had the statement near the top: "We do not Buy or Sell Viatical Contracts." I am sure that anyone looking to sell a policy or invest would immediately go elsewhere.

56.     MBC's lawsuit was a garden variety SLAPP suit–a Strategic Lawsuit Against Public Participation. Typical of SLAPP suits, a wealthy company sues an individual who criticizes their business practices. They chill free speech when they silence criticism that would inform the public. Their wealth often accomplishes what they intend, and more. The target of a SLAPP suffers financially, which serves as a deterrent to anyone else who might be inclined to criticize them. While individuals like Brad Lawrence and me have to finance

our defense through earnings or savings or both, wealthy companies like MBC, ABC, Life Partners, and Reliant can write off their legal expenses on business tax returns.

57.     The abuse of process and dirty tactics used against me were used against Brad Lawrence, the Plaintiffs, and their attorney.

•     First, Reliant and its attorneys knew it was true that McGuane claimed to be working with Reliant, as Lawrence posted. The proof is the settlement agreement between Reliant and McGuane. That agreement, dated October 10, 2012, states that McGuane "represented to the public that he is an owner, has an ownership interest in, and is associated with Reliant."

•     Thus, it is clear that if anyone caused harm to Reliant, it was McGuane—not Lawrence. Yet Reliant sued Lawrence. It does not demand sophisticated analytical skills to conclude that the SLAPP suit against Lawrence was an intimidation tactic suspiciously like those used against me by companies with which Erwin and Morris have been affiliated.

58.     Secondly, the declaration from Mack Brown in support of Reliant's SLAPP suit is phony.

•     Mack Brown's declaration omitted an address and phone number for himself and, more significantly, an address and phone number for Beneficial Investment Group. The California secretary of state's website shows the company began November 22, 2011 and now is dissolved. The agent for service, Michael Raynor, is not listed with the California bar and is impossible to locate. These omissions prevent verifying anything in the declaration as well as verifying that Brown ever worked at Beneficial, or that Beneficial was a marketing company for Reliant. Reliant may claim they subcontracted with Beneficial, but it should be obvious by now that any statements from this company are likely to bend the truth.

-20-

- And if the above omissions were provided, Brown's statement still should not be acceptable to the Court without supporting evidence: proof of his employment; his job title and duties; dates and times of alleged phone calls inquiring about McGuane and Reliant; contact information for those who made these inquiries (to verify that the callers were genuine investors, and the amount of investment they placed with another company instead of Reliant).

- An internet search for Beneficial Investment Group in California shows a company located with a direct number of 818-787-2372. As a marketing company, they call out, resulting in spam complaints. (See, http://mrnumber.com). A reverse search with that phone number has an interesting result–Reliant Life Shares. That result includes an endorsement from one of the people hired to write endorsements for companies. Possibly, that was another of Mack Brown's duties. It is likely he found this employment through craigslist.

- Brown's declaration raises another issue: the ethics of Defendants' attorneys who proffered a declaration of this nature. It is less astonishing when considered in light of their motion for sanctions–another example of abuse of process. The dominant theme of that motion is that the lawsuit against Reliant is frivolous. It clearly is not frivolous.

59.    Abuse of process is the modus operandi of companies like MBC, ABC, LPI, and Reliant. The SLAPP suit against Lawrence is one example. The refusal to comply with discovery is yet another. The motion for sanctions is another example. This attack on Plaintiffs' attorney is intended to derail the Plaintiffs' right to access to the courts, and their effort to get redress for their injuries.

60.    I am incensed at what Defendants and their attorneys are doing because I have been the target of similar SLAPP suits and false accusations, all filed by bottom

feeders of this industry. These meritless lawsuits need to be exposed because they serve to identify companies that should be avoided.

61.    In addition to these lawsuits, I've been subjected to harassing phone calls, threatening phone calls, and threatening email. They did not silence me. I persist in exposing these companies because I know I have prevented serious harm to many people. It is time for Reliant to be exposed. The public deserves that protection.

I can document every statement. If the court wishes for the documents, just ask. An email request will do, and I can respond with email attachments.


If anyone wants to depose me in Raleigh, North Carolina, I am willing to cooperate. Currently I have a mobility problem, due to an accident, but I want to help these defrauded investors. And I do not want to see a company like Reliant prevail. That would embolden them to victimize many others, and to use the courts to silence critics.


Signed under penalty of perjury under the laws of the United States of America and the states of North Carolina and California.


June _____2014                         _____

                                                      Gloria Grening Wolk, MSW

-22-

feeders of this industry. These meritless lawsuits need to be exposed because they serve to identify companies that should be avoided.

61.    In addition to these lawsuits, I've been subjected to harassing phone calls, threatening phone calls, and threatening email. They did not silence me. I persist in exposing these companies because I know I have prevented serious harm to many people. It is time for Reliant to be exposed. The public deserves that protection.

I can document every statement. If the court wishes for the documents, just ask. An email request will do, and I can respond with email attachments.

If anyone wants to depose me in Raleigh, North Carolina, I am willing to cooperate. Currently I have a mobility problem, due to an accident, but I want to help these defrauded investors. And I do not want to see a company like Reliant prevail. That would embolden them to victimize many others, and to use the courts to silence critics.

Signed under penalty of perjury under the laws of the United States of America and the states of North Carolina and California.

June 26, 2014

Gloria Grening Wolk, MSW

Exhibit B



# NEWSLETTER

August 2013 Volume I Issue III

○ *Warren Buffett's Berkshire Hathaway Confirms $300M Purchase*

— *LATEST NEWS & EVENTS* —



*Berkshire Hathaway Strikes Again*

According to The Deal's Life Settlement Report, Warren Buffett's Berkshire Hathaway Life Insurance Company confirmed the purchase of a $300 million life settlement portfolio in July.

Berkshire paid $60 million to acquire the 100+ policy portfolio. Berkshire was represented by law firm Stroock & Stroock & Lavan LLP in the transaction.

The recent investment confirms Berkshire's commitment to the market, having been active in the space since 2001, when Berkshire subsidiary Gen Re arranged a $400 million financing facility for a Minnesota provider.

Mike Lawler, Vice President of Berkshire's insurance company, told The Deal that the company anticipates earning an internal rate of return of "less than 20%," noting that the age distributions of the insureds in the portfolio were typical of what he's seen in the market.

Berkshire's continued activity will inspire even more confidence in the asset class. "We're open to other investments in this space," Mr. Lawler continued. "We're going to look at other opportunities as they come to us."

With respect to his company's life settlement investments, Mr. Buffett keeps good company. Fellow billionaire and bridge partner Bill Gates has invested more than $500 million of his personal net worth in the asset class.

Exhibit B p.2

# Exhibit 2



Exhibit 2 p. 1

Exhibit 2 p. 2



Exhibit 16

2021-05-16  SENT DFPI IN PROGRSS AS 2021-05-19

In 2019, I met Larry at a Convention in Los Angeles, CA. I got interested in the Fractional Life
Shares for two reasons: 1. Larry assured me that I could get out of these plans at any time. 2. The
plans will earn an interest of 6.7 %. In February 2020, my wife and I transferred our 401K plan
to buy some fractional life shares. Since we did not hear from Larry in different telephone
attempts, I assumed that he did not invest our money; on September 15, 2020, I emailed him
canceling the plan and requesting the funds' withdrawal. After that, Larry contacted us,
apologized for not keeping in touch, and informed us that the plans were active and two
certificates matured. Then, he asked us to make an appointment to renew those matured
certificates.

At the next meeting with Larry, we renewed the supposed matured certificates. Larry assured us
that would reflect the increase of our IRAs balances in the next couple of months (we still did not
receive those funds from the matured certificates.) Also, at that meeting, I asked Larry again how
we could get our funds if we decide to cancel those investments, and he responded that we could
cancel this contract at any time. Then the Company will sell our certificates to other investors.
He also promised us that the Company would pay interest on the investments. Based on that
information, We decided to invest more money in Fractional Life Shares.

This Company and Larry are deceiving the public when selling their product. Following are
some lies from Larry to us from the beginning; He assured us that We might evacuate this plan at
any time and earn interest in the program. Matured certificates don't get paid. Attached are forms
signed by Vincent Bovino testifying that He explained the plan's terms; however, Larry always
came by himself only to our house. Larry promised us to pay the First-year for our IRA'S
Provident Trust fees; on the contrary,  He does not communicate with us at all.

Thank you so much for your time in this matter, and I'm hoping you will conduct a full
investigation and force this Company to return our investments.

Best regards,

Ed Baeza

Exhibit 16

Exhibit 25

TO: ANDREW MURPHY                    10/22/17

I SAW YOUR AD ON MY E/MAIL.
MAC BROWN NEVER DISCLOSED THAT I WOULD
BE RESPONSIBLE FOR THE PREMIUM OF
$3442.49 I PAID IN JULY OF 2017. I TALKED
TO MARK SANSUNCY EARLIER THIS YEAR
AND HE SAID I AGREED TO PAY THE PREMIUM
ON PAGE 16. I HAVEN'T FOUND THAT PAGE.
PLEASE SEND IT TO ME AT P.O. BOX 1704
SAUSALITO, CA  94966

                              S H Frank

Exhibit 25 p.1

Exhibit 26

12/13/2021

RESPONSE: **Complaint was not answered** Amount in Dispute: **$4,091.48** Amount Settled: **$0.00**

**Customer Complaint**

11/17/2021

Consumer alleges: I received $16,113.52 with Reliant Life Shares and Provident Trust portfolio 3447 on 10/25/2021. I would like the leftover $4,091.48 balance left in my account Reliant Life Shares but Mark Sansoucy is stonewalling and won't pay me what is mine. I just want to liquidate my account and close it after I receive the funds. I invested $29,300.00 on Oct.1 2016, with Reliant Life Shares 15260 Ventura Blvd Ste 1420 Sherman Oaks, CA 91403 office phone 818 788 1904. Please help me this all I have towards retirement.**Resolution Sought**I would like the leftover $4,091.48 balance left in my account.

8/2/2021

RESPONSE: **Refuse to adjust, relying on terms of agreement** Amount in Dispute: **$48,000.00** Amount Settled: **$0.00**

**Customer Complaint**

5/5/2021

I have written several times to Mr. Mark Sansoucy that the reports he rarely sends to me about health status of the policy makers read exactly the same year after year ( is a cut and paste message) and that I thought they were not complying with checking on the status of the policies specially during COVID 19 that affected the majority of their clients who live in nursery homes. He told me he had forwarded my complaint to the President of Reliant Life Shares: Scott Grady who never contacted me. In fact in a recent email Sansoucy told me that I should call Insurance company and ask if the policy is In force. These people are using our money and not doing their job, they don't answer emails.. I see many complaints from many customers against Reliant Shares and I am wondering if this business is a scam. Every year we keep paying them premiums for policies that we don't even know they are in force because the company does not check as they should. I will not pay any further premiums until I get an acceptable and accurate answer to my queries which to answer they will have to get an update from a doctor on the health status of their customers and if policies are in force.**Resolution Sought**I would like Reliant Shares to return the $48,000 that I invested in 4 policies on the basis that they have not comply with their duties as specified in the contract. Alternatively they should find a buyer for my policies as soon as possible so I can get my money back. I also would like to get a legal certificate from a relevant government institution stating that ReliantShares is a legal company and that complies with the law.

Exhibit 26 p.1

**Company Response**

5/31/2021

Reliant Life Shares has been in continual operation since 2011, serving thousands of investors in life settlements, working closely with trustees at the nation's largest banks, who manage and protect the life settlement assets on behalf of investors, and distribute the proceeds directly to the investors. Since its inception, Reliant investors have earned 16 annualized rates of returns, and this percentage does not include a policy that matured earlier than expected, in the interests of being conservative in our descriptions. Your statement that people are not doing their jobs is unfair. Every voicemail is recorded and transcribed. Every call is answered and distributed. As to health tracking, we understand some of the frustration, and have taken steps to improve health tracking with a new outside services provider. Your statement that you will refuse to pay premiums is not a wise way for you to participate in your valuable investment. We look forward to talking to you about your account and your options. You may find the company's corporate filings at www.sos.ca.gov

**Customer Rebuttal**

7/21/2021

The answer from the Company does not address my complaint that they have not provided me with up to date information on the health status of insured under the policies that I hold. They state that they understand some of my frustration, and that they have taken steps to improve health tracking with a new outside services provider. So far no information provided by the outside services provider. I detect no difference in their efficiency in reporting to me on a timely manner. Since they hold our money is easy for them to "threaten" customers with an answer such as " not to pay premiums is not a wise way for you to participate in your valuable investment", while they dont comply with their end of the deal. Other than saying to customers that you signed a contract and the terms under it, they refuse to to settle or adjust premiums and force people to pay. It may be time to contact directly the Office of the Attorney general of the State of California.

5/4/2021

RESPONSE: **Refuse to adjust, relying on terms of agreement** Amount in Dispute: **$11,000.00** Amount Settled: **$0.00**

**Customer Complaint**

3/29/2021

I was not given an accurate idea of the costs to cover annual premium payments. The payments are different on each of my 5 accounts. They are arbitrary and increasing in amount. My most recent bill on one account was for 2,370 to keep a 12,000 policy alive. I have paid approximately 1,300 a year for the past 4 years to keep this account alive. The guaranteed payoff for the account is 15,960. This is the investment from hell.**Resolution Sought**I would like the company to substantially reduce the

Exhibit 26 p.2

premium payments to the possible couple of hundred dollars that was indicated to me when I

purchased the policies. I have already paid a lot more than I ever thought I would have to pay.

**Company Response**

4/20/2021

You invested $60,000 in 5 policies, acquiring $86,160 in policy benefits, for a return on investment of 30.362, although additional premiums will lower the percentage. We are disappointed that you publicly report being misinformed because the documents you reviewed, initialed, and signed specifically illustrate and repeatedly disclose the investor's responsibility for future premium payments beyond life expectancy. The Policy Premium Projection specifically identifies the dollar amount of premium required to be paid by the Investor to keep the policy in force in the event the insured outlives the premium reserve fund. The Life Settlement Disclosure Form specifically informs every investor that: "In the event the premium reserves described in the Life Settlement Purchase Agreement are exhausted or has past the premium escrow date, only then will Purchaser be responsible for a payment of their pro-rata share of any unpaid premiums that become due to keep this policy in force." To be clear, Reliant never sets the annual premium call rates. The insurance carrier will set the annual rate based on the yearly conditions outlined in your contract. All premium payments are held at a 3rd party trustee bank. Please contact our office at (818) 788-1904 x 216 or x228 , as we would be happy to discuss this matter with you further.


4/18/2021

RESPONSE: **Refuse to adjust, relying on terms of agreement** Amount in Dispute: **$200,000.00** Amount Settled: **$0.00**

**Customer Complaint**

3/8/2021

I invested $200K in 5 Reliant Life Shares 5 years ago and now I am paying anywhere from 10 to 20 annually to maintain my investment. Since I only receive a fixed $53,200 payout on each $40,000 share I figure I have paid out almost $10,000 for each share so far. And I just received a bill for $7550 for another year of maintenance! There are several online complaints and many state that they can't get their money back as well as being ignored by the company.**Resolution Sought**Get my

$200K retirement savings back.

**Company Response**

4/5/2021

Mr. Kruse, We have evaluated your complaint, your portfolio positions, and investigated your communications with our representative. While it is clear you have some frustration, the company must correct the record particularly given your commentary regarding the quarterly statements and regarding Heather, who is a valued member at Reliant, and has worked effectively with hundreds of investors. The personal attack is inappropriate and wrong, and I believe you know better, and we ask respectfully, that you withdraw those personal comments. Heather is fully aware of investor

Exhibit 26 p.3

statements, and it seems that if there had been more interest on your end in a meaningful discussion than in leveling insults to a highly-educated woman trying to assist you, the call would have been productive, as is the custom with our inter-actions with customers. Nonetheless, we understand frustration during a time of increasing frustration and uncertainty, and strive to have meaningful and productive relations with all customers and will endeavor to continue to do so with you. Your portfolio consists of 5 positions, and you own policies benefits in the amount of $248,000. These assets are maintained by the trustee at UMB Bank, and serviced by an international firm specializing in policy service and cost optimization. All of us are working on your behalf. The fixed rates of return on your 5 policy positions are 33%, 36%, 53%, 43% and 45%. Further, Reliant has had 7 recent policy maturities for its investors, and even factoring out the policy with the highest rate of return just to be conservative, Reliant's portfolio has experienced and annualized rate of return of 16.13%. We do appreciate you reaching out, but in our experience, positive communications yield productive results, and we are committed to doing the same for you moving forward. Sincerely, Reliant Life Shares, LLC

3/18/2021

RESPONSE: **Refuse to adjust, relying on terms of agreement** Amount in Dispute: **$40,000.00** Amount Settled: **$0.00**

**Customer Complaint**

3/3/2021

Life shares, ok. I understand that you get paid when the guy passes away. Meanwhile I get charged 3,000 each year for fees that I was never told about at the beginning. Only told about a 200.00 fee annually. I was not told the truth about this . Mack brown was who started me in this. Reliant life shares. I would just like my retirement money back so that I can put it in my Merrill account. 401k .**Resolution Sought**Give me my money back before I lose it all to ridiculous fees that I cannot afford

on a small pension.

**Company Response**

3/5/2021

We appreciate your feedback. You have invested $40,000 in three policies and own benefits in the amount of $76,133, which will be paid to you upon the maturity of the policies and which is significant increase ($36,133.11) over the initial investment amount of $40,000. Regarding the issue of being responsible for payment of premium when the insured lives beyond the premium reserve fund based on the life expectancy reports, that responsibility is specifically and repeatedly disclosed in writing, and signed off on and acknowledged in writing by every investor. These disclosures are detailed and specific in the Purchase Agreement, and tables and projections over a ten year timeframe. This is true for every investor. Specifically the documents provide that "WARNING: THE RETURN ON INVESTMENT FOR FRACTIONAL LIFE SETTLEMENTS IS HIGHLY DEPENDENT ON THE LONGEVITY OF THE INSURED. A POLICY TAKING LONGER TO MATURE, ALONG WITH-ANY ADDITIONAL PREMIUMS WHICH MUST BE PAID, WILL RESULT IN LOWER TOTAL

Exhibit 26 p.4

ANNUAL RETURNS. LIFE EXPECTANCIES ARE MERELY ESTIMATES; NO ONE KNOWS WHEN AN INSURED INDIVIDUAL WILL PASS. IF THE INSURED LIVES LONGER THAN THE PREMIUM RESERVE PERIOD STATED IN THE CONTRACT, ALL INVESTORS MUST MAKE A "PRO RATA" PREMIUM PAYMENT. FAILURE TO DO SO WILL CAUSE AN INVESTORS BENEFICAL INTEREST TO BE FORFEITED. FOR MORE INFORMATION ON THE RISKS ASSOCIATED WITH THIS PRODUCT PLEASE SEE THE "RISK ADDENDUM" ATTACHED TO THE LIFE SETTLEMENT PURCHASE AGREEMENT." The closing documents also state that: "In the event that the reserve account for a given policy is depleted, in order to safeguard the policy against a lapse in coverage, it will become the responsibility of the Purchaser of that policy to make pro rata premium payments on any policy in which they have an Interest. In that event the Purchaser shall be notified no less than 90 days before any premium payment becomes due. If the Purchaser does not remit or cause to be remitted to Trustee, in immediately available funds, the required pro rata premium payments within the time frame stated in said notice to Purchaser, Purchaser shall immediately be divested of the Purchaser's Interest in said policy."

3/11/2021

RESPONSE: **Refuse to adjust, relying on terms of agreement** Amount in Dispute: **$37,000.00** Amount Settled: **$0.00**

**Customer Complaint**

1/11/2021

Reliant Life Shares has not sent me a annual report on my 2 policies for over 9 months., They used to send out at least 3 a year. I have grave concern for my investments. I feel Mr. Tubler, the agent in charge of the 2 polices, sold me the 2 polices under undue pressure and made it sound like I would reap earnings very soon. I have paid 5 premiums so far and will wind up taking a loss on these investments in the spring. I decided to pull out of these 2 polices in 2016. Mr. Tubler assured me that I could cancel the polices anytime I wished with no penalties. An emergency gave up in late 2016 and I contacted Mr. Tubler and wanted to cash in one of the policies. It turns out this information was not correct. I contacted a lawyer and the better business bureau at that time. I also contacted the Consumer Financial Protection Bureau and filed a compliant against ReliantLife Shares. I have the paperwork to prove it. If you can assist me in recovering my investment, I would be deeply grateful. I am 69 and this money may not seem like much, but to me it's my life savings.**Resolution Sought**I would like a refund of the 2 policies I have with Reliant Life Shares and the premiums I have paid so far.

**Company Response**

3/1/2021

As you are aware, life settlements are a "Buy and Hold" investment, meaning that you hold the policy until there is a maturity. This is what was agreed to and set forth in the agreements signed by you and all investors. Reliant seeks to foster positive and ongoing relationships with all of its investors and has many investors that return for additional acquisitions, and in service of that goal, Reliant did take into consideration your request and has been marketing your positions to prospective investors.

Exhibit 26 p.5

This process takes time, but we continue to endeavor to do so. We are disappointed that despite these efforts and extraordinary accommodations, you still felt the need to file a disparaging complaint while the transfer process you requested is underway. Nonetheless, we will continue to work hard on your behalf. Reliant Life Shares sends out statements to all investors on a quarterly basis. A Reliant representative will be in contact with you to provide you with copies of the quarterly statements, as well as verifying your current address and contact information. Given your current portfolio, you stand to gain a 46% total fixed return with a full maturity value of $43,800 on an original investment of $30,000. Let me know if you have any questions. Thanks, Alexandra

3/9/2021

RESPONSE: **Refuse to adjust, relying on terms of agreement** Amount in Dispute: **$100,000.00** Amount Settled: **$0.00**

**Customer Complaint**

1/4/2021

Company representatives pitched this program 2017 with excellent presentation. They invited with me and my other friend for a dinner. It was all good and explained and only expense they mentioned that was $350 annually for the firm that holds the shares. They made us to believe and misinformed where policy may go beyond the life expectancy and shareholders may pay the premiums. But this is rare occasions and hardly happens. They have not disclosed each policies terms and conditions and what we will be paying each year. Starting the following year we started to getting policy premium payments which is not suppose to happen like 10 years. I believe they cheated and not fully disclosed the each policy terms and made the shareholders continuously pay the the policy premiums. Company representative Paul Roy indicated that he has a buyer for my shares so I can exit this investment but he is ignoring my emails on past 6 months .**Resolution Sought**Take the life shares and refund my investment.

**Company Response**

3/1/2021

We have reviewed the issues in your complaint. In July, 2017, you invested $100,000 across 7 policies and acquired ownership of $153,850 in benefits, which represents a 53.8% Fixed Return. Thus far, 4 of your 7 policies are in "premium call" meaning that pursuant to the Purchase Agreements, you have the responsibility to make premium payments required by the insurance carrier, i.e., "premium calls" in order to keep your positions active. If you examine the historic returns of Reliant, 4 of the last 8 polices that matured for Reliant investors also had a premium call. Even in that scenario, we can report an Average Annual Percentage Yield of 18.83% , and this calculation is conservative because we do not factor in the highest matured policy which matured very quickly had a return of 521%. We understand during the Pandemic that investors of all types are making adjustments, but under the terms of the contract, you agreed to a "buy and hold" investment, meaning you hold and maintain your investments until the policies mature. Thanks, Alexandra

Exhibit 26 p.6

## Customer Rebuttal

3/1/2021

Evidently, the company does not notify the agents when complaints are filed. My agent Paul Roy, was not aware of the complaint, and when he became aware, reached out to me directly. He went over the features and benefits of the Life Settlement Asset Class, and the one and only risk...sometimes people outlive their life expectancy. I was mistaken when I thought I had been losing money, after he reminded me of the fixed returns and remaining profit in each of my policies. I wish I had the ability to wait for the payouts, unfortunately, I am in hardship, and need the principle back. Paul has been diligently working to rectify my situation and assured me the anomaly due to the last year, impacted ALL aspects of this transaction, as well as most transactions in most industries.

## Company Final Response

3/5/2021

The issue of premium obligations is a disclosure that is required for every investor, and every investor is provided detained disclosures and then signs and acknowledges in their own hand the obligation for premium payments in the event the insured exceeds the life expectancy and premium reserve fund set up at time of acquisition. Specifically the documents provide that "WARNING: THE RETURN ON INVESTMENT FOR FRACTIONAL LIFE SETTLEMENTS IS HIGHLY DEPENDENT ON THE LONGEVITY OF THE INSURED. A POLICY TAKING LONGER TO MATURE, ALONG WITH-ANY ADDITIONAL PREMIUMS WHICH MUST BE PAID, WILL RESULT IN LOWER TOTAL ANNUAL RETURNS. LIFE EXPECTANCIES ARE MERELY ESTIMATES; NO ONE KNOWS WHEN AN INSURED INDIVIDUAL WILL PASS. IF THE INSURED LIVES LONGER THAN THE PREMIUM RESERVE PERIOD STATED IN THE CONTRACT, ALL INVESTORS MUST MAKE A "PRO RATA" PREMIUM PAYMENT. FAILURE TO DO SO WILL CAUSE AN INVESTORS BENEFICAL INTEREST TO BE FORFEITED. FOR MORE INFORMATION ON THE RISKS ASSOCIATED WITH THIS PRODUCT PLEASE SEE THE "RISK ADDENDUM" ATTACHED TO THE LIFE SETTLEMENT PURCHASE AGREEMENT."

3/11/2021

RESPONSE: **Refusing to make an adjustment** Amount in Dispute: **$20,000.00** Amount Settled: **$0.00**

## Customer Complaint

1/4/2021

I am dismayed that this company continues to take advantage of people shamelessly. I thought I had done my research thoroughly, and invested a small amount. I feel sorry for people who applied all their savings. I did not expect a premium bill so early on (I believe I was told that I was going to receive a 'premium' bill in 7 yrs). I thought this might be ok, since both of my insurered's were 86.

Exhibit 26 p.7

Also, I was not told that my yearly obligation would be over $2000! This is preposterous considering my investment is so low. They do not return calls, and when you do speak to them, they act as if it is normal to have such high premium calls and fees associated with this investment. I asked a lot of questions up front and I guarantee that the answers must have been 'double talk' and not truthful because I never would have agreed to this type of investment. Once, I asked what would happen if I did not pay my premiums, and was told I would lose all my money invested. They say that they can resell your policy to others easily- yet they won't return my calls when that is my simple request. I am disgusted that myself and many others have been scammed. Has anyone actually received a payout from them?**Resolution Sought**I want all my investment back. I want them to sell my two policies to someone else. They have not acknowledged customers professionally if they don't return our calls. If this investment is indeed truthful, they should not have any issue reselling my policies. I already paid for a couple of premiums and I feel I have already lost out on this .

### Company Response

3/1/2021

Thank you for the review. Reliant Life Shares would be pleased to assist you. Looking through our database, your name does not match any records in our system. Is there another name your account could be under? Please contact our main office at (818) 788-1904 x 228 and we would be happy to help you. Thanks, Alexandra

Read Less

12/14/2020

RESPONSE: **Refusing to make an adjustment** Amount in Dispute: **$30,000.00** Amount Settled: **$0.00**

### Customer Complaint

11/13/2020

No quarterly reporting for over nine months. Last accounting incorrect. Promises made to correct account never materialized. Currently do not have status of 3 accounts. Impossible to contact by phone or email. What is happening with these folks?**Resolution Sought**Return my original investments, based on false claims of returns and poor account servicing.

### Company Response

12/1/2020

Reliant Life Shares, LLC is a broker of life settlements to qualified investors in the State of California, such as the investor who posted this review. Investors are represented by agents and/or financial advisors. Life Settlements are designed as long term investments meant to be held and not traded such as with stocks. Disclosures as to rates of return are all disclosed in writing and approved in writing by every investor, including this investor, in the Purchase Agreement that he and Reliant both maintain. Any claim of false information is unfounded and contrary to every document reviewed and

Exhibit 26 p.8

executed by each investor with the investor's agent and/or financial advisor involved at each step in the process. In addition to the services that Reliant undertakes, the investors also have their interests represented by a Trustee Bank and by a leading international provider of policy services. These entities and Reliant all strive to exceed expectations, and will continue to do so, including with this investor.

12/16/2020

RESPONSE: **Refuse to adjust, relying on terms of agreement** Amount in Dispute: **$176,994.00** Amount Settled: **$0.00**

**Customer Complaint**

10/26/2020

I was never disclosed the that there was premiums due on the 7 policies I purchased at $25,000 each when I signed the agreement until a month later when I received the package. I was 66 years old at that time and this was my retirement. My selling agent was not present at the signing of the agreement as he had a doctor's appointment and he sent another representative who went over the package except the vital portion of the risk involved. My selling agent, Mr Tuppler, initialed the disclosure page which is saying he went over the premium and risk with me which he was there. I have tried since June of 2016 and realized I might have to pay premiums to have them return my investment or sell my investments so I could get back my retirement investments. This had gone on for 3 years and have written letters to the CEO and President and have gotten no results. Hope you can help. Thank you**Resolution Sought**Refund my Investment of $175,000 and the premium I have paid so far of $1,994.00

**Company Response**

12/2/2020

Reliant Life Shares, LLC is a broker of life settlements to qualified investors in the State of California. Reliant works with thousands of investors through investor agents and financial advisors. Each investor, in Disclosure Statements, Expectancy Reports, Premium and Rate of Return Forecasts, and Purchase Agreements, approves and acknowledges in writing the characteristics of the investment including rates of return, future premium obligations, and life expectancies, among other subjects. Reliant strives to provide superior results, service and communication to every investor, and will be responding to the details of this complaint with the BCA as is appropriate in light of the confidential nature of materials involved. To that end, Reliant disagrees with the complaint, and is committed to work with this investor and communicate as effectively as possible directly and via the trustee and policy service provider partners, each of which strive to provide exemplary service.

**Customer Rebuttal**

12/3/2020

I have contacted many times in the last two and half years my Sale Representative, Larry Tuppler, the previous CEO, Andrew Murphy, and just a couple of months ago, the President of the company, Scott Grady. All of them have told they would help by selling the policies so I could get back my investment of $175,000 which was my retirement money. I have 5 policies that are due in 2021

Exhibit 26 p.9

which comes out to nearly $10,000 I would have to pay if none of the policies holders pass away. My only income is my social security check that pay for my mortgage and expenses. I need Reliant Life Shares LLC. people to help me solve this hardship as I don't want to lose my retirement money. My only recourse in 2021 would be to contact a couple of government agencies to help me as a senior.

2/1/2021

RESPONSE: **Refuse to adjust, relying on terms of agreement** Amount in Dispute: **$65,000.00** Amount Settled: **$0.00**

**Customer Complaint**

10/16/2020

My experience is identical to the others. I was aggressively sold interests in life shares after a full assurance these never go beyond the prepaid premium, which was a lie and obviously known to be a lie. In fact years and many premium calls in excess of $1000 each later, not only has there been no maturity of any investment, but there is no verifiable evidence I know of that any "insureds" actually existed. In short, I have nothing but assurances from Reliant that are less believable each year that this goes on. If these "investments" are real, I would think they would have no problem refunding all I have put in since some of these fantastic investments much be close to maturity, if there actually are insured.**Resolution Sought**Full refund of original $60k plus premium calls and IRA fees plus 7 annual interest on my money if it cannot be shown that actual insureds exist and that matures have been recognized and paid.

**Company Response**

12/2/2020

Reliant Life Shares, LLC is a broker of life settlements to qualified investors in the State of California. Reliant works with thousands of investors through investor agents and financial advisors. Each investor, in Disclosure Statements, Expectancy Reports, Premium and Rate of Return Forecasts, and Purchase Agreements, approves and acknowledges in writing the characteristics of the investment including rates of return, future premium obligations, and life expectancies, among other subjects. Reliant strives to provide superior results, service and communication to every investor, and will be responding to the details of this complaint with the BCA as is appropriate in light of the confidential nature of materials involved. To that end, Reliant disagrees with the complaint, and is committed to work with this investor and communicate as effectively as possible directly and via the trustee and policy service provider partners, each of which strive to provide exemplary service.

**Customer Rebuttal**

1/20/2021

No there is NO satisfaction here. They did call and promise a proposal for solution, but the proposal never came, read the complaints, I'm not the only one.

Exhibit 26 p.10

12/14/2020

RESPONSE: **Refuse to adjust, relying on terms of agreement** Amount in Dispute: **$120,000.00** Amount Settled: **$0.00**

**Customer Complaint**

9/2/2020

I purchased Reliant Life Shares (~$120,000 with 5 policies) 7 years ago. It turns out that Reliant's representation of the life expectancy, for the insured, was wrong. Since last year, I have started to pay the premiums for these policies. In addition to your initial investment, you will have to pay out of pocket thousands of dollars every year. The ratio for my annual premium/overall annual premium is significantly higher than the ratio of my return/death benefit ( >2-fold). I don't know how Reliant calculated the premium for the investors. Since last year, I have received uncompleted statements where some information, for example policy health tracking, is missing. When I had a question, it was not easy for me to reach them. Hopefully I can get my money back.**Resolution Sought**1. Let their investors know how Reliant calculate the premiums. 2. Updated statement with completed information.

**Company Response**

12/2/2020

Reliant Life Shares, LLC is a broker of life settlements to qualified investors in the State of California. Reliant works with thousands of investors through investor agents and financial advisors. Each investor, in Disclosure Statements, Expectancy Reports, Premium and Rate of Return Forecasts, and Purchase Agreements, approves and acknowledges in writing the characteristics of the investment including rates of return, future premium obligations, and life expectancies, among other subjects. Reliant strives to provide superior results, service and communication to every investor, and will be responding to the details of this complaint with the BCA as is appropriate in light of the confidential nature of materials involved. To that end, Reliant disagrees with the complaint, and is committed to work with this investor and communicate as effectively as possible directly and via the trustee and policy service provider partners, each of which strive to provide exemplary service.

12/14/2020

RESPONSE: **Refuse to adjust, relying on terms of agreement** Amount in Dispute: **$100,250.10** Amount Settled: **$0.00**

**Customer Complaint**

Exhibit 26 p.11

8/24/2020

In July 2016, I invested $100,000 in Reliant Life Shares Fractional Life Settlements - - five (5) $20,000 Life Share Trusts/Policies that Reliant held on the following insureds with the following returns: 1) Reliant Policy (RP) #MW8350 - $5M death benefit (DB) on 85 yr. old male, DOB 12/28/29, with a 2.8 yr. life expectancy (LE), for a 33 Total Fixed Return (TFR) 2) RP #WP7826 - $3.8M DB on 80 yr. old female, DOB 9/10/36, with a 4.25 yr. LE, for a 47 TFR 3) RP #DL0468 - $4M DB on 78 yr. old male, DOB 06/05/38, with a 4.9 yr. LE, for a 55 TFR 4) RP #MR8412 - $10M DB on 83 yr. old male, DOB 03/12/33, with a 4.08 yr. LE, for a 45 TFR 5) RP #DC0249 - $10M DB on 81 yr. old male, DOB 12/31/34, with 3.8 yr. LE, for a 38 TFR I was told, "Your Life Shares Investment offers excellent return potential with no stock market volatility and should grow steadily and substantially over time." Within 9 mos. I was surprised to receive a Policy Maintenance Invoice on #MW8350 stating I had to pay $2,228.33 to keep my "policy in force". Since then I have received 7 more demands totaling $13,132.64, with 0 return on my now 4 yr. investment. In Jan. of this year I requested Reliant refund my $100,250.06 investment. After my numerous follow-up emails, letters & calls, in May I was told by Reliant President, Scott Grady, "The best offer we got was $75k". Subsequent follow-up correspondences to Reliant from me & many fellow investors have gone unanswered.**Resolution Sought**Communicate with me and refund my $100,250.06 investment.

**Company Response**

12/2/2020

Reliant Life Shares, LLC is a broker of life settlements to qualified investors in the State of California. Reliant works with thousands of investors through investor agents and financial advisors. Each investor, in Disclosure Statements, Expectancy Reports, Premium and Rate of Return Forecasts, and Purchase Agreements, approves and acknowledges in writing the characteristics of the investment including rates of return, future premium obligations, and life expectancies, among other subjects. Reliant strives to provide superior results, service and communication to every investor, and will be responding to the details of this complaint with the BCA as is appropriate in light of the confidential nature of materials involved. To that end, Reliant disagrees with the complaint, and is committed to work with this investor and communicate as effectively as possible directly and via the trustee and policy service provider partners, each of which strive to provide exemplary service.

12/14/2020

RESPONSE: **Refuse to adjust, relying on terms of agreement** Amount in Dispute: **$0.00** Amount Settled: **$0.00**

**Customer Complaint**

8/6/2020

They never return my calls. Want to know if they got my premium call. They sent me two bills but had two different places to send the check.**Resolution Sought**Get back to me

**Company Response**

Exhibit 26 p.12

12/2/2020

Reliant Life Shares, LLC is a broker of life settlements to qualified investors in the State of California. Reliant works with thousands of investors through investor agents and financial advisors. Each investor, in Disclosure Statements, Expectancy Reports, Premium and Rate of Return Forecasts, and Purchase Agreements, approves and acknowledges in writing the characteristics of the investment including rates of return, future premium obligations, and life expectancies, among other subjects. Reliant strives to provide superior results, service and communication to every investor, and will be responding to the details of this complaint with the BCA as is appropriate in light of the confidential nature of materials involved. To that end, Reliant disagrees with the complaint, and is committed to work with this investor and communicate as effectively as possible directly and via the trustee and policy service provider partners, each of which strive to provide exemplary service.

12/14/2020

RESPONSE: **Refuse to adjust, relying on terms of agreement** Amount in Dispute: **$100,000.00** Amount Settled: **$0.00**

## Customer Complaint

7/29/2020

$100,000 in dispute. Above would not accept $100,000.00 I have 4 policies from 2016. One matured in March. I never received my premium call refund of $1779 or the policy payment of $24,000. I call, email and they are no longer answering the phone. I have two new premium call for 08/15/2020 for a total of $3,581.52. I will NOT pay only to find out this company has already stole my hold account!**Resolution Sought**Transfer my money to my trust account. Answer the phone or e-mail.

## Company Response

12/2/2020

Reliant Life Shares, LLC is a broker of life settlements to qualified investors in the State of California. Reliant works with thousands of investors through investor agents and financial advisors. Each investor, in Disclosure Statements, Expectancy Reports, Premium and Rate of Return Forecasts, and Purchase Agreements, approves and acknowledges in writing the characteristics of the investment including rates of return, future premium obligations, and life expectancies, among other subjects. Reliant strives to provide superior results, service and communication to every investor, and will be responding to the details of this complaint with the BCA as is appropriate in light of the confidential nature of materials involved. To that end, Reliant disagrees with the complaint, and is committed to work with this investor and communicate as effectively as possible directly and via the trustee and policy service provider partners, each of which strive to provide exemplary service.

3/9/2021

Exhibit 26 p.13

RESPONSE: **Refuse to adjust, relying on terms of agreement** Amount in Dispute: **$3,329.76** Amount Settled: **$0.00**

**Customer Complaint**

7/16/2020

When I invested this life share purchase I invested $10,000 and the contract ~return rate is $13,000, but I was never told that each year I have to pay an "escrow amount" of 1109.92 to keep the account going! As a result, this is a false advertisement of "reliable investment" and return of my $$ of more than 15 of my investment.**Resolution Sought**Refund my prior "escrow" account payments and

return my money!

**Company Response**

3/2/2021

Mr. Shen, you originally invested $10,000. You currently stand to gain a 33% return and a maturity payout of $13,300. We want to provide our investors with transparency and clarity, so we disclose different documents like the Policy Premium Projection, which identifies the responsibility for future premium payments. This information is repeatedly and specifically illustrated and disclosed. The Policy Premium Projection specifically identifies the dollar amount of premium required to be paid by the Investor to keep the policy in force in the event the insured outlives the premium reserve fund. The Life Settlement Disclosure Form specifically informs every investor that: "In the event the premium reserves described in the Life Settlement Purchase Agreement are exhausted or has past the premium escrow date, only then will Purchaser be responsible for a payment of their pro-rata share of any unpaid premiums that become due to keep this policy in force." Please contact our main office line at (818) 788-1904 if you have any additional questions. We are happy to assist you

in creating a strategy moving forward. Sincerely, Reliant Life Shares

**Customer Rebuttal**

3/2/2021

When I signed back this contract, I did not see these details, along with the sales representative any mention of "if the person outlived the contractual date, I am to keep paying $3000+ per year to keep this "escrow" open or I can forfeit and lose my investment all together!!? To me as an investor, this company's Advertisement of 33.33 of "investment return" is very inaccurate since I have already paid additional $10k+ to keep this particular investments escrow open, so it seemed as the only party that may make the 33.33 of "return" is the escrow company, and these were definitely NOT verbally disclosed to me PRIOR to signing this contract. Hence, this create sort of "false advertisement"...... or me being taken advantage of not understanding this life share "procedural" disadvantage as an

investor!

**Company Final Response**

3/5/2021

Exhibit 26 p.14

We do appreciate your statements, but we must note that it is important to be accurate and fair when posting. Companies are comprised of people who work hard on your behalf. As to your final remark that you were not told about the requirement to additional premium costs in the event the insured exceeds the life expectancy reserve fund, this issue and these costs were specifically and repeatedly disclosed in writing and signed and acknowledged by you. That is a requirement for every closing. These disclosures are in the purchase agreement, the projections, the life expectancy reports, and the tables and projections for a ten year period. We remain available to discuss your positions at your convenience and look forward to doing so.

2/4/2021

RESPONSE: **Agreed to make an adjustment** Amount in Dispute: **$20,885.00** Amount Settled: **$0.00**

**Customer Complaint**

7/13/2020

My wife and I purchased two life policies from Reliant in December 2017 for $10K each, Policy numbers WV4951 and MR8412. The sales promises made by salesperson Paul Roy were less than truthful. Paul came to our house and explained how the Reliant life policies worked. I specifically asked "What if the person lives past the 5 years?" Paul replied "Very seldom we have someone going over the 5 year mark." We received 3 annual maintenance bills for $295 which were never disclosed during the sales pitch. At the end of May we got a bill for additional funds in order to continue the policy for a person who has surpassed the 5 years. Considering the "seldom" occurrence I realized we are not the first people complaining about this business practice. June 2, 2020, at 1:50 pm, we contacted Alexandra Grady. She directed us to her father, Scott Grady the President , but we couldn't even leave a message on his cell as the mail box was full. The only time we spoke with Scott was when we dial the "sales" extension. We spoke to Larry Preston on June 11, 2020, at 7:42 am who said he would send us an email requesting permission to sell our policies to refund our money. The longer the policies are in place the closer to a profit resolution they should be. They should be easier to sell faster than any other. Today, July 12, 2020, we have not been contacted by anyone at Reliant. Thank you for your help in this matter.**Resolution Sought**Policies $20,000.00+$855.00 fees for 3 years = $20.885.00.

**Company Response**

12/2/2020

Reliant Life Shares, LLC is a broker of life settlements to qualified investors in the State of California. Reliant works with thousands of investors through investor agents and financial advisors. Each investor, in Disclosure Statements, Expectancy Reports, Premium and Rate of Return Forecasts, and Purchase Agreements, approves and acknowledges in writing the characteristics of the investment including rates of return, future premium obligations, and life expectancies, among other subjects. Reliant strives to provide superior results, service and communication to every investor, and will be responding to the details of this complaint with the BCA as is appropriate in light of the confidential nature of materials involved. To that end, Reliant disagrees with the complaint, and is committed to work with this investor and communicate as effectively as possible directly and via the trustee and policy service provider partners, each of which strive to provide exemplary service.

Exhibit 26 p.15

**Customer Rebuttal**

1/25/2021

Company offered a refund within 21 days. For now, I am satisfied with the resolution.

12/14/2020

RESPONSE: **Refuse to adjust, relying on terms of agreement** Amount in Dispute: **$30,000.00** Amount Settled: **$0.00**

**Customer Complaint**

5/19/2020

I attended sale presentation in 2018, my broker name Barry Neal. At that time I research about the company and did not find any bad news. Broker came to my house, I asked him if policy matures and insured is still alive how much annual premium will I pay. He took his calculator said, "with your $10,000 you will pay less $300 annually each investment. After a year, one investment (I have 3x $10,000) runs out of premium and I received a bill $1,0041.54. It was explained to me that it is written on the Policy Booklet which I received a month after I gave my investment and signed the contract. I hope someone can help us.**Resolution Sought**I am hoping I can get my investment ($30,000) back as I feel that my broker who represents the company, Reliant Shares gave me wrong information and was dishonest. Thank you.

**Company Response**

12/2/2020

Reliant Life Shares, LLC is a broker of life settlements to qualified investors in the State of California. Reliant works with thousands of investors through investor agents and financial advisors. Each investor, in Disclosure Statements, Expectancy Reports, Premium and Rate of Return Forecasts, and Purchase Agreements, approves and acknowledges in writing the characteristics of the investment including rates of return, future premium obligations, and life expectancies, among other subjects. Reliant strives to provide superior results, service and communication to every investor, and will be responding to the details of this complaint with the BCA as is appropriate in light of the confidential nature of materials involved. To that end, Reliant disagrees with the complaint, and is committed to work with this investor and communicate as effectively as possible directly and via the trustee and policy service provider partners, each of which strive to provide exemplary service.

1/17/2021

RESPONSE: **Refuse to adjust, relying on terms of agreement** Amount in Dispute: **$130,000.00** Amount Settled: **$0.00**

**Customer Complaint**

Exhibit 26 p.16

5/19/2020

I was drawn into this contract by listening to radio adds stating you will be enjoying returns of 10 to 12 percent or higher, but the reality is I just sent my 3rd premium check to Reliant this year. I also sent one last year. I have only owned these for 3 and a half years. I have 2 more premiums do within a year. The portfolio I was given when I had lunch with Mr. Underwood showed an average premium already paid at 91 months. The contract I was given was completely different, with 6 out of 7 the policies an average premium paid through about 59 months. These premiums are devastating to my wife and myself. I never would have bought them if I had known. I don't think anyone would. Also, the premiums are averaging about 6 to 7 percent of my original investment each year, with another 3 percent added on for service fees. It would appear that they are making huge profits off these service fees when you consider that these policies are for 10 million dollars each. This doesn't seem right.**Resolution Sought**I would like a refund with interest.

**Company Response**

12/2/2020

Reliant Life Shares, LLC is a broker of life settlements to qualified investors in the State of California. Reliant works with thousands of investors through investor agents and financial advisors. Each investor, in Disclosure Statements, Expectancy Reports, Premium and Rate of Return Forecasts, and Purchase Agreements, approves and acknowledges in writing the characteristics of the investment including rates of return, future premium obligations, and life expectancies, among other subjects. Reliant strives to provide superior results, service and communication to every investor, and will be responding to the details of this complaint with the BCA as is appropriate in light of the confidential nature of materials involved. To that end, Reliant disagrees with the complaint, and is committed to work with this investor and communicate as effectively as possible directly and via the trustee and policy service provider partners, each of which strive to provide exemplary service.

**Customer Rebuttal**

1/5/2021

The president of this company contacted me after reading the complaints, and he promised to help me. He said he had somebody that would buy my contracts from me. Turns out that's not true. The problem now is six out of seven of the contracts that I have are do payments this year. Somewhere around $7500. About 10% of my original contract price. So instead of be earning 10 to 12% per year, I am paying them 8 to 10% per year. This is a bad deal, do not invest with this company.

12/16/2020

RESPONSE: **Refuse to adjust, relying on terms of agreement** Amount in Dispute: **$200,000.00** Amount Settled: **$0.00**

**Customer Complaint**

5/13/2020

Exhibit 26 p.17

When I was considering investing in Reliant Life Shares I asked the agent I was speaking to what would happen if for some reason I wanted to sell my Life Shares. He said with no qualifications that he would sell them. He did not say they would be posted for sale or made available for sale. He said he would sell them. I realize that this is not an on demand sale and may take some time to sell them. It has been over a year since I made the sale request. One of the deciding factors in my investment was his claim that he would sell them upon request. He now does not answer my phone calls and only communicates with me by text message. I have requested from him that someone who could help me contact me. I have received two text messages from him that I would be getting a call for assistance. As of today I have received no calls. I would not have made the investment if I had known the truth about his claim to selling them for me.**Resolution Sought**I would like my investment returned to me because the agent did not tell me the truth about selling my Life Shares.

**Company Response**

12/2/2020

Reliant Life Shares, LLC is a broker of life settlements to qualified investors in the State of California. Reliant works with thousands of investors through investor agents and financial advisors. Each investor, in Disclosure Statements, Expectancy Reports, Premium and Rate of Return Forecasts, and Purchase Agreements, approves and acknowledges in writing the characteristics of the investment including rates of return, future premium obligations, and life expectancies, among other subjects. Reliant strives to provide superior results, service and communication to every investor, and will be responding to the details of this complaint with the BCA as is appropriate in light of the confidential nature of materials involved. To that end, Reliant disagrees with the complaint, and is committed to work with this investor and communicate as effectively as possible directly and via the trustee and policy service provider partners, each of which strive to provide exemplary service.

**Customer Rebuttal**

12/3/2020

When I made the investment my agent told me he would sell my Life shares if I wanted to sell them. I put in the order to sell the Life shares almost 2 years ago. Nothing has happened since then. I would not have made the investment if I had known nothing would be done if I made the request to sell them. Why would my agent tell me he would sell them if I requested?

3/14/2021

RESPONSE: **Refuse to adjust, relying on terms of agreement** Amount in Dispute: **$169,000.60** Amount Settled: **$0.00**

**Customer Complaint**

5/11/2020

I have invested the above amount in reliant life shares, in 2014. All I receive from reliant life share is more main fees. They want 13500.00 in main fees due June 1 2020.**Resolution Sought**I would like my $169,000.00 refund

**Company Response**

Exhibit 26 p.18

3/2/2021

Mr. Nappo: In 2020, you received a maturity payout for policy 2013-7, as well as a premium call refund. You originally invested $50,000 into this policy and received a total fixed return of 20.54% and a maturity payout of $80,000. According to your current portfolio, you are paying one premium call on Policy 2013-3, which began last year when the premium reserve ended. Policy 2013-3 has a projected fixed return of 100% giving you a maturity payout of $100,000 on a $50,000 original investment. You stand to gain a 82% total fixed return on all your policies, given your total investment of $150,000. Reliant provides all investors, like you, with disclosure documents that they sign and acknowledge, including a Policy Premium Projection, which identifies the responsibility for future premium payments. This information is repeatedly and specifically illustrated and disclosed. The Policy Premium Projection also identifies the dollar amount of premium required to be paid by the Investor to keep the policy in force in the event the insured outlives the premium reserve fund. The Life Settlement Disclosure Form specifically informs every investor that: "In the event the premium reserves described in the Life Settlement Purchase Agreement are exhausted or has past the premium escrow date, only then will Purchaser be responsible for a payment of their pro-rata share of any unpaid premiums that become due to keep this policy in force." Please contact our main office line at (818) 788-1904 if you have any additional questions. We are happy to assist you in creating a strategy moving forward.

1/26/2021

RESPONSE: **Refuse to adjust, relying on terms of agreement** Amount in Dispute: **$15,000.00** Amount Settled: **$0.00**

**Customer Complaint**

3/4/2020

I invested 15,000 in Reliant Life Shares in October of 2017. On February 4, 2020 my life shares policy matured at $21,750. I was told by David Underwood that to get my money that I would have to pay $1300 to UMB Bank in Kansas City, MO. The check was cashed on cashed on February 12, 2020. I called David on February 17 to get a status of when I will receive my money but he was not available and I talked to Mark and he told me that I will not get my money until the insured passes away which is not what David told me on the 4th of February. I have called twice to speak with the president of Life Shares Scott and have not been able to speak with him.**Resolution Sought**I either want my matured check of $21,750 mailed to me asap or have my original amount of $15,000 returned me asap.

**Company Response**

12/2/2020

Reliant Life Shares, LLC is a broker of life settlements to qualified investors in the State of California. Reliant works with thousands of investors through investor agents and financial advisors. Each investor, in Disclosure Statements, Expectancy Reports, Premium and Rate of Return Forecasts, and Purchase Agreements, approves and acknowledges in writing the characteristics of the

Exhibit 26 p.19

investment including rates of return, future premium obligations, and life expectancies, among other subjects. Reliant strives to provide superior results, service and communication to every investor, and will be responding to the details of this complaint with the BCA as is appropriate in light of the confidential nature of materials involved. To that end, Reliant disagrees with the complaint, and is committed to work with this investor and communicate as effectively as possible directly and via the trustee and policy service provider partners, each of which strive to provide exemplary service.

## Customer Rebuttal

1/14/2021

I invested 15,000 in Reliant Life Shares in October of 2017. On February 4, 2020 my life shares policy matured at $21,750. I was told by David Underwood that to get my money that I would have to pay $1300 to UMB Bank in Kansas City, MO. The check was cashed on cashed on February 12, 2020. I called David on February 17 to get a status of when I will receive my money but he was not available and I talked to Mark and he told me that I will not get my money until the insured passes away which is not what David told me on the 4th of February. I have called twice to speak with the president of Life Shares Scott and have not been able to speak with him. I either want my matured check of $21,750 mailed to me asap or have my original amount of $15,000 returned me asap.

10/8/2019

RESPONSE: **Agreed to make an adjustment** Amount in Dispute: **$100,000.00** Amount Settled: **$0.00**

## Customer Complaint

8/23/2019

After leading potential investors in with the siren song of excellent returns, the reality turns out thusly. The insured has a very large life insurance policy, the kind only EXTRMELY healthy people get. When they sell, they get a goodly amount of money, and Reliant's agents get a fat commission, and Reliant personnel get a fat cut. Now, it is anticipated that the insured will die at some calculated point. But here's the rub. That estimate is made using actuarial data for the general population. And the insured pool has already been vetted as in extraordinarily good health. So the " vetting" of the insured by such data is going to give a distorted value, and your investment in their life policy is likely to drag on far longer than you imagine. Not only that, but you will be called on annually to pay your share of continuing share if premiums. Good money after bad. Your RTO will sink like a stone and may very well reach zero and your investment rendered worthless. Mr Ponzi would be proud. Tried to make appt with president, but he avoids me, only comes in on Ynu if at all, and was currently vacationing in Spain when I tried. (I hope my money had a good time in Spain). Company doesn't stand by its agents, everything is outsourced, you deal with multiple banks, holding companies and front men. Impossible to know how this is run or who's responsible for anything. Where's 60 Minutes when you need them???**Resolution Sought**Reveal exactly why your vetting of the insured at time

Exhibit 26 p.20

of vetting is misleading. Get me my money (33,333) on my first miscreant investment and 66,666 on my 2nd. And stop with the phony vetting, clean up your act and stop misleading investors. And stop paying the BBB to present you you as honest and forthcoming.

**Company Response**

9/25/2019

Mr Blinn, Whereas I am sorry to hear you are disappointed your rationale is not exactly the way things work. All independent life expectancies are calculated and obtained from independent, licensed life expectancy laboratories and these actuarial calculations are not based on the "general population' but based off of the insureds own medical file and lifestyle habits. your financial advisor who sold this product to you should have explained and we actually publish and make part of each policy disclosure we offer a projection sheet that shows the potential returns year by year (including estimated premium calls after the LE) because we DO know that not every policy matures on time. Some mature early and others mature later than expected. We only have to look at past results on policies that did mature early to see annual returns of 33 a year and 21 a year. But on the other hand some policies will go longer and one of the policies which matured and was 2 years late still netted investors over 6 per year. Lastly the company is made up of its employees. I do not believe where the CEO of the company is makes a bit of difference to your investment, we have plenty of customer service representatives that handle customer services issues but you should start with your sales agent as Reliant has delivered on everything you are simply looking at one policy out of many

5/13/2019

RESPONSE: **Refuse to adjust, relying on terms of agreement** Amount in Dispute: **$1,027.00** Amount Settled: **$0.00**

**Customer Complaint**

4/11/2019

In addition to your initial investment, you will have to pay out of pocket thousands of dollars every year. The management fee is very high considering it is just a passive investment also when the person lives past their life expectancy (which was set up to make the investment look good) then you have to pay a significant portion out of pocket (your of the policy premium which is usually about half million a year). If you don't pay you loose your policy. The sales people do not clearly articulate this and it is lost in the fine print. Thank god I did not invest much. On an investment of $10,000 on a policy I got hit with an additional payment outside my usual management fee of $350.00 another $1,027.00.**Resolution Sought**Simply not charge me the $1,027. If you need to then take it out of the $10,000 investment I already made.

**Company Response**

4/30/2019

We are in receipt of your inquiry and would request that you contact us at the office for more information. It seems there is some misunderstanding as we do not charge management fees and all premium payments are indeed disclosed on all policies disclosure statements before any investment

Exhibit 26 p.21

funds are received. We are happy to review your specific account anytime. Please contacts Rich or Andrew and either of them will walk you through your questions.

4/22/2020

RESPONSE: **Refuse to adjust, relying on terms of agreement** Amount in Dispute: **$250,000.00** Amount Settled: **$0.00**

**Customer Complaint**

3/13/2019

Gave these guys over $200K. Now have had to pay out on 4 out of 5 policies I own shares in without a single pay out to me They may not be crooks but I feel I have SUCKER on my forehead and would like to help keep anyone else from losing money with them**Resolution Sought**Give back my investment including the additional premiums I have been forced to pay

**Company Response**

4/2/2019

On behalf of Reliant we are sorry you seem to feel like things have not gone as planned. Please understand that we use third party, Independent labs to provide all actuarial life expectancy estimates and not only do we use one estimate for each policy but we use the median estimate out of three different laboratory estimates. So what your complaint really says is that you are unhappy because the underlying insureds have not died early enough for your liking. Obviously that is not something we control! We provide all of the facts associated with the insurance policy and the life expectancy to all investors prior to your purchase. Its also important to note that just because you paid a premium does not mean your losing any money or that you made a bad investment. Premium payments are a fact of life to maintain an insurance policy in force. When Relaint sold the policy we escrowed all of the funds necessary to pay the premiums through the median life expectancy. We lived up to this promise and after the premium reserve escrow was exhausted it was always agreed that as a fractional owner of part of the policy you would pay your fair share of premiums after that point in time. It would not make sense for us to escrow away for a longer period of time or take part of your money and have it sit in an account doing nothing in case a policy goes past the median life expectancy which is why we disclosed to you prior to your purchase exactly when you would have to pick up paying a pro-rata premium on each case you own. Even paying several years of premiums you can still achieve good returns and if you look on the second page of each policy disclosure package you received in your closing documents you will see a year by year analysis that factors in time and the estimated amounts of the future premium calls so that you could see what the affect would be on your annual return and how long an insured might have to live before you would be at risk losing any principal. The other point I want to mention is that we take every precaution we can think of in order to ensure all the pertainent information is provided to you our valued investor but then again we do not sell to clients but simply distribute our product through financial advisors. We continually provide training to advisors to educate them and try to ensure all advisors are knowledgable on our products but we have no way to ensure exactly what your advisor may have

Exhibit 26 p.22

told you or what he/she may not have disclosed. If you ever have any questions please do not hesitate to contact us anytime and we can provide more detail.

**Customer Rebuttal**

4/8/2020

Purchased $250K in ins policies when my company did away with their 401K. Bought in on 5 policies and none have paid out and now all 5 are costing me 10's of thousands of dollars a year in premium calls. I now believe these guys are just crooks and a scam. Give me back all my money and the additional premiums I have paid in.

Exhibit 26 p.23

Exhibit 27

Dear Erik,
The following was a letter I sent to the CFPB. I thank you for any assistance you can render in
this matter.
Sincerely, Joseph Goodale

Consumer Financial Protection Bureau                          December 22, 2016


Dear CFPB

My name is Joseph Goodale. I am 65 and a navy veteran of the Vietnam war, with a 10% service
connected disability. I am presently involved in a dispute with Reliant Life Shares, a company
that buys and sells Fractional Life Share Settlements. The complaint number is 161215-000006.
I have sent along, as part of the documents included, a copy of the 2 policies I have with Reliant
Life Shares and 2 letters that I sent to Reliant Life Shares pertaining to this dispute. On April 20,
2016 I purchased two $15,000 policies from Reliant Life Shares. I corresponded with Brent
Borchert, who is the Compliance Counsel for Reliant Life Shares, for the first time, regarding this
dispute on November 29, 2016. Larry Tupler was the agent in charge of my policies. I asked Mr.
Tupler before I signed off on the 2 policies that if my life situation should change over next 5
years and I needed to cash in one of the policies, what is Reliant Life Shares policy regarding
canceling a policy(s) early. My Tupler without hesitation said, "Mr. Goodale, you can cancel the
policy(s) anytime without penalty. This statement is at the heart of my dispute with Reliant Life
Shares. I would like to say that Mr. Tupler was very persistent and called me weekly. He kept
inquiring if I was ready and if I had contacted my bank and ready to wire the $30,000 dollars for
the 2 policies. At one point Mr. Tupler asked me to give him my word that I was going to send
the money that following Monday. I was finally persuaded to sign off on the paperwork in late
April, 2016.

On November 1, 2016 I called Mr. Tupler and informed him that I had an emergency arise and
that I needed to cash in one of the policies that I had purchased. Mr. Tupler proceeded to give
me the impression that he was moving forward to grant my request. The letter I sent to Mr.
Borshert on November 29, 2016 consisted primarily of the dates and conversations I had with
Mr. Tupler. This initial letter was also meant to shed light on what I believed was a continuing
pattern of delays, misinformation and misrepresentation on the part of Mr. Tupler. I began to
experience deep fear and panic at the thoughts of losing by life savings because I could not get
any straight responses from Mr. Tupler. I felt desperate and finally contacted my local V.A. Clinic
in Santa Rosa, Ca. I was able to meet with Geoffrey Dunlap, an attorney working in behalf of
veterans. Mr. Dunlap agreed to help me in this matter. Mr. Dunlap advised me to give Reliant
Life Shares 10 days to resolve this matter. I sent the above mentioned letter to Reliant Life
Shares and did not get a respond after 10 days. My attorney called Mr. Borchert and left a

Exhibit 27 p.1

message on Mr. Borchert 's phone. My attorney spoke to me and revealed details of the conversation that took place with Mr. Borchert later that afternoon on December 14th, 2016. In essence, I understood that I had two options. The first was to wait for each policy to mature. The second option was to cancel both policies and pay a penalty fee for canceling early. I understood from my attorney, that the reason for the penalty fee was to make the policies look more attractive to other investors. I want to state that in the several conversations I had with Mr. Tupler during the month of November of 2016, Mr. Tupler never once mentioned a penalty fee for canceling early. Mr. Tubler did state that I would only receive the face value of the 2 policies. Mr. Tubler also stated that the policies would be easier to sell to other investors because the investors would have a shorter wait time and the policy(s) would mature sooner.

I am also including a copy of another follow up letter that I sent to Mr. Borshert. In this letter I respectfully requested a copy of Reliant Life Shares policy on canceling a policy and the penalty fees involved. I also mentioned that I had not come across anything regarding penalty fees in the handbook I received containing the specifics of the two policies, including terms and conditions. I asked Mr. Borchert to tell me where in the handbook the information is located regarding penalty fees for early cancelation in case I had missed it. In this second letter I also pointed out that there was, in my opinion, a discrepancy regarding the policy on canceling early that Mr. Borchert was making references to and the information Mr. Tupler had given me, in which he stated there were no penalty fees for early cancelation.

I wish to conclude that I am very surprised that Reliant Life Shares, with an A+ rating with the Better Business Bureau, would subject me to weeks of disinformation, misrepresentation and delays. I experienced high levels of stress, panic and anxiety and many sleepless nights as I was attempting to understand what was going on. I have honestly reported the facts as I see them in this case. I would be happy to sign anything swearing that what I have reported is the truth and nothing but the truth. I can be reached at 707-843-6334. My email address is zengoodale@yahoo.com

Sincerely,
Joseph Goodale

Exhibit 27 p.2

State of California                                              January 5, 2017
Department of Insurance
Consumer Services and Market Conduct Branch
Consumer Services Division
300 South Springs Street, South Tower
Los Angeles, Ca 90013


To whom it may concern,

My name is Joseph Goodale. I am a 65-year-old navy veteran with a 10% service connected
disability. I am presently involved in a dispute with Reliant Life Shares involving some Fractional
Life Share Settlements I purchased as investments. I have sent copies of the 2 policies I have
with Reliant Life Shares and 2 letters that were sent to Reliant Life Shares pertaining to this
dispute. I purchased two $15,000 policies on April 20th, 2016. I corresponded with Brent
Borchert, who is the Compliance Counsel for Reliant Life Shares, for the first time, regarding this
dispute on November 29, 2016.  Larry Tupler was the agent who sold me these policies. I had
first heard about Reliant Capital and Reliant Life Shares, on the radio sometime in February of
2016. Mr. Tupler contacted me and we spoke off and on for a number of weeks. I asked Mr.
Tupler what was Reliant Life Shares' policy regarding early cancelation before I signed off on the
policies. Mr. Tupler, without hesitation, said, "Mr. Goodale, you can cancel the policy(s) anytime
without penalty." Mr. Tupler added that I would only receive the face value of the policies. He
also said that it would be easier to sell the canceled policies to other investors because there
would be a shorter wait time for the investments to mature.

On November 1, 2016 I called Mr. Tupler to inform him that I had an emergency arise and that I
needed to cancel one of the policies that I had purchased. Mr. Tupler agreed to start the
necessary proceedings the following Monday, November 7, 2016. Mr. Tupler said I would
receive a check around the 18th or 19th of November, 2016. I have not received a refund nor
heard back from Mr. Tupler since late November. Mr. Borchert was contacted and spoke with my
attorney Mr. Dunham, a V.A. attorney representing veterans. Mr. Borchert asserted that there
was a penalty fee for canceling early but did not specify what the penalty fee was. My attorney
and I are still awaiting a constructive resolution to this dispute.

Sincerely,
Joseph Goodale

Exhibit 27 p.3

Brent Borchert                                                      November 29, 2016
Compliance Counsel
Reliant Life Shares
15260 Ventura Blvd., Suite 1420
Sherman Oaks, CA 91403

Dear Mr. Borchert,

On May 26, 2016 I purchased two policies from Reliant Life Shares valued at $15,000 each. The two policies are identified as number IL02229510 and number LP5580249. I recently contacted Larry Tupler, the agent in charge of my policies, and explained to him that I needed to cash one of the policies in. The day I called Mr. Tupler was November 1, 2016. Mr. Tupler responded on November 3, 2016. Mr. Tupler said, "I will start the proceedings on Monday, November 7th, 2016. At that time, I asked Mr. Tupler if he would help decide which policy to keep and he said he would. On November 15th, 2016 I called Mr. Tupler once again. At the time it seemed odd to me that Mr. Tupler had not contacted me before this and gone over the details with me that we had discussed earlier. Those details focused mainly on the time table for the return of the funds. In our conversation, Mr. Tupler mentioned that he has a brain tumor, then he spoke at some length about Obama care and what a hassle it had been to schedule an operation to remove the tumor. Mr. Tupler had never previously discussed anything but issues and details with me, this also seem odd. Mr. Tupler then said, "a check would be arriving in the mail Friday or Saturday, the 18th or 19th". He did not discuss with me anything regarding which policy I should keep. On Monday, the 21st, 2016 I had not received anything in the mail nor heard back from Mr. Tupler. It was then that I began to have concerns for the safety of my investment. I called Mr. Tupler on Nov. 22, 2016 and explained that I had not received anything in the mail. I also mentioned mentioned my fears and concerns regarding my investment. He seemed surprised when I mentioned this. He said, "I will call admin and call you right back. He did not call me back, so I called him back about an hour later. I told Mr. Tupler that I had decided to cash in both policies. I asked him for a time table for the return of the funds. He said, "call me back tomorrow and I will have information regarding the return of the funds. I called mr. Tupler the next day, Nov.23rd, 2016. Mr. Tupler said, "I will call admin on Monday, they will alert all 75 of Reliant's agents." He also said, " that it might not be easy to find buyers for the 2 policies during the holiday season." He also said, "that you will receive an email confirming that the email was sent." I then asked Mr. Tupler why he had not contacted admin on Nov. 7, 2016 and had the agents alerted, as he had stated earlier that he would. Mr. Tupler said, "at the time I did not have access to admin."

Mr. Borchert, today is Nov. 29th and Mr. Tupler must not have notified admin because I did not get and email from admin confirming that the alert went out to all 75 of the agents in the field. This certainly does not represent the actions of a company with a A+ rating with the Better Business Bureau or an A rating with the Business Consumer Alliance. I had not planned to cash

Exhibit 27 p.4

in both policies but I was treated with such disrespect that it became apparent to me that Reliant Life Shares did not value me as a client.

I have consulted with my attorney this afternoon and he has suggested that we give Reliant Life Shares 10 days to resolve this matter before we take further action.

Sincerely,
Joseph Goodale

Exhibit 27 p.5

# EXHIBIT "2"

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 East Los Santos Drive<br>Long Beach, California 90815<br>TELEPHONE NO.: 562-342-3011     FAX NO.: 562-724-7007<br>ATTORNEY FOR *(Name):* Plaintiff GWENDALYN DOUGLASS | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF   LOS ANGELES |
|---|
| STREET ADDRESS: 312 N Spring St |
| MAILING ADDRESS: 312 N Spring St |
| CITY AND ZIP CODE: Los Angeles  90012 |
| BRANCH NAME: Spring Street Courthouse |

| CASE NAME:<br>ED BAEZA et. al. v. RELIANT LIFE SHARES LLC,et al. |
|---|

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER:<br>22STCV38080 |
|---|---|---|---|
| ☑ **Unlimited**<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ **Limited**<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☑ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☑ is ☐ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☑ Large number of separately represented parties
   b. ☑ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☑ Substantial amount of documentary evidence
   d. ☑ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify):*  TWENTY-FOUR (24)
5. This case ☑ is ☐ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 12/6/2022

J. Owen Murrin
_____       ► _____
(TYPE OR PRINT NAME)                                          (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |
|---|---|---|

**CM-010**

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute
**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

| SHORT TITLE | CASE NUMBER |
|---|---|
| ED BAEZA et. al. v. RELIANT LIFE SHARES LLC,et al. | 22STCV38080 |

# CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION

## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.3 in all new civil case filings in the Los Angeles Superior Court**

**Step 1:** After completing the Civil Case Cover Sheet (Judicial Council form CM-010), find the exact case type in Column A that corresponds to the case type indicated in the Civil Case Cover Sheet.

**Step 2:** In Column B, check the box for the type of action that best describes the nature of the case.

**Step 3:** In Column C, circle the number which explains the reason for the court filing location you have chosen.

| Applicable Reasons for Choosing Courthouse Location (Column C) | |
|---|---|
| 1.   Class Actions must be filed in the Stanley Mosk Courthouse, Central District. | 7.   Location where petitioner resides. |
| 2.   Permissive filing in Central District. | 8.   Location wherein defendant/respondent functions wholly. |
| 3.   Location where cause of action arose. | 9.   Location where one or more of the parties reside. |
| 4.   Location where bodily injury, death or damage occurred. | 10.   Location of Labor Commissioner Office. |
| 5.   Location where performance required, or defendant resides. | 11.   Mandatory filing location (Hub Cases – unlawful detainer, limited non-collection, limited collection). |
| 6.   Location of property or permanently garaged vehicle. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Auto Tort** | Auto (22) | ☐ 2201 Motor Vehicle – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | Uninsured Motorist (46) | ☐ 4601 Uninsured Motorist – Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| **Other Personal Injury/ Property Damage/ Wrongful Death** | Other Personal Injury/ Property Damage/ Wrongful Death (23) | ☐ 2301 Premise Liability (e.g., dangerous conditions of property, slip/trip and fall, dog attack, etc.) | 1, 4 |
| | | ☐ 2302 Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, battery, vandalism, etc.) | 1, 4 |
| | | ☐ 2303 Intentional Infliction of Emotional Distress | 1, 4 |
| | | ☐ 2304 Other Personal Injury/Property Damage/Wrongful Death | 1, 4 |
| | | ☐ 2305 Elder/Dependent Adult Abuse/Claims Against Skilled Nursing Facility | 1, 4 |
| | | ☐ 2306 Intentional Conduct – Sexual Abuse Case (in any form) | 1, 4 |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

LASC Local Rule 2.3

| SHORT TITLE | CASE NUMBER |
|---|---|
| ED BAEZA et. al. v. RELIANT LIFE SHARES LLC,et al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Other Personal Injury/ Property Damage/ Wrongful Death** | | ☐ 2307 Construction Accidents | 1, 4 |
| | | ☐ 2308 Landlord – Tenant Habitability (e.g., bed bugs, mold, etc.) | 1, 4 |
| | Product Liability (24) | ☐ 2401 Product Liability (not asbestos or toxic/ environmental) | 1, 4 |
| | | ☐ 2402 Product Liability – Song-Beverly Consumer Warranty Act (CA Civil Code §§1790-1795.8) (Lemon Law) | 1, 3, 5 |
| | Medical Malpractice (45) | ☐ 4501 Medical Malpractice – Physicians & Surgeons | 1, 4 |
| | | ☐ 4502 Other Professional Health Care Malpractice | 1, 4 |
| **Non-Personal Injury/Property Damage/Wrongful Death Tort** | Business Tort (07) | ☐ 0701 Other Commercial/Business Tort (not fraud or breach of contract) | 1, 2, 3 |
| | Civil Rights (08) | ☐ 0801 Civil Rights/Discrimination | 1, 2, 3 |
| | Defamation (13) | ☐ 1301 Defamation (slander/libel) | 1, 2, 3 |
| | Fraud (16) | ☐ 1601 Fraud (no contract) | 1, 2, 3 |
| | Professional Negligence (25) | ☐ 2501 Legal Malpractice | 1, 2, 3 |
| | | ☐ 2502 Other Professional Malpractice (not medical or legal) | 1, 2, 3 |
| | Other (35) | ☐ 3501 Other Non-Personal Injury/Property Damage Tort | 1, 2, 3 |
| **Employment** | Wrongful Termination (36) | ☐ 3601 Wrongful Termination | 1, 2, 3 |
| | Other Employment (15) | ☐ 1501 Other Employment Complaint Case | 1, 2, 3 |
| | | ☐ 1502 Labor Commissioner Appeals | 10 |
| **Contract** | Breach of Contract / Warranty (06) (not insurance) | ☐ 0601 Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2, 5 |
| | | ☐ 0602 Contract/Warranty Breach – Seller Plaintiff (no fraud/negligence) | 2, 5 |
| | | ☐ 0603 Negligent Breach of Contract/Warranty (no fraud) | 1, 2, 5 |
| | | ☐ 0604 Other Breach of Contract/Warranty (no fraud/ negligence) | 1, 2, 5 |
| | | ☐ 0605 Breach of Rental/Lease Contract (COVID-19 Rental Debt) | 2, 5 |
| | Collections (09) | ☐ 0901 Collections Case – Seller Plaintiff | 5, 6, 11 |
| | | ☐ 0902 Other Promissory Note/Collections Case | 5, 11 |
| | | ☐ 0903 Collections Case – Purchased Debt (charged off consumer debt purchased on or after January 1, 2014) | 5, 6, 11 |
| | | ☐ 0904 Collections Case – COVID-19 Rental Debt | 5, 11 |
| | Insurance Coverage (18) | ☐ 1801 Insurance Coverage (not complex) | 1, 2, 5, 8 |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

LASC Local Rule 2.3

| SHORT TITLE | CASE NUMBER |
|---|---|
| ED BAEZA et. al. v. RELIANT LIFE SHARES LLC, et al. | |

| | A<br>Civil Case Cover Sheet Case Type | B<br>Type of Action<br>(check only one) | C<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Contract** (Continued) | Other Contract (37) | ☐ 3701 Contractual Fraud | 1, 2, 3, 5 |
| | | ☐ 3702 Tortious Interference | 1, 2, 3, 5 |
| | | ☐ 3703 Other Contract Dispute (not breach/insurance/fraud/ negligence) | 1, 2, 3, 8, 9 |
| **Real Property** | Eminent Domain/ Inverse Condemnation (14) | ☐ 1401 Eminent Domain/Condemnation<br><br>Number of Parcels _____ | 2, 6 |
| | Wrongful Eviction (33) | ☐ 3301 Wrongful Eviction Case | 2, 6 |
| | Other Real Property (26) | ☐ 2601 Mortgage Foreclosure | 2, 6 |
| | | ☐ 2602 Quiet Title | 2, 6 |
| | | ☐ 2603 Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2, 6 |
| **Unlawful Detainer** | Unlawful Detainer – Commercial (31) | ☐ 3101 Unlawful Detainer – Commercial (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Residential (32) | ☐ 3201 Unlawful Detainer – Residential (not drugs or wrongful eviction) | 6, 11 |
| | Unlawful Detainer – Post Foreclosure (34) | ☐ 3401 Unlawful Detainer – Post Foreclosure | 2, 6, 11 |
| | Unlawful Detainer – Drugs (38) | ☐ 3801 Unlawful Detainer – Drugs | 2, 6, 11 |
| **Judicial Review** | Asset Forfeiture (05) | ☐ 0501 Asset Forfeiture Case | 2, 3, 6 |
| | Petition re Arbitration (11) | ☐ 1101 Petition to Compel/Confirm/Vacate Arbitration | 2, 5 |
| | Writ of Mandate (02) | ☐ 0201 Writ – Administrative Mandamus | 2, 8 |
| | | ☐ 0202 Writ – Mandamus on Limited Court Case Matter | 2 |
| | | ☐ 0203 Writ – Other Limited Court Case Review | 2 |
| | Other Judicial Review (39) | ☐ 3901 Other Writ/Judicial Review | 2, 8 |
| | | ☐ 3902 Administrative Hearing | 2, 8 |
| | | ☐ 3903 Parking Appeal | 2, 8 |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ 0301 Antitrust/Trade Regulation | 1, 2, 8 |
| | Asbestos (04) | ☐ 0401 Asbestos Property Damage | 1, 11 |
| | | ☐ 0402 Asbestos Personal Injury/Wrongful Death | 1, 11 |

CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION

| SHORT TITLE | CASE NUMBER |
|---|---|
| ED BAEZA et. al. v. RELIANT LIFE SHARES LLC,et al. | |

| | **A**<br>Civil Case Cover Sheet Case Type | **B**<br>Type of Action<br>(check only one) | **C**<br>Applicable Reasons (see Step 3 above) |
|---|---|---|---|
| **Provisionally Complex Litigation** (Continued) | Construction Defect (10) | ☐ 1001 Construction Defect | 1, 2, 3 |
| | Claims Involving Mass Tort (40) | ☐ 4001 Claims Involving Mass Tort | 1, 2, 8 |
| | Securities Litigation (28) | ☑ 2801 Securities Litigation Case | 1, 2, 8 |
| | Toxic Tort Environmental (30) | ☐ 3001 Toxic Tort/Environmental | 1, 2, 3, 8 |
| | Insurance Coverage Claims from Complex Case (41) | ☐ 4101 Insurance Coverage/Subrogation (complex case only) | 1, 2, 5, 8 |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ 2001 Sister State Judgment | 2, 5, 11 |
| | | ☐ 2002 Abstract of Judgment | 2, 6 |
| | | ☐ 2003 Confession of Judgment (non-domestic relations) | 2, 9 |
| | | ☐ 2004 Administrative Agency Award (not unpaid taxes) | 2, 8 |
| | | ☐ 2005 Petition/Certificate for Entry of Judgment Unpaid Tax | 2, 8 |
| | | ☐ 2006 Other Enforcement of Judgment Case | 2, 8, 9 |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ 2701 Racketeering (RICO) Case | 1, 2, 8 |
| | Other Complaints (not specified above) (42) | ☐ 4201 Declaratory Relief Only | 1, 2, 8 |
| | | ☐ 4202 Injunctive Relief Only (not domestic/harassment) | 2, 8 |
| | | ☐ 4203 Other Commercial Complaint Case (non-tort/noncomplex) | 1, 2, 8 |
| | | ☐ 4304 Other Civil Complaint (non-tort/non-complex) | 1, 2, 8 |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ 2101 Partnership and Corporation Governance Case | 2, 8 |
| | Other Petitions (not specified above) (43) | ☐ 4301 Civil Harassment with Damages | 2, 3, 9 |
| | | ☐ 4302 Workplace Harassment with Damages | 2, 3, 9 |
| | | ☐ 4303 Elder/Dependent Adult Abuse Case with Damages | 2, 3, 9 |
| | | ☐ 4304 Election Contest | 2 |
| | | ☐ 4305 Petition for Change of Name/Change of Gender | 2, 7 |
| | | ☐ 4306 Petition for Relief from Late Claim Law | 2, 3, 8 |
| | | ☐ 4307 Other Civil Petition | 2, 9 |

**CIVIL CASE COVER SHEET ADDENDUM<br>AND STATEMENT OF LOCATION**

| SHORT TITLE | CASE NUMBER |
|---|---|
| ED BAEZA et. al. v. RELIANT LIFE SHARES LLC,et al. | |

**Step 4: Statement of Reason and Address:** Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected. Enter the address, which is the basis for the filing location including zip code. (No address required for class action cases.)

| REASON:<br>☑ 1. ☑ 2. ☐ 3. ☐ 4. ☐ 5. ☐ 6. ☐ 7. ☑ 8. ☐ 9. ☐ 10. ☐ 11 | | ADDRESS:<br>15260 Ventura Blvd #1200 |
|---|---|---|
| CITY:<br>Sherman Oaks | STATE:<br>CA | ZIP CODE:<br>91403 |

**Step 5: Certification of Assignment:** I certify that this case is properly filed in the __Central__ District of the Superior Court of California, County of Los Angeles [Code of Civ. Proc., 392 et seq., and LASC Local Rule 2.3(a)(1)(E)]

Dated: __12/06/2022__

_____
(SIGNATURE OF ATTORNEY/FILING PARTY

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.
2. If filing a Complaint, a completed Summons form for issuance by the Clerk.
3. Civil Case Cover Sheet Judicial Council form CM-010.
4. Civil Case Cover Sheet Addendum and Statement of Location form LASC CIV 109 (10/22).
5. Payment in full of the filing fee, unless there is a court order for waiver, partial or schedule payments.
6. A signed order appointing a Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court to issue a Summons.
7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the Summons and Complaint, or other initiating pleading in the case.

# EXHIBIT "3"

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>12/06/2022<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ G. Carini _____ Deputy |
| **NOTICE OF CASE ASSIGNMENT**<br><br>**UNLIMITED CIVIL CASE** | |
| **Your case is assigned for all purposes to the judicial officer indicated below.** | CASE NUMBER:<br>22STCV38080 |

**THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT**

| | ASSIGNED JUDGE | DEPT | ROOM | | | ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|---|---|---|---|---|---|
| ✔ | Carolyn B. Kuhl | 12 | | | | | | |

Given to the Plaintiff/Cross-Complainant/Attorney of Record

on  12/07/2022
    (Date)

Sherri R. Carter, Executive Officer / Clerk of Court

By  G. Carini                                    , Deputy Clerk

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

LACIV 190 (Rev 6/18)
LASC Approved 05/06

## INSTRUCTIONS FOR HANDLING UNLIMITED CIVIL CASES

The following critical provisions of the California Rules of Court, Title 3, Division 7, as applicable in the Superior Court, are summarized for your assistance.

### APPLICATION
The Division 7 Rules were effective January 1, 2007.  They apply to all general civil cases.

### PRIORITY OVER OTHER RULES
The Division 7 Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

### CHALLENGE TO ASSIGNED JUDGE
A challenge under Code of Civil Procedure Section 170.6 must be made within **15** days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

### TIME STANDARDS
Cases assigned to the Independent Calendaring Courts will be subject to processing under the following time standards:

### COMPLAINTS
All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days.

### CROSS-COMPLAINTS
Without leave of court first being obtained, no cross-complaint may be filed by any party after their answer is filed.  Cross-complaints shall be served within 30 days of the filing date and a proof of service filed within 60 days of the filing date.

### STATUS CONFERENCE
A status conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint.  Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

### FINAL STATUS CONFERENCE
The Court will require the parties to attend a final status conference not more than 10 days before the scheduled trial date.  All parties shall have motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested form jury instructions, special jury instructions, and special jury verdicts timely filed and served prior to the conference.  These matters may be heard and resolved at this conference.  At least five days before this conference, counsel must also have exchanged lists of exhibits and witnesses, and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Three of the Los Angeles Superior Court Rules.

### SANCTIONS
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules.  Such sanctions may be on a party, or if appropriate, on counsel for a party.

**This is not a complete delineation of the Division 7 or Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under Trial Court Delay Reduction.  Careful reading and compliance with the actual Chapter Rules is imperative.**

### Class Actions
Pursuant to Local Rule 2.3, all class actions shall be filed at the Stanley Mosk Courthouse and are randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be a class action it will be returned to an Independent Calendar Courtroom for all purposes.

### *Provisionally Complex Cases
Cases filed as provisionally complex are initially assigned to the Supervising Judge of complex litigation for determination of complex status.  If the case is deemed to be complex within the meaning of California Rules of Court 3.400 et seq., it will be randomly assigned to a complex judge at the designated complex courthouse.  If the case is found not to be complex, it will be returned to an Independent Calendar Courtroom for all purposes.

**NOTICE OF CASE ASSIGNMENT – UNLIMITED CIVIL CASE**

# EXHIBIT "4"

## VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**



**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                    FAX NO. (Optional): | | |
| E-MAIL ADDRESS (Optional): | | |
| ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – EARLY ORGANIZATIONAL MEETING** | CASE NUMBER: |
|---|---|

**This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.**

**The parties agree that:**

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following*:

   a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable? Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

   b. Initial mutual exchanges of documents at the "core" of the litigation. (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core." In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

   c. Exchange of names and contact information of witnesses;

   d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

   e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

   f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

   g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

**STIPULATION – EARLY ORGANIZATIONAL MEETING**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

    discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

    h.  Computation of damages, including documents, not privileged or protected from disclosure, on which such computation is based;

    i.  Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lacourt.org* under "*Civil*" and then under "*General Information*").

2.    The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-
             (INSERT DATE)                       (INSERT DATE)
complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation. A copy of the General Order can be found at *www.lacourt.org* under "*Civil*", click on "*General Information*", then click on "*Voluntary Efficient Litigation Stipulations*".

3.    The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4.    References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day

The following parties stipulate:

Date:

_____    &#10148;  _____
     (TYPE OR PRINT NAME)                    (ATTORNEY FOR PLAINTIFF)
Date:

_____    &#10148;  _____
     (TYPE OR PRINT NAME)                   (ATTORNEY FOR DEFENDANT)
Date:

_____    &#10148;  _____
     (TYPE OR PRINT NAME)                   (ATTORNEY FOR DEFENDANT)
Date:

_____    &#10148;  _____
     (TYPE OR PRINT NAME)                   (ATTORNEY FOR DEFENDANT)
Date:

_____    &#10148;  _____
     (TYPE OR PRINT NAME)                   (ATTORNEY FOR _____)
Date:

_____    &#10148;  _____
     (TYPE OR PRINT NAME)                   (ATTORNEY FOR _____)
Date:

_____    &#10148;  _____
     (TYPE OR PRINT NAME)                   (ATTORNEY FOR _____)

Print    Save    Clear

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:                                  FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **STIPULATION – DISCOVERY RESOLUTION** | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.**

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally.  Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

    a.  The party requesting the Informal Discovery Conference will:

        i.   File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

        ii.  Include a brief summary of the dispute and specify the relief requested; and

        iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

    b.  Any Answer to a Request for Informal Discovery Conference must:

        i.   Also be filed on the approved form (copy attached);

        ii.  Include a brief summary of why the requested relief should be denied;

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

     iii.    Be filed within two (2) court days of receipt of the Request; and

     iv.    Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c. No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d. If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e. If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4. If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5. The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6. Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7. Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR PLAINTIFF)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR DEFENDANT)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

Date:

_____
(TYPE OR PRINT NAME)

➢ _____
(ATTORNEY FOR _____)

| Print | Save |   | Clear |
|---|---|---|---|

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:        FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): | | |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| **INFORMAL DISCOVERY CONFERENCE**<br>(pursuant to the Discovery Resolution Stipulation of the parties) | CASE NUMBER: |
|---|---|

1. This document relates to:

   ☐    Request for Informal Discovery Conference
   ☐    Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. **For a Request for Informal Discovery Conference, <u>briefly</u> describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, <u>briefly</u> describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.**

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

| Print | Save | Clear |
|---|---|---|

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:                          FAX NO. (Optional):
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1.  At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine.  Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2.  The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine.  In that meet and confer, the parties will determine:

    a.  Whether the parties can stipulate to any of the proposed motions.  If the parties so stipulate, they may file a stipulation and proposed order with the Court.

    b.  Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues.  For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference.  Each side's portion of the short joint statement of issues may not exceed three pages.  The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3.  All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

## The following parties stipulate:

Date:

_____       ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR PLAINTIFF)

Date:

_____       ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____       ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____       ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR DEFENDANT)

Date:

_____       ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____       ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

Date:

_____       ➤ _____
(TYPE OR PRINT NAME)                              (ATTORNEY FOR _____)

## THE COURT SO ORDERS.

Date: _____       _____
                                             JUDICIAL OFFICER

[Print]   [Save]                                                    [Clear]

# FILED

LOS ANGELES SUPERIOR COURT

MAY 11 2011

JOHN A. CLARKE, CLERK

*N. Navarro*

BY NANCY NAVARRO, DEPUTY

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

General Order Re
Use of Voluntary Efficient Litigation
Stipulations

)
)
)
)
)
)

ORDER PURSUANT TO CCP 1054(a),
EXTENDING TIME TO RESPOND BY
30 DAYS WHEN PARTIES AGREE
TO EARLY ORGANIZATIONAL
MEETING STIPULATION

Whereas the Los Angeles Superior Court and the Executive Committee of the Litigation Section of the Los Angeles County Bar Association have cooperated in drafting "Voluntary Efficient Litigation Stipulations" and in proposing the stipulations for use in general jurisdiction civil litigation in Los Angeles County;

Whereas the Los Angeles County Bar Association Litigation Section; the Los Angeles County Bar Association Labor and Employment Law Section; the Consumer Attorneys Association of Los Angeles; the Association of Southern California Defense Counsel; the Association of Business Trial Lawyers of Los Angeles; and the California Employment Lawyers Association all "endorse the goal of promoting efficiency in litigation, and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases;"

-1-

ORDER PURSUANT TO CCP 1054(a)

Whereas the Early Organizational Meeting Stipulation is intended to encourage cooperation among the parties at an early stage in litigation in order to achieve litigation efficiencies;

Whereas it is intended that use of the Early Organizational Meeting Stipulation will promote economic case resolution and judicial efficiency;

Whereas, in order to promote a meaningful discussion of pleading issues at the Early Organizational Meeting and potentially to reduce the need for motions to challenge the pleadings, it is necessary to allow additional time to conduct the Early Organizational Meeting before the time to respond to a complaint or cross complaint has expired;

Whereas Code of Civil Procedure section 1054(a) allows a judge of the court in which an action is pending to extend for not more than 30 days the time to respond to a pleading "upon good cause shown";

Now, therefore, this Court hereby finds that there is good cause to extend for 30 days the time to respond to a complaint or to a cross complaint in any action in which the parties have entered into the Early Organizational Meeting Stipulation.  This finding of good cause is based on the anticipated judicial efficiency and benefits of economic case resolution that the Early Organizational Meeting Stipulation is intended to promote.

IT IS HEREBY ORDERED that, in any case in which the parties have entered into an Early Organizational Meeting Stipulation, the time for a defending party to respond to a complaint or cross complaint shall be extended by the 30 days permitted

-2-

ORDER PURSUANT TO CCP 1054(a)

by Code of Civil Procedure section 1054(a) without further need of a specific court order.

DATED: _May 11, 2011_

_____

Carolyn B. Kuhl, Supervising Judge of the
Civil Departments, Los Angeles Superior Court

-3-

ORDER PURSUANT TO CCP 1054(a)

# EXHIBIT "5"

2019-GEN-014-00

**FILED**
Superior Court of California
County of Los Angeles

**MAY 0 3 2019**

Sherri R. Carter, Executive Officer/Clerk

By_____, Deputy
Rizalinda Mina

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

IN RE LOS ANGELES SUPERIOR COURT )
— MANDATORY ELECTRONIC FILING )
FOR CIVIL )
)
)
)
_____ )

FIRST AMENDED GENERAL ORDER

On December 3, 2018, the Los Angeles County Superior Court mandated electronic filing of all documents in Limited Civil cases by litigants represented by attorneys. On January 2, 2019, the Los Angeles County Superior Court mandated electronic filing of all documents filed in Non-Complex Unlimited Civil cases by litigants represented by attorneys. (California Rules of Court, rule 2.253(b).) All electronically filed documents in Limited and Non-Complex Unlimited cases are subject to the following:

1) DEFINITIONS

   a) **"Bookmark"**   A bookmark is a PDF document navigational tool that allows the reader to quickly locate and navigate to a designated point of interest within a document.

   b) **"Efiling Portal"**   The official court website includes a webpage, referred to as the efiling portal, that gives litigants access to the approved Electronic Filing Service Providers.

   c) **"Electronic Envelope"**   A transaction through the electronic service provider for submission of documents to the Court for processing which may contain one or more PDF documents attached.

   d) **"Electronic Filing"**   Electronic Filing (eFiling) is the electronic transmission to a Court of a document in electronic form. (California Rules of Court, rule 2.250(b)(7).)

1

e) **"Electronic Filing Service Provider"**  An Electronic Filing Service Provider (EFSP) is a person or entity that receives an electronic filing from a party for retransmission to the Court. In the submission of filings, the EFSP does so on behalf of the electronic filer and not as an agent of the Court.  (California Rules of Court, rule 2.250(b)(8).)

f) **"Electronic Signature"**  For purposes of these local rules and in conformity with Code of Civil Procedure section 17, subdivision (b)(3), section 34, and section 1010.6, subdivision (b)(2), Government Code section 68150, subdivision (g), and California Rules of Court, rule 2.257, the term "Electronic Signature" is generally defined as an electronic sound, symbol, or process attached to or logically associated with an electronic record and executed or adopted by a person with the intent to sign the electronic record.

g) **"Hyperlink"**  An electronic link providing direct access from one distinctively marked place in a hypertext or hypermedia document to another in the same or different document.

h) **"Portable Document Format"**  A digital document format that preserves all fonts, formatting, colors and graphics of the original source document, regardless of the application platform used.

2) MANDATORY ELECTRONIC FILING

a) Trial Court Records

Pursuant to Government Code section 68150, trial court records may be created, maintained, and preserved in electronic format.  Any document that the Court receives electronically must be clerically processed and must satisfy all legal filing requirements in order to be filed as an official court record (California Rules of Court, rules 2.100, et seq. and 2.253(b)(6)).

b) Represented Litigants

Pursuant to California Rules of Court, rule 2.253(b), represented litigants are required to electronically file documents with the Court through an approved EFSP.

c) Public Notice

The Court has issued a Public Notice with effective dates the Court required parties to electronically file documents through one or more approved EFSPs.  Public Notices containing effective dates and the list of EFSPs are available on the Court's website, at www.lacourt.org.

d) Documents in Related Cases

Documents in related cases must be electronically filed in the eFiling portal for that case type if electronic filing has been implemented in that case type, regardless of whether the case has been related to a Civil case.

3) EXEMPT LITIGANTS

a) Pursuant to California Rules of Court, rule 2.253(b)(2), self-represented litigants are exempt from mandatory electronic filing requirements.

b) Pursuant to Code of Civil Procedure section 1010.6, subdivision (d)(3) and California Rules of Court, rule 2.253(b)(4), any party may make application to the Court requesting to be excused from filing documents electronically and be permitted to file documents by conventional means if the party shows undue hardship or significant prejudice.

4) EXEMPT FILINGS

a) The following documents shall not be filed electronically:

i) Peremptory Challenges or Challenges for Cause of a Judicial Officer pursuant to Code of Civil Procedure sections 170.6 or 170.3;

ii) Bonds/Undertaking documents;

iii) Trial and Evidentiary Hearing Exhibits

iv) Any ex parte application that is filed concurrently with a new complaint including those that will be handled by a Writs and Receivers department in the Mosk courthouse; and

v) Documents submitted conditionally under seal. The actual motion or application shall be electronically filed. A courtesy copy of the electronically filed motion or application to submit documents conditionally under seal must be provided with the documents submitted conditionally under seal.

b) Lodgments

Documents attached to a Notice of Lodgment shall be lodged and/or served conventionally in paper form. The actual document entitled, "Notice of Lodgment," shall be filed electronically.

//

//

5) ELECTRONIC FILING SYSTEM WORKING PROCEDURES

Electronic filing service providers must obtain and manage registration information for persons and entities electronically filing with the court.

6) TECHNICAL REQUIREMENTS

a) Electronic documents must be electronically filed in PDF, text searchable format **when** technologically feasible without impairment of the document's image**.**

b) The table of contents for any filing must be bookmarked.

c) Electronic documents, including but not limited to, declarations, proofs of service, and exhibits, must be bookmarked within the document pursuant to California Rules of Court, rule 3.1110(f)(4).  Electronic bookmarks must include links to the first page of each bookmarked item (e.g. exhibits, declarations, deposition excerpts) and with bookmark titles that identify the bookedmarked item and briefly describe the item.

d) Attachments to primary documents must be bookmarked.  Examples include, but are not limited to, the following:

   i)    Depositions;

   ii)   Declarations;

   iii)  Exhibits (including exhibits to declarations);

   iv)   Transcripts (including excerpts within transcripts);

   v)    Points and Authorities;

   vi)   Citations; and

   vii)  Supporting Briefs.

e) Use of hyperlinks within documents (including attachments and exhibits) is strongly encouraged.

f) Accompanying Documents

Each document acompanying a single pleading must be electronically filed as a **separate** digital PDF document.

g) Multiple Documents

Multiple documents relating to one case can be uploaded in one envelope transaction.

h) Writs and Abstracts

    Writs and Abstracts must be submitted as a separate electronic envelope.

i) Sealed Documents

    If and when a judicial officer orders documents to be filed under seal, those documents must be filed electronically (unless exempted under paragraph 4); the burden of accurately designating the documents as sealed at the time of electronic submission is the submitting party's responsibility.

j) Redaction

    Pursuant to California Rules of Court, rule 1.201, it is the submitting party's responsibility to redact confidential information (such as using initials for names of minors, using the last four digits of a social security number, and using the year for date of birth) so that the information shall not be publicly displayed.

7) ELECTRONIC FILING SCHEDULE

a) Filed Date

    i) Any document received electronically by the court between 12:00 am and 11:59:59 pm shall be deemed to have been effectively filed on that court day if accepted for filing. Any document received electronically on a non-court day, is deemed to have been effectively filed on the next court day if accepted. (California Rules of Court, rule 2.253(b)(6); Code Civ. Proc. § 1010.6(b)(3).)

    ii) Notwithstanding any other provision of this order, if a digital document is not filed in due course because of: (1) an interruption in service; (2) a transmission error that is not the fault of the transmitter; or (3) a processing failure that occurs after receipt, the Court may order, either on its own motion or by noticed motion submitted with a declaration for Court consideration, that the document be deemed filed and/or that the document's filing date conform to the attempted transmission date.

8) EX PARTE APPLICATIONS

a) Ex parte applications and all documents in support thereof must be electronically filed no later than 10:00 a.m. the court day before the ex parte hearing.

b)  Any written opposition to an ex parte application must be electronically filed by 8:30 a.m. the day of the ex parte hearing.  A printed courtesy copy of any opposition to an ex parte application must be provided to the court the day of the ex parte hearing.

9)  PRINTED COURTESY COPIES

a)  For any filing electronically filed two or fewer days before the hearing, a courtesy copy must be delivered to the courtroom by 4:30 p.m. the same business day the document is efiled.  If the efiling is submitted after 4:30 p.m., the courtesy copy must be delivered to the courtroom by 10:00 a.m. the next business day.

b)  Regardless of the time of electronic filing, a printed courtesy copy (along with proof of electronic submission) is required for the following documents:

i)  Any printed document required pursuant to a Standing or General Order;

ii)  Pleadings and motions (including attachments such as declarations and exhibits) of 26 pages or more;

iii)  Pleadings and motions that include points and authorities;

iv)  Demurrers;

v)  Anti-SLAPP filings, pursuant to Code of Civil Procedure section 425.16;

vi)  Motions for Summary Judgment/Adjudication; and

vii)  Motions to Compel Further Discovery.

c)  Nothing in this General Order precludes a Judicial Officer from requesting a courtesy copy of additional documents.  Courtroom specific courtesy copy guidelines can be found at www.lacourt.org on the Civil webpage under "Courtroom Information."

10)  WAIVER OF FEES AND COSTS FOR ELECTRONICALLY FILED DOCUMENTS

a)  Fees and costs associated with electronic filing must be waived for any litigant who has received a fee waiver.  (California Rules of Court, rules 2.253(b)(), 2.258(b), Code Civ. Proc. § 1010.6(d)(2).)

b)  Fee waiver applications for waiver of court fees and costs pursuant to Code of Civil Procedure section 1010.6, subdivision (b)(6), and  California Rules of Court, rule 2.252(f), may be electronically filed in any authorized action or proceeding.

1   11) SIGNATURES ON ELECTRONIC FILING

2       For purposes of this General Order, all electronic filings must be in compliance with California

3       Rules of Court, rule 2.257.  This General Order applies to documents filed within the Civil

4       Division of the Los Angeles County Superior Court.

5

6           This First Amended General Order supersedes any previous order related to electronic filing,

7       and is effective immediately, and is to remain in effect until otherwise ordered by the Civil

8       Supervising Judge and/or Presiding Judge.

9

10      DATED:  May 3, 2019



KEVIN C. BRAZILE
Presiding Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

7

# EXHIBIT "6"



# Superior Court of California, County of Los Angeles

## ALTERNATIVE DISPUTE RESOLUTION (ADR) INFORMATION PACKAGE

**THE PLAINTIFF MUST SERVE THIS ADR INFORMATION PACKAGE ON EACH PARTY WITH THE COMPLAINT.**

**CROSS-COMPLAINANTS** must serve this ADR Information Package on any new parties named to the action with the cross-complaint.

### What is ADR?

ADR helps people find solutions to their legal disputes without going to trial. The main types of ADR are negotiation, mediation, arbitration, and settlement conferences. When ADR is done by phone, videoconference or computer, it may be called Online Dispute Resolution (ODR). These alternatives to litigation and trial are described below.

### Advantages of ADR

- **Saves Time:** ADR is faster than going to trial.
- **Saves Money:** Parties can save on court costs, attorney's fees, and witness fees.
- **Keeps Control** (with the parties): Parties choose their ADR process and provider for voluntary ADR.
- **Reduces Stress/Protects Privacy:** ADR is done outside the courtroom, in private offices, by phone or online.

### Disadvantages of ADR

- **Costs:** If the parties do not resolve their dispute, they may have to pay for ADR, litigation, and trial.
- **No Public Trial:** ADR does not provide a public trial or a decision by a judge or jury.

### Main Types of ADR

1. **Negotiation**: Parties often talk with each other in person, or by phone or online about resolving their case with a settlement agreement instead of a trial. If the parties have lawyers, they will negotiate for their clients.

2. **Mediation**: In mediation, a neutral mediator listens to each person's concerns, helps them evaluate the strengths and weaknesses of their case, and works with them to try to create a settlement agreement that is acceptable to all.  Mediators do not decide the outcome. Parties may go to trial if they decide not to settle.

    **Mediation may be appropriate when the parties**
    - want to work out a solution but need help from a neutral person.
    - have communication problems or strong emotions that interfere with resolution.

    **Mediation may <u>not</u> be appropriate when the parties**
    - want a public trial and want a judge or jury to decide the outcome.
    - lack equal bargaining power or have a history of physical/emotional abuse.

**How to Arrange Mediation in Los Angeles County**

Mediation for **civil cases** is voluntary and parties may select any mediator they wish. Options include:

a. **The Civil Mediation Vendor Resource List**
   If all parties in an active civil case agree to mediation, they may contact these organizations to request a "Resource List Mediation" for mediation at reduced cost or no cost (for selected cases).

   - **ADR Services, Inc.** Case Manager Elizabeth Sanchez, elizabeth@adrservices.com (949) 863-9800
   - **Mediation Center of Los Angeles** Program Manager info@mediationLA.org (833) 476-9145

**These organizations cannot accept every case and they may decline cases at their discretion**. They may offer online mediation by video conference for cases they accept. Before contacting these organizations, review important information and FAQs at www.lacourt.org/ADR.Res.List

**NOTE: The Civil Mediation Vendor Resource List program does not accept family law, probate or small claims cases.**

b. **Los Angeles County Dispute Resolution Programs**
   https://hrc.lacounty.gov/wp-content/uploads/2020/05/DRP-Fact-Sheet-23October19-Current-as-of-October-2019-1.pdf

   Day of trial mediation programs have been paused until further notice.

   **Online Dispute Resolution (ODR).** Parties in small claims and unlawful detainer (eviction) cases should carefully review the Notice and other information they may receive about (ODR) requirements for their case.

c. Mediators and ADR and Bar organizations that provide mediation may be found on the internet.

3. **Arbitration**: Arbitration is less formal than trial, but like trial, the parties present evidence and arguments to the person who decides the outcome. In "binding" arbitration, the arbitrator's decision is final; there is no right to trial. In "nonbinding" arbitration, any party can request a trial after the arbitrator's decision. For more information about arbitration, visit http://www.courts.ca.gov/programs-adr.htm

4. **Mandatory Settlement Conferences (MSC)**: MSCs are ordered by the Court and are often held close to the trial date or on the day of trial. The parties and their attorneys meet with a judge or settlement officer who does not make a decision but who instead assists the parties in evaluating the strengths and weaknesses of the case and in negotiating a settlement. For information about the Court's MSC programs for civil cases, visit http://www.lacourt.org/division/civil/C10047.aspx

Los Angeles Superior Court ADR website: http://www.lacourt.org/division/civil/C10109.aspx
For general information and videos about ADR, visit http://www.courts.ca.gov/programs-adr.htm

# EXHIBIT "7"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/07/2022 03:08 PM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Drew,Deputy Clerk
22STCV38080

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.
(Additional Parties Attachment form is attached.)

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ED BAEZA, an individual.
(Additional Parties Attachment form is attached.)

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Spring Street Courthouse

312 N Spring St, Los Angeles, CA 90012

CASE NUMBER:
*(Número del Caso):*
22STCV38080

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
J. Owen Murrin, Murrin Law Firm, 7040 E. Los Santos Dr., Long Beach, California 90815. 562-342-3011

DATE:
*(Fecha)* 12/07/2022

Clerk, by Sherri R. Carter Executive Officer / Clerk of Court, Deputy
*(Secretario)* S. Drew *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*
   under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

**SUM- 00 A**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| _ Ed Baeza et. al. v. RELIANT LIFE SHARES LLC,et al. | 22STCV38080 |

### INSTRUCTIONS FOR USE

➜ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➜ If this attachment is used, insert the following statement in the plaintiff or defendant bo  on the summons: "Additional Parties Attachment form is attached."

L  add o a  ar e  *(C*            *U*     r     r          r *)*:

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

RMS TRUST;
PRINCIPLE FINANCIAL SERVICES, INC.;
SCOTT GRADY;
PAUL ROY;
DAVID UNDERWOOD;
SHAWN DAVENPORT;
LARRY BAGBY;
BRENT BORCHERT;
MARK SANSOUCY;
LARRY TUPLER;
JOEL KLEINFELD;
RLM TRUST;
VINCENT BOVINO;
UMB BANK N.A.;
BANK OF UTAH;
FIRST WESTERN TRUST BANK;
PACIFIC LIFE INSURANCE COMPANY;
LINCOLN FINANCIAL GROUP;
PRINCIPAL FINANCIAL GROUP;
AVIVA LIFE AND ANNUITY;
NASSAU LIFE INSURANCE COMPANY AKA REINSURANCE GROUP HOLDINGS, L.P, .AND FORMERLY
KNOWN AS PHOENIX COMPANIES; THE PENN MUTUAL LIFE INSURANCE COMPANY;
LINCOLN BENEFIT LIFE;
BENEFICIAL LIFE INSURANCE CO.;
PHL VARIABLE INSURANCE COMPANY;
RELIASTAR LIFE INSURANCE COMPANY;
AXA EQUITABLE LIFE INSURANCE COMPANY;
ZURICH AMERICAN LIFE INSURANCE COMPANY;
JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK;
and DOES 1-20

Page _____ of _____

**Page 1 of 1**

**ADDITIONAL PARTIES ATTACHMENT**
A  a    e    oS    o




www.ceb.com

**SUM- 00 A**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| _ Ed Baeza et. al. v. RELIANT LIFE SHARES LLC, et al. | 22STCV38080 |

**INSTRUCTIONS FOR USE**

➔ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

➔ If this attachment is used, insert the following statement in the plaintiff or defendant bo  on the summons: "Additional Parties Attachment form is attached."

L   add  o a  ar e  *(C*        *U*    *r*      *r*         *r  )*:

[✓] Plaintiff   [ ] Defendant   [ ] Cross-Complainant   [ ] Cross-Defendant

CONCEPCION BAEZA, an individual;
PAUL BUGLER, an individual;
WALTER BUGLER, an individual;
JAMES CIRILE, an individual;
NATHAN COLEMAN, an individual;
GAMAN, LLC;
GENE GOLDEN, an individual;
JOSEPH GOODALE, an individual;
RACHEL GILA, an individual;
TRUDY BELINDA JOHNSON, an individual;
CHARLES LAWRENCE, an individual;
ORSON K. LEONG, an individual;
PETER J. LOWE, an individual;
BARBARA THORSELL, an individual;
MARK THORSELL, an individual;
CLIFFORD RITZ, an individual;
STEVEN C. ROEMER, an individual;
GREG SCHMITT, an individual;
JOHN STOCKSDALE, an individual;
JENNIFER VANCE, an individual
YEYO, LLC;

Page _____ of _____

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
A  a   e   oS   o



www.ceb.com

# EXHIBIT "8"

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Spring Street Courthouse, Department 12

**22STCV38080**                                      December 16, 2022
**ED BAEZA, , et al. vs RELIANT LIFE SHARES LLC, et al.**                8:29 AM

Judge: Honorable Carolyn B. Kuhl          CSR: None
Judicial Assistant: L. M'Greene           ERM: None
Courtroom Assistant: None                 Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Court Order re: Complex Determination

This case was automatically assigned to Dept. 12 SSC because the civil case cover sheet indicates that the case is a class action. The case is not a class action because it is not brought on behalf of others similarly situated and because the Complaint includes no class action allegations. Accordingly the case was assigned erroneously. Because the civil case cover sheet indicates that the case is complex pursuant to CRC 3.400, the case is transferred to the Hon. David S. Cunningham, Asst. Supervising Judge Civil/Complex for determination as to whether the case should be designated as complex.

The case is reassigned for the following reason: For Complex Determination.

Good cause appearing and on order of the Court, the above matter is reassigned at the direction of the Supervising Judge to Judge David S. Cunningham III in Department 11 at the Spring Street Courthouse for all further proceedings.

The Judicial Assistant hereby gives notice.

Certificate of Mailing is attached.

# EXHIBIT "9"

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES** | Reserved for Clerk's File Stamp |
| COURTHOUSE ADDRESS:<br>Spring Street Courthouse<br>312 North Spring Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br>12/16/2022<br>Sherri R. Carter, Executive Officer / Clerk of Court<br>By: _____ L. M'Greené _____ Deputy |
| PLAINTIFF/PETITIONER:<br>Ed Baeza,  et al | |
| DEFENDANT/RESPONDENT:<br>Reliant Life Shares LLC, et al. | |
| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>22STCV38080 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Court Order re: Complex Determination) of 12/16/2022  upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

John Owen Murrin
Murrin Law Firm
7040 East Los Santos Drive
Long Beach, CA 90815

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: <u>12/16/2022</u>     By: <u>L. M'Greené</u>
                                        Deputy Clerk

**CERTIFICATE OF MAILING**

# EXHIBIT "10"

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Spring Street Courthouse, Department 11

**22STCV38080**                                              December 19, 2022
**ED BAEZA, , et al. vs RELIANT LIFE SHARES LLC, et al.**          11:18 AM

Judge: Honorable David S. Cunningham III        CSR: None
Judicial Assistant: I. Arellanes                ERM: None
Courtroom Assistant: C. Concepcion              Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Court Order Re. Case Reassignment;

This case was ordered transferred to the Assistant Supervising Judge of Complex Civil Litigation, Judge David S. Cunningham III in Department 11, for reassignment purposes only.

The case is reassigned for the following reason: Non-Complex / Non-Class Action.

The case is ordered transferred to Judge Michelle Williams Court in Department 1 at the Stanley Mosk Courthouse for reassignment purposes only.

Complex fees paid, if any, are ordered refunded.

Any party objecting to the non-complex designation must file an objection with proof of service in Department 11 within ten (10) days of service of this minute order. Any response to the objection must be filed in Department 11 within seven (7) days of service of the objection. This Court will make its ruling on the submitted pleadings.

Plaintiff is ordered to forthwith serve a copy of this minute order on all parties and file a proof of service within seven (7) days of service.

Certificate of Mailing is attached.

# EXHIBIT "11"

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Stanley Mosk Courthouse<br>111 North Hill Street, Los Angeles, CA 90012 | **FILED**<br>Superior Court of California<br>County of Los Angeles<br><br>12/19/2022<br><br>Sherri R. Carter, Executive Officer / Clerk of Court<br><br>By: _____ I. Arellanes _____ Deputy |
| PLAINTIFF/PETITIONER:<br>Ed Baeza,  et al | |
| DEFENDANT/RESPONDENT:<br>Reliant Life Shares LLC, et al. | |

| **CERTIFICATE OF MAILING** | CASE NUMBER:<br>22STCV38080 |
|---|---|

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Court Order Re. Case Reassignment;) of 12/19/2022  upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

John Owen Murrin
Murrin Law Firm
7040 East Los Santos Drive
Long Beach, CA 90815

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: <u>12/19/2022</u>

By:   I. Arellanes
        Deputy Clerk

**CERTIFICATE OF MAILING**

# EXHIBIT "12"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/20/2022 10:44 AM Sherri R. Carter, Executive Officer/Clerk of Court, by A. Lopez Deputy Clerk

Case 2:23-cv-00474-SB-PD   Document 1   Filed 01/20/23   Page 220 of 443   Page ID #:220

**POS-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815<br><br>TELEPHONE NO.: 562-342-3011     FAX NO. *(Optional):*  562-724-7007<br>E-MAIL ADDRESS *(Optional):* jmurrin@murrinlawfirm.com<br>ATTORNEY FOR *(Name):* Ed Baeza, et. al. | *FOR COURT USE ONLY* |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES**
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

| | |
|---|---|
| PLAINTIFF/PETITIONER: Ed Baeza, et. al.<br>DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | CASE NUMBER:<br>22STCV38080 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [x] summons

   b. [x] complaint

   c. [x] Alternative Dispute Resolution (ADR) package

   d. [x] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [x] other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. Party served *(specify name of party as shown on documents served):*
      Andrew Murphy

   b. [x] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
      Jasmine, the receptionist for Reliant Life Shares, LLC which is the company Andrew Murphy works for.

4. Address where the party was served:
   15260 Ventura Blvd., Suite 1200, Sherman Oaks, CA 91403

5. I served the party *(check proper box)*

   a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party   (1) on *(date):*         (2) at *(time):*

   b. [x] **by substituted service.** On *(date):*12/15/2022         at *(time):*  2:20 PM   I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*
      Jasmine, the receptionist at the above location

      (1) [x] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [x] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):* 12/19/2022     from *(city):* Long Beach, CA      **or** [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |

**POS-010**

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Ed Baeza, et. al. | CASE NUMBER: |
| DEFENDANT/RESPONDENT:  Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |

5.  c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date):*              (2)  from *(city):*

    (3)  ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*) (Code Civ. Proc., § 415.30.)*

    (4)  ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  ☐  **by other means** *(specify means of service and authorizing code section):*

    ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a.  ☒  as an individual defendant.

  b.  ☐  as the person sued under the fictitious name of  *(specify):*

  c.  ☐  as occupant.

  d.  ☐  On behalf of *(specify):*

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7.  **Person who served papers**

  a.  Name:  Diamond Freeman

  b.  Address:  7040 E. Los Santos Dr., Long Beach, CA 90815

  c.  Telephone number: 562-342-3011

  d.  **The fee** for service was: $ 20.00

  e.  I am:

    (1)  ☐ not a registered California process server.

    (2)  ☒ exempt from registration under Business and Professions Code section 22350(b).

    (3)  ☐ a registered California process server:

      (i)  ☐ owner  ☐ employee  ☐ independent contractor.

      (ii)  Registration No.:

      (iii)  County:

8.  ☒  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9.  ☐  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/19/2022

Diamond Freeman            ▶     *Diamond Freeman*

_____          _____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)         (SIGNATURE)

**PROOF OF SERVICE OF SUMMONS**

# EXHIBIT "13"

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
## Civil Division
Central District, Stanley Mosk Courthouse, Department 1

**22STCV38080**                                                    December 20, 2022
**ED BAEZA, , et al. vs RELIANT LIFE SHARES LLC, et al.**                  11:08 AM

Judge: Honorable Michelle Williams Court          CSR: None
Judicial Assistant: A. Mchitarian                 ERM: None
Courtroom Assistant: None                         Deputy Sheriff: None

APPEARANCES:

For Plaintiff(s): No Appearances

For Defendant(s):  No Appearances

**NATURE OF PROCEEDINGS:** Court Order Re Reassignment to an Independent Calendar Court

The case is reassigned for the following reason: for all purposes.

Good cause appearing and on order of the Court, the above matter is reassigned at the direction of the Supervising Judge to Judge Maurice A. Leiter in Department 54 at the Stanley Mosk Courthouse for all further proceedings.

If any appearing party has not yet exercised a peremptory challenge under Code of Civil Procedure section 170.6, peremptory challenges by them to the newly assigned judge must be timely filed within the 15 day period specified in Code of Civil Procedure section 170.6, with extensions of time pursuant to Code of Civil Procedure section 1013 if service is by mail. Previously non-appearing parties, if any, have a 15-day statutory period from first appearance to file a peremptory challenge (Government Code section 68616(1)).

Counsel for Plaintiff to give notice. Certificate of Mailing is attached.

# EXHIBIT "14"

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

Reserved for Clerk's File Stamp

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

**FILED**
Superior Court of California
County of Los Angeles

12/20/2022

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____A. Mchitarian_____ Deputy

PLAINTIFF/PETITIONER:
Ed Baeza,  et al

DEFENDANT/RESPONDENT:
Reliant Life Shares LLC, et al.

| **CERTIFICATE OF MAILING** | CASE NUMBER: |
| | 22STCV38080 |

**I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Minute Order (Court Order Re Reassignment to an Independent Calendar Court) of 12/20/2022  upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.**

John Owen Murrin
Murrin Law Firm
7040 East Los Santos Drive
Long Beach, CA 90815

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 12/20/2022

By:  A. Mchitarian
Deputy Clerk

**CERTIFICATE OF MAILING**

# EXHIBIT "15"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/20/2022 10:41 AM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Willis,Deputy Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815<br><br>TELEPHONE NO.: 562-342-3011    FAX NO. *(Optional):* 562-724-7007<br>E-MAIL ADDRESS *(Optional):* jmurrin@murrinlawfirm.com<br>ATTORNEY FOR *(Name):* Ed Baeza, et. al. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

| PLAINTIFF/PETITIONER: Ed Baeza, et. al.<br><br>DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | CASE NUMBER:<br>22STCV38080 |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [x] summons

   b. [x] complaint

   c. [x] Alternative Dispute Resolution (ADR) package

   d. [x] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [x] other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. Party served *(specify name of party as shown on documents served):*
      Vincent Bovino

   b. [ ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
      under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:
   1097 via Carrilo, Thousand Oaks, CA 91320-9790

5. I served the party *(check proper box)*

   a. [x] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
      receive service of process for the party   (1) on *(date):* 12/14/2022    (2) at *(time):* 4:40 PM

   b. [ ] **by substituted service.** On *(date):*        at *(time):*        I left the documents listed in item 2 with or
      in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
         of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
         place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
         address of the person to be served, other than a United States Postal Service post office box. I informed
         him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
         at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
         *(date):*        from *(city):*        **or** [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

**POS-010**

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Ed Baeza, et. al.<br>DEFENDANT/RESPONDENT:  Reliant Life Shares, LLC (aka Reliant Capital), et. al. | CASE NUMBER:<br>22STCV38080 |

5.  c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date):*              (2)  from *(city):*

    (3)  ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4)  ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  ☐  **by other means** *(specify means of service and authorizing code section):*

    ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a.  ☒  as an individual defendant.

  b.  ☐  as the person sued under the fictitious name of  *(specify):*

  c.  ☐  as occupant.

  d.  ☐  On behalf of *(specify):*

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7.  **Person who served papers**

  a.  Name:  Diamond Freeman

  b.  Address:  7040 E. Los Santos Dr., Long Beach, CA 90815

  c.  Telephone number: 562-342-3011

  d.  **The fee** for service was: $ 20.00

  e.  I am:

    (1)  ☐  not a registered California process server.

    (2)  ☒  exempt from registration under Business and Professions Code section 22350(b).

    (3)  ☐  a registered California process server:

      (i)  ☐ owner ☐ employee ☐ independent contractor.

      (ii)  Registration No.:

      (iii)  County:

8.  ☒  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9.  ☐  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/19/2022

Diamond Freeman
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ *Diamond Freeman*
_____
(SIGNATURE)

**EXHIBIT "16"**

Electronically FILED by Superior Court of California, County of Los Angeles on 12/20/2022 10:41 AM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Willis,Deputy Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815 | |

TELEPHONE NO.: 562-342-3011     FAX NO. *(Optional)*: 562-724-7007
E-MAIL ADDRESS *(Optional)*: jmurrin@murrinlawfirm.com
ATTORNEY FOR *(Name)*: Ed Baeza, et. al.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

PLAINTIFF/PETITIONER: Ed Baeza, et. al.

DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al.

| | CASE NUMBER: |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | 22STCV38080 |
| | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [x] summons

   b. [x] complaint

   c. [x] Alternative Dispute Resolution (ADR) package

   d. [x] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [x] other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. Party served *(specify name of party as shown on documents served):*
      Mark Sansoucy

   b. [ ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:
   5805 Sepulveda Blvd, Ste 852, Sherman Oaks, CA 91441

5. I served the party *(check proper box)*

   a. [x] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party   (1) on *(date):* 12/15/2022   (2) at *(time):* 1:52 PM

   b. [ ] **by substituted service.** On *(date):*              at *(time):*            I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*            from *(city):*            **or** [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

**POS-010**

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Ed Baeza, et. al. | CASE NUMBER: |
| DEFENDANT/RESPONDENT:  Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*              (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*) (Code Civ. Proc., § 415.30.)*

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☒ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☐ On behalf of *(specify):*
    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**
  a. Name:  Diamond Freeman
  b. Address:  7040 E. Los Santos Drive, Long Beach, CA 90815
  c. Telephone number: 562-342-3011
  d. **The fee** for service was: $ 20.00
  e. I am:
    (1) ☐ not a registered California process server.
    (2) ☒ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ a registered California process server:
      (i) ☐ owner  ☐ employee  ☐ independent contractor.
      (ii) Registration No.:
      (iii) County:

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
  **or**
9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/19/2022

Diamond Freeman

                        ▶ *Diamond Freeman*

| | |
|---|---|
| (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL) | (SIGNATURE) |

# EXHIBIT "17"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/20/2022 10:41 AM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Willis, Deputy Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815<br><br>TELEPHONE NO.: 562-342-3011        FAX NO. *(Optional):* 562-724-7007<br>E-MAIL ADDRESS *(Optional):* jmurrin@murrinlawfirm.com<br>ATTORNEY FOR *(Name):* Ed Baeza, et. al. | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

| PLAINTIFF/PETITIONER: Ed Baeza, et. al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

    a. ☒ summons

    b. ☒ complaint

    c. ☒ Alternative Dispute Resolution (ADR) package

    d. ☒ Civil Case Cover Sheet *(served in complex cases only)*

    e. ☐ cross-complaint

    f. ☒ other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. Party served *(specify name of party as shown on documents served):*
    Principal Financial Services

    b. ☐ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:
    LegalZoom.com, Inc. 101 N Brand Blvd., 11th Floor, Glendale, CA 91203

5. I served the party *(check proper box)*

    a. ☒ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party   (1) on *(date):* 12/16/2022   (2) at *(time):* 1:46 PM

    b. ☐ **by substituted service.** On *(date):*                 at *(time):*                 I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

        (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

        (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

        (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

        (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*              from *(city):*              **or** ☐ a declaration of mailing is attached.

        (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010  [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |
|---|---|---|

**POS-010**

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Ed Baeza, et. al. | CASE NUMBER: |
| DEFENDANT/RESPONDENT:  Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |

5.  c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date):*              (2)  from *(city):*

    (3)  ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4)  ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  ☐  **by other means** *(specify means of service and authorizing code section):*

    ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a.  ☐  as an individual defendant.

  b.  ☐  as the person sued under the fictitious name of  *(specify):*

  c.  ☐  as occupant.

  d.  ☒  On behalf of *(specify):* Principal Financial Services
     under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7.  **Person who served papers**

  a.  Name:  Diamond Freeman

  b.  Address:  7040 E. Los Santos Dr., Long Beach, CA 90815

  c.  Telephone number: 562-342-3011

  d.  **The fee** for service was: $ 20.00

  e.  I am:

    (1) ☐  not a registered California process server.

    (2) ☐  exempt from registration under Business and Professions Code section 22350(b).

    (3) ☐  a registered California process server:

      (i)  ☐ owner   ☐ employee   ☐ independent contractor.

      (ii)  Registration No.:

      (iii)  County:

8.  ☒  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9.  ☐  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/19/2022

                                             ▶    *Diamond Freeman*

Diamond Freeman

_____        _____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)        (SIGNATURE)

# EXHIBIT "18"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/20/2022 10:41 AM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Willis,Deputy Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815<br><br>TELEPHONE NO.: 562-342-3011        FAX NO. *(Optional):* 562-724-7007<br>E-MAIL ADDRESS *(Optional):* jmurrin@murrinlawfirm.com<br>ATTORNEY FOR *(Name):* Ed Baeza et. al. | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

| | CASE NUMBER: |
|---|---|
| PLAINTIFF/PETITIONER: Ed Baeza et. al.<br>DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [x] summons

   b. [x] complaint

   c. [x] Alternative Dispute Resolution (ADR) package

   d. [x] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [x] other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. Party served *(specify name of party as shown on documents served):*
      RMS Trust

   b. [x] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
      under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
      Jasmine, the receptionist for Reliant Life Shares, LLC which is the trust that is either owned or related to RMS Trust

4. Address where the party was served:
   15260 Ventura Blvd., Suite 1200, Sherman Oaks, CA 91403

5. I served the party *(check proper box)*

   a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
      receive service of process for the party   (1) on *(date):*       (2) at *(time):*

   b. [x] **by substituted service.** On *(date):*12/15/2022       at *(time):*  2:20 PM   I left the documents listed in item 2 with or
      in the presence of *(name and title or relationship to person indicated in item 3):*
      Jasmine, the receptionist at the above location

      (1) [x] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
         of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
         place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
         address of the person to be served, other than a United States Postal Service post office box. I informed
         him or her of the general nature of the papers.

      (4) [x] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
         at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
         *(date):* 12/19/2022       from *(city):* Long Beach, CA         **or** [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |
|---|---|---|

POS-010

| PLAINTIFF/PETITIONER:   Ed Baeza et. al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:   Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |

5.  c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date):*          (2)  from *(city):*

    (3)  ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4)  ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  ☐  **by other means** *(specify means of service and authorizing code section):*

    ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a.  ☐  as an individual defendant.

  b.  ☐  as the person sued under the fictitious name of  *(specify):*

  c.  ☐  as occupant.

  d.  ☒  On behalf of *(specify):* RMS Trust

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☒ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7.  **Person who served papers**

  a.  Name:  Diamond Freeman

  b.  Address:  7040 E. Los Santos Dr., Long Beach, CA 90815

  c.  Telephone number: 562-342-3011

  d.  **The fee** for service was: $ 20.00

  e.  I am:

    (1)  ☐  not a registered California process server.

    (2)  ☒  exempt from registration under Business and Professions Code section 22350(b).

    (3)  ☐  a registered California process server:

      (i)  ☐ owner  ☐ employee  ☐ independent contractor.

      (ii)  Registration No.:

      (iii)  County:

8.  ☒  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9.  ☐  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/19/2022

Diamond Freeman
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶  *Diamond Freeman*
_____
(SIGNATURE)

**PROOF OF SERVICE OF SUMMONS**

# EXHIBIT "19"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/20/2022 10:41 AM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Willis,Deputy Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815 | |

TELEPHONE NO.: 562-342-3011          FAX NO. *(Optional):*  562-724-7007
E-MAIL ADDRESS *(Optional):*  jmurrin@murrinlawfirm.com
ATTORNEY FOR *(Name):*  Ed Baeza, et. al.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES**
STREET ADDRESS:  312 N Spring Street
MAILING ADDRESS:  312 N Spring Street
CITY AND ZIP CODE:  Los Angeles 90012
BRANCH NAME:  Spring Street Courthouse

| | CASE NUMBER: |
|---|---|
| PLAINTIFF/PETITIONER: Ed Baeza, et. al.<br>DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [x] summons

   b. [x] complaint

   c. [x] Alternative Dispute Resolution (ADR) package

   d. [x] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [x] other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. Party served *(specify name of party as shown on documents served):*
      Scott Grady

   b. [x] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
      Jasmine, the receptionist for Reliant Life Shares, LLC which is the company Scott Grady is president of.

4. Address where the party was served:
   15260 Ventura Blvd., Suite 1200, Sherman Oaks, CA 91403

5. I served the party *(check proper box)*

   a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party   (1) on *(date):*          (2) at *(time):*

   b. [x] **by substituted service.** On *(date):*12/15/2022          at *(time):*  2:20 PM   I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*
      Jasmine, the receptionist at the above location

      (1) [x] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [x] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):* 12/19/2022          from *(city):* Long Beach, CA          **or** [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

**POS-010**

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Ed Baeza, et. al.<br>DEFENDANT/RESPONDENT:  Reliant Life Shares, LLC (aka Reliant Capital), et. al. | CASE NUMBER:<br>22STCV38080 |

5.  c.  ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date):*         (2)  from *(city):*

    (3)  ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4)  ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a.  ☒ as an individual defendant.

  b.  ☐ as the person sued under the fictitious name of  *(specify):*

  c.  ☐ as occupant.

  d.  ☐ On behalf of *(specify):*

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7.  **Person who served papers**

  a.  Name:  Diamond Freeman

  b.  Address:  7040 E. Los Santos Dr., Long Beach, CA 90815

  c.  Telephone number: 562-342-3011

  d.  **The fee** for service was: $ 20.00

  e.  I am:

    (1)  ☐ not a registered California process server.

    (2)  ☒ exempt from registration under Business and Professions Code section 22350(b).

    (3)  ☐ a registered California process server:

      (i)  ☐ owner   ☐ employee   ☐ independent contractor.

      (ii)  Registration No.:

      (iii)  County:

8.  ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9.  ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/19/2022

Diamond Freeman               ▶   *Diamond Freeman*

_____      _____

(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)                  (SIGNATURE)

     **PROOF OF SERVICE OF SUMMONS**     

# EXHIBIT "20"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/20/2022 10:41 AM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Willis,Deputy Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815 | |

TELEPHONE NO.: 562-342-3011       FAX NO. *(Optional)*: 562-724-7007
E-MAIL ADDRESS *(Optional)*: jmurrin@murrinlawfirm.com
ATTORNEY FOR *(Name)*: Ed Baeza, et. al.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

PLAINTIFF/PETITIONER: Ed Baeza, et. al.

DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al.

| | CASE NUMBER: |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | 22STCV38080 |
| | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [x] summons

   b. [x] complaint

   c. [x] Alternative Dispute Resolution (ADR) package

   d. [x] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [x] other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. Party served *(specify name of party as shown on documents served):*
   Shawn Davenport

   b. [x] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   Kenya Solomon, the receptionist for GenWealth 360/FL Capital Mortage, where Shawn Davenport works

4. Address where the party was served:
   3711 Long Beach Blvd., Suite 810, Long Beach, CA 90807

5. I served the party *(check proper box)*

   a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party   (1) on *(date):*   (2) at *(time):*

   b. [x] **by substituted service.** On *(date):*Dec 16, 2022   at *(time):* 12:54 PM   I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*
   Kenya Solomon, the receptionist at the above location

   (1) [x] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

   (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

   (4) [x] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):* 12/19/2022   from *(city):* Long Beach, CA   **or** [ ] a declaration of mailing is attached.

   (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

Form Adopted for Mandatory Use
Judicial Council of California
POS-010  [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

**POS-010**

| | |
|---|---|
| PLAINTIFF/PETITIONER: Ed Baeza, et. al.<br>DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | CASE NUMBER:<br>22STCV38080 |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

  (1) on *(date):*                    (2) from *(city):*

  (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

  (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

  ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☒ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☐ On behalf of *(specify):*
    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**
  a. Name: Cameron R. Kleinberger
  b. Address: 7040 E. Los Santos Dr., Long Beach, CA 90815
  c. Telephone number: 562-342-3011
  d. **The fee** for service was: $ 30.00
  e. I am:
    (1) ☐ not a registered California process server.
    (2) ☒ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☐ a registered California process server:
      (i) ☐ owner    ☐ employee    ☐ independent contractor.
      (ii) Registration No.:
      (iii) County:

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
  **or**
9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/19/2022

Cameron R. Kleinberger
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ *Cameron R. Kleinberger*
_____
(SIGNATURE)

POS-010 [Rev. January 1, 2007]          **PROOF OF SERVICE OF SUMMONS**          **Page 2 of 2**

# EXHIBIT "21"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/20/2022 10:41 AM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Willis,Deputy Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| J. Owen Murrin (SBN 75329) <br> MURRIN LAW FIRM <br> 7040 E. Los Santos Drive <br> Long Beach, CA 90815 <br><br> TELEPHONE NO.: 562-342-3011     FAX NO. *(Optional):* 562-724-7007 <br> E-MAIL ADDRESS *(Optional):* jmurrin@murrinlawfirm.com <br> ATTORNEY FOR *(Name):* Ed Baeza, et. al. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

| PLAINTIFF/PETITIONER: Ed Baeza, et. al. <br> DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | CASE NUMBER: <br> 22STCV38080 |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

    a. [x] summons

    b. [x] complaint

    c. [x] Alternative Dispute Resolution (ADR) package

    d. [x] Civil Case Cover Sheet *(served in complex cases only)*

    e. [ ] cross-complaint

    f. [x] other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. Party served *(specify name of party as shown on documents served):*
    Paul Roy

    b. [x] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
    Jasmine, the receptionist for Reliant Life Shares, LLC which is a company Paul Roy works for as a sales representative.

4. Address where the party was served:
    15260 Ventura Blvd., Suite 1200, Sherman Oaks, CA 91403

5. I served the party *(check proper box)*

    a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party   (1) on *(date):*                    (2) at *(time):*

    b. [x] **by substituted service.** On *(date):*12/15/2022     at *(time):* 2:20 PM   I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*
    Jasmine, the receptionist at the above location

    (1) [x] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

    (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

    (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

    (4) [x] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):* 12/19/2022     from *(city):* Long Beach, CA     **or** [ ] a declaration of mailing is attached.

    (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

Form Adopted for Mandatory Use
Judicial Council of California
POS-010 [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

**POS-010**

| PLAINTIFF/PETITIONER:   Ed Baeza, et. al. | CASE NUMBER: |
| DEFENDANT/RESPONDENT:   Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |

5.  c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1)  on *(date):*     (2)  from *(city):*

   (3)  ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

   (4)  ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

   d.  ☐  **by other means** *(specify means of service and authorizing code section):*

   ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

   a.  ☒  as an individual defendant.

   b.  ☐  as the person sued under the fictitious name of  *(specify):*

   c.  ☐  as occupant.

   d.  ☐  On behalf of *(specify):*

   under the following Code of Civil Procedure section:

   | | |
   |---|---|
   | ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
   | ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
   | ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
   | ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
   | ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
   | | ☐ other: |

7.  **Person who served papers**

   a.  Name:  Diamond Freeman

   b.  Address:  7040 E. Los Santos Dr., Long Beach, CA 90815

   c.  Telephone number: 562-342-3011

   d.  **The fee** for service was: $ 20.00

   e.  I am:

   (1)  ☐  not a registered California process server.

   (2)  ☒  exempt from registration under Business and Professions Code section 22350(b).

   (3)  ☐  a registered California process server:

      (i)  ☐ owner   ☐ employee   ☐ independent contractor.

      (ii)  Registration No.:

      (iii)  County:

8.  ☒  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   **or**

9.  ☐  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/19/2022

Diamond Freeman
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ *Diamond Freeman*
_____
(SIGNATURE)

# EXHIBIT "22"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/20/2022 10:41 AM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Willis, Deputy Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | *FOR COURT USE ONLY* |
|---|---|
| J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815 | |

TELEPHONE NO.: 562-342-3011        FAX NO. *(Optional)*: 562-724-7007
E-MAIL ADDRESS *(Optional)*: jmurrin@murrinlawfirm.com
ATTORNEY FOR *(Name)*: Ed Baeza, et. al.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES**
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

| | CASE NUMBER: |
|---|---|
| PLAINTIFF/PETITIONER: Ed Baeza, et. al.<br>DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [x] summons

   b. [x] complaint

   c. [x] Alternative Dispute Resolution (ADR) package

   d. [x] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [x] other *(specify documents)*: Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. Party served *(specify name of party as shown on documents served)*:
      Brent Borchert

   b. [x] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a)*:
      with a Mail Clerk at Mail & More which is Brent Borchert 's listed address on the CA Bar webiste.

4. Address where the party was served:
   2355 Westwood Blvd, #658, Los Angeles, CA 90064-2109

5. I served the party *(check proper box)*

   a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party   (1) on *(date)*:                    (2) at *(time)*:

   b. [x] **by substituted service.** On *(date)*:12/16/2022           at *(time)*:  3:30 PM   I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3)*:
      with a Mail Clerk at Mail & More

      (1) [x] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [x] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
         *(date)*: 12/19/2022        from *(city)*: Long Beach          **or** [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010  [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |
|---|---|---|

POS-010

| PLAINTIFF/PETITIONER: Ed Baeza, et. al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |

5.  c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                            (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* *(Code Civ. Proc., § 415.30.)*

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☒ as an individual defendant.

  b. ☐ as the person sued under the fictitious name of *(specify):*

  c. ☐ as occupant.

  d. ☐ On behalf of *(specify):*

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7.  **Person who served papers**

  a. Name: Diamond Freeman

  b. Address: 7040 E. Los Santos Dr., Long Beach, CA 90815

  c. Telephone number: 562-342-3011

  d. **The fee** for service was: $ 20.00

  e. I am:

    (1) ☐ not a registered California process server.

    (2) ☒ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☐ a registered California process server:

      (i) ☐ owner     ☐ employee     ☐ independent contractor.

      (ii) Registration No.:

      (iii) County:

8.  ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9.  ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/19/2022

Diamond Freeman                       ▶ *Diamond Freeman*

(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)         (SIGNATURE)

# EXHIBIT "23"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/20/2022 10:41 AM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Willis, Deputy Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815<br><br>TELEPHONE NO.: 562-342-3011     FAX NO. *(Optional):* 562-724-7007<br>E-MAIL ADDRESS *(Optional):* jmurrin@murrinlawfirm.com<br>ATTORNEY FOR *(Name):* Ed Baeza, et. al. | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

| PLAINTIFF/PETITIONER: Ed Baeza, et. al.<br>DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | CASE NUMBER:<br>22STCV38080 |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. ☒ summons

   b. ☒ complaint

   c. ☒ Alternative Dispute Resolution (ADR) package

   d. ☒ Civil Case Cover Sheet *(served in complex cases only)*

   e. ☐ cross-complaint

   f. ☒ other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. Party served *(specify name of party as shown on documents served):*
   RLS Financial Services

   b. ☐ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:
   5805 Sepulveda Blvd, Ste 852, Sherman Oaks, CA 91441

5. I served the party *(check proper box)*

   a. ☒ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party   (1) on *(date):* 12/15/2022   (2) at *(time):* 1:52 PM

   b. ☐ **by substituted service.** On *(date):*           at *(time):*           I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*           from *(city):*           **or** ☐ a declaration of mailing is attached.

      (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

**PROOF OF SERVICE OF SUMMONS**

**POS-010**

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Ed Baeza, et. al.<br>DEFENDANT/RESPONDENT:  Reliant Life Shares, LLC (aka Reliant Capital), et. al. | CASE NUMBER:<br>22STCV38080 |

5.   c.   ☐   **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)   on *(date):*        (2)   from *(city):*

    (3)   ☐   with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4)   ☐   to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.   ☐   **by other means** *(specify means of service and authorizing code section):*

    ☐   Additional page describing service is attached.

6.   The "Notice to the Person Served" (on the summons) was completed as follows:

  a.   ☐   as an individual defendant.

  b.   ☐   as the person sued under the fictitious name of  *(specify):*

  c.   ☐   as occupant.

  d.   ☒   On behalf of *(specify):* RLS Financial Services

    under the following Code of Civil Procedure section:

    ☒   416.10 (corporation)        ☐   415.95 (business organization, form unknown)

    ☐   416.20 (defunct corporation)    ☐   416.60 (minor)

    ☐   416.30 (joint stock company/association)  ☐   416.70 (ward or conservatee)

    ☐   416.40 (association or partnership)    ☐   416.90 (authorized person)

    ☐   416.50 (public entity)          ☐   415.46 (occupant)

                           ☐   other:

7.   **Person who served papers**

  a.   Name:  Diamond Freeman

  b.   Address:  7040 E. Los Santos Drive, Long Beach, CA 90815

  c.   Telephone number: 562-342-3011

  d.   **The fee** for service was: $ 20.00

  e.   I am:

    (1)   ☐   not a registered California process server.

    (2)   ☒   exempt from registration under Business and Professions Code section 22350(b).

    (3)   ☐   a registered California process server:

      (i)   ☐   owner  ☐   employee  ☐   independent contractor.

      (ii)   Registration No.:

      (iii)   County:

8.   ☒   **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9.   ☐   **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/19/2022

Diamond Freeman

▶      *Diamond Freeman*

_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

_____
(SIGNATURE)

# EXHIBIT "24"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/20/2022 10:41 AM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Willis,Deputy Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815 | |

TELEPHONE NO.:  562-342-3011          FAX NO. *(Optional):*  562-724-7007
E-MAIL ADDRESS *(Optional):*  jmurrin@murrinlawfirm.com
ATTORNEY FOR *(Name):*  Ed Baeza, et. al.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES**
STREET ADDRESS:  312 N Spring Street
MAILING ADDRESS:  312 N Spring Street
CITY AND ZIP CODE:  Los Angeles 90012
BRANCH NAME:  Spring Street Courthouse

| PLAINTIFF/PETITIONER: Ed Baeza, et. al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1.  At the time of service I was at least 18 years of age and not a party to this action.

2.  I served copies of:

    a.  [x] summons

    b.  [x] complaint

    c.  [x] Alternative Dispute Resolution (ADR) package

    d.  [x] Civil Case Cover Sheet *(served in complex cases only)*

    e.  [ ] cross-complaint

    f.  [x] other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3.  a.  Party served *(specify name of party as shown on documents served):*
       David Underwood

    b.  [x] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
       under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
       with a Mail Clerk at Mailbox Toluca Lake which is David Underwood's listed address as a licensed insurance agent

4.  Address where the party was served:
    10153 1/2 Riverside Dr, #535, Toluca Lake, CA 91602

5.  I served the party *(check proper box)*

    a.  [ ]  **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
       receive service of process for the party   (1) on *(date):*                   (2) at *(time):*

    b.  [x]  **by substituted service.** On *(date):*12/16/2022          at *(time):*  2:20 PM   I left the documents listed in item 2 with or
       in the presence of *(name and title or relationship to person indicated in item 3):*
       with a Mail Clerk at Mailbox Toluca Lake

       (1) [x] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
              of the person to be served. I informed him or her of the general nature of the papers.

       (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
              place of abode of the party. I informed him or her of the general nature of the papers.

       (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
              address of the person to be served, other than a United States Postal Service post office box. I informed
              him or her of the general nature of the papers.

       (4) [x] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
              at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
              *(date):* 12/19/2022          from *(city):* Long Beach          **or** [ ]  a declaration of mailing is attached.

       (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |
|---|---|---|

**POS-010**

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Ed Baeza, et. al. | CASE NUMBER: |
| DEFENDANT/RESPONDENT:  Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |

5.  c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date):*                (2)  from *(city):*

    (3)  ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4)  ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  ☐  **by other means** *(specify means of service and authorizing code section):*

    ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a.  ☒  as an individual defendant.

  b.  ☐  as the person sued under the fictitious name of  *(specify):*

  c.  ☐  as occupant.

  d.  ☐  On behalf of *(specify):*

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7.  **Person who served papers**

  a.  Name:  Diamond Freeman

  b.  Address:  7040 E. Los Santos Dr., Long Beach, CA 90815

  c.  Telephone number: 562-342-3011

  d.  **The fee** for service was: $ 20.00

  e.  I am:

    (1)  ☐  not a registered California process server.

    (2)  ☒  exempt from registration under Business and Professions Code section 22350(b).

    (3)  ☐  a registered California process server:

      (i)  ☐ owner  ☐ employee  ☐ independent contractor.

      (ii)  Registration No.:

      (iii)  County:

8.  ☒  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9.  ☐  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/19/2022

Diamond Freeman           ▶    *Diamond Freeman*

_____        _____

(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)       (SIGNATURE)

# EXHIBIT "25"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/21/2022 04:08 PM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Abraham Deputy Clerk

Case 2:23-cv-00474-SB-PD   Document 1   Filed 01/20/23   Page 257 of 443   Page ID #:257

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815<br><br>TELEPHONE NO.: 562-342-3011    FAX NO. *(Optional):* 562-724-7007<br>E-MAIL ADDRESS *(Optional):* jmurrin@murrinlawfirm.com<br>ATTORNEY FOR *(Name):* Ed Baeza, et. al. | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

| PLAINTIFF/PETITIONER: Ed Baeza, et. al.<br>DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | CASE NUMBER:<br>22STCV38080 |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. ☒ summons

   b. ☒ complaint

   c. ☒ Alternative Dispute Resolution (ADR) package

   d. ☒ Civil Case Cover Sheet *(served in complex cases only)*

   e. ☐ cross-complaint

   f. ☒ other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. *Party served (specify name of party as shown on documents served):*
   Pacific Life Insurance Company

   b. ☒ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
   under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   Roy, an employee who works in the mail room of Pacific Life Insurance Company

4. Address where the party was served:
   700 Newport Center Drive, Newport Beach, CA 92660

5. I served the party *(check proper box)*

   a. ☐ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
   receive service of process for the party  (1) on *(date):*     (2) at *(time):*

   b. ☒ **by substituted service.** On *(date):*Dec 20, 2022     at *(time):* 10:04 AM  I left the documents listed in item 2 with or
   in the presence of *(name and title or relationship to person indicated in item 3):*
   Roy, an employee who works in the mail room of Pacific Life Insurance Company

   (1) ☒ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
   of the person to be served. I informed him or her of the general nature of the papers.

   (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
   place of abode of the party. I informed him or her of the general nature of the papers.

   (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
   address of the person to be served, other than a United States Postal Service post office box. I informed
   him or her of the general nature of the papers.

   (4) ☒ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
   at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
   *(date):* 12/21/2022     from *(city):* Long Beach, CA     **or** ☐ a declaration of mailing is attached.

   (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

**POS-010**

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Ed Baeza, et. al.<br>DEFENDANT/RESPONDENT:  Reliant Life Shares, LLC (aka Reliant Capital), et. al. | CASE NUMBER:<br>22STCV38080 |

5.  c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date):*           (2)  from *(city):*

    (3)  ☐  with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*) (Code Civ. Proc., § 415.30.)*

    (4)  ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  ☐  **by other means** *(specify means of service and authorizing code section):*

    ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a.  ☐  as an individual defendant.

  b.  ☐  as the person sued under the fictitious name of  *(specify):*

  c.  ☐  as occupant.

  d.  ☒  On behalf of *(specify):*

    under the following Code of Civil Procedure section:

    ☒  416.10 (corporation)         ☐  415.95 (business organization, form unknown)

    ☐  416.20 (defunct corporation)     ☐  416.60 (minor)

    ☐  416.30 (joint stock company/association)   ☐  416.70 (ward or conservatee)

    ☐  416.40 (association or partnership)     ☐  416.90 (authorized person)

    ☐  416.50 (public entity)          ☐  415.46 (occupant)

                             ☐  other:

7.  **Person who served papers**

  a.  Name:  Diamond Freeman

  b.  Address:  7040 E. Los Santos Dr., Long Beach, CA 90815

  c.  Telephone number: 562-342-3011

  d.  **The fee** for service was: $ 20.00

  e.  I am:

    (1)  ☐  not a registered California process server.

    (2)  ☒  exempt from registration under Business and Professions Code section 22350(b).

    (3)  ☐  a registered California process server:

      (i)  ☐  owner   ☐  employee   ☐  independent contractor.

      (ii)  Registration No.:

      (iii)  County:

8.  ☒  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9.  ☐  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/21/2022

Diamond Freeman                                ▶   *Diamond Freeman*

_____         _____

(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)         (SIGNATURE)

# EXHIBIT "26"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/22/2022 09:56 AM Sherri R. Carter, Executive Officer/Clerk of Court, by A. Lopez,Deputy Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815<br><br>TELEPHONE NO.: 562-342-3011    FAX NO. *(Optional):* 562-724-7007<br>E-MAIL ADDRESS *(Optional):* jmurrin@murrinlawfirm.com<br>ATTORNEY FOR *(Name):* Ed Baeza, et. al. | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES**
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

| | CASE NUMBER: |
|---|---|
| PLAINTIFF/PETITIONER: Ed Baeza, et. al.<br>DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [x] summons

   b. [x] complaint

   c. [x] Alternative Dispute Resolution (ADR) package

   d. [x] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [x] other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. Party served *(specify name of party as shown on documents served):*
      First Western Trust Bank

   b. [ ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
          under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:
   1900 16th Street, Suite 1200, Denver, CO 80202

5. I served the party *(check proper box)*

   a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
          receive service of process for the party   (1) on *(date):*                (2) at *(time):*

   b. [ ] **by substituted service.** On *(date):*              at *(time):*            I left the documents listed in item 2 with or
          in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
              of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
              place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
              address of the person to be served, other than a United States Postal Service post office box. I informed
              him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
              at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
              *(date):*          from *(city):*                 or [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

**POS-010**

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Ed Baeza, et. al. | CASE NUMBER: |
| DEFENDANT/RESPONDENT:  Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |

5.  c.  [x]  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date):* December 13, 2022    (2)  from *(city):* Long Beach, CA

    (3)  [ ]  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4)  [x]  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  [ ]  **by other means** *(specify means of service and authorizing code section):*

    [ ]  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a.  [ ]  as an individual defendant.

  b.  [ ]  as the person sued under the fictitious name of  *(specify):*

  c.  [ ]  as occupant.

  d.  [x]  On behalf of *(specify):* First Western Trust Bank

    under the following Code of Civil Procedure section:

| | |
|---|---|
| [x] 416.10 (corporation) | [ ] 415.95 (business organization, form unknown) |
| [ ] 416.20 (defunct corporation) | [ ] 416.60 (minor) |
| [ ] 416.30 (joint stock company/association) | [ ] 416.70 (ward or conservatee) |
| [ ] 416.40 (association or partnership) | [ ] 416.90 (authorized person) |
| [ ] 416.50 (public entity) | [ ] 415.46 (occupant) |
| | [ ] other: |

7.  **Person who served papers**

  a.  Name:  Cameron R. Kleinberger

  b.  Address:  7040 E. Los Santos Dr., Long Beach, CA 90815

  c.  Telephone number: 562-342-3011

  d.  **The fee** for service was: $ 30.00

  e.  I am:

    (1)  [ ]  not a registered California process server.

    (2)  [x]  exempt from registration under Business and Professions Code section 22350(b).

    (3)  [ ]  a registered California process server:

      (i)  [ ] owner    [ ] employee    [ ] independent contractor.

      (ii)  Registration No.:

      (iii)  County:

8.  [x]  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9.  [ ]  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/22/2022

Cameron R. Kleinberger

    ► *Cameron R. Kleinberger*

_____    _____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)    (SIGNATURE)

# EXHIBIT "27"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/22/2022 09:56 AM Sherri R. Carter, Executive Officer/Clerk of Court, by A. Lopez,Deputy Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815<br><br>TELEPHONE NO.: 562-342-3011        FAX NO. *(Optional):* 562-724-7007<br>E-MAIL ADDRESS *(Optional):* jmurrin@murrinlawfirm.com<br>ATTORNEY FOR *(Name):* Ed Baeza, et. al. | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

| | CASE NUMBER: |
|---|---|
| PLAINTIFF/PETITIONER: Ed Baeza, et. al.<br>DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [x] summons

   b. [x] complaint

   c. [x] Alternative Dispute Resolution (ADR) package

   d. [x] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [x] other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. Party served *(specify name of party as shown on documents served):*
      Reliastar Life Insurance Company

   b. [ ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:
   20 S. Washington Avenue, Minneapolis, MN 55401

5. I served the party *(check proper box)*

   a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party   (1) on *(date):*                              (2) at *(time):*

   b. [ ] **by substituted service.** On *(date):*                    at *(time):*              I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*             from *(city):*                **or** [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

**POS-010**

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Ed Baeza, et. al. | CASE NUMBER: |
| DEFENDANT/RESPONDENT:  Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |

5.  c.  ☒  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date):* December 13, 2022     (2)  from *(city):* Long Beach, CA

    (3)  ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4)  ☒  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  ☐  **by other means** *(specify means of service and authorizing code section):*

    ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a.  ☐  as an individual defendant.

  b.  ☐  as the person sued under the fictitious name of  *(specify):*

  c.  ☐  as occupant.

  d.  ☒  On behalf of *(specify):* Reliastar Life Insurance Company

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7.  **Person who served papers**

  a.  Name:  Cameron R. Kleinberger

  b.  Address:  7040 E. Los Santos Dr., Long Beach, CA 90815

  c.  Telephone number: 562-342-3011

  d.  **The fee** for service was: $ 30.00

  e.  I am:

    (1)  ☐  not a registered California process server.

    (2)  ☒  exempt from registration under Business and Professions Code section 22350(b).

    (3)  ☐  a registered California process server:

      (i)  ☐ owner  ☐ employee  ☐ independent contractor.

      (ii)  Registration No.:

      (iii)  County:

8.  ☒  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9.  ☐  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/22/2022

Cameron R. Kleinberger

▸ *Cameron R. Kleinberger*

| |
|---|
| (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL) |

(SIGNATURE)

**PROOF OF SERVICE OF SUMMONS**

# EXHIBIT "28"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/23/2022 04:10 PM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Willis,Deputy Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815 | |

TELEPHONE NO.: 562-342-3011      FAX NO. *(Optional):*  562-724-7007
E-MAIL ADDRESS *(Optional):*  jmurrin@murrinlawfirm.com
ATTORNEY FOR *(Name):*  Ed Baeza, et. al.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES**
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

| | CASE NUMBER: |
|---|---|
| PLAINTIFF/PETITIONER: Ed Baeza, et. al. | 22STCV38080 |
| DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [x] summons

   b. [x] complaint

   c. [x] Alternative Dispute Resolution (ADR) package

   d. [x] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [x] other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. Party served *(specify name of party as shown on documents served):*
      Nassau Life and Annuity Insurance Company

   b. [ ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
      under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:
   330 N. Brand Blvd., Suite 700, Glendale, CA 91203

5. I served the party *(check proper box)*

   a. [x] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
          receive service of process for the party   (1) on *(date):* December 23, 2022      (2) at *(time):*  11:36 AM

   b. [ ] **by substituted service.** On *(date):*            at *(time):*            I left the documents listed in item 2 with or
          in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
              of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
              place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
              address of the person to be served, other than a United States Postal Service post office box. I informed
              him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
              at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
              *(date):*            from *(city):*            **or** [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

**PROOF OF SERVICE OF SUMMONS**

**POS-010**

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Ed Baeza, et. al.<br>DEFENDANT/RESPONDENT:  Reliant Life Shares, LLC (aka Reliant Capital), et. al. | CASE NUMBER:<br>22STCV38080 |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1) on *(date):*   (2) from *(city):*

(3) ☐ with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

(4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d. ☐ **by other means** *(specify means of service and authorizing code section):*

☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

a. ☐ as an individual defendant.

b. ☐ as the person sued under the fictitious name of  *(specify):*

c. ☐ as occupant.

d. ☒ On behalf of *(specify):* Nassau Life and Annuity Insurance Company

under the following Code of Civil Procedure section:

☒ 416.10 (corporation)   ☐ 415.95 (business organization, form unknown)
☐ 416.20 (defunct corporation)   ☐ 416.60 (minor)
☐ 416.30 (joint stock company/association)   ☐ 416.70 (ward or conservatee)
☐ 416.40 (association or partnership)   ☐ 416.90 (authorized person)
☐ 416.50 (public entity)   ☐ 415.46 (occupant)
  ☐ other:

7. **Person who served papers**

a. Name:  Diamond Freeman

b. Address:  7040 E. Los Santos Drive, Long Beach, CA 90815

c. Telephone number: 562-342-3011

d. **The fee** for service was: $ 20.00

e. I am:

(1) ☐ not a registered California process server.

(2) ☒ exempt from registration under Business and Professions Code section 22350(b).

(3) ☐ a registered California process server:

(i) ☐ owner   ☐ employee   ☐ independent contractor.

(ii) Registration No.:

(iii) County:

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**or**

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/23/2022

Diamond Freeman

▶ *Diamond Freeman*

(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)   (SIGNATURE)

# EXHIBIT "29"

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles

12/23/2022

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ R. Manzo _____ Deputy

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF:
Ed Baeza, et al

DEFENDANT:
Reliant Life Shares LLC, et al.

## NOTICE OF CASE MANAGEMENT CONFERENCE

CASE NUMBER:
22STCV38080

TO THE PLAINTIFF(S)/ATTORNEY(S) FOR PLAINTIFF(S) OF RECORD:

You are ordered to serve this notice of hearing on all parties/attorneys of record forthwith, and meet and confer with all parties/attorneys of record about the matters to be discussed no later than 30 days before the Case Management Conference.

Your Case Management Conference has been scheduled at the courthouse address shown above on:

| Date: 03/08/2023 | Time: 8:30 AM | Dept.: 54 |
|---|---|---|

NOTICE TO DEFENDANT:   THE SETTING OF THE CASE MANAGEMENT CONFERENCE DOES NOT EXEMPT THE DEFENDANT FROM FILING A RESPONSIVE PLEADING AS REQUIRED BY LAW.

Pursuant to California Rules of Court, rules 3.720-3.730, a completed Case Management Statement (Judicial Council form # CM-110) must be filed at least 15 calendar days prior to the Case Management Conference. The Case Management Statement may be filed jointly by all parties/attorneys of record or individually by each party/attorney of record. You must be familiar with the case and be fully prepared to participate effectively in the Case Management Conference.

At the Case Management Conference, the Court may make pretrial orders including the following, but not limited to, an order establishing a discovery schedule; an order referring the case to Alternative Dispute Resolution (ADR); an order reclassifying the case; an order setting subsequent conference and the trial date; or other orders to achieve the goals of the Trial Court Delay Reduction Act (Gov. Code, § 68600 et seq.)

Notice is hereby given that if you do not file the Case Management Statement or appear and effectively participate at the Case Management Conference, the Court may impose sanctions, pursuant to LASC, Local Rule 3.37, Code of Civil Procedure sections 177.5, 575.2, 583.150, 583.360 and 583.410, Government Code section 68608 subdivision (b), and California Rules of Court, rule 2.2 et seq.

Dated: 12/23/2022

_Maurice A. Leiter_

_Maurice A. Leiter / Judge_
Judicial Officer

---

## CERTIFICATE OF SERVICE

I, the below named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below:

☑ by depositing in the United States mail at the courthouse in Los Angeles , California, one copy of the original filed herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid.

☐ by personally giving the party notice upon filing of the complaint.

John Owen Murrin
7040 East Los Santos Drive

Long Beach, CA 90815

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: 12/23/2022

By R. Manzo
Deputy Clerk

## NOTICE OF
## CASE MANAGEMENT CONFERENCE

Cal. Rules of Court, rules 3.720-3.730
LASC Local Rules, Chapter Three

# SUPERIOR COURT OF CALIFORNIA
# COUNTY OF LOS ANGELES

Reserved for Clerk's File Stamp

**FILED**
Superior Court of California
County of Los Angeles

12/23/2022

Sherri R. Carter, Executive Officer / Clerk of Court

By: _____ R. Manzo _____ Deputy

COURTHOUSE ADDRESS:
Stanley Mosk Courthouse
111 North Hill Street, Los Angeles, CA 90012

PLAINTIFF/PETITIONER:
Ed Baeza,  et al

DEFENDANT/RESPONDENT:
Reliant Life Shares LLC, et al.

## CERTIFICATE OF MAILING

CASE NUMBER:
22STCV38080

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served the Notice of Case Management Conference upon each party or counsel named below by placing the document for collection and mailing so as to cause it to be deposited in the United States mail at the courthouse in Los Angeles, California, one copy of the original filed/entered herein in a separate sealed envelope to each address as shown below with the postage thereon fully prepaid, in accordance with standard court practices.

John Owen Murrin
Murrin Law Firm
7040 East Los Santos Drive
Long Beach, CA 90815

Sherri R. Carter, Executive Officer / Clerk of Court

Dated: <u>12/23/2022</u>

By: <u>R. Manzo</u>
Deputy Clerk

**CERTIFICATE OF MAILING**

# EXHIBIT "30"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/23/2022 04:10 PM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Willis,Deputy Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815 | |

TELEPHONE NO.: 562-342-3011   FAX NO. *(Optional):* 562-724-7007
E-MAIL ADDRESS *(Optional):* jmurrin@murrinlawfirm.com
ATTORNEY FOR *(Name):* Ed Baeza, et. al.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES**
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

PLAINTIFF/PETITIONER: Ed Baeza, et. al.

DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al.

| | CASE NUMBER: |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | 22STCV38080 |
| | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [x] summons

   b. [x] complaint

   c. [x] Alternative Dispute Resolution (ADR) package

   d. [x] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [x] other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. *Party served (specify name of party as shown on documents served):*
      Larry Tupler

   b. [ ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
      under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:
   3343 BAGLEY AVE APT 8, LOS ANGELES, CA 90034-2836

5. I served the party *(check proper box)*

   a. [x] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
      receive service of process for the party   (1) on *(date):* December 21, 2022     (2) at *(time):* 9:00 AM

   b. [ ] **by substituted service.** On *(date):*                at *(time):*                I left the documents listed in item 2 with or
      in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
         of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
         place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
         address of the person to be served, other than a United States Postal Service post office box. I informed
         him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
         at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
         *(date):*            from *(city):*                **or** [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

**POS-010**

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Ed Baeza, et. al. | CASE NUMBER: |
| DEFENDANT/RESPONDENT:  Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |

5.  c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

  (1)  on *(date):*                               (2)  from *(city):*

  (3)  ☐  with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*) (Code Civ. Proc., § 415.30.)*

  (4)  ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  ☐  **by other means** *(specify means of service and authorizing code section):*

  ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a.  ☒  as an individual defendant.
  b.  ☐  as the person sued under the fictitious name of  *(specify):*
  c.  ☐  as occupant.
  d.  ☐  On behalf of *(specify):*
     under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7.  **Person who served papers**

  a.  Name:  Diamond Freeman
  b.  Address:  7040 E. Los Santos Drive, Long Beach, CA 90815
  c.  Telephone number: 562-342-3011
  d.  **The fee** for service was: $ 20.00
  e.  I am:

   (1)  ☐  not a registered California process server.
   (2)  ☒  exempt from registration under Business and Professions Code section 22350(b).
   (3)  ☐  a registered California process server:
      (i)  ☐  owner      ☐  employee      ☐  independent contractor.
      (ii)  Registration No.:
      (iii)  County:

8.  ☒  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

  **or**

9.  ☐  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/22/2022

Diamond Freeman                                   *Diamond Freeman*
_____                  ▶ _____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)                    (SIGNATURE)

# EXHIBIT "31"

**POS-040**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *For Court Use Only* |
|---|---|
| Murrin Law Firm<br>John Owen Murrin, Esq.<br>7040 E Los Santos Dr<br>Long Beach, CA 90815-3545<br>    TELEPHONE NO.:  562-342-3011      FAX NO. *(Optional)*<br>E-MAIL ADDRESS *Optional*  jmurrin@murrinlawfirm.com<br>ATTORNEY FOR *(Name)*  Ed Baeza et. al | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Los Angeles |
|---|
|   STREET ADDRESS: 312 N Spring St.<br>  MAILING ADDRESS: 312 N Spring St.<br>  CITY AND ZIP CODE: Los Angeles, CA 90012<br>  BRANCH NAME:  Spring Street Courthouse - Central Judicial District |

| PLAINTIFF / PETITIONER: Ed Baeza et. al<br>DEFENDANT / RESPONDENT:  Reliant Capital Life Shares LLC et. al. | CASE NUMBER:<br>22STCV38080 |
|---|---|

| **PROOF OF SERVICE—CIVIL**<br>Check method of service *(only one):*<br>[X] By Personal Service    [ ] By Mail    [ ] By Overnight Delivery<br>[ ] By Messenger Service    [ ] By Fax | JUDICIAL OFFICER:<br><br>DEPARTMENT: |
|---|---|

*Do not use this form to show service of a summons and complaint or for electronic service.*
*See USE OF THIS FORM on page 3.*

1. At the time of service I was over 18 years of age and **not a party to this action.**
2. My residence or business address is:
   211 Cleveland Avenue, Mill Valley, CA 94941
3.  [ ]  The fax number from which I served the documents is *(complete if service was by fax):*

4. On *(date):*  Thu, Dec 22 2022      I served the following **documents** *(specify):*
   Summons, Complaint, ADR Package, Civil Case Cover Sheet, Statement of Damages, V.E.L. Stipulation, Notice of Case Assignment, 1st Amnd. Gen. Order

    [ ]  The documents are listed in the *Attachment to Proof of Service—Civil (Documents Served)* (form POS-040(D)).

5. I served the documents on the **person or persons** below, as follows:
   a.  Name of person served:  Joel K. Kleinfeld
   b.  [X]  *(Complete if service was by personal service, mail, overnight delivery, or messenger service.)*
       Business or residential address where person was served:
       275 Golden Hind Psge, Corte Madera, CA 94925
   c.  [ ]  *(Complete if service was by fax.)*
       Fax number where person was served:

    [ ]  The names, addresses, and other applicable information about persons served is on the *Attachment to Proof of*
       *Service—Civil (Persons Served)* (form POS-040(P)).

6. The documents were served by the following means *(specify):*
   a.  [X]  **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and eight in the evening

Form Approved for Optional Use        **PROOF OF SERVICE — CIVIL**        Page 1 of 2
Judicial Council of California        **(PROOF OF SERVICE)**        Code of Civil Procedure, §§ 1011, 1013, 1013a
POS-040 [Rev. January 1, 2020]        2015.5; Cal. Rules of Court, rule 2.306

| CASE NAME: | CASE NUMBER: |
|---|---|
| Ed Baeza et. al    vs. Reliant Capital Life Shares LLC et. al. | 22STCV38080 (Baeza) |

6.  b.  ☐  **By United States mail.** I enclosed the documents in a sealed envelope or package addressed to the persons at the addresses in item 5 and *(specify one):*

    (1)  ☐  deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid.

    (2)  ☐  placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

    I am a resident or employed in the county where the mailing occurred. The envelope or package was placed in the mail at *(city and state):* ,

c.  ☐  **By overnight delivery.** I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses in item 5. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

d.  ☐  **By messenger service.** I served the documents by placing them in an envelope or package addressed to the persons at the addresses listed in item 5 and providing them to a professional messenger service for service. *(A declaration by the messenger must accompany this Proof of Service or be contained in the Declaration of Messenger below.)*

e.  ☐  **By fax transmission.** Based on an agreement of the parties to accept service by fax transmission, I faxed the documents to the persons at the fax numbers listed in item 5. No error was reported by the fax machine that I used. A copy of the record of the fax transmission, which I printed out, is attached.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  12/22/2022

Easteller Bruihl

_____
(TYPE OR PRINT NAME OF DECLARANT)

_____
(SIGNATURE OF DECLARANT)

*(If item 6d above is checked, the declaration below must be completed or a separate declaration from a messenger must be attached.)*

## DECLARATION OF MESSENGER

☐  **By personal service.** I personally delivered the documents to the persons at the addresses listed in item 5. (1) For a party represented by an attorney, delivery was made (a) to the attorney personally; or (b) by leaving the documents at the attorney's office, in an envelope or package clearly labeled to identify the attorney being served, with a receptionist or an individual in charge of the office; or (c) if there was no person in the office with whom the notice or papers could be left, by leaving them in a conspicuous place in the office between the hours of nine in the morning and five in the evening. (2) For a party, delivery was made to the party or by leaving the documents at the party's residence with some person not younger than 18 years of age between the hours of eight in the morning and eight in the evening.

At the time of service, I was over 18 years of age. I am not a party to the above-referenced legal proceeding.

I served the envelope or package, as stated above, on *(date)*:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

_____
(NAME OF DECLARANT)

_____
(SIGNATURE OF DECLARANT)

**PROOF OF SERVICE — CIVIL**
**(PROOF OF SERVICE)**

# EXHIBIT "32"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/23/2022 04:10 PM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Willis, Deputy Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815<br><br>TELEPHONE NO.: 562-342-3011     FAX NO. *(Optional):* 562-724-7007<br>E-MAIL ADDRESS *(Optional):* jmurrin@murrinlawfirm.com<br>ATTORNEY FOR *(Name):* Ed Baeza, et. al. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

| | |
|---|---|
| PLAINTIFF/PETITIONER: Ed Baeza, et. al. | CASE NUMBER: |
| DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [x] summons

   b. [x] complaint

   c. [x] Alternative Dispute Resolution (ADR) package

   d. [x] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [x] other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. Party served *(specify name of party as shown on documents served):*
      PHL Variable Insurance Company

   b. [ ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
         under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:
   330 N. Brand Blvd., Suite 700, Glendale, CA 91203

5. I served the party *(check proper box)*

   a. [x] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
         receive service of process for the party   (1) on *(date):* December 23, 2022     (2) at *(time):*  11:36 AM

   b. [ ] **by substituted service.** On *(date):*          at *(time):*          I left the documents listed in item 2 with or
         in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
            of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
            place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
            address of the person to be served, other than a United States Postal Service post office box. I informed
            him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
            at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
            *(date):*          from *(city):*          or [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010  [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |

POS-010

| PLAINTIFF/PETITIONER:  Ed Baeza, et. al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |

5.   c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date):*                (2)  from *(city):*

    (3)  ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4)  ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

   d. ☐ **by other means** *(specify means of service and authorizing code section):*

       ☐ Additional page describing service is attached.

6.   The "Notice to the Person Served" (on the summons) was completed as follows:

   a. ☐ as an individual defendant.

   b. ☐ as the person sued under the fictitious name of  *(specify):*

   c. ☐ as occupant.

   d. ☒ On behalf of *(specify):* PHL Variable Insurance Company

      under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7.   **Person who served papers**

   a.  Name:  Diamond Freeman

   b.  Address:  7040 E. Los Santos Drive, Long Beach, CA 90815

   c.  Telephone number: 562-342-3011

   d.  **The fee** for service was: $ 20.00

   e.  I am:

     (1) ☐ not a registered California process server.

     (2) ☒ exempt from registration under Business and Professions Code section 22350(b).

     (3) ☐ a registered California process server:

       (i) ☐ owner    ☐ employee    ☐ independent contractor.

       (ii)  Registration No.:

       (iii)  County:

8.   ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

   **or**

9.   ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/23/2022

Diamond Freeman
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ *Diamond Freeman*
_____
(SIGNATURE)

**PROOF OF SERVICE OF SUMMONS**

# EXHIBIT "33"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/23/2022 04:10 PM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Willis,Deputy Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815<br><br>TELEPHONE NO.: 562-342-3011        FAX NO. *(Optional):* 562-724-7007<br>E-MAIL ADDRESS *(Optional):* jmurrin@murrinlawfirm.com<br>ATTORNEY FOR *(Name):* Ed Baeza, et. al. | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

| PLAINTIFF/PETITIONER: Ed Baeza, et. al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [x] summons

   b. [x] complaint

   c. [x] Alternative Dispute Resolution (ADR) package

   d. [x] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [x] other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. Party served *(specify name of party as shown on documents served):*
   Larry Bagby

   b. [x] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
   Ruthie, a mail clerk working at Universal Mail and Business located at the below address

4. Address where the party was served:
   12400 VENTURA BLVD # 650, STUDIO CITY, CA 91604-2406 (LOS ANGELES COUNTY)

5. I served the party *(check proper box)*

   a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party   (1) on *(date):*       (2) at *(time):*

   b. [x] **by substituted service.** On *(date):* Dec 21, 2022       at *(time):* 9:30 AM   I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*
   Ruthie, a mail clerk working at Universal Mail and Business located at the above address

   (1) [x] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

   (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

   (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

   (4) [x] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):* 12/23/2022       from *(city):* Long Beach, CA       **or** [ ] a declaration of mailing is attached.

   (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010  [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |
|---|---|---|

**POS-010**

| | |
|---|---|
| PLAINTIFF/PETITIONER:   Ed Baeza, et. al. | CASE NUMBER: |
| DEFENDANT/RESPONDENT:   Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                    (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*) (Code Civ. Proc., § 415.30.)*

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a. ☒ as an individual defendant.

  b. ☐ as the person sued under the fictitious name of *(specify):*

  c. ☐ as occupant.

  d. ☐ On behalf of *(specify):*

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☐ 416.10 (corporation) | ☐ 415.95 (business organization, form unknown) |
| ☐ 416.20 (defunct corporation) | ☐ 416.60 (minor) |
| ☐ 416.30 (joint stock company/association) | ☐ 416.70 (ward or conservatee) |
| ☐ 416.40 (association or partnership) | ☐ 416.90 (authorized person) |
| ☐ 416.50 (public entity) | ☐ 415.46 (occupant) |
| | ☐ other: |

7. **Person who served papers**

  a. Name: Diamond Freeman

  b. Address: 7040 E. Los Santos Dr., Long Beach, CA 90815

  c. Telephone number: 562-342-3011

  d. **The fee** for service was: $ 20.00

  e. I am:

    (1) ☐ not a registered California process server.

    (2) ☒ exempt from registration under Business and Professions Code section 22350(b).

    (3) ☐ a registered California process server:

      (i) ☐ owner   ☐ employee   ☐ independent contractor.

      (ii) Registration No.:

      (iii) County:

8. ☒ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

  **or**

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/23/2022

Diamond Freeman
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ *Diamond Freeman*
_____
(SIGNATURE)

# EXHIBIT "34"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/23/2022 04:10 PM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Willis,Deputy Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815<br><br>TELEPHONE NO.: 562-342-3011   FAX NO. *(Optional):* 562-724-7007<br>E-MAIL ADDRESS *(Optional):* jmurrin@murrinlawfirm.com<br>ATTORNEY FOR *(Name):* Ed Baeza, et. al. | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

| PLAINTIFF/PETITIONER: Ed Baeza, et. al.<br><br>DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | CASE NUMBER:<br>22STCV38080 |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [x] summons

   b. [x] complaint

   c. [x] Alternative Dispute Resolution (ADR) package

   d. [x] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [x] other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. *Party served (specify name of party as shown on documents served):*
      Penn Mutual Life Insurance Company

   b. [ ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:
   330 N. Brand Blvd., Suite 700, Glendale, CA 91203

5. I served the party *(check proper box)*

   a. [x] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party   (1) on *(date):* December 23, 2022   (2) at *(time):* 11:36 AM

   b. [ ] **by substituted service.** On *(date):*   at *(time):*   I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*   from *(city):*   or [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

POS-010

| PLAINTIFF/PETITIONER:  Ed Baeza, et. al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |

5.   c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date):*         (2)  from *(city):*

    (3)  ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4)  ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  ☐  **by other means** *(specify means of service and authorizing code section):*

    ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a.  ☐  as an individual defendant.

  b.  ☐  as the person sued under the fictitious name of  *(specify):*

  c.  ☐  as occupant.

  d.  ☒  On behalf of *(specify):* Penn Mutual Life Insurance Company

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒  416.10 (corporation) | ☐  415.95 (business organization, form unknown) |
| ☐  416.20 (defunct corporation) | ☐  416.60 (minor) |
| ☐  416.30 (joint stock company/association) | ☐  416.70 (ward or conservatee) |
| ☐  416.40 (association or partnership) | ☐  416.90 (authorized person) |
| ☐  416.50 (public entity) | ☐  415.46 (occupant) |
| | ☐  other: |

7.  **Person who served papers**

  a.  Name:  Diamond Freeman

  b.  Address:  7040 E. Los Santos Drive, Long Beach, CA 90815

  c.  Telephone number: 562-342-3011

  d.  **The fee** for service was: $ 20.00

  e.  I am:

    (1)  ☐  not a registered California process server.

    (2)  ☒  exempt from registration under Business and Professions Code section 22350(b).

    (3)  ☐  a registered California process server:

      (i)  ☐  owner   ☐  employee   ☐  independent contractor.

      (ii)  Registration No.:

      (iii)  County:

8.  ☒  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

  **or**

9.  ☐  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/23/2022

Diamond Freeman

*Diamond Freeman*

| Diamond Freeman | ► |
|---|---|
| (NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL) | (SIGNATURE) |

# EXHIBIT "35"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/23/2022 04:10 PM Sherri R. Carter, Executive Officer/Clerk of Court, by J. Willis,Deputy Clerk

Case 2:23-cv-00474-SB-PD   Document 1   Filed 01/20/23   Page 287 of 443   Page ID #:287

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815<br><br>TELEPHONE NO.: 562-342-3011     FAX NO. *(Optional):*  562-724-7007<br>E-MAIL ADDRESS *(Optional):* **jmurrin@murrinlawfirm.com**<br>ATTORNEY FOR *(Name):* **Ed Baeza, et. al.** | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES**
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

| PLAINTIFF/PETITIONER: Ed Baeza, et. al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [x] summons

   b. [x] complaint

   c. [x] Alternative Dispute Resolution (ADR) package

   d. [x] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [x] other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. Party served *(specify name of party as shown on documents served):*
      Beneficial Life Insurance Company

   b. [ ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:
   330 N. Brand Blvd., Suite 700, Glendale, CA 91203

5. I served the party *(check proper box)*

   a. [x] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party   (1) on *(date):* December 23, 2022   (2) at *(time):*  11:36 AM

   b. [ ] **by substituted service.** On *(date):*                 at *(time):*             I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*           from *(city):*                   **or** [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010  [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |
|---|---|---|

**POS-010**

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Ed Baeza, et. al. | CASE NUMBER: |
| DEFENDANT/RESPONDENT:  Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |

5.  c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date):*                (2)  from *(city):*

    (3)  ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4)  ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  ☐  **by other means** *(specify means of service and authorizing code section):*

    ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a.  ☐  as an individual defendant.

  b.  ☐  as the person sued under the fictitious name of  *(specify):*

  c.  ☐  as occupant.

  d.  ☒  On behalf of *(specify):* Beneficial Life Insurance Company

    under the following Code of Civil Procedure section:

| | |
|---|---|
| ☒  416.10 (corporation) | ☐  415.95 (business organization, form unknown) |
| ☐  416.20 (defunct corporation) | ☐  416.60 (minor) |
| ☐  416.30 (joint stock company/association) | ☐  416.70 (ward or conservatee) |
| ☐  416.40 (association or partnership) | ☐  416.90 (authorized person) |
| ☐  416.50 (public entity) | ☐  415.46 (occupant) |
| | ☐  other: |

7.  **Person who served papers**

  a.  Name:  Diamond Freeman

  b.  Address:  7040 E. Los Santos Drive, Long Beach, CA 90815

  c.  Telephone number: 562-342-3011

  d.  **The fee** for service was: $ 20.00

  e.  I am:

    (1)  ☐  not a registered California process server.

    (2)  ☒  exempt from registration under Business and Professions Code section 22350(b).

    (3)  ☐  a registered California process server:

      (i)  ☐  owner    ☐  employee    ☐  independent contractor.

      (ii)  Registration No.:

      (iii)  County:

8.  ☒  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9.  ☐  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/23/2022

Diamond Freeman                 ▶   *Diamond Freeman*
_____              _____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)         (SIGNATURE)

# EXHIBIT "36"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/27/2022 01:48 PM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Bolden,Deputy Clerk

Case 2:23-cv-00474-SB-PD   Document 1   Filed 01/20/23   Page 290 of 443   Page ID #:290

J. Owen Murrin (SBN 75329)
Murrin Law Firm
7040 E. Los Santos Drive
Long Beach, California 90815
Phone:  562-342-3011
Fax:  562-724-7007
E-mail: jmurrin@murrinlawfirm.com
Attorneys for Plaintiff
ED BAEZA, et al.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

STANLEY MOSK COURTHOUSE – CENTRAL JUDICIAL DISTRICT

| | |
|---|---|
| PLAINTIFFS:<br>ED BAEZA, an individual;<br>CONCEPCION BAEZA, an individual;<br>BASSIR ANSARY, an individual;<br>PAUL BUGLER, an individual;<br>WALTER BUGLER, an individual;<br>JAMES CIRILE, an individual;<br>NATHAN COLEMAN, an individual;<br>GAMAN, LLC;<br>GENE GOLDEN, an individual;<br>JOSEPH GOODALE, an individual;<br>RACHEL GILA, an individual;<br>TRUDY BELINDA JOHNSON, an individual;<br>CHARLES LAWRENCE, an individual;<br>ORSON K. LEONG, an individual;<br>PETER J. LOWE, an individual;<br>BARBARA THORSELL, an individual;<br>MARK THORSELL, an individual;<br>CLIFFORD RITZ, an individual;<br>STEVEN C. ROEMER,  an individual;<br>GREG SCHMITT, an individual;<br>JOHN STOCKSDALE, an individual;<br>JENNIFER VANCE, an individual<br>YEYO, LLC;<br><br><br>         Plaintiffs,<br>      v.<br>RELIANT LIFE SHARES LLC aka<br>RELIANT CAPITAL, RLS FINANCIAL<br>SERVICES, INC.; | **Case No.: 22STCV38080**<br><br>**NOTICE OF REASSIGNMENT OF CASE TO NON-COMPLEX/NON-CLASS ACTION**<br><br><br>**Date: December 27, 2022**<br><br>Assigned for all Purposes to Dept. 54<br>Hon. Maurice A. Leiter<br><br>Complaint Filed: December 6, 2022 |

NOTICE OF REASSIGNMENT OF CASE TO NON-COMPLEX/NON-CLASS ACTION

1  RMS TRUST;
   PRINCIPLE FINANCIAL SERVICES, INC.;
2  SCOTT GRADY;
3  PAUL ROY;
   DAVID UNDERWOOD;
4  SHAWN DAVENPORT;
   LARRY BAGBY;
5  BRENT BORCHERT;
   MARK SANSOUCY;
6  LARRY TUPLER;
7  JOEL KLEINFELD;
   RLM TRUST;
8  VINCENT BOVINO;
   UMB BANK N.A.;
9  BANK OF UTAH;
   FIRST WESTERN TRUST BANK;
10 PACIFIC LIFE INSURANCE COMPANY;
11 LINCOLN FINANCIAL GROUP;
   PRINCIPAL FINANCIAL GROUP;
12 AVIVA LIFE AND ANNUITY;
   NASSAU LIFE INSURANCE COMPANY
13 AKA REINSURANCE GROUP HOLDINGS,
   L.P, .AND FORMERLY KNOWN AS
14 PHOENIX COMPANIES; THE PENN
   MUTUAL LIFE INSURANCE COMPANY;
15 LINCOLN BENEFIT LIFE;
16 BENEFICIAL LIFE INSURANCE CO.;
   PHL VARIABLE INSURANCE COMPANY;
17 RELIASTAR LIFE INSURANCE
   COMPANY;
18 AXA EQUITABLE LIFE INSURANCE
19 COMPANY;
   ZURICH AMERICAN LIFE INSURANCE
20 COMPANY;
   JOHN HANCOCK LIFE INSURANCE
21 COMPANY OF NEW YORK;
22 and DOES 1-20

23                          Defendants

24        TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

25        ///

26        ///

27        ///

28        ///

                              2

Take notice that on December 19, 2022, the Hon. David S. Cunningham III, Judge, made an order reassigning this case to be a Non-Complex/Non-Class Action.

Dated: December 27, 2022

MURRIN LAW FIRM

_____

J. Owen Murrin
Attorney for Plaintiff
GWENDALYN DOUGLASS, as Trustee of RAYMOND E. DOUGLASS Revocable Trust

**PROOF OF SERVICE**

State of California, County of Los Angeles

ED BAEZA, et al. *v. RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC, et al.*

Case No.: **22STCV38080**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 7040 E. Los Santos Drive, Long Beach, CA 90815. On the date set forth below, I served a true and correct copy of the following document:

- **NOTICE OF REASSIGNMENT OF CASE TO NON-COMPLEX/NON-CLASS ACTION**

on the list of interested parties below:

| | |
|---|---|
| RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC<br>1475 Island Ave., # 1905<br>San Diego, CA 92101 | DEFENDANT |
| Scott Grady<br>15260 Ventura Blvd., Suite 1200<br>Sherman Oaks, CA 91403 | DEFENDANT |
| Parag L. Amin, Esq.<br>Law Office of Parag L. Amin, P.C<br>5901 W Century Blvd, Ste 1518<br>Los Angeles, CA 90045-5437<br>parag@lawpla.com | Attorney for Defendant Shawn Davenport |
| Larry Tupler<br>3343 BAGLEY AVE APT 8<br>LOS ANGELES, CA 90034-2836 | DEFENDANT |
| Joel K. Kleinfeld<br>275 Golden Hind Psge<br>Corte Madera, CA 94925 | DEFENDANT |
| Beneficial Life Insurance Company<br>330 N. Brand Blvd., Suite 700<br>Glendale, CA 91203 | DEFENDANT |
| Nassau Life and Annuity Insurance Company<br>330 N. Brand Blvd., Suite 700<br>Glendale, CA 91203 | DEFENDANT |
| PHL Variable Insurance Company<br>330 N. Brand Blvd., Suite 700<br>Glendale, CA 91203 | DEFENDANT |
| Penn Mutual Life Insurance Company<br>330 N. Brand Blvd., Suite 700<br>Glendale, CA 91203 | DEFENDANT |
| UMB Bank, N.A<br>20 S. Washington Avenue<br>Minneapolis, MN 55401 | DEFENDANT |

1

PROOF OF SERVICE

| | |
|---|---|
| American General Life Insurance Company<br>2727-A Allen Parkway<br>Houston, TX 77019 | DEFENDANT |
| Jason P. Gosselin, Esq.<br>One Logan Square, Ste. 2000<br>Philadelphia, Pennsylvania 19103, USA<br>jason.gosselin@faegredrinker.com | Attorney for Defendant Lincoln Benefit Life Company |
| Reliastar Life Insurance Company<br>20 S. Washington Avenue<br>Minneapolis, MN 55401 | DEFENDANT |
| Zurich American Life Insurance Company<br>1299 Zurich Way<br>Schaumburg, IL 60196 | DEFENDANT |
| Pacific Life Insurance Company<br>700 Newport Center Drive<br>Newport Beach, CA 92660 | DEFENDANT |
| Mark Sansoucy<br>5805 Sepulveda Blvd, Ste 852<br>Sherman Oaks, CA 91441 | DEFENDANT |
| RLS Financial Services<br>5805 Sepulveda Blvd, Ste 852<br>Sherman Oaks, CA 91441 | DEFENDANT |
| Principal Financial Services<br>101 N Brand Blvd., 11th Floor<br>Glendale, CA 91203 | DEFENDANT |
| David Underwood<br>10153 1/2 Riverside Dr, #535<br>Toluca Lake, CA 91602 | DEFENDANT |
| Brent Borchert<br>2355 Westwood Blvd., #658<br>Los Angeles, CA 90064-2109 | DEFENDANT |
| Paul Roy<br>15260 Ventura Blvd., Suite 1200<br>Sherman Oaks, CA 91403 | DEFENDANT |
| RMS Trust<br>15260 Ventura Blvd., Suite 1200<br>Sherman Oaks, CA 91403 | DEFENDANT |
| Andrew Murphy<br>15260 Ventura Blvd., Suite 1200<br>Sherman Oaks, CA 91403 | DEFENDANT |
| Jason H Gould, Esq.,<br>1025 Thomas Jefferson Street, NW, Suite 400 West<br>Washington, DC 20007-5208<br>JGould@carltonfields.com | Attorney for Aviva Life and Annuity |
| Larry Bagby<br>12400 VENTURA BLVD # 650<br>STUDIO CITY, CA 91604-2406 | DEFENDANT |

PROOF OF SERVICE

| | |
|---|---|
| Vincent Bovino<br>1097 via Carrillo<br>Thousand Oaks, CA 91320-9790 | DEFENDANT |
| JOHN HANCOCK LIFE INSURANCE<br>COMPANY OF NEW YORK<br>CORPORATION SERVICE COMPANY<br>84 STATE STREET<br>BOSTON,   MA   02109 | DEFENDANT |
| Lincoln Financial Group Inc.<br>1904 CHALCEDONY ST<br>SAN DIEGO, CA 92109 | DEFENDANT |
| Bank of Utah<br>2605 WASHINGTON BLVD<br>OGDEN, UT 84401 | DEFENDANT |
| Equitable Holdings Inc. fka AXA Equitable Life<br>Insurance Co.<br>1290 Avenue of the Americas, 13th Floor<br>New York, NY 10104 | DEFENDANT |

☒ **By United States Mail** (CCP §§1013a, et seq.): I enclosed said document(s) in a sealed envelope or package to each addressee. I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, with postage fully prepaid.

☐ **By Overnight Delivery** (CCP §§1013, et seq.): I enclosed said document(s) in a sealed envelope or package to each addressee. I placed the envelope for express delivery, following our ordinary business practices. I am readily familiar with the firm's practice for collecting and processing correspondence for express delivery. On the same day that correspondence is placed for express delivery, it is deposited in the ordinary course of business with the express service carrier, with fees fully prepaid.

☐ **By Messenger Service:** I enclosed said document(s) in a sealed envelope or package to each addressee. I provided them to a professional messenger service (Signal Attorney Service) for service. An original proof of service by messenger will be filed pursuant to CRC, Rule 3.1300(c).

☒ **Electronic Mail** (CCP § 1010.6(d), CRC Rule 2.251(b)(1)(B) & (c)(3), Rule 2.253(b)(1)(B), and mandatory efiling for attorneys by local court order is your consent requiring you to accept electronic service from us.) I served via email to the electronic address shown above.
Our electronic service address is:   jmurrin@murrinlawfirm.com

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 27, 2022 at Long Beach, California.

*Cameron R. Kleinberger*
Cameron R. Kleinberger

PROOF OF SERVICE

# EXHIBIT "37"

**POS-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*:<br>J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815<br><br>TELEPHONE NO.: 562-342-3011    FAX NO. *(Optional)*: 562-724-7007<br>E-MAIL ADDRESS *(Optional)*: jmurrin@murrinlawfirm.com<br>ATTORNEY FOR *(Name)*: Ed Baeza, et. al. | *FOR COURT USE ONLY* |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES**
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

| | |
|---|---|
| PLAINTIFF/PETITIONER: Ed Baeza, et. al.<br>DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | CASE NUMBER:<br>22STCV38080 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [x] summons

   b. [x] complaint

   c. [x] Alternative Dispute Resolution (ADR) package

   d. [x] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [x] other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. Party served *(specify name of party as shown on documents served):*
      UMB Bank, N.A.

   b. [ ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
      under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:
   20 S. Washington Avenue, Minneapolis, MN 55401

5. I served the party *(check proper box)*

   a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
      receive service of process for the party   (1) on *(date):*                     (2) at *(time):*

   b. [ ] **by substituted service.** On *(date):*              at *(time):*          I left the documents listed in item 2 with or
      in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
              of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
              place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
              address of the person to be served, other than a United States Postal Service post office box. I informed
              him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
              at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
              *(date):*          from *(city):*                    or [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

**POS-010**

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Ed Baeza, et. al. | CASE NUMBER: |
| DEFENDANT/RESPONDENT:  Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |

5.  c.  [X]  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date):* December 13, 2022    (2)  from *(city):* Long Beach, CA

    (3)  [  ]  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4)  [X]  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  [  ]  **by other means** *(specify means of service and authorizing code section):*

    [  ]  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a.  [  ]  as an individual defendant.

  b.  [  ]  as the person sued under the fictitious name of  *(specify):*

  c.  [  ]  as occupant.

  d.  [X]  On behalf of *(specify):* UMB Bank, N.A.

    under the following Code of Civil Procedure section:

| | |
|---|---|
| [X]  416.10 (corporation) | [  ]  415.95 (business organization, form unknown) |
| [  ]  416.20 (defunct corporation) | [  ]  416.60 (minor) |
| [  ]  416.30 (joint stock company/association) | [  ]  416.70 (ward or conservatee) |
| [  ]  416.40 (association or partnership) | [  ]  416.90 (authorized person) |
| [  ]  416.50 (public entity) | [  ]  415.46 (occupant) |
| | [  ]  other: |

7.  **Person who served papers**

  a.  Name:  Cameron R. Kleinberger

  b.  Address:  7040 E. Los Santos Dr., Long Beach, CA 90815

  c.  Telephone number: 562-342-3011

  d.  **The fee** for service was: $ 30.00

  e.  I am:

    (1)  [  ]  not a registered California process server.

    (2)  [X]  exempt from registration under Business and Professions Code section 22350(b).

    (3)  [  ]  a registered California process server:

      (i)  [  ] owner  [  ] employee  [  ] independent contractor.

      (ii)  Registration No.:

      (iii)  County:

8.  [X]  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9.  [  ]  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/27/2022

Cameron R. Kleinberger

_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ *Cameron R. Kleinberger*

_____
(SIGNATURE)

# EXHIBIT "38"

Electronically Received 12/27/2022 02:24 PM

J. Owen Murrin (SBN 75329)
**Murrin Law Firm**
7040 E. Los Santos Drive
Long Beach, California 90815
Phone:  562-342-3011
Fax:  562-724-7007
**E-mail: jmurrin@murrinlawfirm.com**
Attorneys for PLAINTIFF INVESTORS

**FILED**
Superior Court of California
County of Los Angeles
12/27/2022
Sherri R. Carter, Executive Officer / Clerk of Court
By: _____ N. Osollo _____ Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES - SPRING STREET COURTHOUSE

| | |
|---|---|
| PLAINTIFFS:<br>ED BAEZA, an individual;<br>CONCEPCION BAEZA, an individual;<br>BASSIR ANSARY, an individual;<br>PAUL BUGLER, an individual;<br>WALTER BUGLER, an individual;<br>JAMES CIRILE, an individual;<br>NATHAN COLEMAN, an individual;<br>GAMAN, LLC;<br>GENE GOLDEN, an individual;<br>JOSEPH GOODALE, an individual;<br>RACHEL GILA, an individual;<br>TRUDY BELINDA JOHNSON, an individual;<br>CHARLES LAWRENCE, an individual;<br>ORSON K. LEONG, an individual;<br>PETER J. LOWE, an individual;<br>BARBARA THORSELL, an individual;<br>MARK THORSELL, an individual;<br>CLIFFORD RITZ, an individual;<br>STEVEN C. ROEMER, an individual;<br>GREG SCHMITT, an individual;<br>JOHN STOCKSDALE, an individual;<br>JENNIFER VANCE, an individual<br>YEYO, LLC;<br><br><br>Plaintiffs,<br>v.<br>RELIANT LIFE SHARES LLC aka RELIANT<br>CAPITAL, RLS FINANCIAL SERVICES, | Case No. 22STCV38080<br>**FIRST AMENDED COMPLAINT**<br>1.  VIOLATION OF CORPORATE CODE §§25401 & 25501<br>2.  BREACH OF FIDUCIARY DUTY<br>3.  CONVERSION<br>4.  NEGLIGENCE – GROSS NEGLIGENCE<br>5.  SELLING UNREGISTERED SECURITIES<br>6.  VIOLATIONS OF CORPORATE CODE §§25004 & 25501.5; AND C.C.P. §1029.8<br>7.  INTENTIONAL MISREPRESENTATION /FALSE PROMISE<br>8.  VIOLATION OF CORPORATE CODE 3372<br>9.  ACCOUNTING<br>10. VIOLATION OF SECTION 5 OF THE SECURITIES ACT (UNREGISTERED SECURITY)<br>11. VIOLATION OF SECTION 15 OF THE EXCHANGE ACT BY ACTING AS A BROKER-DEALER OR AGENT OF SAME WITHOUT REGISTRATION<br>12. BREACH OF CONTACT/RECISSION<br>13. UNFAIR COMPETITION AND VIOLATION OF CODE SECTION 17200 et seq.<br>14. FINANCIAL ELDER ABUSE (Welfare and Institutions Code § 15600 et seq.)<br>15. AIDING AND ABETTING FRAUD AND BREACH OF FIDUCIARY DUTY<br>16. VIOLATION OF SEC RULE 10-B-5<br>17. CONSPIRACY |

1

**FIRST AMENDED COMPLAINT**

INC.;
RMS TRUST;
PRINCIPLE FINANCIAL SERVICES, INC.;
SCOTT GRADY;
PAUL ROY;
DAVID UNDERWOOD;
SHAWN DAVENPORT;
LARRY BAGBY;
BRENT BORCHERT;
MARK SANSOUCY;
LARRY TUPLER;
JOEL KLEINFELD;
RLM TRUST;
VINCENT BOVINO;
UMB BANK N.A.;
BANK OF UTAH;
FIRST WESTERN TRUST BANK;
PACIFIC LIFE INSURANCE COMPANY;
LINCOLN FINANCIAL GROUP;
PRINCIPAL FINANCIAL GROUP;
AVIVA LIFE AND ANNUITY;
NASSAU LIFE INSURANCE COMPANY
AKA REINSURANCE GROUP HOLDINGS,
L.P, .AND FORMERLY KNOWN AS
PHOENIX COMPANIES; THE PENN
MUTUAL LIFE INSURANCE COMPANY;
LINCOLN BENEFIT LIFE;
BENEFICIAL LIFE INSURANCE CO.;
PHL VARIABLE INSURANCE COMPANY;
RELIASTAR LIFE INSURANCE COMPANY;
AXA EQUITABLE LIFE INSURANCE
COMPANY;
ZURICH AMERICAN LIFE INSURANCE
COMPANY;
JOHN HANCOCK LIFE INSURANCE
COMPANY OF NEW YORK;
and DOES 1-20

       Defendants

18. VIOLATION OF CONSUMER LEGAL
    REMEDIES ACT
19. CONSTRUCTIVE TRUST/RECEIVERSHIP
20. ALTER EGO
21. FRAUDULENT TRANSFER
22. CONSTRUCTIVE FRAUD
23. RESCISSION
24. VIOLATION OF PENAL CODE §496

**JURY TRIAL REQUESTED**

2

**FIRST AMENDED COMPLAINT**

PLAINTIFFS, referred to as investors or customers (singular or plural), allege the following for themselves but also for others similarly situated, the following based upon personal knowledge, and upon information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through their attorneys, which included among other things, a review of the Defendants' records, public documents, announcements, United States Securities and Exchange Commission (S.E.C.) filings, wires and releases issued by Defendants, and information obtained on the Internet. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth hereinafter after reasonable discovery as follows:

## **NATURE OF CASE**

1.       Defendants are categorized into three groups for ease of understanding. One group is the Reliant Defendants.  When the term Defendants is used hereinafter, by default that is referring to the Reliant Defendants, the first group of Defendants, and includes all Defendants who are not Insurance Companies or Bank/ escrow companies and include persons or entities engaged in developing, selling, or servicing the life settlement products to Plaintiffs which products are the subject matter of this suit. Specifically it includes all Defendants except defendants in the next two groups. The second group of Defendants are the Insurance company Defendants, generally referred to as such. The third group of Defendants are those acting as bank/escrow companies and named such. It is alleged, upon information and belief that the Reliant Defendants movement of their policies of insurance that they sell to investors from Christiana Bank to UMB Bank, to Bank of Utah, to First Western Trust Bank is indicative of issues that are disturbing and go to revealing acts of impropriety of the sort alleged herein and go to show that the Reliant Defendants used these banks to further their deceptive practices against investors generally and these investors in particular.   The latter two groups are mainly sued as accessories, aiders and abettors and are also liable for themselves not doing due diligence, monitoring and oversight.

2.       The reason there is confusion over who the Reliant Defendant are is because Defendants have purposefully made it so. Defendants frequently use the term "Reliant" but what and who Reliant is, is something these Defendants try to maintain as a mystery. This confusion is the crux of various

**FIRST AMENDED COMPLAINT**

deceptive causes of action alleged herein especially the cause of action alleging violation of the Civil Code §1770 et seq.    Reliant uses different names and including deviations of the name "Reliant" or its initials including Reliant Life Shares or RLM.  Sometimes especially in commercials, it uses Reliant Capital. Reliant uses all sorts of other terms covered in the complaint. Even if they are not part of Reliant, if they are not an insurance company or a Bank/escrow company, they are considered a Reliant Defendant for this complaint.    Also, when Reliant is used, it refers to any number these Reliant Defendants which includes companies that work with and through Reliant.  For example, found in a Reliant purchase agreement in 2016, is reference to a 2010 Irrevocable Trust of the BBC, the RLM Trust, and Joel Kleinfeld so they come under the umbrella of the term Reliant when used in this complaint.  Later in a purchase agreement dated July 13, 2017, there is reference to the RLM Trust and Joel Kleinfeld. Therefore the are also included in the umbrella of the term Reliant for purposes of this complaint   By February of 2018, there is reference to a RLM Trust and RLS Trust in a Reliant purchase agreement, and a month later there is reference to an SLG Trust in a purchase agreement, so these entities are included in the term Reliant when used in this complaint. How all these defendants are related is not explained to the investors by Reliant or its sales force, although it is believed that these individuals or entities are controllers and operators of an "endeavor" or "enterprise" that for purpose of this complaint are referred to as Reliant as well.   Also when terms like "endeavor" or "enterprise" are used in this complaint, they are included under the term Reliant as used in this complaint.  Note whenever the term "investors" is used, it refers to Plaintiffs)

3.      At the same time that all the above  individuals and entities are in the Reliant umbrella, they all will want to  declare themselves independent, separate, and apart from Reliant.  While Plaintiffs dispute this, it does not matter, because for purposes of this complaint, Reliant by definition refers to all but the insurance companies, the bank and escrow companies. The facts will show that all these entities and individuals are not separate and distinct from themselves no matter what name they use or who they try to create legal distinctions.  The endeavor or enterprise these individuals and entities work for is shrouded in mystery.  Some of these companies claim to be separate and apart from Reliant but the facts will show they are not.   They work together and use each other's staff, and they will claim some of these investments are not operated by Reliant Defendants, but operated by RLS Financial Services, Inc,

**FIRST AMENDED COMPLAINT**

Principle Financial Services, Inc., and any of the other Reliant Defendants. These companies will try to claim a separate existence from Reliant, but that separate existence appears blurry and is a sham,  as the companies are so intertwined that it leaves Plaintiffs or any consumer confused an tricked thereby. Also it appears these companies were formed to appear separate in light of the impending downfall or complaints surrounding Reliant are a conduit to continue in a different form-thus the fraudulent transfer causes of action as to these companies.    Investors (including the Plaintiffs herein) are led to believe that they are dealing with Reliant when these other companies appear on the paperwork. Also the same persons seem to be operating having arisen from Reliant and Principle Financial Services, Inc or RLS Financial Services.  They share and operate together in such a way that it is alleged there is a merger of identity. Therefore, whenever there is a reference to Reliant, it applies equally to Principle Financial Services, RLS Financial Services Inc. and the other companies listed herein and these companies.

4.    As a result of the above, these Reliant Defendants misrepresented themselves to the investors as far as the source, sponsorship, approval, or certification of services with one another, all-in violation of Civil Code §1770 et seq. It is alleged that these Defendants are also moving targets, as Reliant is constantly being reconfigured or is a loose group of people who want to claim that they do their own thing separately, but they are all interrelated and sued as such, thus the terms "endeavor" or "enterprise" are appropriate terms for Reliant or the group of people behind the scenes that operate Reliant. They all use the same model of making insurance policies on others as a syndicated item to multiple investors. These insurance policies are sourced from the same methods.    They all use the same sales techniques, and misrepresentations regarding the need for future premiums.  It is alleged upon information and belief that they all procure their policies from the same source, which source is alleged to be a criminal enterprise.   As will be seen, one investor on the same day, bought two groups of Life settlement investments, one from Reliant and the other from Principle Financial Services. As far as he knew, it was the same company with which he was dealing. This is a problem because it means that there is uncertainty of how and who will handle the distributions if and when the policies mature, and who is responsible to keep the investors informed. This is true even though they all claim to use the independent bank or trust model.

5.     The above-mentioned Defendants (the Reliant Defendants along with their endeavor and enterprise) developed a misleading narrative about how good the investments and how extraordinary their services were that were they sold to Plaintiffs.  These Defendants engaged in conduct that created the false impression that the life settlements were restructured and sold with minimal risks and would pay off within the expected time period. These Defendants misrepresented the risk to the investors of having to pay future of out-of-pocket payments to keep the policies in force.  These Defendants told the Investors, "it rarely if ever happens," that the projected premium reserves would not cover future premiums.  These Defendants failed to disclose material information that future premiums would increase substantially as the insured got older or who the premiums are calculated.  These defendants misled investors about their projected annual returns and falsely represented to investors that their investments were safe and were independently protected.    Investors were kept in the dark as to information about the insured, including the names and other important characteristics of the insureds they were supposedly investing in and how that policy was procured.  If they knew how the policy was procured, they would be alarmed and would not want to be a part of this investment and/or it would have exposed this investment for what it is, a devious investment in a devious industry.

6.     The only way that Reliant Defendants could sell this investment to anyone is if they overstated the safety and benefits of the investments, if they did not adhere to security and other laws, and if they hid all the bad facts and bad reviews on the internet, and if they emphasized the occasional winners to make new investors believe, he or she he will benefit from a quick death benefit and high return on investment.  The reality is that there is a higher probability that investors will have to pay additional premiums, than what was represented or implied in the sales materials.  They were deceived about the need to pay additional premiums, how those premiums might affect them and their heirs, and the return on this would on this investment, sometimes to the point that that the return would be negative.  Unfortunately, Defendants do not tell Plaintiffs the real odds of realizing a distribution right away. Early distributions do not seem to happen that often, as many investors have become extremely disappointed over the years for having to pay a premium that they were not expecting based upon the sales presentation.   Having to pay premiums saddles the investor and/or their heirs with obligations that are often unpredictable and hard to meet.  This is not fully explained by Defendants in the sales

**FIRST AMENDED COMPLAINT**

presentation, and makes the investment not suitable or in the investor's best interests.  The attrition rate (investors who drop out of this investment because of the hardship to pay additional premium) is alleged to be significant and is not disclosed but this is a deceit too because Defendants sales pitch to new investors includes the opportunity to get out of the investment with their money back whenever they want, but this has been turned around to not be honored  except upon onerous conditions that do not make sense.   Again this is another big deceit.  What this means is that the only way Defendants can sell this investment to investors like this plaintiff is if Defendants are deceptive and that is how they sold this to Plaintiffs.

7.     Any adverse reviews or criticism of the Reliant program is monitored by these defendants and manipulated out of public view so Defendants will not be tainted by negative internet reviews.  This manipulation which is a purge of bad internet reviews is not only deceptive but also violates securities and other laws because it involves the concealment of material facts. All Defendants need to be held accountable- this includes the Reliant Defendants but any of the Insurance companies, named herein and or the bank/escrow companies to the extent they allow the above all-around deception program to be perpetrated on innocent investors which in this case is what happened to these Plaintiffs.

8.     Defendants misrepresented material facts and omitted to disclose material facts. The real odds of how well a person will do in the Reliant Defendants' investment is not properly conveyed to the investors by Defendants, nor are the problems.  What happens if the insured outlives the investor?  Are the heirs of the investor on the hook?  How often are investors paying out more in premiums than they will realize once the death benefit is distributed, or how often is there a negative return on investment? Defendants characterize these investments as mainstream investments, and "better than the stock market" when they know or should know otherwise.   In fact, they claim these investments do not correlate with the stock market. Defendants claim in their marketing material and on their website that big time investors, such as Warren Buffet and Bill Gates,  invest in these kinds of investments. First of all, that is not true that Warren Buffet or Bill Gates invests in this kind of fractional  life settlement investment. Warren Buffet  or Bill Gates only invests in undivided interests in such death benefits and then  in multiple policies at once which is not what these investors can do.  He does not invest in fractionalized portfolios of policies,  which carries a load.  Still, even if Warren Buffet did invest in the

7

**FIRST AMENDED COMPLAINT**

same type of investment, it does not justify selling a product that is not suitable for the Plaintiffs herein who are not in the same position as Warren Buffet to cover premiums indefinitely in the future.

9.     Reliant Defendants also do not give basic information about the insureds.  Defendants do this under the justification that the insureds' privacy is paramount. That does not justify violating security and other laws that obligate promoters of investments (of securities) to make full disclosure. Failure to disclose material facts is a securities violation even if an insured is entitled to his privacy. The solution is don't sell it.  Defendants keep the investor from being able to do any inquiry, or have any specific knowledge of the insured, a determinative and material factor of the investment.  Although this is a deceit because it is well known in the industry that this information can be obtained and is available when defendants or their agents bought the policy, so under these circumstances this information needed to be disclosed and should be disclosed right now.

10.     Another deception perpetrated by Defendants is that investors can get their principal back at any time. See Exhibit 27 which is  a letter from one of the plaintiff investors described how he was represented to have been told this in more detail and how this was a misrepresentation.  This has turned out to be false, because if true, this suit could have been averted by returning the principal which was requested and declined by Defendants.  In other words Defendants were given the opportunity to rescind the agreement but did not do so, even without having to pay interest which is normally required. Therefore Defendants had the opportunity to avoid this suit completely and chose otherwise. Defendants  blatantly claim people can get their money back at any time during the sales presentations as Exhibit 27 exemplified. The Plaintiffs, especially Mr. Goodale, indicated they would accept the return of their principal in lieu of bringing the suit, but Defendants were not able to perform within a reasonable amount of time or commit to a satisfactory agreement to do so. Defendants also have a history of reneging on such promises of paybacks for example in the Gerald Frank case where Mr. Frank hired a lawyer to get his money back and Defendants agreed to give it back but they reneged on it. The elephant in the room is the allegation by Plaintiffs, alleged upon information and belief, is that the insurance policies are not what they are represented to be, or the insurance policies are manipulated and do not exist as represented, do not exist or will not be available upon maturity or that Defendants have developed a scheme in the form of a Ponzi scheme where new life settlements (or the back office

**FIRST AMENDED COMPLAINT**

that procures policies for themselves and others) covers premiums on life settlements sold years earlier which had not matured, and this is what has exhausted the so called "premium reserves". These things alone are reason to pursue this case because Plaintiffs do not have adequate assurances that any of the above exist and want assurances that the policies they bought are real and in effect, and that the Insurance companies are ready willing and able to pay them as promised.   A factual and legal determination needs to be made on this point, to prove that Defendants have not squandered any of these policies, although this case does not bank on this, just because of the evasiveness of the Reliant Defendants suit is necessary.  Proof of this evasiveness is a compilation of internet complaints against the Reliant Defendants attached hereto as Exhibit 26. Suit on this point is necessary, whether these policies were squandered or not, because Defendants do not respond to these Plaintiff /investors, or when Defendants do not properly answer the questions. As a result of the above, Defendants credibility is lacking such that court determination is necessary as to the existence of these policies.  Alleged on information and belief is that members of the Reliant Defendant's enterprise have taken advantage of the polices in the investment that have not matured for their benefit, and not for the investors' benefit, and not properly disclosed such facts and doing such things, for example, alleged upon information and belief, using the policies for collateral, or misappropriating the death benefit for themselves.

11.    The Reliant Defendants claim that they have a series of policies on insureds, that the insureds have assigned the policies to Plaintiffs (i.e., assigned their death benefit), but that the assignment does not go into effect until the insured dies. Defendants claim that these are individual investments, but each of the Plaintiff's investment seems to involve two or more life settlements policies/death benefits and no two groups of investors are generally exactly the same. These life settlements assigned to Plaintiffs are sold to Plaintiffs as an investment and some of the policies are from other disgruntled Reliant investors who want out.  This is not revealed to Plaintiffs when they purchase. Since the insured are insured by insurance companies, not the Reliant Defendants, these insurance companies become accessories to Defendants' wrongful and illegal endeavor. Defendants use these various insurance companies to bolster Defendants' credibility and to suggest that the investment is safe, using these insurance companies net worth to substitute for the lack of their own net worth. They do the same when they use the name of Defendant Banks/Escrow Company but this is deception

9

**FIRST AMENDED COMPLAINT**

because they have moved from bank to bank and no explanation for that is given.  It is alleged that if the explanation was given it would be an additional fact that would be a material fact that an investor should have known that was deprived these Plaintiffs.  This itself is another deception because it not revealed properly and still has not.  Further Reliant Defendant's net worth is not disclosed and still has not. The bank/escrow and the insurance companies are a part of this deception which violates Civil Code §1770 et seq. because  all defendants are passing off  (or allowing the passing off of) goods and services as those of another. The defendants are merged together to create confusion over the other origin and source of the product, or the goods or services purchased in violation of Civ. Code, § 1770(a)(4) which is a deceptive representation or designation.

12.    The Reliant Defendants use the real insurance companies (referring to the defendant insurance companies) as well as Warren Buffet and Bill Gates to bolster Reliant' s credibility and the company's credibility wrongfully, improperly, and illegally. This confuses investors as to who is the sponsor and who owns the investment, who is in charge and so many more thing as outlined in Civil Code §1770 et seq. and in other causes of action.

13.    This complaint alleges Defendants, and their endeavor or enterprise, are rife with violations of the Deceptive Trade Practices Act including violating Civ. Code, § 1770(a)(9) [advertising goods or services with intent not to sell them as advertised].) The insurance companies are implicated even more because they have been allowing this to happen apparently because it provides cash flow directly to them on insurance policies that might otherwise lapse.  Defendants as well as the insurance companies are sued because they are both furthering Reliant Defendants' investment program(s) which they know are preying on innocent, mostly older, victims who are struggling with all these issues set forth throughout this Complaint. It is not just the insurance companies that are intertwined, and implicated, it is the banks, trust companies, and the escrow companies; and under securities laws they are issuers or agents of the issuers, and as a result they are liable for any security law causes of action and other causes of action for the acts of the Reliant Defendants.  Therefore, these non-Reliant Defendants are sued in this capacity as well as aiders and abettors and co- conspirators.

14.    It is irrelevant that the individuals that make up the Defendants and the entities named in this complaint have gone their separate ways, re-organized or have their own disputes between themselves.

**FIRST AMENDED COMPLAINT**

If they were a part of the mix that allowed this investment to be peddled illegally or improperly, to any of these innocent people, they are alleged to be at fault and responsible.   Each Defendant is sued for his, her, or its own wrongful conduct or for participating in selling this product, aiding, and abetting it, and not putting an end to it when they had a chance.   This investment was a scheme then and is a scheme now designed to take advantage of innocent investors and to enrich themselves.

15.     It is alleged that everyday this investment continues, it is perpetrating a new wrongful act or breach of contract to the extent that Defendants are carrying on a deceptive program and are not allowing Defendants to cash out as promised and to the extent that premiums mean the purchase is still not a completed transaction.

16.     On December 14, 2022, the State of California Business, Consumer Services and Housing Agency of the Department of Financial Protection and Innovation issued a Desist and Refrain Order on Reliant Life Shares, LLC from offering or selling any security in California. According to the Department's order, Reliant Life Shares, LLC, "agents made untrue statements of material fact and material omissions to potential investors." Specifically, the department quoted Reliant Life Shares, LLC, sales' material, which stated "the history of actual maturities for life settlement policies shows that, like a bell curve, approximately half of all policies mature before the estimated life expectancy date, and half after." The department went on to say, "this statement implied to investors that Reliant had the same performance when it did not." This is another example of deceit. Plaintiffs relied upon this false statement to buy their investments, and to stay to invested, with Defendants. Had Plaintiffs known the truth, they would not have invested. This false statement is a substantial reason for the investment and therefore the losses set forth herein. Consequently, this complaint takes the Department's allegation on information and belief and incorporates it into this complaint.

## PARTIES

17.     At all times herein, PLAINTIFF INVESTOR PAUL BUGLER (hereinafter referred to as "INVESTOR PAUL BUGLER" was and is a resident of the City of South San Francisco, County of San Mateo, State of California.

**FIRST AMENDED COMPLAINT**

18. At all times herein, PLAINTIFF INVESTOR WALTER BUGLER (hereinafter referred to as "INVESTOR WALTER BUGLER" was and is a resident of the City of South San Francisco, County of San Mateo, State of California.

19. At all times herein, PLAINTIFF INVESTOR CONCEPCION BAEZA (hereinafter referred to as "INVESTOR CONCEPCION BAEZA" was and is a resident of the City of Los Angeles, County of Los Angeles, State of California.

20. At all times herein, PLAINTIFF INVESTOR ED BAEZA (hereinafter referred to as "INVESTOR ED BAEZA" was and is a resident of the City of Los Angeles, County of Los Angeles, State of California.

21. At all times herein, PLAINTIFF INVESTOR BASSIR ANSARY (hereinafter referred to as "INVESTOR BASSIR ANSARY" was a resident of the Union City, County of Alameda, State of California at the time of sale.  Currently BASSIR ANSARY is a resident of the City of Fairfax, County of Fairfax, State of Virginia.

22. At all times herein, PLAINTIFF INVESTOR JAMES CIRILE (hereinafter referred to as "INVESTOR JAMES CIRILE" was and is a resident of the City of Los Angeles, County of Los Angeles, State of California.

23. At all times herein, PLAINTIFF INVESTOR NATHAN COLEMAN (hereinafter referred to as "INVESTOR NATHAN COLEMAN" was and is a resident of the City of Murrieta, County of Riverside, State of California.

24. At all times herein, PLAINTIFF INVESTOR GAMAN LLC (hereinafter referred to as "INVESTOR GAMAN LLC" is a company operating pursuant to the laws of the State of California doing business in Los Angeles, County of Los Angeles, State of California.

25. At all times herein, PLAINTIFF INVESTOR GENE GOLDEN (hereinafter referred to as "INVESTOR GENE GOLDEN" was and is a resident of the City of Winnetka, County of Los Angeles, State of California.

26. At all times herein, PLAINTIFF INVESTOR JOSEPH GOODALE and RACHEL GILA (hereinafter referred to as "INVESTOR JOSEPH GOODALE and RACHEL GILA" were and are residents of the City of Rohnert Park, County of Sonoma, State of California.

12

**FIRST AMENDED COMPLAINT**

27.     At all times herein, PLAINTIFF INVESTOR TRUDY BELINDA JOHNSON (hereinafter referred to as "INVESTOR TRUDY BELINDA JOHNSON" was and is a resident of the City of Carson, County of Los Angeles, State of California.

28.     At all times herein, PLAINTIFF INVESTOR CHARLES LAWRENCE (hereinafter referred to as "INVESTOR CHARLES LAWRENCE" was a resident of the City of San Pedro, County of Los Angeles, State of California.  He currently lives in Orange County.

29.     At all times herein, PLAINTIFF INVESTOR ORSON K. LEONG (hereinafter referred to as "INVESTOR ORSON K. LEONG" was and is a resident of the City of Pleasanton, County of Alameda, State of California.

30.     At all times herein, PLAINTIFF INVESTOR PETER J. LOWE (hereinafter referred to as "INVESTOR PETER J. LOWE" was and is a resident of the Union City, County of Alameda, State of California.

31.     At all times herein, PLAINTIFF INVESTOR MARK THORSELL and BARBARA THORSELL (hereinafter referred to as "INVESTOR MARK THORSELL and BARBARA THORSELL" were and are residents of the City of Sacramento, County of Sacramento, State of California. They currently live in Arizona.

32.     At all times herein, PLAINTIFF INVESTOR CLIFFORD RITZ (hereinafter referred to as "INVESTOR CLIFFORD RITZ" was and is a resident of the City of Richmond, County of Contra Costa, State of California.

33.     At all times herein, PLAINTIFF INVESTOR STEVEN C. ROEMER (hereinafter referred to as "INVESTOR STEVEN C. ROEMER" was and is a resident of the City of San Anselmo, County of Marin, State of California.

34.     At all times herein, PLAINTIFF INVESTOR GREGORY SCHMITT (hereinafter referred to as "INVESTOR GREGORY SCHMITT" was and is a resident of the City of San Rafael, County of Marin, State of California.

35.     At all times herein, PLAINTIFF INVESTOR JOHN STOCKSDALE (hereinafter referred to as "INVESTOR JOHN STOCKSDALE" was and is a resident of the City of Santa Rosa, County of Sonoma, State of California.

**FIRST AMENDED COMPLAINT**

36.     At all times herein, PLAINTIFF INVESTOR JENNIFER VANCE (hereinafter referred to as "INVESTOR JENNIFER VANCE" was and is a resident of the City of Corte Madera, County of Marin, State of California.

37.     At all times herein, PLAINTIFF INVESTOR YEYO LLC (hereinafter referred to as "INVESTOR YEYO LLC" is a company operating pursuant to the laws of the State of California doing business in Los Angeles, County of Los Angeles, State of California.

38.     At all times herein, Defendant RELIANT LIFE SHARES LLC (herein referred to as "RELIANT") was a limited liability corporation operating pursuant to the laws of the State of California. Reliant Capital is a trade name or term RELIANT uses to market itself. It is not associated with the collection company.

39.     RLS FINANCIAL SERVICES, INC. is interrelated with RELIANT and serves as its agent of records. When RLS FINANCIAL SERVICES, INC. (hereinafter "RLS") is referred to, RLS is interdependent on RELIANT and is a sham and a manipulation of reality to separate it from RELIANT because they play off of each other to do the same thing by making money off of investors who purchase RELIANT marketed life shares like the ones purchased herein. In the alternative, it is alleged that RLS is the alter ego of RELIANT behind the scenes ratifying or covering up the bad outcomes for investors. This entity is also referred as a RELIANT associated company. When RELIANT is referred to hereinafter generally, it includes RLS FINANCIAL SERVICES, INC. unless otherwise noted.

40.     RMS TRUST is a trust operating in the state of California that had control over the perpetrators of all endeavors described herein who permitted, condoned, and allowed wrongful things to happen.

41.     At all times herein, Defendant PRINCIPLE FINANCIAL SERVICES, INC.; (herein referred to as "PFSI") was a corporation operating pursuant to the laws of the State of California. It is believed operating through or with Reliant and posing itself as Reliant.

42.     At all times herein, Defendant SCOTT GRADY (hereinafter GRADY) was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent and associate of RELIANT and/or JOEL KLEINFELD or his company, believed to be RMS Trust, or together they controlled the investments described herein. In the alternative, GRADY is the decision-maker and chief salesperson

14

**FIRST AMENDED COMPLAINT**

when it comes to the sale of these life settlement products which are the subject matter of this complaint. He controlled some of the events herein. GRADY has ratified or maintained all the wrongful conduct set forth in this Complaint. Although he was a seller of these products, he is not licensed to sell Life Settlement and his involvement to do so is believed illegal.  More about him below.

43.     At all times herein, Defendant PAUL ROY was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL KLEINFELD or his company above mentioned. He controlled some of the events herein. ROY was a decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint.

44.     At all times herein, Defendant DAVID UNDERWOOD was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL KLEINFELD or his company above mentioned. He controlled some of the events herein. He was a decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint.

45.     At all times herein, Defendant SHAWN DAVENPORT was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL KLEINFELD or his company above mentioned. He controlled some of the events herein. He was a decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint.

46.     At all times herein, Defendant LARRY BAGBY was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL KLEINFELD or his company above mentioned. He controlled some of the events herein. He was a decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint.

**FIRST AMENDED COMPLAINT**

47.     At all times herein, Defendant BRENT BORCHERT was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL KLEINFELD or his company above mentioned. He controlled some of the events herein. He was a decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint. More about him below.

48.     At all times herein, Defendant MARK SANSOUCY was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL KLEINFELD or his company above mentioned. He controlled some of the events herein. He was a decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint. More about him below.

49.     At all times herein, Defendant LARRY TUPLER was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL KLEINFELD or his company above mentioned. He controlled some of the events herein. He was a decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint.

50.     At all times herein, Defendant VINCENT BOVINO was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL KLEINFELD or his company above mentioned. He controlled some of the events herein. He was a decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint.

51.     At all times herein, Defendant JOEL KLEINFELD has been and is the owner, operator, and controller of the enterprise known as RELIANT and either individually or through his company Doe 1 controlled or manipulated the outcomes affecting the investments contained and referenced in this complaint. He or his company are alleged to be a Reliant associated company and operator and

16

**FIRST AMENDED COMPLAINT**

controller of RELIANT, RELIANT associated companies, and Defendants herein when it comes to these life share investments. More about him below.

52. At all times herein, Defendant RLM TRUST (herein referred to as "RLM") is a trust owned and operated by JOEL KLEINFELD and is operative in or around the United States and is believed to be a responsible entity allowing the occurrences (including wrongdoing) set forth in this complaint to happen. It is alleged upon information and belief that it is a RELIANT associated company.

53. Doe 1 is JOEL KLEINFELD 's company used to manipulate, and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint. It is alleged upon information and belief that he is or was during relevant times the founder, operator, and controller of RELIANT or Reliant associated companies and Defendants herein when it comes to these life share investments.

54. UMB BANK N.A. acts as RELIANT'S escrow agent and is believed to be located 1010 Grand Blvd, 4th Floor., Kansas City, MO. It is believed to be responsible and liable for the wrongdoing set forth in this complaint because of its association, ratification, and knowledge of this wrongdoing..

55. BANK OF UTAH acts as RELIANT'S escrow agent and is believed located at 200 East South Temple, Suite 210, Salt Lake, Utah. It is believed to be responsible and liable for the wrongdoing set forth in this complaint because of its association, ratification, and knowledge of this wrongdoing.

56. FIRST WESTERN TRUST BANK acts as RELIANT'S escrow agent and has locations in Colorado, Wyoming, Arizona, and California. It is believed to be responsible and liable for the wrongdoing set forth in this complaint because of its association, ratification, and knowledge of this wrongdoing.

57. PACIFIC LIFE INSURANCE COMPANY is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

58. LINCOLN FINANCIAL GROUP is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

**FIRST AMENDED COMPLAINT**

59.     PRINCIPAL FINANCIAL GROUP is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

60.     AVIVA LIFE AND ANNUITY is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

61.     NASSAU LIFE INSURANCE COMPANY AKA REINSURANCE GROUP HOLDINGS, L.P, .AND FORMERLY KNOWN AS PHOENIX COMPANIES.   Phoenix is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

62.     THE PENN MUTUAL LIFE INSURANCE COMPANY is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

63.     LINCOLN BENEFIT LIFE is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

64.     BENEFICIAL LIFE INSURANCE CO. is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

65.     PHL VARIABLE INSURANCE COMPANY is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

66.     RELIASTAR LIFE INSURANCE COMPANY is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

67.     AXA EQUITABLE LIFE INSURANCE COMPANY is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

**FIRST AMENDED COMPLAINT**

68.     ZURICH AMERICAN LIFE INSURANCE COMPANY is an insurance company used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint and is a company authorized to do business in the State of California

69.     JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

70.     PLAINTIFFS are informed and believe and upon such information and belief allege that Defendants, DOES 1-20, inclusive, and at all relevant times were, residents of Los Angeles County, California. PLAINTIFFS do not know the true and accurate names and capacities of DOES 1-20, thus DOES 1-20 are fictitiously named. PLAINTIFFS will seek leave to amend this Complaint to allege their true names when ascertained.

71.     PLAINTIFFS are unaware of the true names and capacities of DOE Defendants sued herein as DOES 1-20, and therefore sue those Defendants by such fictitious names. PLAINTIFFS will seek leave to amend this Complaint to allege their true and accurate names and capacities when ascertained. PLAINTIFFS are informed and believe and upon such information and belief allege that each of the fictitiously named Defendants are responsible for the acts and/or omissions herein alleged, and that PLAINTIFF 's injuries and damages as herein alleged were proximately caused by the acts and/or omissions of such fictitiously named Defendants

## JURISDICTION

72.     DEFENDANTS reside or do business in California, so California is the proper forum.  Los Angeles County, California is where the most sales and transactions took place and where the chief DEFENDANTS congregate, live, work and are headquartered. Therefore, California Superior Court of Los Angeles County is the proper court and forum for this case.

## ALTER EGO, AGENCY, AND SUCCESSOR IN INTEREST

73.     Plaintiffs are informed and believe, and thereon allege that there exists such a unity of interest and ownership between DEFENDANTS and DOES 2-20, that the individuality and separateness of DEFENDANTS have ceased to exist.

19

**FIRST AMENDED COMPLAINT**

74.     Plaintiffs are informed and believe, and thereon allege that the DEFENDANTS and/or DOES 2-20 conspired to break the laws alleged herein.  This is part of a joint activity, joint endeavor, joint enterprise, and/or joint adventure, carried out by all DEFENDANTS and DOES 2-20.

75.     Plaintiffs are informed and believe, and based thereon allege that despite the formation of purported corporate existence, DEFENDANTS and/or DOES 2-20 are in reality, one and the same Defendant, because of, but not limited to, the following reasons:

a.  DEFENDANTS are completely dominated and controlled by one another and DOES 2-20, who personally committed the frauds and violated the laws as set forth in this complaint, and who have hidden and currently hide behind DEFENDANTS to perpetrate frauds, circumvent statutes, or accomplish some other wrongful or inequitable purpose.

b.  DEFENDANTS and DOES 2-20, derive actual and significant monetary benefits by and through one another's unlawful conduct, and by using one another as the funding source for their own personal expenditures.

c.  DEFENDANTS and DOES 2-20, while really one and the same, were segregated to appear as though separate and distinct for purposes of perpetrating a fraud, circumventing a statute, or accomplishing some other wrongful or inequitable purpose.

d.  DEFENDANTS do not comply with all requisite corporate formalities to maintain a legal and separate corporate existence.

e.  The business affairs of DEFENDANTS and DOES 2-20 are, and at all times relevant were, so mixed and intermingled that the same cannot reasonably be segregated, and the same are in inextricable confusion. DEFENDANTS are, and at all times relevant hereto were, used by DEFENDANTS, one and another, and DOES 2-20 as a mere shell and conduit for the conduct of certain of DEFENDANTS' affairs, and are, and were, the alter ego of DEFENDANTS, one and another and DOES 2-20.  The recognition of the separate existence of DEFENDANTS would not promote justice, in that it would permit DEFENDANTS to insulate themselves from liability to PLAINTIFFS for violations of the Labor and Government Codes and other statutory regulations. The corporate existence of any Corporate DEFENDANTS and DOES 2-20 should be disregarded

**FIRST AMENDED COMPLAINT**

in equity and for the ends of justice because such disregard is necessary to avoid fraud and injustice to PLAINTIFFS herein.

76.    Accordingly, DEFENDANTS constitute the alter ego of other DEFENDANTS, one and another, DOES 2-20, and the fiction of their separate corporate existence must be disregarded.

77.    As a result of the aforementioned facts, Plaintiffs are informed and believes, and based thereon alleges that DEFENDANTS and DOES 2-20 are joint employers by virtue of a joint enterprise, and that DEFENDANTS are employees of other DEFENDANTS and DOES 2-20.  DEFENDANTS performed services for each other to the mutual benefit of all DEFENDANTS who shared control, either directly or indirectly, of the manner in which DEFENDANTS' business was and is conducted.

## GENERAL ALLEGATIONS

78.    Upon information and belief, RELIANT is a conduit for getting rid of the least desirable viatical or life settlement in the business. DEFENDANTS take these "left over" viaticals and fractionalize and syndicate them which creates a higher load on the investment compared to lump sum purchase of a viatical or a lump sum purchase of multiple viaticals like Warren Buffett or Bill Gates does. Yet DEFENDANTS not only do not disclose this, but they actively equate their product to the viaticals that Warren Buffett and Bill Gates have purchased.  Defendants website and oral representations suggest that Warren Buffett and Bill Gates endorse this product. DEFENDANTS intentionally use the  fact that Warren Buffett and Bill Gates bought viaticals as a selling point to all Plaintiffs, in newsletters,  and on their website, making Plaintiffs think falsely that what RELIANT offers is equivalent to what Warrant Buffett and Bill Gates bought,  and that if it is good for Buffett and Gates, it is good for RELIANT investors. Buffett and Gates buy great quantities of viaticals without as many middlemen and the load that RELIANT products carry. Buffett and Gates did not purchase fractionalized or syndicated viaticals like the kind RELIANT sold to these investors. Buffett and Gates bought true viaticals. What Plaintiffs were sold are life settlements fractionalized as a pool and syndicated. Examples where these kinds of investments lead to poor outcomes, including a string of failures are exemplified in the Oxford Financial and Pacific West Group programs, which is material information about this industry that was not disclosed to these investors. DEFENDANTS did not make a full, complete, fair, and balanced disclosure of its industry and portrayed it as all upsides. That is false

21

**FIRST AMENDED COMPLAINT**

and deceptive. Warren and Gates are portrayed in marketing materials as if they are sponsors for RELIANT, which they are not. This is a material deception that caused people to buy when they normally would not have had they been given full and complete disclosure of the material facts.

79.     RELIANT groups viaticals and puts them into a purported trust and then sells a fractional interest in another person's life insurance policy or an "insured's" death benefit. The investment value is based upon the life expectancy of the insured because the premium has to be paid each year. The premium is often more expensive the older the insured gets. This investment is not suitable for people approaching retirement, and especially those who are already retires if they are living on a modest or fixed income, as retirees often do. There is an ongoing obligation to pay a premium that may be burdensome to retirees, or their heirs. The RELIANT product has inherent problems that regular viaticals do not have because RELIANT pools and fractionalizes the viatical, it has overhead to carry and hold them, and RELIANT has to pay a salesperson which adds to the load to market the viatical. This load is not disclosed at least as far as how that impacts the rate of return compared to a standalone or large quantity viatical purchase.

80.     PLAINTIFFS have found the process to be oppressive for several reasons including the continuing and sometimes ever-increasing premiums that were never fully disclosed prior to PLAINTIFFS investing.

81.     PLAINTIFFS are bringing this suit to obtain PLAINTIFFS' money back plus damages. PLAINTIFFS were told that this was a guaranteed investment, but the investment is not guaranteed to vest until the insured dies. It does not vest if the premiums lapse, plus the return on investment can be diminished the longer the insured lives. Also, an insurance death benefit does not usually last beyond a certain date, typically it lapses if the insured reaches 100 years old. This was not properly disclosed. The rate of return of past investments was not disclosed, and the creditworthiness of RELIANT or the companies behind the scenes supporting it were not disclosed. Also not disclosed were the companies and circumstances relating to investor buyouts. None of these risk factors were sufficiently communicated to PLAINTIFFS. All of these things were not properly explained. These things were misrepresented or concealed to PLAINTIFFS and would be material to any decision to invest.

82.     RELIANT and its enterprise used untrained and unqualified (or not adequately trained or supervised) salespeople who do not understand the product, did not understand securities law and the obligation to provide balanced information, and did not adequately endeavor to know one's customer before selling these RELIANT products. RELIANT salespeople were not bound (like FINRA salespersons) by the obligation to conduct business with high standards of commercial honor and just and equitable principles of trade. The salespersons would have been bound by the above concepts and securities rules and regulations had they been properly licensed as securities agents, and if they were licensed/registered brokers and operated through a broker dealer (which they should have been and were not). Instead, this was a renegade sales operation that violated securities law when selling these securities as was done here. Further, these sales were the result of salespeople who did not know or did not follow basic security rules, regulations, and ethical requirements. If this sales force was legitimately and properly trained and registered, these sales would not and could not be made. None of this was explained to PLAINTIFFS.

83.     RELIANT's program implies Warren Buffett and other prominent persons endorse or use its product. There is a picture of Warren Buffett on the RELIANT website and mention of Buffet on a RELIANT's radio advertisements referencing Warren Buffett in a way that causes investors to believe Warren Buffett endorses and or uses RELIANT's products or products like it. It is believed that this was put on RELIANT'S website without Warren Buffett's permission or consent and is deceptive for this reason further set for herein.

84.     RELIANT's website reads, "The flexibility of this account allows investors to withdraw their money any time without a penalty." This caused Plaintiffs to invest when they otherwise would not. Customers and Plaintiffs were led to believe that they could get their money back. This is not true.

85.     This product is touted as the "best kept secret in Wall Street." Reliant' s website also contains a picture of Warren Buffett.  However, this product is cloaked with secrecy and sold as if premiums and transfer at death are not issues, however these are major issues of material facts that were not properly communicated or explained.

86.     DEFENDANTS failed to give all necessary, relevant, and material information about this product necessary for a reasonable investor to properly evaluate this investment  including providing 1)

**FIRST AMENDED COMPLAINT**

overall rate of return historically, 2) the percentage of time RELIANT estimated the life expectancy (reserves) correctly, 3) the average age of death of an insured historically, 4) the number of these investments that have gone full circle, 5) the number of repeat customers, 6) the number and percentage of people and all their investment that made money, 7) the load on the investment, 8) the number of persons that put money in a RELIANT program or the fact that people did invest and took losses to get out of the program. DEFENDANTS failed to provide basic statistics and information regarding the insureds living beyond the premium reserve, or how RELIANT projects life expectancies as less than the social security life expectancy to create the false impression that the investment is better than it is. Again, DEFENDANTS failed to provide information as to how many insureds exceeded RELIANT's disclosed life expectancy, which is a basic fact any investor needs to know before investing in these products. DEFENDANTS failed to disclose how many investors dropped out, forfeited, or had to suffer a restructuring of their investment due to premium requirements. Defendants did not tell Plaintiffs that RELIANT acquired abandoned insurance policies that are not taken by higher end investors or that they acquire insurance policies in less than appropriate circumstances. Investors are not told that fractional share programs, is an aberration and not allowed in many other states.

87.     RELIANT is ingenuine and manipulative when it comes to posting references and ratings about itself. It uses a service to rid itself of negative but important information that should be in the public domain or be accessible to future investors.

88.     RELIANT falsely claims it does better than Wall Street without statistics to back that up. RELIANT sells viaticals, life settlements, or Fractional Shares to consumers through an advertising program designed to lure in persons without regard to their knowledge and sophistication about viatical or life settlements and fractional and syndicated interests and without presenting a fair and balanced picture of this investment.

89.     Most RELIANT investors are elderly or approaching retirement and are encouraged to use retirement monies to invest in RELIANT products.  This results in a loss of liquidity, which is not in a customers' best interest nor is it suitable for retirement. The product RELIANT offers is not suitable to anyone and certainly not these PLAINTIFFS.

**FIRST AMENDED COMPLAINT**

90.     RELIANT wrongfully encouraged PLAINTIFFS to use their IRA or 401k protected money to buy these products. This is inappropriate and negligent and violative of security laws. It violates the principle requiring a seller of securities to know their customer and to observe just and equitable principles of trade.

91.     Comparing these investments with shares of a stock in a publicly traded company is erroneous and deceptive. Yet this is done on Reliant' s website and in numerous radio and other marketing endeavors. RELIANT is also acknowledging that it engages in the sale of securities as stock in a publicly traded company, a clear reason why a security needs significant regulation.

92.     Most PLAINTIFFS were influenced to invest after hearing several RELIANT radio advertisements, many played on a Christian radio station. PLAINTIFFS assumed that hearing the advertisement on the Christian radio station meant that the station had vetted and endorsed RELIANT. RELIANT played that up to their benefit in a way that was deceptive. These commercials are false, misleading, and deceptive under all the circumstances.

93.     The RELIANT investment program fails to meet all of the provisions of the Corporate Code §25102(q) and other provisions of California law. Because of that, they cannot claim an exemption.  In violation of registration and qualification laws of the State of California, as DEFENDANTS wrongfully claim, an exemption for all syndication which is contrary to law and practice.

94.     Corporate Code §25102(q)(F) requires that the issuer adequately describe the issue and fully disclose the directors, officers, partners, members, or trustees of the issuer.  This was not done. It is also believed that the failure to disclose SCOTT GRADY'S disbarment violates security provisions of full disclosure and the requirement of full and balanced disclosure.

95.     Corporate Code §25102(q)(3)(E) requires that if the issuer retains ownership or becomes the beneficiary of the insurance policy, the following must be obtained: an audit report of an independent certified public accountant together with a balance sheet and related statements of income, retained earnings, cashflow sheets that reflect the issuer's financial position, the documents that show the results of the issuer's operations, and the issuer's cashflows as of a date within 15 months before the date of the initial issuance of the securities. This was not done even though RELIANT or its personnel and or agents (vendors) took over policies and effectively became owners or arranged for others to do it with

25

**FIRST AMENDED COMPLAINT**

improper and undisclosed kick back arrangements. RELIANT or associated persons or entities constructively acted as owners of the insurance policies and/or controlled them tantamount to owners.

96.     Corporate Code §25102(q)(3)(Q) requires that Defendants provide the names, addresses, telephone numbers of the persons who will be insurance policy owners and/or the persons who will be responsible for the premiums. Defendants failed to provide this. RELIANT has interfered with investors' ability to obtain information from each other, advocate for themselves, organize, and have access to their rights available by law.

97.     RELIANT also violated the provisions of Corporate Code §25102(q)(3)(O) which requires that the insurance policy premiums and terms of premium payments be disclosed. They were not adequately disclosed, or were disclosed in a fashion that was misleading, inaccurate, sloppy, or dishonest.

98.     Corporate Code §25102(q)(3)(L) requires that Defendants advise investors of the rate of increased premiums as the insureds become older.  This was not disclosed or adequately addressed and constitutes misrepresentation and deception. This also violates Corporate Code §25102(q)(U) because the commissioner requires full disclosure. The omission of these material facts becomes a form of deceit and violated the suitability requirement and the requirement that the investment be in the best of PLAINTIFFS.

99.     Upon information and belief, several investors were told that RELIANT does not check the net worth of its investors. Corporate Code §25102(q)(1) requires that the sales of securities should be made only to qualified purchasers, and that the issuer must make a reasonable inquiry as to qualifications of the purchaser, including net worth, and the percentage of net worth these investments would constitute to their total net worth. RELIANT in doing the above has failed to properly qualify purchasers to the program, which is reflective of RELIANT'S failure to comply with securities laws or "knowing one's customer." A failure to follow the above makes the whole program vulnerable to failure and deceit on all investors.

100.    Upon information and belief, Defendants failed to take reasonable steps to verify if PLAINTIFFS were qualified purchasers and or had knowledge and experience in financial and business matters and that PLAINTIFFS were capable of evaluating the merits and risks of the prospective

investment. Also, DEFENDANTS did not verify whether or not PLAINTIFFS had a large enough portfolio so that PLAINTIFFS' total investments in these policies did not exceed 10% of their portfolio. It is alleged upon information and belief that RELIANT allowed people to invest who were not accredited or made purchases of these investments which constituted more than 10% of their net worth.

101.    DEFENDANTS failed to have appropriate backup plans if and when certain investors failed to make premiums. If they had a backup plan, it needed to be disclosed but it was not. The plan also involved a conflict of interest to the extent that it allowed RELIANT associates or affiliates to profit when an investor quits the program. It also makes the entire program vulnerable when investors leave; it means someone has to cover that person's premium. How this was to be handled when an investor fails to pay premiums or drops out or dies was not disclosed as it is a material fact that all investors need to know because it affects the viability and saying power of the program.

102.    It is further believed that the whole method of selling these investments was brought about by Defendants acting as brokers or broker dealers without licenses or registration and without proper authority to act as broker dealers or agents of broker dealers under the law and regulations governing securities. That is illegal and grounds for disgorgement and other remedies asserted herein. Whether licensed or not, the salesmen (Defendants) were employing tactics to misrepresent these investments as more legitimate and profitable than they truly were in order to make a sale. They did not disclose the full dark side of this industry and deceit that pervades it. The sales were based on taking advantage of insureds' desperate situation by a player who takes a lot of the profit themselves before either in the acquisition of the policy, set-up, and syndication of it.

103.    Upon information and belief, various investors were excused from having to pay premiums while other investors were not excused. This is not disclosed, and it creates inequality among investors in the program. It creates a conflict of interest, and it is an unpredictable arrangement used at the whim of the promoter as a manipulation device.

104.    PLAINTIFFS were induced into this program by manipulated reviews that did not represent a true status of the RELIANT situation. This is an additional deception where DEFENDANTS used deceptive reviews wrongfully. It was deceit to manipulate these reviews.

105.    The sale of this product violates securities laws that require full disclosure. Full disclosure cannot be given or was not given because the name of the insureds were not given to protect the identity of the insured. In addition, DEFENDANTS used this as an excuse not to give out insured medical records. This is per se a violation of security laws which requires full disclosure. By withholding names of the insured like RELIANT did, the most material fact, the name of the insured, is not disclosed that violates the first principal of securities law; full disclosure.

106.    DEFENDANTS further misrepresented that this investment is state and federal tax exempt, which it is not.

107.    DEFENDANTS used improper general solicitation and marketing and misleading advertising to sell these investments to PLAINTIFFS. This involved meeting investors personally to make sales at restaurants, in their homes, and other places in violation of personal solicitation roles.

108.    DEFENDANTS' prior model of selling viatical life policies consisted of selling one policy to one group at a time. To make themselves less obligated to group participation, DEFENDANTS moved away from that model, and in these investments, they sold each person an interest in multiple policies, like a package of fractionalized interests in several policies. The previous model allowed investors to know each other, to band together and communicate. The present model used in these investments make it almost impossible or difficult for any investor to interact with other investors to advocate together. This new arrangement allows RELIANT to keep investors in the dark as far as investors knowing and contacting each other. This violates security laws which requires full disclosure and the right of investors to organize, participate and advocate for each other. In a publicly traded stock company, a shareholder can vote out management to change things and/or to improve events and outcomes. This program was intentionally designed to prevent any power and information to leak to investors, the PLAINTIFFS herein.

109.    This investment hails from a tortured history where dishonesty is part of its culture. This is depicted in the attached declaration of Gloria Wolk that was available to Reliant from previous litigation. See Exhibit A all the allegations of which are incorporated by reference as though fully set forth hereat.   RELIANT and DEFENDANTS had a duty to disclose all material facts. Without disclosing the information contained in Wolk's declaration, RELIANT's self-serving version of its

**FIRST AMENDED COMPLAINT**

products is not fair and balanced nor is it in compliance with securities law. RELIANT also was involved in a series of litigation involving American General Insurance Policy PSH 20052L, which it did not disclose to these investors, which was a material concealment. Failure to fully disclose all material facts that investors needed to know constitutes intentional negligence or grossly negligent concealment of material facts.

110.    RELIANT and its associated Defendant and persons and entities have gone to great lengths and are still going to great lengths by hiring a reputational improvement company to scrub or make information about RELIANT and investor experiences unavailable to the public.  This is contrary to what is required, which is full and balanced disclosure where the investors have access to all facts. In fact, negative reviews are deemed negative for sales. This is an anathema to what should be allowed and is an indicator of purposeful intent by RELIANT and other Defendant associated persons and entities alleged herein to deceive and manipulate this investment by controlling information available.

111.    On October 10, 2016, PLAINTIFF INVESTOR PAUL BUGLER was sold five policies.

112.    PLAINTIFF INVESTOR PAUL BUGLER was influenced, in addition to the allegations above, as well as the allegations in this Complaint, to invest by being told that RELIANT's investments were not correlated to the stock market. PLAINTIFF BUGLER was led to believe that an investment in RELIANT's product would be a way to diversify his investment portfolio. But the investment arranged by RELIANT had issues that were not explained as described above. This PLAINTIFF INVESTOR PAUL BUGLER (as well as the other PLAINTIFFS herein) was led to believe that this RELIANT investment had less risk than the stock market. This turned out not to be true and his investment in RELIANT left him undiversified.

113.    This PLAINTIFF (as well as the other PLAINTIFFS) was influenced by the rate of return that RELIANT promised, but this rate turned out to be a misrepresentation of a material fact and not true.

114.    Reputable securities salespeople and securities professionals would not sell these investments to PLAINTIFFS.

115.    PLAINTIFFS put DEFENDANTS to their proof to prove that RELIANT is a legitimate organization, that RELIANT actually has life insurance policies behind these investments and that life

29

**FIRST AMENDED COMPLAINT**

insurance policies are not being manipulated by RELIANT in conjunction with the life settlement industry. PLAINTIFFS find it hard to believe that so many investors can be carrying investments for years, where so many insured have lived longer than what was represented or projected. PLAINTIFFS find it hard to believe that the projected reserves have not been manipulated by RELIANT and associated persons and entities. In the alternative, it is negligence to set reserves determining the life expectancy (or creating the impression) that there is a shorter life expectancy than what is reasonable. This is alleged to be a fraud, or else another aspect of negligence in creating a false message and not knowing and describing one's product honestly.

116.   PLAINTIFFS were influenced to invest by hearing that RELIANT's investments were not correlated to the stock market, so PLAINTIFFS were led to believe that an investment in RELIANT's product would be a way to diversify their investment portfolio. But the investment arranged by RELIANT had its own diversity issues and problems that were not explained and properly disclosed.

117.   DEFENDANTS failed to disclose in a more transparent and prominent manner that if premiums were not continually paid, that PLAINTIFFS could lose their entire investment, which is not synonymous with the advertised representation that allows PLAINTIFFS to get their money back at any time. This exemplifies RELIANT's policy and those associated with it that allows it to portray it in the way most helpful to sell rather than in a consistently fair, balanced, and honest way. This is fraud, deceit, and violation of securities law.

118.   DEFENDANTS misrepresented that this investment would have little to no risk as the insured would eventually pass away and the policy would pay off. DEFENDANTS stated that there would be little to no risk of the investor not receiving a return on their investment, it would only be a matter of when. PLAINTIFFS reasonably relied on this misrepresentation, not realizing that the premium payments would escalate prohibitively. This was not adequately disclosed or explained to PLAINTIFFS, in fact the exact opposite was told to PLAINTIFFS, that very rarely are premiums needed beyond the prepaid reserves.

119.   DEFENDANTS allowed PLAINTIFFS to invest in several policies. PLAINTIFFS were influenced by the fact that RELIANT allowed them to invest in several different polices of different

30

**FIRST AMENDED COMPLAINT**

insured to spread out risk and chance for return on investments. This diversification did not substantially lower the risk of the investment.

120.    PLAINTIFF INVESTOR PAUL BUGLER originally purchased $50,000 of viatical life settlement investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled or allowed him and the other investors to be swindled.

121.    INVESTOR PAUL BUGLER should never have been sold this or any RELIANT investment. DAVID UNDERWOOD sold INVESTOR PAUL BUGLER this investment under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

122.    PLAINTIFF PAUL BUGLER was 49 years old when he first invested in RELIANT in 2016.

123.    PLAINTIFF INVESTOR WALTER BUGLER originally purchased $50,000 of viatical life settlement investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR WALTER BUGLER.

124.    INVESTOR WALTER BUGLER should never have been sold this or any RELIANT investment. DAVID UNDERWOOD sold INVESTOR WALTER BUGLER this investment under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

125.    PLAINTIFF WALTER BUGLER was 50 years old when he first invested in RELIANT in 2016.

126.    INVESTOR WALTER BUGLER invested in 5 policies.

127.    In 2020, PLAINTIFF INVESTORS ED BAEZA and CONCEPCION BAEZA were sold fourteen policies by LARRY TUPLER.

128.    PLAINTIFFS INVESTORS ED BAEZA and CONCEPCION BAEZA were 67 and 61 years old respectively when they first invested in 2020.

129.    PLAINTIFF INVESTORS ED BAEZA and CONCEPCION BAEZA originally purchased $982,138 of viatical life settlement investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTORS ED BAEZA and CONCEPCION BAEZA.

**FIRST AMENDED COMPLAINT**

130.    INVESTORS ED BAEZA and CONCEPCION BAEZA should never have been sold this or any RELIANT investment. LARRY. TUPLER sold INVESTORS ED BAEZA and CONCEPCION BAEZA this investment under the auspices of SCOTT GRADY, VINCENT BOVINO, JOEL KLIENFELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST and others.

131.    INVESTORS ED BAEZA and CONCEPCION BAEZA invested in approximately policies.

132.    In 2017, PLAINTIFF INVESTOR BASSIR ANSARY was sold five policies by PAUL ROY and DAVID UNDERWOOD who were operating under the auspices of SCOTT GRADY, JOEL KLIENFELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

133.    INVESTOR BASSIR ANSARY should never have been sold this or any RELIANT investment.

134.    PLAINTIFF INVESTOR BASSIR ANSARY originally purchased $50,000 of viatical life settlement investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR BASSIR ANSARY.

135.    PLAINTIFF INVESTOR JAMES CIRILE originally purchased $40,000 of viatical life settlement investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR JAMES CIRILE.

136.    INVESTOR JAMES CIRILE should never have been sold this or any RELIANT investment. MARK SANSOUCY and BRENT BORCHERT sold INVESTOR JAMES CIRILE this investment under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST. On further examination, the contract as against CIRILE was unsigned so it is invalid and justifies return of his money back.

137.    INVESTOR JAMES CIRILE invested into policies.

138.    PLAINTIFF JAMES CIRILE was 47 years old when he first invested in RELIANT in 2013

139.    In 2017, PLAINTIFF INVESTOR NATHAN COLEMAN was sold six policies by LARRY TUPLER and PAUL ROY acting under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

140.    PLAINTIFF INVESTOR NATHAN COLEMAN should never have been sold this or any RELIANT investment.

141.    INVESTOR NATHAN COLEMAN invested in 6 policies.

142.    PLAINTIFF COLEMAN was 57 years old when he invested in RELIANT in 2017.

143.    PLAINTIFF INVESTOR NATHAN COLEMAN originally purchased $60,000 of viatical life settlement investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR NATHAN COLEMAN.

144.    In 2018, PLAINTIFF INVESTOR GENE GOLDEN was sold eleven policies by LARRY TUPLER under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

145.    INVESTOR GENE GOLDEN should never have been sold this or any RELIANT investment.

146.    INVESTOR GENE GOLDEN invested and 11 policies.

147.    PLAINTIFF GOLDEN was 69 years old when he invested in RELIANT in 2018.

148.    DEFENDANTS represented that this investment was beneficial for retirement accounts, which at that time PLAINTIFF GOLDEN had to liquidate from his American Standard IRA account to invest in RELIANT'S product. Recommending and allowing this was improvident or at least negligent on the part of RELIANT and associate persons and entities.

149.    PLAINTIFF GOLDEN was influenced by RELIANT salesperson LARRY TUPLER who stated several times that the investments were so sound and predictable that premium calls were very rare. This turned out not to be true. LARRY TUPLER also assured PLAINTIFF GOLDEN that if there were premiums due, the premiums would only amount to a few hundred dollars per year

150.    RELIANT salesperson LARRY TUPLER guaranteed PLAINTIFF GOLDEN that there was a theoretical risk that the policies PLAINTIFF invested in would extend beyond the reserve date, but it would actually never happen. However, there have been premium "calls" for more money since the reserves have run out in most of the insurance policies in this matter. This was a serious misrepresentation of material fact.

33

**FIRST AMENDED COMPLAINT**

151.   PLAINTIFF was influenced to invest by RELIANT's Agent LARRY TUPLER who assured him that the investments always pay out. As it has later turned out, no Plaintiff has actually gotten paid out and almost all are continuing to get premium calls. It is believed that it is a misrepresentation or a deceit to say there is a guaranteed fixed rate of return when there is a possibility investor will pay out more than they will receive from this investment.

152.   Defendant MARK SANSOUCY was also present for several of the discussions and he facilitated or assisted and was aware of the bad sales tactics.

153.   All of the salespersons on this matter were under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

154.   PLAINTIFF INVESTOR GENE GOLDEN originally purchased $103,000 of viatical life settlement investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR GENE GOLDEN.

155.   In 2016, PLAINTIFFS INVESTORS JOSEPH GOODALE and RACHEL GILA were sold two policies by LARRY TUPLER.

156.   INVESTORS JOSEPH GOODALE and RACHEL GILA should never have been sold this or any RELIANT investment.

157.   INVESTORS JOSEPH GOODALE and RACHEL GILA invested into policies.

158.   PLAINTIFFS GOODALE and RACHEL GILA invested in RELIANT in 2016.

159.   PLAINTIFFS were pressured and harassed by Defendant LARRY TUPLER. They were coerced into investing in RELIANT. Defendant LARRY TUPLER even guaranteed PLAINTIFFS that insureds usually die in the first 2 years of their policies and the return of this investment is guaranteed. This is another example how RELIANT's people manipulate the truth or say favorable things whether they are true or not.

160.   PLAINTIFFS INVESTORS JOSEPH GOODALE and RACHEL GILA originally purchased $30,000 of viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTORS JOSEPH GOODALE and RACHEL GILA. LARRY TUPLER was acting under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

**FIRST AMENDED COMPLAINT**

161.    In 2015, PLAINTIFF INVESTOR TRUDY BELINDA JOHNSON was sold four policies by SHAWN DAVENPORT, who was acting under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

162.    INVESTOR TRUDY BELINDA JHNSON should never have been sold this or any RELIANT investment.

163.    INVESTOR TRUDY BELINDA JOHNSON invested in 4 policies.

164.    PLAINTIFF JOHNSON was 53 years old when she first invested in RELIANT in 2015.

165.    PLAINTIFF INVESTOR TRUDY BELINDA JOHNSON originally purchased $38,000 of viatical life investments through DEFENDANT SHAWN DAVENPORT. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR TRUDY BELINDA JOHNSON.

166.    In 2016, PLAINTIFF INVESTOR CHARLES LAWRENCE was sold five policies by LARRY TUPLER under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

167.    INVESTOR CHARLES LAWRENCE should never have been sold this or any RELIANT investment.

168.    INVESTOR CHARLES LAWRENCE invested in 5 policies.

169.    PLAINTIFF LAWRENCE was 59 years old when he first invested in RELIANT in 2016. When PLAINTIFF LAWRENCE's company closed its 401K program, PLAINTIFF LAWRENCE needed to find a safe place to roll his 401K, consisting of $249,000. TUPLER and others from RELIANT assured PLAINTIFF LAWRENCE that the investment was safe and authorized by the State of California as appropriate for retirement funds, and that there was minimal risk.   All of PLAINTIFF LAWRENCE's 401K consisting of $249,000 was rolled over and invested in RELIANT.

170.    DEFENDANTS represented that this investment was beneficial for retirement accounts. PLAINTIFF reasonably relied on this representation but was not aware that the premiums would be continually escalating and difficult to pay on a fixed retirement income. PLAINTIFF was forced to postpone his retirement because of the lack of performance of these investment products.

171.    DEFENDANTS misrepresented that this investment would have little to no risk as the insured would eventually pass away and the policy would pay off. DEFENDANTS stated that there

would be little to no risk of the investor not receiving a return on their investment, it would only be a matter of when. This PLAINTIFF (as well as all PLAINTIFFS) reasonably relied on this misrepresentation, not realizing that the premium payments would escalate in a way that could take any profit from the investment. If there is not profit, then the concept behind this investment makes no sense, which makes this investment a deception.

172.    PLAINTIFF was further influenced by the fact that the investment qualified for use of 401K money. That gave PLAINTIFF a false sense of security. He was wrongly encouraged to use this account, a non-compatible retirement investment that is against prudent investment advice and the law.

173.    PLAINTIFF INVESTOR CHARLES LAWRENCE originally purchased $249,400 of viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR CHARLES LAWRENCE.

174.    In 2015, PLAINTIFF INVESTOR ORSON K. LEONG was sold four policies by PAUL ROY who was operating under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

175.    INVESTOR ORSON K. LEONG should never have been sold this or any RELIANT investment.

176.    ORSON K. LEONG was 60 years old when he first invested in RELIANT in 2015.

177.    PLAINTIFF was influenced by DEFENDANTS DAVID UNDERWOOD and PAUL ROY to invest in this scheme and claimed that these policies have a 90% statistical chance of paying within the time before the reserves ran out.

178.    PLAINTIFF INVESTOR ORSON K. LEONG originally purchased $80,000 of viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR ORSON K. LEONG.

179.    In 2016, PLAINTIFF INVESTOR PETER J. LOWE was sold five policies by LARRY TUPPLER who was operating under the auspices of SCOTT GRADY, JOEL KLIENFELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

180.    INVESTOR PETER J. LOWE should never have been sold this or any RELIANT investment.

**FIRST AMENDED COMPLAINT**

181.    PETER J. LOWE was 79 years old when he first invested in RELIANT in 2016.

182.    PLAINTIFF was influenced by DEFENDANT LARRY TUPPLER to invest in this scheme and claimed that these policies have a 90% statistical chance of paying within the time before the reserves ran out.

183.    PLAINTIFF INVESTOR PETER J. LOWE originally purchased $100,000 in five viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR PETER J. LOWE.

184.    Between 2014 and 2015, PLAINTIFFS INVESTORS MARK THORSELL and BARBARA THORSELL were sold four policies by DAVID UNDERWOOD who was acting under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

185.    INVESTORS MARK THORSELL and BARBARA THORSELL should never have been sold this or any RELIANT investment.

186.    INVESTORS BARBARA THORSELL and MARK THORSELL but 4 policies.

187.    PLAINTIFFS BARBARA THORSELL and MARK THORSELL first invested in RELIANT in 2014.

188.    PLAINTIFFS INVESTORS MARK THORSELL and BARBARA THORSELL originally purchased a total of $60,000 of viatical life investments through DEFENDANTS. PLAINTIFF INVESTOR MARK THORSELL invested $40,000 while PLAINTIFF INVESTOR BARBARA THORSELL invested $20,000. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTORS MARK THORSELL and BARBARA THORSELL.

189.    In 2016, PLAINTIFF INVESTOR CLIFFORD RITZ was sold five policies by LARRY BAGBY who was acting under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

190.    INVESTOR CLIFFORD RITZ should never have been sold this or any RELIANT investment.

191.    INVESTOR CLIFFORD RITZ but 5 policies.

192.    PLAINTIFF RITZ was 55 years old when he first invested in RELIANT in 2016.

**FIRST AMENDED COMPLAINT**

193.     PLAINTIFF INVESTOR CLIFFORD RITZ originally purchased $100,000 of viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR CLIFFORD RITZ out of PLAINTIFF's money.

194.     In October of 2015, PLAINTIFF INVESTOR STEVEN C. ROEMER was sold four policies.

195.     INVESTOR STEVEN C. ROEMER should never have been sold this or any RELIANT investment by DAVID UNDERWOOD who was acting under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

196.     INVESTOR STEVEN C. ROEMER 4 policies.

197.     PLAINTIFF ROEMER was 59 years old when he first invested in RELIANT in 2015.

198.     PLAINTIFF was influenced by Defendant DAVID UNDERWOOD by stating that he himself invested in RELIANT and assured PLAINTIFF that the policies were almost certain to mature within 4 to 5 years.

199.     Defendant DAVID UNDERWOOD had assured PLAINTIFF that premium calls are highly improbable to happen and further claimed that in his seven years with RELIANT, Defendant DAVID UNDERWOOD only experienced 2 premium calls upon information that this is not true and deceptive.

200.     DEFENDANTS failed to disclose in a more forceful and prominent manner that if premiums were not continually paid, that PLAINTIFF could lose their entire investment.

201.     PLAINTIFF INVESTOR STEVEN C. ROEMER originally purchased $130,000 of viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR STEVEN C. ROEMER.

202.     Between 2016 and 2019, INVESTOR GREGORY SCHMITT was sold five policies by DAVID UNDERWOOD who was acting under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

203.     INVESTOR GREGORY SCHMITT should never have been sold this or any RELIANT investment.

204.     INVESTOR GREGORY SCHMITT bought 5 policies.

205.     PLAINTIFF SCHMITT was 49 years old when he first invested in RELIANT in 2016.

206.    PLAINTIFF was influenced by Defendant DAVID UNDERWOOD to invest in these policies after being assured that these investments were very low risk with a guaranteed 12% return upon information that this is not true.

207.    PLAINTIFF INVESTOR GREGORY SCHMITT originally purchased $100,000 of viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR GREGORY SCHMITT.

208.    In 2016, PLAINTIFF INVESTOR JOHN STOCKSDALE was sold five policies by DAVID UNDERWOOD who was acting under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

209.    INVESTOR JOHN STOCKSDALE should never have been sold this or any RELIANT investment.

210.    INVESTOR JOHN STOCKSDALE but 5 policies.

211.    PLAINTIFF STOCKSDALE was 68 years old when he invested in RELIANT in 2016.

212.    PLAINTIFF was influenced to invest after hearing several RELIANT radio advertisements played on the San Francisco Giants radio station. PLAINTIFF assumed that hearing the advertisement on the radio station meant that the station had vetted and endorsed RELIANT.

213.    DEFENDANTS told PLAINTIFF STOCKSDALE that premium payments would be between $300 to $500 per year. This was misleading, as premiums on a $12,000 investment have been as high as $2300 per year.

214.    PLAINTIFF INVESTOR JOHN STOCKSDALE originally purchased $60,000 of viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR JOHN STOCKSDALE.

215.    In 2016, PLAINTIFF INVESTOR JENNIFER VANCE was sold three policies by DAVID UNDERWOOD.

216.    INVESTOR JENNIFER VANCE should never have been sold this or any RELIANT investment.

217.    INVESTOR JENNIFER VANCE bought 3 policies.

218.    PLAINTIFF VANCE was 55 years old when she first invested in RELIANT in 2016.

**FIRST AMENDED COMPLAINT**

219.     <u>PLAINTIFF INVESTOR JENNIFER VANCE originally purchased $30,000 of viatical life investments</u> through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR JENNIFER VANCE.

220.     This investment does not represent a viable retail investment by any of the above.

221.     When dealing with an unethical sales force like this one, with no training, guidelines, standards, supervision, policy and procedures and all other factors alleged, it is easy to make sales, but it is unfair. That is what happened here. It is alleged that the participating DEFENDANTS are responsible for this. Without the above training, guidelines, standards, supervision, policy and procedures, DEFENDANTS were able to represent and promise anything whether completely true or not. That is what happened here to all these PLAINTIFFS. RELIANT and associated person or entities were able to slant things in an untruthful manner, which is what was done here in all of the above areas but especially suggesting that these viaticals covered the life of someone who is terminally ill or in that category of very poor health. As it turns out, the people making up the insureds in this investment were relatively healthy but, by ingenuously using medical records, DEFENDANTS were able to make an insured appear close to their death, but the life expectancies used to project premium reserves in these policies are far less than the social security life expectancy that it bespeaks of fraud, deceit, manipulation, or negligence.

222.     It is alleged upon information and belief that this investment, in the way it was procured and sold, has Ponzi-like characteristics, and is tantamount to a criminal enterprise.

223.     Even if this investment can be suitable and defendable as a viable investment product, DEFENDANTS did not make sure the above-mentioned PLAINTIFFS did not overconcentrate PLAINTIFF'S portfolio with RELIANT products. Along these lines, when purchasing this product, DEFENDANTS needed to assure that investors set aside monies or have other investments sufficient to cover premiums comfortably. DEFENDANTS did not do this, which is part of their negligence or fraud alleged herein.

224.     Civil Code §1770(a)(19) prohibits inserting an unconscionable provision in the contract. Many unconscionable provisions are covered in this compliant in detail.

**FIRST AMENDED COMPLAINT**

225. Civil Code §1770(a)(26) prohibits advertising, offering for sale, or selling a financial product that is illegal under state or federal law.

226. For all the reasons set forth in this complaint including the fact that this financial product is not registered under state and federal law and does not have an exemption from registration. This makes it illegal, which further supports the fact that the salesforce selling a security without a SEC license or registration makes this financial product illegal. Even if the stock can be exempt from registration, it is still illegal if it violates the anti-fraud provisions under securities laws. There have been plenty of allegations above of violations of the anti-fraud provisions making the financial product illegal. To avoid the anti-fraud provisions in the sale of securities requires full disclosure. Going around and hiding facts that are important to investors are not permitted, yet that is exactly what Defendants did. They scrubbed negative ratings from the internet so that when people looked online, they could not get the real facts. Plus, a lot of facts as outlined in the Gloria Wolk declaration, was known to Defendants but none of that is portrayed on their website, making their story one-sided, unfair, and unbalanced. This is a violation of the anti-fraud provision.

227. Plaintiffs sent key Defendants via certified mail on July 19, 2022, a letter notice giving them the required 30 days to correct, repair or rescind, and/or do any of what is allowed or required by California Civil Code §1770 et seq. Defendants have not done anything to respond. Defendants still have the chance to make good as Plaintiffs will give any Defendant served herewith 30 days from the date this complaint is served upon them to comply with California Civil Code §1770 et seq. Assuming Defendants do not comply, Plaintiffs are therefore entitled to the damages and remedies set forth in California Civil Code § 1780 and related sections, against all Defendants.

228. The activities described above are the backbone of a fraudulent enterprise that has been fostering fraud for about a decade. Although not the first criminal type activity, the enterprise, including Grady, Borchert, Murphy Kleinfeld, and successors, preyed on investors and have taken money from investors or put them in bad investments for years. In the alternative, it is alleged upon information and belief that Defendants have squandered investor money on investments that make more sense for Defendants than investors and it is alleged, upon information and belief , that this fraudulent enterprise includes a procurement process that includes fraud , on its own, in acquiring policies for

41

**FIRST AMENDED COMPLAINT**

1  these investments that are later sold in the fractional interest program that these Plaintiffs are part of.

2  This allows Defendants to cherry pick policies and send the better policies elsewhere rather than into

3  the kind of fractional interest investments that became part of this program.   What happens is Plaintiff/

4  investors only get the left-over policies and policies Defendants manipulated for their advantage to the

5  disadvantage of these Plaintiff defendants.   They also tapped into these policies; policies that were

6  supposed to be set aside for investors.   All this is fraud, abuse of trust and tantamount to theft and

7  conversion.    There has been at least many occasions where this happened already. One was the taking

8  of the Duffy policy, which became the subject of a court case in L.A. Superior Court. In a statement of

9  decision, Judge Frank Johnson said, "The sale of the Duffy policy was also accompanied by an attempt

10  to withhold hundreds of thousands of dollars in the form of continued legal bills or used investor money

11  as a set aside fund for future legal defense, none of which was warranted or allowed under the trust or

12  purchase agreement and was tantamount to an outright theft." See statement of decision in the case

13  known as Reliant Life Shares, LLC vs. Brad Lawrence (hereinafter referred to as the Duffy case), Court

14  file number LC098847, Superior Court State of California, County of LA (consolidated with other

15  cases). As a result of that case and the prosecution of a case by the Securities and Exchange

16  Commission (SEC) against Andrew Calhoun and Pacific West Capital Group, (US Dist. Ct of the

17  Central District of California, (case 2:15:-cv-02563(FMO) (FFM) Defendants tried  to develop  a

18  legally compliant program, but Defendants culture was so warped that it fails on many fronts which are

19  the subject of the following causes of action, primary of (all incorporated into all causes of action)  is

20  the failure of Defendants to present a balanced product, which is a basic mandate of those that sell

21  securities and which Defendants to not abide by precisely because there is no  appropriate over sight

22  either by themselves of the sales force, a requirement of securities law, or because they claim to be able

23  to operate unregistered and unlicensed except for the insurance license which is not a security license,

24  and it is alleged does not allow defendants even those with this license to operate as full on securities

25  sales organization of life settlement products.

26  229.    The new model created did attempt to make it harder for investors to contact each other and

27  to organize for their own good.  This was done by no longer putting the same investors into the same

28  policies but placing investors in many different policies with different investors (which makes each

42

**FIRST AMENDED COMPLAINT**

investors interest unique and not as unified as before).   Plaintiffs in this case, are in multiple polices and do not know each other except by extraordinary efforts that happened to allow these Plaintiffs to come together for this suit. This makes it harder for investors to organize and file a joint lawsuit based on one policy that may have been wrongfully manipulated by Defendants.  .This is also a violation of required in securities which requires complete transparency.    Now,  the way this matter is now set up, it takes many investors dealing with many different policies to obtain Defendants' attention and it makes it harder and more laborious to check many policies when no one investor shares the same mix of policies with any other investor. This is part of the plan of deception which is the hallmark of defendants' conspiracy or enterprise.

230.    It is alleged on information and belief that this is the state this investment was in when it was sold to Gerald Frank.  Exhibit 26 exemplifies and what happened in the case of Gerald Frank. Frank invested about $40,000, one in a series trust known as Trust MW8350, Account CH145206-0, and Policy number VF51798350, which closed on or about May 12, 2015. This case (called the Frank case) along with the Duffy, above mentioned are examples that show the Reliant Defendants have been engaged in a continuity of deceptive practices over time.

231.    Frank effectively invested approximately $40,000 and lost it all to the enterprise or these Defendants were based upon false pretenses. For proof that he was criminally swindled, see Exhibit 25, which is a letter to Andrew Murphy of the Reliant organization and/or enterprise where he is realizing he was deceived and cheated and Mark Sansoucy is further defrauding him or depriving him when it comes to the premium issue.

232.    Since the Duffy and Frank matters, the Reliant Defendant enterprise was on notice that it obligated people to premiums especially the elderly that were not handling it well. This should have been a red flag that needed to be fully disclosed, rectified, or not sold to others as unsuitable even with a full explanation if just is right.   Unfortunately, the enterprise was okay with a minimal disclosure in writing but allowing salesperson to represent it was assessable when it was not without a penalty as described by one the Plaintiffs as set forth in Exhibit 27 which arose out of a sale in 2016.   This  did not deter the Reliant Defendants but they only doubled down.   Complaints continue to mount from investors as noted in Exhibit 26, yet the Reliant Defendants continue their course.   By 2020, one would

**FIRST AMENDED COMPLAINT**

think they had gotten the message and clamped down on misinformation about an investor being able to cash in or cancel or get out of the plans with money back.  That is not the case as shown in Exhibit 16, a letter from Ed Baeza to the California Department of Financial Protection and Innovation.   Ed Baeza and his wife and or their business/trust(s) invested about a $1,000,000 in Defendants fractional life settlement in many policies.   Mr. Baeza outlined in this letter how the Reliant Defendants had told him basically, that (paraphrased) he could  " evacuate" or "cancel" at any time and get his money back plus principal.   Similar stories and or other irregularities and deceptions can be found in the cases of Raymond E. Douglass, Ed Baeza, Paul Bugler, James Cirile, Gene Golden, Joseph Goodale, Rachel Gila, Trudy Johnson, Charles Lawrence, Orson Leong, Barbara Thorsell, and many more. All were utilized by the Reliant Defendant enterprise to sell investments under false pretenses to innocent people. These investments were not suitable, did not pay out as promised, saddled investors with nebulous premiums, and not fully explained. The results were that investors were cheated and continue to be cheated each day by suggesting there is a buyout but presenting one with penalties. The most recent was presented to them within the last six months which is a continuation of the deceitful enterprise against Plaintiffs.   All of these sales, frauds, and thefts were at a criminal level such that they are ongoing and constitute racketeering activity. They are continuing to this day. The facts alleged herein reflect the intentional and willful acts surrounding Defendants' continuing attempt to bait and switch – that is now that the time is coming for investors to need to cash in the Reliant investors are not coming through and or changing the terms.

233.    Reliant, the name most often used by the criminal enterprise, is far from a respected business. It is the umbrella for the Defendant Principle Financial Services, Inc.  Its operator, Mark Sansoucy, is one of the higher-level administrator of the Reliant enterprise.   He and Scott Grady, unlicensed are point men for the enterprise. They are fully aware of what is happening, and all the things alleged above, They are continuing to carry on the deception and without them it could not continue. They have involved in all activities of the enterprise since nearly the beginning of its existence.

234.    Brent Borchert masquerades as a compliance officer for Reliant Life Shares, LLC but in reality, he is providing protection and covers for all of Reliance wrongful and deceptive activity. He has

44

**FIRST AMENDED COMPLAINT**

full knowledge of all the facts but continues to operate and assist the enterprise carry on the above deceit. The money comes to the Reliant Defendants' enterprise when a sale is made, whether or not the investment benefits the investor.

235.    Joe Kleinfeld was the founder of the enterprise or a funder who provided funding and assistance knowing all the wrongful and deceitful conduct that went on as above alleged.  He is therefore a perpetrator of the alleged false pretenses and wrongful conduct.   He has profited off of it. He works behind the scenes for the enterprise. Alleged on information and belief is that he and/or other members of the Reliant Defendant's enterprise have taken advantage of the polices in the investment that have not matured for their benefit, and not for the investors benefit, and not properly disclosing this fact and doing such things, for example alleged upon information and belief, using the policies for collateral, or misappropriating the death benefit for themselves. It is alleged upon information and believe that he is not licensed to sell life settlements.

236.    Andrew Murphy has had his hand in all aspects of most of the sales alleged herein, and  was involved in high level operations maintaining  and setting policy for Reliant -wide operations and assisting in personally making sales including perpetrating false pre-tenses to make the sales on unsuitable persons for these investments. It is alleged upon information and believe that he is not licensed to sell life settlements.

237.    All the named Defendants in this cause of action know they are selling this investment or allowing it to be sold without disclosing the downsides and all the above matters in a balanced and full disclosure manner. Also, Defendants and the enterprise ignore and go out of their way to buy down, pay off, or eliminate bad reviews or criticism. The fact that they do this means that they see and/or know about their deficiencies as disclosed in the reviews, but they would rather silence them or buy the review off rather than stop selling investments under false pretenses. These named individuals in this cause of action continue to make money off the backs of investors who struggle with this investment because they are not candid and forth coming.

238.    It is also believed that leftover policies are given to the investors and one of the things the enterprise does is acquire more policies with bitter prospects, which they keep for themselves.

**FIRST AMENDED COMPLAINT**

239.    It is believed that this enterprise is kept alive by taking on its critics by either buying them off or entering into confidential settlements that prevent public and investor knowledge of the truth of the enterprise's activities and its track record.

240.    Each act of wrongdoing, fraud, or negligence, noted above and which make up the causes of action could not be discovered with reasonable diligence nor was it even possible or capable of being discoverable under the circumstances whereby Defendants hid these things and it took the attorney to discover and appreciate them.  In other words,  none of the above were truly capable of being discovered without attorney assistance in light of the evasiveness of Defendants and therefore were not discovered until not more than within the applicable statute of limitations assuming they even accrued, which it is alleged they did  not until within the same time period. Even if they did equity applies to toll the Statute of limitations where Defendants had notice and acted in a way to thwart their rights by engaging in misrepresentations as Exhibit 27 indicates.  Defendants used further deceit to deter action on behalf of Defendants, including eliminating contact between investors, manipulating reviews, and purging and or buying down bad comments and public criticism. In addition to this thwarting suit, it gave investors the false impression that there is nothing that can be done.  In addition, the parties entered into negotiations with each other through their attorneys, or attorneys that represented their interest, such that at the time the suit was filed, the statute of limitations was tolled by agreement or implied agreement of the parties.   By reason of equity and fairness, the court should declare and /or permit this action to proceed. Of course, because of the continuing nature of this case and because such a program needs to be shut down as it continues every day, injunctive relief is not affected by any statute of limitation. Nor does the statute of limitations apply to matters where breaches and violations are happening every day.

241.    Part of the deceit is that many of the high-level persons that are creating, administering, conducting oversight of the sale of the investment to Plaintiffs  were not licensed as life agents, none of them are registered as having security licenses.  Also the Reliant Defendant entities that are creating and syndicating the life settlements set forth herein and sold to Plaintiffs were and are not properly registered or licensed with the Department of Insurance as a providers such that they are allowed to make life settlement sales. Therefore all sells are not authorized and therefore must be set aside. This is

46

**FIRST AMENDED COMPLAINT**

another reason why there is a breach of contract, why rescission is appropriate, why these investments should not have been sold, and why the companies associated with them should be shut down or enjoined from further activity. It is a deceit and fraud to characterize or even imply that these insurance policies became owned by Plaintiff investors, which is what was done here.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

242.    This is a class action on behalf of persons or entities who purchased or otherwise acquired investments (also called securities) from Defendants (the "class."). Plaintiff seeks to recover comprehensible damages caused by Defendants' violation of all causes of action especially the violations of Civil Code 1770 et seq.

243.    Plaintiff brings this action as a class action. The class includes persons, trusts, or entities who purchased a life settlement investment (also called securities) from any Defendant named herein (the "class."). It is believed and alleged that all the Defendants named herein are in some way related to "Reliant" or purposely pawned off from Reliant or came from its formal or informal network, but it will take discovery to obtain the full details.   Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest. Excluded also are any entities or persons not associated or identified with "Reliant" or its network or came from "Reliant" or its network.

244.    The members of the Class are so numerous that joinder of all members is impracticable. The exact number of Class members is unknown to Plaintiff at this time. They can be ascertained only through appropriate discovery.  Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

245.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of laws and causes of action set forth herein.

246.    The Representative Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

247.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a.  Whether Defendants' acts as alleged against the law;

b.  Whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

c.  Whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

d.  Whether the Individual Defendants caused the Company to issue false and misleading statements during the Class Period;

e.  Whether Defendants acted knowingly or recklessly in issuing false and misleading statements during the Class Period;

f.  Where the money went and what assets are viable

g.  Whether the members of the Class have sustained damages and, if so, what is the proper measure of damages?

h.  Whether injunctive relief is necessary for the benefit of all and the public.

248.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will little difficulty in the management of this action as a class action.

**FIRST CAUSE OF ACTION**
**VIOLATION OF CORPORATE CODE §§ 25401 & 25501**
**Against**
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO;**

249.   PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint.

250.   DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC., RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC. , SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY, LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO, by reason of the of above mentioned facts as set forth in the General Allegations and contained in allegations subsequently helped sell, are selling, or sold PLAINTIFFS securities in violation of Corp. Code § 25401, which prohibits offers or sales of securities including investment opportunities by means of a written or oral communication that contain: "Untrue statement[s] of a material fact or omits to state a material fact necessary in order to make the statement[s] made, in light of the circumstances under which they were made, not misleading."

251.   Since the investment requires premium payments, the sale is not final.

252.   The areas of untrue statements, concealment and or violations that also go to the elements of fraud, breach of fiduciary duty, and wrongdoing, include:

    a.   The investment per se violates California Corporate Code §25401 and full disclosure because the names of the insureds were not and are not provided meaning there is withholding and concealment material facts ( which is an omission of material facts necessary in order to make statements about this investment not misleading or necessary to fully understand the investment.)

    b.   Paperwork does not match up indicating manipulation of documents.

49
**FIRST AMENDED COMPLAINT**

c.  DEFENDANTS selling the above-described RELIANT death benefit without the proper back- up policy as represented or supposed to be associated with it and/or not explaining the circumstances or properly giving the background to the buyer that would explain such a long time for the policy to mature.

d.   DEFENDANTS failure to describe the various aspects of this investment to Plaintiffs that make it unsuitable or not in their best interest like continuing and rising premiums, like the possibility the insured may live longer than certain plaintiffs, like the inability of heirs to inherit without the obligation that could render the entire investment worthless or lost.

e.  DEFENDANTS representing that the above-mentioned RELIANT investments were equivalent to the viatical investments that Warren Buffett and Bill Gates have bought or buy on the open market. This is further explained in the General allegations of the complaint but it is even more deceptive and false when  DEFENDANTS failed to describe some of the failures of similar investments like this that failed namely the Oxford financial, Pacific West  ones, and further by not describing Defendant's involvement in shady activities and a shadow industry as set forth in the Gloria Wolk's declaration attached hereto.

f.   DEFENDANTS sold this to PLAINTIFF investors knowing it would likely not serve the purposes needed nor do what it represented it would do-provide a quick return that did not correlate to the stock market.

g.  DEFENDANTS impliedly represented that these RELIANT investments were better than a stock market investment without providing any evidence or proof, and not advising it was not true in certain cases.

h.  DEFENDANTS did not properly portray the statistics associated with prior RELIANT investments concerning its ability to meet its life expectancy estimates after a decade of being in business and not portraying truthfully the consequences of what happens when the life expectancy premium reserves are used up.

**FIRST AMENDED COMPLAINT**

i.   DEFENDANTS failing to advise it had an untrained, inexperienced, incompetent, unlicensed and unregistered salesforce, and/or a salesforce that was not be bound by the ethical standards required in the securities industry.  As a result, concepts that would have protected plaintiffs, were not available to plaintiffs and plaintiffs were sold this investment when they should not have been. These concepts included the salesforce should "know your customer" and the requirement that the salesperson must "observe just and equitable principles of trade."

j.   DEFENDANTS indicate on their website "the flexibility of this account allows investors to withdraw their money any time without penalty." Investors were specifically told they could get their money back at any time albeit they would lose the upside of this investment.   This has not been allowed to the PLAINTIFF investors, so it is believed this is not the policy and is a false statement.

k.   DEFENDANTS failing to give the specific rate of return one would likely to expect based upon RELIANT' s previous ten-year history.  Defendants otherwise glossed over the rate of return and glossed over the fact that this investment lacked liquidity and diversity (being captive to only RELIANT selected life settlements).

l.   DEFENDANTS failing to disclose that this investment was not exempt and violated securities laws.

m.   DEFENDANTS failed to provide the required information of Corporate Code §225102q about the issuer and or information about the issuer important to know including but not limited to the information required in Corporate Code §225102q (3) (A—G)-especially omitted were the names directors, officers, partners, members, or trustees of the issuer. In effect Defendants fail to explain who owns and operates the issuer as required by law.

n.   DEFENDANTS failure to advise or disclose of Scott Grady's disbarment.

o.   DEFENDANTS failure to provide proper audited reports as required by law and needed to understand the investment.

p.   DEFENDANTS failure to advise of fellow investors names and contact information.

51

**FIRST AMENDED COMPLAINT**

q.  DEFENDANTS failure to advise in advance the need for insurance premiums and terms of premiums associated with all of Plaintiffs' investments.

r.  DEFENDANTS failure to enforce the net worth requirements required by securities law of Plaintiffs, which put this entire investment at risk, and /or failing to disclose to investors that they permitted unqualified investors.  Again this put the investment at risk for multiple reasons.

s.  DEFENDANTS covering up important details up, even though such details were requested prior to the filing of this complaint.

t.  DEFENDANTS orchestrating and manipulating false, deceptive, or less than complete reviews and ratings.

u.  DEFENDANTS failing to disclose their policy of preventing investors knowledge or each other and thwarting transparency.

v.  DEFENDANTS not advising or disclosing their policy of paying premiums and placating some investors but not other investors, and their policy of letting some investors out of the investment (or bailing them out) while letting others fend for themselves and take the loss. Defendants also "agreed" to buy out some investors, but never actually did they pay Plaintiffs as promised in the "buy out." All this constituted fraudulent and deceptive manipulation.

w.  DEFENDANTS telling Plaintiffs prior to their purchasing,  that there was a theoretical risk that the insurance policies that Plaintiffs invested in would extend beyond the reserves but in the same breath, as part of the selling process to Plaintiffs, telling most investors that premium calls hardly ever happens or if a premium call does happen,  that premiums are minimal around $300 or $500. In reality, premiums can be as high as $12,000 which RELIANT knew or should have known but purposely deceived Plaintiff investors.

x.  DEFENDANTS failed to advise that the sale is not complete until all premiums are paid in full.  This does not happen until all the insured are dead.  Some insured live longer than the investors themselves.

52

**FIRST AMENDED COMPLAINT**

253.    DEFENDANTS sold fractional life settlements by making false and misleading statements as set forth above and subsequently. DEFENDANTS knew or should have known that the statements were false and/or that they were concealing material facts. DEFENDANTS knew or should have known that there were important facts that needed to be known to make a proper informed decision on the investments. As a result, the investments were portrayed in a false light and Plaintiffs did not have sufficient material facts to make an informed decision.

254.    It was also an improper, deceitful, or negligent to do the above and take INVESTOR's money under the circumstances set forth in this Complaint. DEFENDANTS intentionally failed to describe the investment truthfully especially when describing how debilitating the premiums can become as the insured ages, and how the rising premiums affects the rate of return, and that premiums are still required if the investment is passed to the heirs. Also, the history, culture, and illegal nature of the salesforce and the unregistered, unqualified nature of the stock are all things that needed to be disclosed that were not. Further, it is believed that this whole investment scheme is a sham as it presented no viable investment opportunity within the reasonable life spans of the insured in light of the premiums.

255.    Selling securities and/or an investment opportunity like this under these false pretenses or while omitting material facts is a deception and involved misrepresentation of material facts in violation of the law. PLAINTIFFS contributed money to DEFENDANTS thinking they had made an investment that would perform better than it was capable of performing because of DEFENDANTS misstatements, deceit, and/or the unsupervised negligence of the salesforce. DEFENDANTS are less than candid not to explain how monies are distributed from paid out death benefits when one investor loses the investment when that investor's premiums were not paid. This portion of the payout does not appear to go to the other investors. Not explaining this is a lack of material disclosure and if this portion of the payout goes to benefit the DEFENDANTS, or RELIANT, that is a conflict of interest.

256.    All DEFENDANTS listed above knew that they were part of an organization which sold PLAINTIFFS the product while knowing all the above deficiencies and nuances which they did not disclose.

257.    PLAINTIFFS relied upon the above to make these investments. The reliance was reasonable and justified based upon their circumstances.

258.    By reason of the above, PLAINTIFFS are entitled to rescission and damages, and or the damages set forth in Civil Codes §25501 or 25501.5, or according to all remedies available by law.

259.    DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFF and constitutes oppression, fraud, and malice such that punitive damages are appropriate, and hereby requested under either Civil Code 3294 or 3345 or both.

260.    PLAINTIFFS seek all damages allowed by law for the above-described wrongdoing including costs of suit, investigation, and attorneys' fees.

261.    PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statute.

**SECOND CAUSE OF ACTION**
**BREACH OF FIDUCIARY DUTY**
**Against**
**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

262.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

263.    DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC., RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC. , LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO were in a fiduciary relationship and had a fiduciary duty to PLAINTIFFS when presenting the product, they sold to retail investors like PLAINTIFFS. This product was not suitable for these PLAINTIFF INVESTORS. It was a violation of DEFENDANTS' fiduciary duty to put their own economic interest to make money over the best interest of the customers. There was an over concentration of PLAINTIFFS' assets in RELIANT products based on PLAINTIFFS' net worth. This eliminated proper diversity or the ability of the investor

54

to have money set aside to pay premiums. This eventually became a hardship for PLAINTIFFS, a matter that the PLAINTIFFS should have been better informed of. DEFENDANTS were also in a conflict-of-interest situation that was not fully advised.

264.    Under the circumstances DEFENDANTS wrongfully took PLAINTIFFS' money. The money became illiquid. PLAINTIFFS would not have consented to their money being taken had they known all the facts and full truth about this investment. PLAINTIFFS were tricked and became the subject of undue influence by DEFENDANTS. DEFENDANTS did not obtain sufficient informed consent because they did not make full disclosures. Fiduciaries have a duty not to make a sale when the situation presents as above stated. DEFENDANTS did so anyway because it served their own financial interests.

265.    Selling securities and/or an investment opportunity like this under these false pretenses or while omitting material facts is a deception and involved misrepresentation of material facts in violation of the law. PLAINTIFFS contributed money to DEFENDANTS thinking they had made an investment that would perform better than it was capable of performing because of DEFENDANTS' misstatements, concealment, deceit, and/or unsupervised negligence which all violate fiduciary duties. DEFENDANTS are less than candid not to explain how monies are distributed from paid out death benefits when one investor loses the investment when that investor's premiums were not paid. This portion of the payout does not appear to go to the other investors. Not explaining this is a lack of material disclosure and if this portion of the payout goes to benefit the DEFENDANTS, or RELIANT, that is a conflict of interest. Not explaining this is a lack of material disclosure and is a further breach of its fiduciary duty and a conflict of interest.

266.    DEFENDANTS, together, breached their fiduciary duty in association with each other.

267.    The areas of untrue statements, concealment and or violations that also go to the elements of fraud, and breach of fiduciary duty, and wrongdoing, and which have been alleged elsewhere in detail, include:

a.    The investment per se violates California Corporate Code §25401 and full disclosure because the names of the insureds were not and are not provided meaning there is withholding and concealment material facts (which is an omission of material facts

55

**FIRST AMENDED COMPLAINT**

necessary in order to make statements about this investment not misleading or necessary to fully understand the investment.

b. Paperwork does not match up indicating manipulation of documents.

c. DEFENDANTS selling the above-described RELIANT death benefit without the proper back- up policy represented or supposed to be associated with it and/or not explaining the circumstances or properly giving the background to the buyer that would explain such a long time for the policy to mature.

d. DEFENDANTS failure to describe the various aspects of this investment to Plaintiffs that make it unsuitable or not in their best interest like continuing and rising  premiums, like the possibility the insured may live longer than certain plaintiffs, like the inability of heirs to inherit without the obligation of paying continuing premiums that could render the entire investment worthless or lost.

e. DEFENDANTS representing that the above-mentioned RELIANT investments were equivalent to the viatical investments that Warren Buffett and Bill Gates have bought or buy on the open market. This is further explained in the General allegations of the complaint but it is even more deceptive and false when  DEFENDANTS failed to describe some of the failures of similar investments like this that failed namely the Oxford financial, Pacific West  ones, and further by not describing Defendant's involvement in shady activities and a shadow industry as set forth in the Gloria Wolk's declaration attached hereto.

f. DEFENDANTS sold this to PLAINTIFF investors knowing it would likely not serve the purposes needed or do nor what it represented it would do-provide a quick return not correlated to the stock market.

g. DEFENDANTS impliedly represented that these RELIANT investments were better than a stock market investment.

h. DEFENDANTS not properly portraying the statistics associated with prior RELIANT investments concerning its ability to meet its life expectancy estimates in a decade of

**FIRST AMENDED COMPLAINT**

being in business and not portraying truthfully the consequences of using up the life expectancy premium reserve.

i.  DEFENDANTS failing to advise it had an untrained, inexperienced, incompetent, unlicensed and unregistered salesforce, and/or a salesforce that was not be bound by the ethical standards required in the securities industry.  As a result, concepts that would have protected plaintiffs, were not available to plaintiffs and plaintiffs were sold this investment when they should not have been. These concepts included the salesforce should "know your customer" and the requirement that the salesperson must "observe just and equitable principles of trade."

j.  DEFENDANTS indicate on their website "the flexibility of this account allows investors to withdraw their money any time without penalty." Investors were specifically told they could get their money back at any time albeit they would lose the upside of this investment.   This has not been allowed to the PLAINTIFF investors, so it is believed this is not the policy and is a false statement.

k.  DEFENDANTS failing to give the specific rate of return likely to expect based upon RELIANT' s previous ten-year history.  Defendants otherwise glossing over the rate of return and glossing over the fact that this investment lacked liquidity and diversity (being captive to only RELIANT selected life settlements).

l.  DEFENDANTS failing to disclose that this investment was not exempt and violated securities laws.

m. DEFENDANTS failed to disclose the directors, officers, partners,  members or trustees of the issuer of these investments as well as RELIANT and RLS Financial Services, Inc., and JOEL KLEINFELD 'S companies that control this investment and to also fail to explain who the issuer was or when it comes to the owner and operator of this investment,  obfuscating that issue and being non-responsive about it.

n.  DEFENDANTS failure to advise or disclose of Scott Grady's disbarment.

o.  DEFENDANTS failure to provide proper audited reports as required by law and needed to understand the investment.

57

**FIRST AMENDED COMPLAINT**

p.   DEFENDANTS failure to advise of fellow investors.

q.   DEFENDANTS failure to advise of insurance premiums and terms of premiums of associated with all of Plaintiffs' investments.

r.   DEFENDANTS failure to enforce the net worth requirements required by securities law of Plaintiffs, which put this entire investment at risk, and/or failing to disclose to investors that they permitted unqualified investors.  Again this put the investment at risk for multiple reasons.

s.   DEFENDANTS covering up important details up, even though such details were requested prior to the filing of this complaint.

t.   DEFENDANTS orchestrating and manipulate.  false, deceptive, or less than complete reviews and ratings.

u.   DEFENDANTS failing to disclose their policy of preventing investors knowledge or each other and thwarting transparency.

v.   DEFENDANTS not advising or disclosing their policy of letting some investors out of the investment and not letting some out and or covering the premium for them and not others.   In addition, Defendants "agree" to buy out some investors, but never actually pay the Plaintiff investor.

w.   DEFENDANTS telling people that there was a theoretical risk that the insurance policies that plaintiffs invested in would extend beyond the reserves but in the same breath, as part of the selling process to Plaintiffs, telling them that this never happens. This is less than honest rendition of DEFENDANTS' policy.

268.   PLAINTIFFS were harmed because of the above-mentioned reasons as set forth in the General Allegations section of this complaint and in subsequent allegations. PLAINTIFFS investments are now illiquid and are forced to sell at a distressed sale or lose their investment. By reason of the above-described breach of fiduciary duty, DEFENDANTS have caused substantial harm to PLAINTIFFS INVESTOR.

269.   PLAINTIFFS suffered from pain, suffering, and mental anguish for which reimbursement is sought.

**FIRST AMENDED COMPLAINT**

270.    DEFENDANTS'   conduct was in reckless disregard for the rights and safety of PLAINTIFFS, and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested under either Civil Code 3294 or 3345 or both.

271.    PLAINTIFFS seek all other damages allowed by law for the above-mentioned wrongdoing including costs of suit, investigation, and attorneys' fees.

272.    PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statue.

### THIRD CAUSE OF ACTION
### CONVERSION
#### Against

**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

273.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

274.    DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC., RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC. , SCOTT GRADY; PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO engaged in a course of conduct as described above that swindled INVESTORS out of their money. Presently, PLAINTIFFS' investments are lost to their immediate use for all of the reasons above and subsequently alleged.

275.    PLAINTIFFS were told by some DEFENDANTS that PLAINTIFFS could get a total refund of their investment, including fees and surrender charges. LARRY TUPLER told some PLAINTIFFS he could not do it in two weeks' time, but thirty days' time would not be a problem. LARRY TUPLER was asked to put that in writing, he did put it in writing, but did not perform on his promise. PLAINTIFFS have demanded the money back to no avail. Several PLAINTIFFS have never received any money back pursuant to this promise by LARRY TUPLER.

276.    In addition, if premiums are not paid by one or more parties, it puts stress on the investment. No one has disclosed how the premium situation is handled if a person cannot make their payment. This is tantamount to theft by swindle, and conversion.

277.    PLAINTIFFS seek all other damages allowed by law and/or the return of the money.

278.    DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFFS, and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested.

**FOURTH CAUSE OF ACTION**
**NEGLIGENCE/GROSS NEGLIGENCE**
**Against**
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL; RLS FINANCIAL SERVICES; RMS TRUST; RLS FINANCIAL SERVICES, INC.; SCOTT GRADY; BRENT BORCHERT; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; LARRY BAGBY; JOEL KLEINFELD; RLM TRUST; VINCE BOVINO; DOES 1-20)**

279.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

280.    DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, RMS TRUST, RLS FINANCIAL SERVICES, INC. , SCOTT GRADY, BRENT BORCHERT; PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, LARRY BAGBY, JOEL KLEINFELD, RLM TRUST, and VINCE BOVINO were negligent for the reasons above mentioned because they failed to engage in conduct up to industry standards while selling securities to PLAINTIFFS. In fact, what was done was so extreme that it constitutes gross negligence. This investment should not have been sold to these PLAINTIFFS for all of the reasons set forth subsequently and for all of the reasons set forth in the general allegation section of this complaint. The cumulative violations contribute to making this a grossly negligent operation, activity, and endeavor. DEFENDANTS carried out their negligence in association with each other, compounding the negligence.

281.    As a result of the abovementioned acts of DEFENDANTS, PLAINTIFFS are damaged by reason of the above allegations, as well as the loss of property, money, and expenses necessary to get this money back.

282.    As a result of the above acts, PLAINTIFFS claim general damages for mental and emotional distress, pain, and suffering, caused by DEFENDANTS subject to proof at the time of trial.

283.    DEFENDANTS'   conduct was a substantial factor in causing PLAINTIFFS harm as described above. PLAINTIFFS seek reimbursement for the costs and expenses of having to handle, figure out and recover these investments, including legal fees incurred for having to recover the property.

284.    PLAINTIFFS seek all other damages allowed by law for the above-mentioned wrongdoing including costs of suit, investigation, attorneys' fees, and especially the value of the loss of their investments.

285.    Plaintiffs seek attorney fees as it is provided by the parties' contract and also by statue.

**FIFTH CAUSE OF ACTION**
**SELLING UNREGISTERED SECURITIES**
**VIOLATION OF CORPORATE CODE §§ 25401 & 25501**
**Against**
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; UMB BANK N.A.; BANK OF UTAH; FIRST WESTERN TRUST BANK DOES 1-20)**

286.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

287.    The above- mentioned facts show, and it is alleged that the DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPAL FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL

61

**FIRST AMENDED COMPLAINT**

KLEINFELD, RLM TRUST, VINCENT BOVINO, UMB BANK N.A., BANK OF UTAH, and FIRST WESTERN TRUST BANK sold or instituted a process of sale of the various life settlements above alleged PLAINTIFF INVESTORS unregistered or unqualified securities in violation of Corporations Code, particularly§§ 25110, 25130, & 25102(q) and/or in violation of other provisions of federal law requiring registration of securities. As described above, DEFENDANTS claimed exemptions did not exist as the excuse for having an unregistered security.

288.    It was below the standard of care for a seller to sell unregistered securities in this manner. When an unregistered security is sold, the transaction must be unwound, and rescission be mandated and or damages allowed.

289.    By reason of the above, DEFENDANTS are liable to PLAINTFF INVESTORS and PLAINTFF INVESTORS are entitled to get their money back through rescission or damages for violating the allegations of this cause of action.

290.    It was also improper, illegal, deceitful, or negligent to sell unregistered or unqualified securities to PLAINTIFFS and take PLAINTIFFS' money under these circumstances.

291.    By reason of the above, and as a proximate result of selling unregistered or unqualified securities, PLAINTIFFS have been harmed because if the securities were registered or qualified, there would have been more protections and disclosures provided to allow an investor to make a more informed investment decision. Even if PLAINTIFFS would have been no better off, RELIANT's failure to register or qualify this security automatically allows for damages or rescission with or without showing prejudice. It is illegal and against the law to sell unregistered or unqualified securities. By reason of the above, PLAINTIFFS are entitled to rescission and damages. They seek their money back with interest thereon. Additionally, they seek all damages allowed by law for selling unregistered/unqualified securities.

292.    By reason of the above-mentioned conduct, PLAINTIFFS are entitled to treble damages and attorneys' fees and costs in the discretion of Court, which they request.

293.    DEFENDANTS'   conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice such that punitive damages are appropriate, and hereby requested under either Civil Code 3294 or 3345 or both.

294.    PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statue

**SIXTH CAUSE OF ACTION**
**VIOLATIONS OF CORPORATIONS CODE §§ 25004 & 25501.5; and C.C.P. § 1029.8**
**Against**
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20)**

295.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

296.    DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPAL FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, VINCENT BOVINO, especially, MARK SANSOUCY, and RELIANT acted and still act as brokers and broker-dealers. Yet, under Corp. Code §§ 25004 & 25501.5 and comparable Federal Law, they are not allowed to have sold this security to these PLAINTIFFS and RELIANT and other DEFENDANTS were not properly licensed but were and are engaged in allowing a business to engage in the act of being a broker-dealer without a license. This itself is a violation of the law and justifies voiding this transaction and returning PLAINTIFFS the return of all monies given to DEFENDANTS. As a result, DEFENDANTS are also in violation of Code Civil Procedure § 1029.8. Also, DEFENDANTS acted as AGENTS of broker-dealers, even if they can claim they are broker-dealers, which they cannot, they are still just as liable for acting as agents of broker-dealers without a license or registration.

297.    Code Civil Proc. § 1029.8 states "unlicensed persons who cause injury or damage … as a result of providing goods or services for which a license is required… shall be liable to the injured person for treble the amount of damages… "Had PLAINTIFFS been dealing with a licensed person instead of unlicensed people such as DEFENDANTS, PLAINTIFFS would have been protected and

this situation would not have happened because no reputable licensed person would sell these securities to persons preparing for retirement. Even if that is not the case these sales by unlicensed persons activate the statute and allow for the remedies set forth in Corporate Code §25501.5, which PLAINTIFFS seek.

298.   In addition to the above-mentioned remedies, PLAINTIFFS have been damaged, in having to suffer significant losses as above described, including pain and suffering, loss of interest or the loss of the value of a well-managed account, loss of this principal, in the amount of $5,000,000

299.   By reason of the above-mentioned conduct, PLAINTIFFS are entitled to treble damages and attorneys' fees and costs at the discretion of Court, which they request.

300.   DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFFS, and constitutes oppression, fraud, and malice and justifies punitive damages under either Civil Code 3294 or 3345 or both.

301.   PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statue.

**SEVENTH CAUSE OF ACTION**
**INTENTIONAL MISREPRESENTATION/FALSE PROMISE**
**Against**
**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

302.   PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

303.   This cause of action relates to the following DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPAL FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company

PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO.

304.   DEFENDANTS' conduct was fraudulent because not all the necessary information was provided, and what was provided was not truthful or complete. All this has been outlined before. There was omission of material facts and misrepresentation of material facts. There was material concealment as well. DEFENDANTS sold PLAINTIFFS a product that was inappropriate for these investors, Plaintiffs.

305.   DEFENDANTS also provided and sold these products to PLAINTIFFS as investments that DEFENDANTS know could not do what was claimed and was less attractive than represented especially as set forth in the General Allegation where DEFENDANTS represented these fractionalized life settlements as the same or equivalent to the kind of viatical investments Warren Buffett and Bill Gates bought.  See Exhibit B. This amounts to intentional misrepresentation and based on this and other matters set forth in the general allegations as a false promise. DEFENDANTS did not intend that the product they were providing would meet PLAINTIFFS' needs or was suitable for them, yet DEFENDANTS sold the product as if it would with knowledge that it was inadequate.

306.   These DEFENDANTS also failed to advise this was a poor vehicle for a retirement investment because it placed a burden on retirees, or their heirs to pay the continuing premium something that would make the investment undesirable for PLAINTIFF Investors. It is also a purposeful deception and lack of disclosure not to be able to quantify the inadequacy of the life expectancy reserves.

307.   PLAINTIFFS reasonably relied upon DEFENDANTS' promises.

308.   DEFENDANTS did not perform on their promises. DEFENDANTS gave PLAINTIFFS a sub-standard product and sub-standard service. In fact, DEFENDANTS sold what they knew was inappropriate, unsuitable, onerous, and deceptive to PLAINTIFFS.

309.   PLAINTIFF INVESTORS were harmed.

310.   PLAINTIFF INVESTORS' reliance on DEFENDANTS' promise was a substantial factor in causing the present harm.

311.   PLAINTIFF INVESTORS suffered pain, and mental anguish as a result of the above.

312.    By reason of the above-mentioned conduct. PLAINTIFFS are entitled to treble damages and attorneys' fees and costs in the discretion of Court, which they request.

313.    DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice and justifies punitive damages under either Civil Code 3294 or 3345 or both.

314.    PLAINTIFFS seek all damages available by law.

315.    Plaintiff seeks all other damages allowed by law including as an alternative remedy an accounting of all policies each defendant has in association with Reliant as to any Plaintiff named in this complaint, this would include dates and policies that has lapsed, time left to next premium, the length of any restatement period, how many times has any policy gone into lapse, who paid premiums and when. The date the policy was taken out, prior owners, date converted from term if applicable, all agents of record for the insurance, how many times has any insurance company dealt with other policies where any of the Defendants in this case were involved.

316.    PLAINTIFF requests the full and complete accounting of all records related to the programs as well as all PLAINTIFFS' transactions so a complete picture can be seen and so PLAINTIFF will have all records related to what was purchased.

317.    PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statute.

**EIGHTH CAUSE OF ACTION**
**VIOLATION OF CIVIL CODE §3372**
**Against**
**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; RLM TRUST; VINCENT BOVINO; DOES 1-20**

318.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

319.   DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO held themselves out as investment advisors, financial advisors, and related terms. DEFENDANTS held themselves out as persons engaged in the business of advising others for compensation and as experts with respect to investments, generally, and particularly in the viatical life settlement space.  DEFENDANTS did a poor job and allowed PLAINTIFFS to purchase unsuitable products. In particular, DEFENDANTS represented themselves to be an expert with respect to the investment decisions in such viatical life settlement space and implied that they were acting in the capacity of the terms listed in Civil Code §3372 such as financial adviser, financial counselor, or investment adviser. As a result, DEFENDANTS are liable to PLAINTIFFS under that law.

320.   DEFENDANTS obtained compensation as a result of the financial advice rendered to PLAINTIFFS, but they failed to render the financial advice with due care and skill reasonably expected of a person who is an expert as defined by and required by Civil Code §3372. DEFENDANTS were not properly licensed and/or registered to act as an expert, as defined in Civil Code §3372, or as they represented or implied.  This is further against the law for which DEFENDANTS are liable.

321.   PLAINTIFFS relied on DEFENDANTS' services and advice to be at a level reasonable expected and set forth in Civil Code §3372. PLAINTIFFS were damaged by reason of PLAINTIFFS' reliance on DEFENDANTS' services in the form of losing his entire principal invested.

322.   DEFENDANTS' services were not rendered with due care as reasonably expected because of the expertise portrayed. DEFENDANTS' services were instead rendered through fraud, deceit, dishonesty, ignorance, and/or lack of due diligence. PLAINTIFFS expected DEFENDANTS to render sound financial advice. DEFENDANTS did not.

323.   PLAINTIFFS were to be the recipient of DEFENDANTS' advisory services as defined above by reason of the above-mentioned statue. DEFENDANTS are liable to PLAINTIFFS for the

damages caused to PLAINTIFFS to the tune of $5,000,000 or to be determined according to proof at trial.

324.    PLAINTIFFS also requests all damages afforded by law including disgorgement of fees covered by this statue and/or as allowed by law including attorney's fees and costs of suit.

325.    DEFENDANTS'   conduct was in reckless disregard for the rights and safety of Plaintiff and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested under either Civil Code 3294 or 3345 or both.

**NINTH CAUSE OF ACTION**
**ACCOUNTING**
**(Against all Defendants)**

326.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

327.    PLAINTIFFS request the full and complete accounting of all records to support the fact that these are current polices in effect validating and supporting each of the PLAINITFFS' investments and the policy or policies that have not lapsed and that RELIANT and UMB or BANK OF UTAH are in line to receive the death benefit to support each of the above investments.

328.    PLAINTIFFS are entitled to this information.  Accounting is a normal right of any investor on the subject matter of their investment and where DEFENDANTS are holding a death benefit for the benefit of another.

329.    Plaintiff seeks all other damages allowed by law including as an alternative remedy an accounting of all policies each defendant has in association with Reliant as to any Plaintiff named  in this complaint, this would include dates and policies that has lapsed, time left to next premium, the length of any restatement period, how many times has any policy gone into lapse, who paid premiums and when. The date the policy was taken out, prior owners, date converted from term if applicable, all agents of record for the insurance, how many times has any insurance company dealt with other policies where any of the Defendants in this case were involved.

**FIRST AMENDED COMPLAINT**

330.    PLAINTIFF requests the full and complete accounting of all records related to the programs as well as all PLAINTIFFS' transactions so a complete picture can be seen and so PLAINTIFF will have all records related to what was purchased.

331.    PLAINTIFFS seek attorney's fees and costs in obtaining a full accounting.

### TENTH CAUSE OF ACTION
### VIOLATION OF SECTION 5 OF THE SECURITIES ACT (UNREGISTERED SECURITY)
### Against
### VIOLATION OF CORPORATE CODE §§ 25401 & 25501
### (RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20)

332.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

333.    By reason of above mentioned conduct, DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, VINCENT BOVINO,  willfully violated Section 5 of the Securities Act (15 U.S. Code § 77(e) and 15 U.S. Code § 17), which states that "[unless] a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly, (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such securities or a medium of any perspective, or (2) to carry or cause to be carried through the mails for an interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for the delivery after sale." Also, similar sections of federal law were violated.

334.     As a result of the conduct described above, DEFENDANTS, willfully violated Section 5 of the Exchange Act, which states that "[it] shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any perspective or otherwise any security, unless a registration statement has been filed as to such security."

335.     By reason of the above, the remedy is rescission or disgorgement of all monies paid.

336.     PLAINTIFFS seek all damages allowed by law by reason of DEFENDANTS acting and selling unregistered securities.

337.     DEFENDANTS'   conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice and justify punitive damages under either Civil Code 3294 or 3345 or both.

338.     PLAINTIFFS seeks all damages available by law.

339.     By reason of the above, PLAINTIFFS are entitled to rescission and damages, and or the damages set forth in Civil Codes §25501 or 25501.5, or whatever else is available by law.

**ELEVENTH CAUSE OF ACTION:**
**VIOLATION OF SECTION 15 OF THE EXCHANGE ACT BY ACTING AS A BROKER-DEALER OR AGENT OF SAME WITHOUT REGISTRATION**
**Against**
**VIOLATION OF CORPORATE CODE §§ 25401 & 25501**
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY;**
**DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; VINCENT BOVINO; DOES 1-20)**

340.     PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

341.     DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT

70
**FIRST AMENDED COMPLAINT**

GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO, were acting as unregistered brokers selling securities which is illegal but which was done in this case. This violates Section 15 of the Exchange Act. As a result of the conduct described above, DEFENDANTS POWELL and TOTH willfully violated Section 15of the Exchange Act (15 U.S. Code § 780.3), which makes it unlawful for any broker or dealer "to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered in accordance" with Section 15(b) of the Exchange Act. Section 3(a)(4) of the Exchange Act defines "broker" generally to mean "any person engaged in the business of effecting transactions in securities for the account of others."

342.    DEFENDANTS acted as brokers without being registered.

343.    By reason of the above, the remedy is rescission of all monies paid plus interest.

344.    In the alternative PLAINTIFFS seek all damages allowed by law by reason of DEFENDANTS acting as brokers, being unregistered, and selling in the way above mentioned.

345.    PLAINTIFFS seek all damages allowed by law.

346.    PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statue.

**TWELFTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
**Against**
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; UMB BANK N.A.; BANK OF UTAH;FIRST WESTERN TRUST BANK DOES 1-20)**

347.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

**FIRST AMENDED COMPLAINT**

348.   PLAINTIFFS were promised certain benefits above described including the right to receive their money back at any time during the investment.

349.   Defendants are refusing to honor the above although demand. Defendants refuse to return the Plaintiffs money except on terms not disclosed and not favorable to Plaintiffs. This is a breach of contract.

350.   As to PLAINTIFF JAMES CIRILE, who never received a signed contract from RELIANT, so there is no contract or it is void and his money needs to be returned.

351.   Plaintiffs now seek their money back plus interest for not returning it promptly when requested or as a result of their breach.

352.   DEFENDANTS' failure to deliver the money as promised, or an investment that met with the promise made is a further breach of the contract for which return of Plaintiffs money is requested.

353.   Also Defendants have failed to deliver a life settlement policy that did not mature in the time represented, which also constitutes a breach.

354.   Plaintiffs now seek their money back plus interest for not returning it promptly when requested or as a result of their breach or whatever is the proper remedy for breach of this contract. .

355.   In the alternative, PLAINTIFFS elect to void the contract and seek their money back or seek declaratory relief or damages or they seek the value that their investment was supposed to provide which ever gives them the most value.

### THIRTEENTH CAUSE OF ACTION
### UNFAIR COMPETITION AND VIOLATION OF CODE SECTION 17200 et seq.
### Against
**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

356.   PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

357.   PLAINTIFFS suffered an injury in the form of loss of money, loss of value of money, the loss of use of money, the loss of capital to use for other investments, and a return of a property performing investment.

358.   DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO acted unlawfully, unfairly, and fraudulently in their business and practice consisting of engaging an unfair business practice. This all the things referenced above and in the General Allegations part of this complaint and includes running an unregistered broker dealer and selling unregistered and unqualified securities without an exemption. This and the other things set forth in this complaint, violates Business and Professions Code 17200 and constitutes unfair business practices.

359.   As a result of this practice, DEFENDANTS have benefited from the use of PLAINTIFFS' money, which is equivalent to receiving ill-gotten gains. It gives DEFENDANTS an unfair advantage in raising money compared to businesses that obey the law.

360.   It is unfair because it allows DEFENDANTS' businesses to reap the benefit of money that could have gone to legitimate businesses that could have truly benefited investors and provided a just return to PLAINTIFFS. Instead PLAINTIFFS money is tied up or lost.

361.   It is further fraudulent because of the specific fraud allegations set forth above.

362.   There is a direct link between the alleged unfair competition including unlawful, unfair, or fraudulent business practices and PLAINTIFFS' loss of use of their money and the diminishment of the value of that money compared to if the money was invested or loaned elsewhere.

363.   As a further result, PLAINTIFFS have sustained harm due to DEFENDANTS' actions as described throughout this complaint.

364.   PLAINTIFFS seek relief against DEFENDANTS preventing DEFENDANTS from spending the money PLAINTIFFS contributed until the case is resolved.

365.    PLAINTIFFS seek all other remedies allowed by law including restoration of lost monies or the value of the loss of monies or money lost including the loss of money PLAINTIFFS would have made if PLAINTIFFS's money was placed in a proper (legal and non-fraudulent) investment, security, or business.

366.    PLAINTIFFS seek restitution to be restored to the status as Plaintiff would have been had their money not been placed in DEFENDANTS'   unfair business endeavor.

367.    PLAINTIFFS seek equitable and injunctive remedies including attorney fees necessary to force DEFENDANTS to follow the law or their closure.

368.    PLAINTIFFS seek all damages and relief allowed by law including punitive damages under either Civil Code 3294 or 3345 or both as allowed by law as DEFENDANTS action involved fraud, malice, and oppression.

369.    Attorney's fees are requested as it is allowed in the parties' contract.

### FOURTEENTH CAUSE OF ACTION
### FINANCIAL ELDER ABUSE (Welfare and Institutions Code § 15600 et seq.)
### (JOHN STOCKSDALE; GENE GOLDEN; JOSEPH GOODALE; ED BAEZA; PETER J. LOWE)
### Against
### SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; ANDREW MURPHY; LARRY TUPLER

370.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

371.    As a "elder," within the meaning of Welf. & Inst. Code § 15610.27, JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA were entitled to the heightened rights and special statutory protections provided by California's Elder and Dependent Adult Civil Protection Act ("EADACPA"), set forth in Welf. & Inst. Code § 15600 et sec.  Under Welf. & Inst. Code § 15610.30, a person is liable for financial elder abuse or for assisting financial elder abuse if they obtained the elder's property when they knew or should have known that the conduct is likely to be harmful to the elder, including: (1) hiding, taking, retaining, obtaining and/or misappropriating Plaintiff's property, which is what has been alleged, or (2) assisting in doing the above. DEFENDANTS

**FIRST AMENDED COMPLAINT**

did not limit the sale to just one sale and to one senior; they conducted multiple sales to multiple persons, including: JOHN STOCKSDALE, GENE GOLDEN, and ED BAEZA. JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA. These people did not need investments that might not materialize in their lifetime and would burden them or their beneficiaries or heirs to pay ongoing, multiple, and exorbitant ever rising premiums to keep the investments alive. JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA did not need a policy that would take so long to mature, possibly out living them without the use of their money for retirement needs. This sale is based on fraud and deceit, wrongdoing and lack of disclosure set forth in the general allegations and prior cause of action. Under the circumstances, it was unconscionable and in bad faith to sell this product to these seniors.

372.    DEFENDANTS SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, ANDREW MURPHY, and LARRY TUPLER's conduct in selling JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA these investments, was a predatory practice employed to take advantage of a vulnerable elderly persons for their own financial gain or if not intended to do so, it had that effect, and after knowing this, these defendants kept doing it, implying total purposeful intent to take advantage instead of protect these individuals.

373.    The Center for Research at Boston College, Aging Brain, says that older people are particularly susceptible to deception and predatory practices. Many elderly adults (roughly half) suffer from cognitive decline, which impacts financial management skills, results in poor decision-making, leaving them particularly vulnerable to fraudulent marketing tactics.

374.    Broker-dealers or people who sell securities or products like this one play a critical role in preventing financial abuse of elderly persons. Reputable broker-dealers or salespersons of securities or this kind of product need to follow the rules and regulations to prevent older people from buying investments that are not right for them or which might be onerous for them to maintain and deal with. It is believed that DEFENDANTS were negligent in not having such rules and regulations or not monitoring their sales force if they did or in preying upon these elderly gentlemen.

375.    DEFENDANTS knew each sale was over the top for a person of JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA's age and financial

sophistication, but DEFENDANTS persisted to continue to sell to older persons before and after wrongfully and egregiously selling it to JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA.

376.     Despite being the only entity or persons in possession of the above facts, DEFENDANTS knowingly assisted and turned a blind eye and callous heart to the outrageous pilfering of JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA's money. JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA's age should have been red flags to DEFENDANTS, but DEFENDANTS did not care and instead were happy to take advantage of them and condoned and contributed to these sales.

377.      DEFENDANTS, including DOES 1-20, committed the above by knowingly assisting financial elder abuse.

378.     DEFENDANTS' financial abuse has caused JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA harm including emotional stress and frustration because of the loss of all the money they spent on this product. This has deprived JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA or their beneficiaries or heirs of financial security. DEFENDANTS knew or should have known that their conduct was likely harmful to JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA all in violation of the Laws particularly Welfare and Institutions Code. § 15600.30.

379.     DEFENDANTS or DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested.

380.     Plaintiffs JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA seek all damages allowed by law including that damages be trebled, and attorney's fees allowed by statute and/or contract between the parties. Defendants' conduct was in reckless disregard for the rights and safety of Plaintiffs and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested under either Civil Code 3294 or 3345 or both.

**FIFTEENTH CAUSE OF ACTION**

76

**FIRST AMENDED COMPLAINT**

1

2

## AIDING AND ABETTING FRAUD AND BREACH OF FIDUCIARY DUTY
### (Against all Insurance Company Defendants and Bank Defendants)

3

4

5

381.   PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

6

7

8

9

10

11

382.   Defendant RELIANT, and Defendant RELIANT associated companies including the named individual DEFENDANTS committed fraud, breach of fiduciary duty, conversion and intentional wrongdoing as set forth in causes of actions number 2, 3, 5, and 7 of this complaint. This includes any above-mentioned DEFENDANTS that participated in a sale not backed or no longer backed by an insurance policy or death benefit as of the date of the filing of this complaint. In addition to the already named DEFENDANTS, the following DEFENDANTS are named as aiders and abettors:

12

    a.   UMB, N.A, relating to those RELIANT sales it provided escrow services.

13

    b.   Bank of Utah, relating to those RELIANT sales it provided escrow services

14

15

    c.   PACIFIC LIFE INSURANCE COMPANY related to Policy Code MW8350, or any others not known at this time.

16

17

    d.   LINCOLN FINANCIAL GROUP related to DC0249, or any others not known at this time.

18

19

    e.   PRINCIPAL FINANCIAL GROUP related to DL0468, or any others not known at this time.

20

    f.   AVINA LIFE AND ANNUITY related to GJ9510, or any others not known at this time.

21

22

    g.   PHL VARIABLE INSURANCE CO. --> NASSAU RE related to PS0272, or any others not known at this time.

23

24

    h.   THE PENN MUTUAL LIFE INSURANCE COMPANY related to MS0229, or any others not known at this time.

25

    i.   LINCOLN BENEFIT LIFE related to WP7826, or any others not known at this time.

26

27

    j.   BENEFICIAL LIFE INSURANCE CO. related to MR8412, or any others not known at this time.

28

77

**FIRST AMENDED COMPLAINT**

k. PHL VARIABLE INSURANCE COMPANY related to MV4552, or any others not known at this time.

l. RELIASTAR LIFE INSURANCE COMPANY related to 4014954, or any others not known at this time.

m. AXA EQUITABLE LIFE INSURANCE COMPANY related to codes SA6304 and LS4268, or any others not known at this time

n. ZURICH AMERICAN LIFE INSURANCE COMPANY related to FR1977, or any others not known at this time.

o. JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK related to 2013-2, or any others not known at this time.

372.   These above DEFENDANTS are responsible as aiders and abettors because they:

a. knew that RELIANT and associated Defendant Companies and the other named individual DEFENDANTS were engaged in the reselling through syndication policy of its insured and knew that the above kinds of things were continuing to be employed by RELIANT and its associated person and entities and allowed it to happen without adequate attempts to stop it from the protection of both the insured and the investors.

b. gave substantial assistance or encouragement to RELIANT, associated Defendant companies and each individual named defendant, as they continued selling this product to vulnerable people even after knowing there were complaints and issues of wrongdoing associated with the manner, method, integrity, honesty, and type of activity that RELIANT and its people were engaged.  Instead of taking stock, they continued to assist allowing the escrows and relationship to go forward by contributing its policies to a fraudulent endeavor that breaks fiduciary duty at many levels, not the least of which to make sure its policy is being used properly and not to swindle investors as above described. The subsequent sales of the abovementioned policies could not happen without these DEFENDANTS (the ones set forth in the paragraph immediately

**FIRST AMENDED COMPLAINT**

preceding this one) participating and issuing their escrows and insurance services to help RELIANT defraud these investors or breach fiduciary duties against PLAINTIFFS.

    c. That the DEFENDANTS (the ones set forth in the paragraph immediately preceding this one) conduct was a substantial factor in causing harm to PLAINTIFFS.

373. DEFENDANTS' (the ones set forth in the paragraph immediately preceding this one) conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested under either Civil Code 3294 or 3345 or both.

374. Plaintiff seeks all other damages allowed by law including as an alternative remedy an accounting of all policies each defendant has in association with Reliant as to any Plaintiff named in this complaint, this would include dates and policies that has lapsed, time left to next premium, the length of any restatement period, how many times has any policy gone into lapse, who paid premiums and when. The date the policy was taken out, prior owners, date converted from term if applicable, all agents of record for the insurance, how many times has any insurance company dealt with other policies where any of the Defendants in this case were involved.

## SIXTEENTH CAUSE OF ACTION
## VIOLATION OF SEC RULE 10-B-5
### Against
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; UMB BANK N.A.; BANK OF UTAH; FIRST WESTERN TRUST BANK; DOES 1-20)**

375. PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

376. DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT

**FIRST AMENDED COMPLAINT**

BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, VINCENT BOVINO, UMB BANK N.A., BANK OF UTAH, and FIRST WESTERN TRUST BANK's conduct listed above for this cause of action have engaged in a totality of activities set forth in detail in earlier allegations and causes of action that constitute a violation of Rule 10b-5 which prohibit the use of manipulating and deceptive practices in regard to the purchase and sale of securities. It reads as follows:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

377.    Some of the allegations are misrepresentations, some are lack of full disclosure, and some are omission, all detailed in prior allegations of this complaint. The conduct and activity is in violation of the Rule 10b-5 and is continuing as more money is being demanded and the same allegations of misrepresentation, manipulation, lack of disclosure and omission are still operating and are in play more than ever.

378.    PLAINTIFFS have been and continue to be injured by reason of the loss of their money contributed to this investment and the failure, even if not lost, to realize what was promised.

379.    PLAINTIFFS relied upon on the representations and claims made as outlined above but they were also subject to omissions which caused them injury where reliance is not required but assumed. Where applicable, investor reliance was reasonable and it was DEFENDANTS intent that investors would rely on and they did except where omissions occurred, in which case reliance is not necessary.

380.    PLAINTIFFS have suffered the harm in the loss of use of their money and the loss of an investment that was supposed to return a fixed rate of return sooner than now.

381.    All of the above is material under the law and constitutes what a reasonable investor would consider important.

**FIRST AMENDED COMPLAINT**

382.   It was further a deception and manipulation for DEFENDANTS to portray this an appropriate retirement investment for all the reasons set forth above.

383.   DEFENDANTS did not perform on their promises. They gave PLAINTIFFS a sub-standard product and sub-standard service. In fact, DEFENDANTS sold what they knew was inappropriate, unsuitable, onerous, and deceptive to INVESTOR.

384.   PLAINTIFF INVESTORS were harmed.

385.   PLAINTIFF INVESTORS' reliance on DEFENDANTS'   promise was a substantial factor in causing the present harm.

386.   PLAINTIFF INVESTORS suffered pain, and mental anguish as a result of the above.

387.   DEFENDANTS' conduct was in reckless disregard for the rights and safety of INVESTOR and constitutes oppression, fraud, and malice and justifies punitive damages under either Civil Code 3294 or 3345 or both.

388.   PLAINTIFFS seek all damages available by law.

389.   PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statute.

### SEVENTEENTH CAUSE OF ACTION
### CONSPIRACY
### Against all Defendants

390.   PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

391.   DEFENDANTS formed a combination of two or more individuals whose objective was to sell life shares even though it was against securities laws and involved fraud and breach of fiduciary duty and other torts listed in this compliant.

392.   DEFENDANTS had a meeting of mind on the object to be accomplished and the means to which the parties would accomplish it.

**FIRST AMENDED COMPLAINT**

393.   DEFENDANTS each committed one or more unlawful act, namely violating securities laws, and committing the intentional torts including fraud and breach of fiduciary duty relating to causes of action Number 2, 3, 5, and 7.

394.   The agreement to commit these unlawful acts between DEFENDANTS was made orally, sometimes confirmed in writing or implied by written material or the conduct of the parties.

395.   Each Defendant named above was aware of the co-conspirator's plans and conduct. They received calls and letters from frantic investors overs the years.

396.   DEFENDANTS agreed with the other conspirators and intended the wrongful acts be committed. The above conspiracy can be inferred from circumstances including the nature of the acts done, the relationship between the parties, and the interest of the alleged conspirators.

397.   PLAINTIFFS need not prove that DEFENDANTS personally committed a wrongful act or that he or she knew all the details of the agreement or the identities of the participants. In this case, the DEFENDANTS did more than just become aware of what was going on. By agreeing to it, they actually engaged in a wrongful act and further supported it, which is not normally a required element of a conspiracy.

398.   Defendants' conduct was in reckless disregard for the rights and safety of Plaintiffs and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested under either Civil Code 3294 or 3345 or both

### EIGHTEENTH CAUSE OF ACTION
### VIOLATION OF CONSUMER LEGAL REMEDIES ACT
#### Against
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; UMB BANK N.A.; BANK OF UTAH; FIRST WESTERN TRUST BANK;  ALL DEFENDANT INSURANCE COMPANIES, DOES 1-20)**

399.   PLAINTIFF incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general

**FIRST AMENDED COMPLAINT**

allegations section of this complaint and such allegation in any previous cause of action, especially information set forth under the heading of "Nature of the Case."

400.    This cause of action refers to the above-named defendants listed in the title to this cause of action. including DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, VINCENT BOVINO, UMB BANK N.A., BANK OF UTAH, and FIRST WESTERN TRUST BANK have engaged in activities that violate California Civil Code 1770 in many ways set forth above and below..

401.    Defendants have violated many aspects of Civil Code §1770 - 1782 et seq. this includes: passing off goods as those of another, false sponsorship, false or confusing, misrepresentation of affiliations all outlined in detail above and violating Civil Code §1770a (1) and (2). This is important because it goes to who is handling the investment and who is going to pay premiums after the premium reserves are used up.  It also goes to Plaintiffs buying into what it thought was a credible upstanding organization being a splintering make up of rogue people and companies working in a weird way and not being reputable, the result being that the investment was anything the salespersons wanted it to be and not what the organization could deliver and a less than appropriate product and service. Since Reliant works through various entities like Reliant life Shares,  RLS FINANCIAL SERIVCE, RMS, RELIANT CAPITAL, RELIANT CAPITAL SHARES, Principle Financial Services, it accentuates confusion over the source of the product. All of these appear to present a different face on who the issuer and sponsor is, and who the investor is investing in.   This is not clarified. It is believed that all of these defendant  entities pawn off their names with others causing the belief that they are all part of an associated entity- all affiliated with each other and under the umbrella of something called RELIANT, and regulated by responsible entities and government agencies,  but this is not the case and is deceptive.

402.    Defendants   also violated Civil Code §1770a (9) making it a violation to advertise goods or services with the intent not to sell them as advertised which as discussed above involved portraying the product as being able capable of being cancelled with a return of the money back and interest at any

time with no penalty.  This also violates Civil Code §1770a (14).  There are numerous other bait and switch matters associated with this investment which are nothing more than ploy's used to sell this investment outlined in detail above that bring many aspects of Civil Code §1770  into play including ploys where Defendants misrepresented or concealed the premium effect on the investment, the rate of return, and who all invests in this product like Warren Buffett and Bill Gates.  It is based on getting average investors the benefits that institutional investors receive which is a fiction and a false pretense.

403.    It should be noted that ED BAEZA,  with his wife, bought hundreds and thousands of dollars' worth of life settlements through Defendants in October of 2020.   Their purchases are believed made the same month, one with "RELIANT" (whoever that really is)  and the other with Principal Financial Services, Inc. (whoever that is), all sold by the same Reliant salesmen giving the buyers the belief that they bought from the same entity or enterprise.  It is confusing as to why the purchase agreements appear with different parties as the differences are not explained and apparent to the parties. It creates the question of who is running the operation or enterprise and this is a form of passing off or hiding the real operator which it is alleged is the case. This appears to be passing off goods and services as those of another or misrepresentation of affiliations or connections all in violation of a number of provisions of Civil Code §1770 et seq. It is really deceptive if now these organization claim they are different entities.

404.    In addition to the above, Defendants violate Civil Code §1770a (14) representing itself as having confirming rights and remedies it does not have like being suitable compared to a mainstream investment, and better than an investment in the stock market.

405.    In addition these investments to these Plaintiffs is Reliant investors selling a financial product that is illegal under state or federal law in violation of Civil Code §1770a (26).  It is illegal because the investments are not allowed to be sold or developed,  if sold by unlicensed people and in violation of securities laws.   Violations of this has been set forth in detail in other causes of action incorporated hereto as fully set forth hereat and particularly in causes of action 6, 10, and 11.

406.    Plaintiff relied on the above and it was reasonable and justifiable. They were led to believe that they were dealing with a reputable securities dealers and brokers, but this organization is made up of unlicensed unqualified securities people that are not trained in or skilled in the requirement necessary

to sell securities that people licensed by the SEC or the Financial Industry Regulatory Authority, ("FINRA") are required to follow which requires observance of high standards of commercial honor and principles of trade, a requirement that all presentations be balanced and transparent, and most of all that investments be vetted through the performance of proper due diligence. In fact these investments peddled by Defendants do not meet the suitability requirement and best interest requirements of the SEC and FINRA.   Without proper training and proper information, salesmen are free to use any method to make a sale which is what happened here and is still happening.   Then, investors do not obtain the protection and the quality of services that the securities industry has become known for. Failure to tell customers this limitation in their salesforce is itself a deception and a material omission as it prevents investors from protecting themselves by gong to another investment or hiring their own financial advisor with these qualifications among other things.

407.   Civil Code 1770 (a)(19) prevents inserting an unconscionable provision in the contract. Many unconscionable provisions are covered in in the contracts between the parties particularly in the purchase agreement.

408.   Going around and hiding facts that are important to investors are not permitted, yet that is exactly what Defendants did. They scrubbed negative ratings from the internet so that when people looked online, they could not get the real facts. Plus, a lot of facts as outlined in the Gloria Wok declaration, was known to them but none of that is portrayed on their website, making their story one-sided, unfair, and unbalanced. This is a violation of the anti-fraud provision and many provisions of Civil Code §1770 because it goes to the identity of the product plaintiff bought. Whatever it was and public comments were hidden.

409.   By reason of the above-mentioned facts and all facts set forth in this compliant, activities of Defendants constitute a violation of the Consumer legal remedies act as set forth in Civil Code 1770 et seq. through 1782 et seq.

410.   By reason of the letter Plaintiffs submitted to Defendants dated July 19, 2022, sent via certified mail, and many follow up emails and phone calls to Defendants counsel, Defendants did not provide any correction, repair, replacement, or other remedy including rescission in the 30 days allowed

by the code.  Because of these violations of California Civil Code §1770 et seq. Plaintiffs are entitled to the damages and remedies set forth in California Civil Code §17802.

411.   Plaintiffs suffered harm by reason of the conduct alleged above in violation of Civil Code §1770 et seq.

412.   Plaintiff seeks all damages allowed under Civil Code Section 1780, including actual and punctual damages and other reliefs the Court finds applicable such as attorney's fees.

413.   DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFF and constitutes oppression, fraud, and malice such that punitive damages are appropriate, and hereby requested under either Civil Code 3294 or 3345 or both.

### NINETEENTH CAUSE OF ACTION:
### INJUNCTION/CONSTRUCTIVE TRUST/RECEIVERSHIP
#### Against
**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

414.   Plaintiffs incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

415.   This cause of action relates to DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO.

416.   Plaintiff investors request constructive trust and/or a necessary receiver be appointed to liquidate Defendants' assets necessary to make Plaintiffs whole and/or to prevent injustice. All proceeds that have been diverted need to be accounted for and distributed to Plaintiffs. Plaintiff investors request a constructive trust be imposed on all proceeds generated by Defendants or their operations to the full

extent of the law. Plaintiff investors seek injunctive relief to shut down Defendants or to prohibit Defendants from continuing to do business in the present form without approval and should only be able to continue to do business on terms that protect the public. Plaintiffs seek preliminary and permanent injunctive and equitable relief. When balancing the end benefit and the harm done by the sale of these investments, the harm outweighs the benefit and the irreparable harm will occur if injunctive and equitable relief is not granted.

417.    Plaintiffs seek any remedies and damages requested in other causes of actions alleged herein or available by law to prevent repeat violations and Defendants from continuing to create public deception surrounding this investment.

418.    In addition to the above-mentioned remedies, Plaintiffs have been damaged, in having to suffer significant losses as above described, including pain and suffering, loss of the use of their money, loss of interest or the loss of the value of a well-managed account, loss of their principal, all to the tune of approximately $20,000,000, including accrued interest, for which Plaintiffs seek reimbursement.

419.    Plaintiff seek attorney fees pursuant to Cal. Civ. Code § 1021.5 for plaintiff's attorney services rendered a significant benefit for the public good as described more fully at Cal. Civ. Code §1021.5.

## TWENTIETH CAUSE OF ACTION:
### ALTER EGO
#### Against
**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

420.  Plaintiffs incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

421.  This cause of action involves DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC., RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT,

LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO.

422.  Defendants' corporate identities should be disregarded. They should all be found vicariously liable for each other's misconduct because they are all a part of it and they have subsumed Plaintiffs' assets (or assets in companies that were for the benefit of Plaintiffs) to their advantage and to the Plaintiff investors' disadvantage, basically leaving Plaintiffs with nothing. Therefore, any of the Defendant corporations or individuals named herein that participated in any way in this should be pierced and/or declared liable under the alter ego doctrine. These entities used the illusion that they were separate entities when they were not, or the law does not consider them such. They used the illusion that they were subsidiaries when they were not. They were all being controlled by the same person or Defendant entity or motivated by some common goal that puts all Defendants in the same category helping solicit or raise investor funds and eventually turning those funds for their own benefit and personal gain contrary to the investment as proposed to Plaintiffs.

423.  Further, a corporate form of legal issues transfers assets out of fraudulent investor situations to self-dealing invasive corporate activities and structures should be set aside and declared illegal. In the alternative, the money should be disgorged, and profits of unjust conduct should be disgorged and returned to investors. Finally, these companies and persons were at all times undercapitalized for what their purposes were to do, and they need to be pierced and disregarded.

424.  Equity requires these companies and persons as one, and it promotes injustice and fraud to do otherwise.

425.  Plaintiffs have been damaged, in having to suffer significant losses as above described, including pain and suffering, loss of the use of their money, loss of interest or the loss of the value of a well-managed account, loss of their principal, all to the tune of approximately $20,000,000, including accrued interest, for which Plaintiffs seek reimbursement add to each and every party and in the investment scheme described in this complaint.

## TWENTY FIRST CAUSE OF ACTION:

**FIRST AMENDED COMPLAINT**

**FRAUDULENT TRANSFER**

**Against**

**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

426.  Plaintiffs incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

427.  This cause of action relates to DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC., RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO.

428.  The Court should find actual or constructive fraud, or voidable activity that occurred here, when it comes to Defendant moving out assets from them to companies that are thought to be out of reach. Defendants are liable here under constructive fraud including California Civil Code 3439.05(A) that says, "A transfer made or obligation occurred by a debtor is voidable as to the creditor whose claim arose before the transfer was made or the obligation occurred if the debtor (in this case, all the Defendants or their predecessor companies) did the transfer and incurred the obligation without receiving reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation." That is alleged upon information and believed to be the case here. Plaintiffs have been damaged in that such activity by Defendants have left Plaintiffs without readily available sources of recourse and damage that are supposed to be paid. It is believed that one or more of the companies or persons named has acquired assets in way so as to constitute actual, constructive fraud or activity voidable by law. What has happened because of the actual or constructed fraud or the voidable activity is that all the money that

**FIRST AMENDED COMPLAINT**

was available for the investors have been bled out by these Defendants. Plaintiffs herein are directly injured by the activities of these Defendants.

429.  Plaintiffs seek all relief available by law including the return of their money, damages, attorney's fees, and any other remedy enumerated herein.

430.  In addition to the above-mentioned remedies, Plaintiffs have been damaged, in having to suffer significant losses as above described, including pain and suffering, loss of the use of their money, loss of interest or the loss of the value of a well-managed account, loss of their principal, all to the tune of approximately $20,000,000, including accrued interest, for which Plaintiffs seek reimbursement.

**TWENTY- SECOND CAUSE OF ACTION:**
**CONTRUCTIVE AND FRAUD**
**(Against)**
**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

431.  Plaintiffs incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

432.  DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC., RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO were fiduciaries supposed to be acting for the benefit of Plaintiffs.

433.  The Defendants were the promoters, salesmen and women who were marketing, selling, and operating these investments.

434.  There was concealment of material facts and omission of material facts that was disclosed covering critical reviews and analysis of their operation that Defendants kept from investors and in fact a concerted effort was utilized to keep basic important information from getting out and so many more things already alleged in  prior causes of action, incorporated by reference as though fully set forth

hereat.  Defendants concealed the fact that their promise that people could get out early from the investment by getting one's principal back was not being honored consistently and was a product of manipulation. These things constitute constructive fraud as defined in Civil Code § 1573 and actionable even if actual fraud is not deemed present.

435.  There were many concealments including not disclosing the real and true relationship of all the parties and entities working on the investment and the behind-the-scenes calculations. If the inner working of the investment was described, Plaintiffs would have never invested in these investments. It is believed that this concealment, and the other things referenced in the earlier paragraph was done on purpose.

436.  Defendants also knew or were reckless in not knowing, and thus not telling Plaintiffs, that the investments were not a suitable investment for these Plaintiffs or in their best interest, as they were not and they should not have been sold them in violation of the laws, securities, rules, and regulations governing their product. Defendants are further liable for acting as unregistered brokers and using unlicensed people selling the security to Plaintiffs.

437.  Also, Defendants did not keep Plaintiffs appraised of basic facts as described in detail above and in fact Defendants purposely made sure negative facts about Defendants and about these investments were to be taken down or scrubbed from the internet. Defendants told people they could get their money back at any time without penalty which really was not true.

438.  Plaintiffs were harmed for all the reasons and in all the ways above stated in other causes of action. The above was committed by Defendants to gain an advantage over Plaintiffs.

439.  Defendant's actions were a substantial factor in causing Plaintiff's present harm including the loss of their investment.

440.  Plaintiff justifiably and reasonably relied on the above to their detriment.

441.  Plaintiffs were substantially harmed including from not only the loss of their investment but the suffering, pain, and mental anguish that followed the loss.

442.  Defendants' conduct was in reckless disregard for the rights and safety of Plaintiffs and constitutes oppression, fraud, and malice and justify punitive damages under either Civil Code 3294 or 3345 or both.

443.  Plaintiffs seek all damages available by law.

## TWENTY THIRD CAUSE OF ACTION
## RECSISSSION
### Against

**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; UMB BANK N.A.; BANK OF UTAH; FIRST WESTERN TRUST BANK DOES 1-20)**

444.  PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

445.  PLAINTIFFS were promised certain benefits above described including the right to receive their money back at any time during the investment.

446.  Defendants are refusing to honor the above although demand has been made and Defendants will not return their principal as promised except on terms not disclosed and not favorable to Plaintiffs. This is a breach of contract.

447.  Another reason for rescission is the deceit surrounding the fact that there are  high level persons that are creating, administering, conducting oversight of the sale of the investment to Plaintiffs that were and are not licensed as life agents entitled to sell life settlements and none of them are registered as having security licenses.  Also the Reliant Defendant entities that are creating and syndicating the life settlements set forth herein and sold to Plaintiffs were and are not properly registered or licensed with the Department of Insurance as a providers such that they are allowed to make life settlement sales. Therefore all sales are not authorized and therefore must be set aside. This is another reason why there is a breach of contract, why rescission is appropriate, why these investments should not have been sold, and why the companies associated with them should be shut down or enjoined from further activity, and why rescission is appropriate and should accompany this process.

448.   It turns out that other facts make rescission possible by reason of Civil Code 1689, and  the following facts which exist here:

( 1)  The consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by

**FIRST AMENDED COMPLAINT**

or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.

(2) The consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the Reliant Defendants.

(3) The consideration for the obligation of the rescinding party becomes entirely void for cause. This is the case where the whole operation is not properly licensed including many of the salespersons as noted above.

(4) The consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause.

(5) The contract is unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault.

(6) The public interest will be prejudiced by permitting the contract to stand.

449. As to PLAINTIFF JAMES CIRILE, who never received a signed contract from RELAINT, so there is no contract or it is void and his money needs to be returned.

450. Plaintiffs now seek their money back plus interest for not returning it promptly when requested or as a result of their breach.

451. DEFENDANTS' failure to deliver the money as promised, or an investment that met with the promise made is a further breach of the contract for which return of Plaintiffs money is requested.

452. Also Defendants have failed to deliver a life settlement policy that did not mature in the time represented, which also constitutes a breach.

453. Plaintiff gave Defendants the right to rescind before bringing suit to which Defendants declined.

454. Plaintiffs now seek their money back plus interest for not returning it promptly when requested or as a result of their breach.

455. Because of all these reasons, Rescission is an appropriate remedy. PLAINITFFS seek rescission, which is the return of their principal, plus any payments made and interest at the appropriate legal rate. PLAINITFFS seek all fees allowed by law.

456. PLAINTIFFS elect to void the contract and seek their money back or seek declaratory relief or damages. At a minimum, PLAINTIFFS seek their money back. In a best-case scenario, they seek the value that their investment was supposed to provide.

## TWENTY FOURTH CAUSE OF ACTION

93

**FIRST AMENDED COMPLAINT**

## VIOLATION OF PENAL CODE §496
### SCOTT GRADY; BRENT BORCHERT; MARK SANSOUCY; JOEL KLEINFELD; ANDREW MURPHY

457.  PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

458.  It is alleged in the alternative that if the facts bear out that these policies are not left untouched in an escrow account for the benefit and protection of Plaintiff but became available for Defendants or their associates to use or manipulate or outright steel, and they in fact did this or allowed this to happen then this is alleged to be conversion and theft.  This would be the kind of theft that violates Civil Code Section 496 prohibits and allows a civil penalty. For purposes of this complaint, it is alleged in the alternative, and upon information and belief, that the persons listed above qualify as persons receiving money that has been stolen or has been obtained in a manner constituting theft or extortion, knowing the property to be stolen or obtained, wrongfully.

459.  In addition, GRADY, SANSOUCY, MURPHY, BORCHERT, and KLIENFELD engaged in activity that amounts to receiving or buying property that has been stolen or obtained in a manner that constitutes theft or extortion, knowing the property to be stolen or obtained by concealing, selling, and withholding these policies in violation of Penal Code §486. Said activity would involve withholding the property that flowed from investor money. It is alleged that these Defendants did it knowing they were wrongfully using investor money or investor policies and they were not giving them what was represented or the benefit of the death benefit from the multiple insurance policies the Plaintiff investors bought. Also the way Defendants moved these insurance policies around constitutes theft of these policies in violation of Penal Code §486.

460.  The named Defendants received a salary or compensation  or profit distribution that is derived from the illegal proceeds of Plaintiffs' theft above described.

461.  By reason of the above violation and by reason of Plaintiffs losing the value of their money, Plaintiffs seek all relief allowed by this statute, which is three times the amount of their actual loss plus costs and reasonable attorney's fees.

Wherefore, PLAINTIFFS pray for judgment against the DEFENDANTS as follows:

1. For general damages of no less than $5,000,000 or according to proof at trial;

2. For special damages according to proof at trial;

3. Damages for pain suffering and mental anguish;

4. Declaratory relief;

5. Rescission/return of all money plus pre-judgement interest;

6. Injunctive and equitable remedies;

7. Punitive damages as allowed by law;

8. For costs of suit incurred herein; and attorney fees as allowed by law;

9. For such other and further relief as this Court deems just and proper.


Dated: December 27, 2022                    MURRIN LAW FIRM

                                            J. Owen Murrin
                                            Attorney for PLAINTIFF INVESTORS

**FIRST AMENDED COMPLAINT**

**DECLARATION OF J. OWEN MURRIN PURSUANT TO CIVIL CODE §1780 (D):**

I, J. Owen Murrin, make the following declaration on behalf of Plaintiffs, particularly lead Plaintiff Ed Baeza, based upon my own knowledge, and believe the information set forth herein to be reliable and admissible and if called upon as a witness, I could and would testify competently thereto regarding the following:

1. At all times herein, all activities and contacts the subject of this matter occurred in California, and the class is California based.

2. The lead Plaintiff, Ed Baeza resided in Los Angeles County, in the city of Los Angeles when he bought his securities from the relevent Defendants.  He therefore sustained all his losses in Los Angeles Country.  He presently still lives in Los Angeles, Los Angeles, Country, California. A substantial number of other Plaintiffs in this action also reside or did business related to this matter in Los Angeles County, California.

3. The key Defendants reside in L.A. where the corporate headquarters are.

4. Therefore, jurisdiction and venue is proper in California Superior Court, Los Angeles County. Civil Code § 1780 (d).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: December 27, 2022



_____
J. Owen Murrin

**FIRST AMENDED COMPLAINT**

# EXHIBIT "39"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/27/2022 01:48 PM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Bolden,Deputy Clerk

Case 2:23-cv-00474-SB-PD   Document 1   Filed 01/20/23   Page 397 of 443   Page ID #:397

1  J. Owen Murrin (SBN 75329)
   Murrin Law Firm
2  7040 E. Los Santos Drive
   Long Beach, California 90815
3  Phone:  562-342-3011
   Fax:  562-724-7007
4  E-mail: jmurrin@murrinlawfirm.com
5  Attorneys for Plaintiff
   ED BAEZA, et al.
6

7

8                SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                       COUNTY OF LOS ANGELES

10        STANLEY MOSK COURTHOUSE – CENTRAL JUDICIAL DISTRICT

11  PLAINTIFFS:                          **Case No.: 22STCV38080**
    ED BAEZA, an individual;
12  CONCEPCION BAEZA, an individual;     **NOTICE OF REASSIGNMENT OF JUDGE**
13  BASSIR ANSARY, an individual;
    PAUL BUGLER, an individual;
14  WALTER BUGLER, an individual;
    JAMES CIRILE, an individual;         **Date: December 27, 2022**
15  NATHAN COLEMAN, an individual;
    GAMAN, LLC;                          Assigned for all Purposes to Dept. 54
16  GENE GOLDEN, an individual;          Hon. Maurice A. Leiter
17  JOSEPH GOODALE, an individual;
    RACHEL GILA, an individual;          Complaint Filed: December 6, 2022
18  TRUDY BELINDA JOHNSON, an individual;
    CHARLES LAWRENCE, an individual;
19  ORSON K. LEONG, an individual;
20  PETER J. LOWE, an individual;
    BARBARA THORSELL, an individual;
21  MARK THORSELL, an individual;
    CLIFFORD RITZ, an individual;
22  STEVEN C. ROEMER,  an individual;
23  GREG SCHMITT, an individual;
    JOHN STOCKSDALE, an individual;
24  JENNIFER VANCE, an individual
    YEYO, LLC;
25

26           Plaintiffs,
27              v.
    RELIANT LIFE SHARES LLC aka
28  RELIANT CAPITAL, RLS FINANCIAL
    SERVICES, INC.;

                                    1

1  RMS TRUST;
   PRINCIPLE FINANCIAL SERVICES, INC.;
2  SCOTT GRADY;
   PAUL ROY;
3  DAVID UNDERWOOD;
   SHAWN DAVENPORT;
4  LARRY BAGBY;
   BRENT BORCHERT;
5  MARK SANSOUCY;
   LARRY TUPLER;
6  JOEL KLEINFELD;
   RLM TRUST;
7  VINCENT BOVINO;
   UMB BANK N.A.;
8  BANK OF UTAH;
   FIRST WESTERN TRUST BANK;
9  PACIFIC LIFE INSURANCE COMPANY;
   LINCOLN FINANCIAL GROUP;
10 PRINCIPAL FINANCIAL GROUP;
   AVIVA LIFE AND ANNUITY;
11 NASSAU LIFE INSURANCE COMPANY
   AKA REINSURANCE GROUP HOLDINGS,
12 L.P, .AND FORMERLY KNOWN AS
   PHOENIX COMPANIES; THE PENN
13 MUTUAL LIFE INSURANCE COMPANY;
   LINCOLN BENEFIT LIFE;
14 BENEFICIAL LIFE INSURANCE CO.;
   PHL VARIABLE INSURANCE COMPANY;
15 RELIASTAR LIFE INSURANCE
   COMPANY;
16 AXA EQUITABLE LIFE INSURANCE
   COMPANY;
17 ZURICH AMERICAN LIFE INSURANCE
   COMPANY;
18 JOHN HANCOCK LIFE INSURANCE
   COMPANY OF NEW YORK;
19 and DOES 1-20

   Defendants

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

///

///

///

///

2

Take notice that on December 20, 2022, the Hon. Michelle Williams Court, Judge, made an order reassigning this case to the Hon. Maurice A. Leiter of Department 54 of Stanley Mosk Courthouse, located at 111 N. Hill Street, Los Angeles, CA 90012

Dated: December 27, 2022

MURRIN LAW FIRM

_____
J. Owen Murrin
Attorney for Plaintiff
GWENDALYN DOUGLASS, as Trustee of RAYMOND E. DOUGLASS Revocable Trust

NOTICE OF REASSIGNMENT OF JUDGE

**PROOF OF SERVICE**

State of California, County of Los Angeles

ED BAEZA, et al. *v. RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC, et al.*

Case No.: **22STCV38080**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 7040 E. Los Santos Drive, Long Beach, CA 90815. On the date set forth below, I served a true and correct copy of the following document:

- **NOTICE OF REASSIGNMENT OF JUDGE**

on the list of interested parties below:

| | |
|---|---|
| RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC<br>1475 Island Ave., # 1905<br>San Diego, CA 92101 | DEFENDANT |
| Scott Grady<br>15260 Ventura Blvd., Suite 1200<br>Sherman Oaks, CA 91403 | DEFENDANT |
| Parag L. Amin, Esq.<br>Law Office of Parag L. Amin, P.C<br>5901 W Century Blvd, Ste 1518<br>Los Angeles, CA 90045-5437<br>parag@lawpla.com | Attorney for Defendant Shawn Davenport |
| Larry Tupler<br>3343 BAGLEY AVE APT 8<br>LOS ANGELES, CA 90034-2836 | DEFENDANT |
| Joel K. Kleinfeld<br>275 Golden Hind Psge<br>Corte Madera, CA 94925 | DEFENDANT |
| Beneficial Life Insurance Company<br>330 N. Brand Blvd., Suite 700<br>Glendale, CA 91203 | DEFENDANT |
| Nassau Life and Annuity Insurance Company<br>330 N. Brand Blvd., Suite 700<br>Glendale, CA 91203 | DEFENDANT |
| PHL Variable Insurance Company<br>330 N. Brand Blvd., Suite 700<br>Glendale, CA 91203 | DEFENDANT |
| Penn Mutual Life Insurance Company<br>330 N. Brand Blvd., Suite 700<br>Glendale, CA 91203 | DEFENDANT |
| UMB Bank, N.A<br>20 S. Washington Avenue<br>Minneapolis, MN 55401 | DEFENDANT |

1

PROOF OF SERVICE

| | |
|---|---|
| American General Life Insurance Company<br>2727-A Allen Parkway<br>Houston, TX 77019 | DEFENDANT |
| Jason P. Gosselin, Esq.<br>One Logan Square, Ste. 2000<br>Philadelphia, Pennsylvania 19103, USA<br>jason.gosselin@faegredrinker.com | Attorney for Defendant Lincoln Benefit Life Company |
| Reliastar Life Insurance Company<br>20 S. Washington Avenue<br>Minneapolis, MN 55401 | DEFENDANT |
| Zurich American Life Insurance Company<br>1299 Zurich Way<br>Schaumburg, IL 60196 | DEFENDANT |
| Pacific Life Insurance Company<br>700 Newport Center Drive<br>Newport Beach, CA 92660 | DEFENDANT |
| Mark Sansoucy<br>5805 Sepulveda Blvd, Ste 852<br>Sherman Oaks, CA 91441 | DEFENDANT |
| RLS Financial Services<br>5805 Sepulveda Blvd, Ste 852<br>Sherman Oaks, CA 91441 | DEFENDANT |
| Principal Financial Services<br>101 N Brand Blvd., 11th Floor<br>Glendale, CA 91203 | DEFENDANT |
| David Underwood<br>10153 1/2 Riverside Dr, #535<br>Toluca Lake, CA 91602 | DEFENDANT |
| Brent Borchert<br>2355 Westwood Blvd., #658<br>Los Angeles, CA 90064-2109 | DEFENDANT |
| Paul Roy<br>15260 Ventura Blvd., Suite 1200<br>Sherman Oaks, CA 91403 | DEFENDANT |
| RMS Trust<br>15260 Ventura Blvd., Suite 1200<br>Sherman Oaks, CA 91403 | DEFENDANT |
| Andrew Murphy<br>15260 Ventura Blvd., Suite 1200<br>Sherman Oaks, CA 91403 | DEFENDANT |
| Jason H Gould, Esq.,<br>1025 Thomas Jefferson Street, NW, Suite 400 West<br>Washington, DC 20007-5208<br>JGould@carltonfields.com | Attorney for Aviva Life and Annuity |
| Larry Bagby<br>12400 VENTURA BLVD # 650<br>STUDIO CITY, CA 91604-2406 | DEFENDANT |

2

| | |
|---|---|
| Vincent Bovino<br>1097 via Carrillo<br>Thousand Oaks, CA 91320-9790 | DEFENDANT |
| JOHN HANCOCK LIFE INSURANCE<br>COMPANY OF NEW YORK<br>CORPORATION SERVICE COMPANY<br>84 STATE STREET<br>BOSTON, MA 02109 | DEFENDANT |
| Lincoln Financial Group Inc.<br>1904 CHALCEDONY ST<br>SAN DIEGO, CA 92109 | DEFENDANT |
| Bank of Utah<br>2605 WASHINGTON BLVD<br>OGDEN, UT 84401 | DEFENDANT |
| Equitable Holdings Inc. fka AXA Equitable Life<br>Insurance Co.<br>1290 Avenue of the Americas, 13th Floor<br>New York, NY 10104 | DEFENDANT |

☒ **By United States Mail** (CCP §§1013a, et seq.): I enclosed said document(s) in a sealed envelope or package to each addressee. I placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with the firm's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, with postage fully prepaid.

☐ **By Overnight Delivery** (CCP §§1013, et seq.): I enclosed said document(s) in a sealed envelope or package to each addressee. I placed the envelope for express delivery, following our ordinary business practices. I am readily familiar with the firm's practice for collecting and processing correspondence for express delivery. On the same day that correspondence is placed for express delivery, it is deposited in the ordinary course of business with the express service carrier, with fees fully prepaid.

☐ **By Messenger Service:** I enclosed said document(s) in a sealed envelope or package to each addressee. I provided them to a professional messenger service (Signal Attorney Service) for service. An original proof of service by messenger will be filed pursuant to CRC, Rule 3.1300(c).

☒ **Electronic Mail** (CCP § 1010.6(d), CRC Rule 2.251(b)(1)(B) & (c)(3), Rule 2.253(b)(1)(B), and mandatory efiling for attorneys by local court order is your consent requiring you to accept electronic service from us.) I served via email to the electronic address shown above.
Our electronic service address is: jmurrin@murrinlawfirm.com

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on December 27, 2022 at Long Beach, California.

*Cameron R. Kleinberger*
Cameron R. Kleinberger

PROOF OF SERVICE

# EXHIBIT "40"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/27/2022 01:48 PM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Bolden,Deputy Clerk

Case 2:23-cv-00474-SB-PD   Document 1   Filed 01/20/23   Page 404 of 443   Page ID #:404

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815<br><br>TELEPHONE NO.: 562-342-3011  FAX NO. *(Optional):* 562-724-7007<br>E-MAIL ADDRESS *(Optional):* jmurrin@murrinlawfirm.com<br>ATTORNEY FOR *(Name):* Ed Baeza, et. al. | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES**
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

| PLAINTIFF/PETITIONER: GWENDALYN DOUGLASS as trustee of Raymond E. Douglass<br>DEFENDANT/RESPONDENT: Ed Baeza, et. al. | CASE NUMBER:<br>22STCV38080 |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [x] summons

   b. [x] complaint

   c. [x] Alternative Dispute Resolution (ADR) package

   d. [x] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [x] other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. Party served *(specify name of party as shown on documents served):*
      Zurich American Life Insurance Company

   b. [ ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
         under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:
   1299 Zurich Way, Schaumburg, IL 60196

5. I served the party *(check proper box)*

   a. [ ]  **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
         receive service of process for the party   (1) on *(date):*                    (2) at *(time):*

   b. [ ]  **by substituted service.** On *(date):*              at *(time):*         I left the documents listed in item 2 with or
         in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
            of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
            place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
            address of the person to be served, other than a United States Postal Service post office box. I informed
            him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
            at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
            *(date):*              from *(city):*                    **or** [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010  [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |
|---|---|---|

**POS-010**

| | |
|---|---|
| PLAINTIFF/PETITIONER:   GWENDALYN DOUGLASS as trustee of Raymond E. Douglass <br> DEFENDANT/RESPONDENT:  Ed Baeza, et. al. | CASE NUMBER: <br> 22STCV38080 |

5.  c.  [x] **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date):* December 8, 2022       (2)  from *(city):* Long Beach, CA

    (3)  [ ] with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*) (Code Civ. Proc., § 415.30.)*

    (4)  [x] to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  [ ] **by other means** *(specify means of service and authorizing code section):*

    [ ] Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a.  [ ] as an individual defendant.

  b.  [ ] as the person sued under the fictitious name of  *(specify):*

  c.  [ ] as occupant.

  d.  [x] On behalf of *(specify):* Zurich American Life Insurance Company

    under the following Code of Civil Procedure section:

    [x] 416.10 (corporation)         [ ] 415.95 (business organization, form unknown)

    [ ] 416.20 (defunct corporation)     [ ] 416.60 (minor)

    [ ] 416.30 (joint stock company/association)   [ ] 416.70 (ward or conservatee)

    [ ] 416.40 (association or partnership)    [ ] 416.90 (authorized person)

    [ ] 416.50 (public entity)         [ ] 415.46 (occupant)

                          [ ] other:

7.  **Person who served papers**

  a.  Name:  Cameron R. Kleinberger

  b.  Address:  7040 E. Los Santos Dr., Long Beach, CA 90815

  c.  Telephone number: 562-342-3011

  d.  **The fee** for service was: $ 30.00

  e.  I am:

    (1) [ ] not a registered California process server.

    (2) [x] exempt from registration under Business and Professions Code section 22350(b).

    (3) [ ] a registered California process server:

      (i)  [ ] owner    [ ] employee    [ ] independent contractor.

      (ii)  Registration No.:

      (iii)  County:

8.  [x] **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9.  [ ] **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/27/2022

Cameron R. Kleinberger
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

*Cameron R. Kleinberger*
_____
(SIGNATURE)

**PROOF OF SERVICE OF SUMMONS**

# EXHIBIT "41"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/27/2022 01:48 PM Sherri R. Carter, Executive Officer/Clerk of Court, by S. Bolden,Deputy Clerk

Case 2:23-cv-00474-SB-PD   Document 1   Filed 01/20/23   Page 407 of 443   Page ID #:407

**POS-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815<br><br>TELEPHONE NO.: 562-342-3011    FAX NO. *(Optional):* 562-724-7007<br>E-MAIL ADDRESS *(Optional):* jmurrin@murrinlawfirm.com<br>ATTORNEY FOR *(Name):* Ed Baeza, et. al. | *FOR COURT USE ONLY* |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

| | |
|---|---|
| PLAINTIFF/PETITIONER: Ed Baeza, et. al.<br>DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | CASE NUMBER:<br>22STCV38080 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [x] summons

   b. [x] complaint

   c. [x] Alternative Dispute Resolution (ADR) package

   d. [x] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [x] other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. Party served *(specify name of party as shown on documents served):*
      Lincoln Benefit Life Company

   b. [ ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
          under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:
   1221 N Street, Suite 200, Lincoln, NE 68508

5. I served the party *(check proper box)*

   a. [ ]  **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
          receive service of process for the party   (1) on *(date):*                     (2) at *(time):*

   b. [ ]  **by substituted service.** On *(date):*               at *(time):*        I left the documents listed in item 2 with or
          in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
              of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
              place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
              address of the person to be served, other than a United States Postal Service post office box. I informed
              him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
              at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
              *(date):*          from *(city):*                 **or** [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |

**POS-010**

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Ed Baeza, et. al. | CASE NUMBER: |
| DEFENDANT/RESPONDENT:  Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |

5.   c.   [ X ]   **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

     (1)   on *(date):* December 13, 2022      (2) from *(city):* Long Beach, CA

     (3)   [ ]   with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

     (4)   [ X ]   to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.   [ ]   **by other means** *(specify means of service and authorizing code section):*

     [ ]   Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:

  a.   [ ]   as an individual defendant.

  b.   [ ]   as the person sued under the fictitious name of   *(specify):*

  c.   [ ]   as occupant.

  d.   [ X ]   On behalf of *(specify):* Lincoln Benefit Life Company

     under the following Code of Civil Procedure section:

| | |
|---|---|
| [ X ] 416.10 (corporation) | [ ] 415.95 (business organization, form unknown) |
| [ ] 416.20 (defunct corporation) | [ ] 416.60 (minor) |
| [ ] 416.30 (joint stock company/association) | [ ] 416.70 (ward or conservatee) |
| [ ] 416.40 (association or partnership) | [ ] 416.90 (authorized person) |
| [ ] 416.50 (public entity) | [ ] 415.46 (occupant) |
| | [ ] other: |

7. **Person who served papers**

  a.   Name:  Cameron R. Kleinberger

  b.   Address:  7040 E. Los Santos Dr., Long Beach, CA 90815

  c.   Telephone number: 562-342-3011

  d.   **The fee** for service was: $ 30.00

  e.   I am:

     (1)   [ ]   not a registered California process server.

     (2)   [ X ]   exempt from registration under Business and Professions Code section 22350(b).

     (3)   [ ]   a registered California process server:

         (i)   [ ] owner    [ ] employee    [ ] independent contractor.

         (ii)   Registration No.:

         (iii)   County:

8.   [ X ]   **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

     **or**

9.   [ ]   **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 12/27/2022

Cameron R. Kleinberger

_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶   *Cameron R. Kleinberger*

_____
(SIGNATURE)

# EXHIBIT "42"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/28/2022 10:30 AM Sherri R. Carter, Executive Officer/Clerk of Court, by D. Jones,Deputy Clerk

J. Owen Murrin (SBN 75329)
Murrin Law Firm
7040 E. Los Santos Drive
Long Beach, California 90815
Phone:  562-342-3011
Fax:  562-724-7007
E-mail: jmurrin@murrinlawfirm.com
Attorneys for Plaintiff
ED BAEZA, et al.

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES – STANLEY MOSK COURTHOUSE

| | |
|---|---|
| PLAINTIFFS:<br>ED BAEZA, an individual;<br>CONCEPCION BAEZA, an individual;<br>BASSIR ANSARY, an individual;<br>PAUL BUGLER, an individual;<br>WALTER BUGLER, an individual;<br>JAMES CIRILE, an individual;<br>NATHAN COLEMAN, an individual;<br>GAMAN, LLC;<br>GENE GOLDEN, an individual;<br>JOSEPH GOODALE, an individual;<br>RACHEL GILA, an individual;<br>TRUDY BELINDA JOHNSON, an individual;<br>CHARLES LAWRENCE, an individual;<br>ORSON K. LEONG, an individual;<br>PETER J. LOWE, an individual;<br>BARBARA THORSELL, an individual;<br>MARK THORSELL, an individual;<br>CLIFFORD RITZ, an individual;<br> STEVEN C. ROEMER,  an individual;<br>GREG SCHMITT, an individual;<br>JOHN STOCKSDALE, an individual;<br>JENNIFER VANCE, an individual<br>YEYO, LLC;<br><br>         Plaintiffs,<br>      v.<br>RELIANT LIFE SHARES LLC aka<br>RELIANT CAPITAL, RLS FINANCIAL<br>SERVICES, INC.; | Case No.: 22STCV38080<br><br>**NOTICE OF LODGING OF EXHIBITS TO FIRST AMENDED COMPLAINT**<br><br><br>**Date: December 27, 2022**<br><br>Assigned for all Purposes to Dept. 54<br>Hon. Maurice A. Leiter<br><br>Complaint Filed: December 6, 2022 |

1

1    RMS TRUST;
     PRINCIPLE FINANCIAL SERVICES, INC.;
2    SCOTT GRADY;
     PAUL ROY;
3    DAVID UNDERWOOD;
     SHAWN DAVENPORT;
4    LARRY BAGBY;
     BRENT BORCHERT;
5    MARK SANSOUCY;
     LARRY TUPLER;
6    JOEL KLEINFELD;
     RLM TRUST;
7    VINCENT BOVINO;
     UMB BANK N.A.;
8    BANK OF UTAH;
     FIRST WESTERN TRUST BANK;
9    PACIFIC LIFE INSURANCE COMPANY;
     LINCOLN FINANCIAL GROUP;
10   PRINCIPAL FINANCIAL GROUP;
     AVIVA LIFE AND ANNUITY;
11   NASSAU LIFE INSURANCE COMPANY
     AKA REINSURANCE GROUP HOLDINGS,
12   L.P, .AND FORMERLY KNOWN AS
     PHOENIX COMPANIES; THE PENN
13   MUTUAL LIFE INSURANCE COMPANY;
     LINCOLN BENEFIT LIFE;
14   BENEFICIAL LIFE INSURANCE CO.;
     PHL VARIABLE INSURANCE COMPANY;
15   RELIASTAR LIFE INSURANCE
     COMPANY;
16   AXA EQUITABLE LIFE INSURANCE
     COMPANY;
17   ZURICH AMERICAN LIFE INSURANCE
     COMPANY;
18   JOHN HANCOCK LIFE INSURANCE
     COMPANY OF NEW YORK;
19   and DOES 1-20

20                   Defendants

21
22
23
24
25
26
27
28

2

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2   PLEASE TAKE NOTICE that Plaintiffs herby lodge exhibits 2, 16, 25, 26, 27, A, and B to the

3   First Amended Complaint.

Dated: December 28, 2022                    MURRIN LAW FIRM

J. Owen Murrin
Attorney for Plaintiff
Ed Baeza et. al.

# EXHIBIT "43"

Electronically FILED by Superior Court of California, County of Los Angeles on 12/29/2022 09:19 AM Sherri R. Carter, Executive Officer/Clerk of Court, by E. Gregg,Deputy Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815<br><br>TELEPHONE NO.: 562-342-3011   FAX NO. *(Optional):* 562-724-7007<br>E-MAIL ADDRESS *(Optional):* jmurrin@murrinlawfirm.com<br>ATTORNEY FOR *(Name):* Ed Baeza et. al. | *FOR COURT USE ONLY* |
|---|---|

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES | |
|---|---|
| STREET ADDRESS: 312 N Spring Street | |
| MAILING ADDRESS: 312 N Spring Street | |
| CITY AND ZIP CODE: Los Angeles 90012 | |
| BRANCH NAME: Spring Street Courthouse | |

| PLAINTIFF/PETITIONER: Ed Baeza et. al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital) et. al. | 22STCV38080 |

| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [ x ] summons

   b. [ x ] complaint

   c. [ x ] Alternative Dispute Resolution (ADR) package

   d. [ x ] Civil Case Cover Sheet *(served in complex cases only)*

   e. [  ] cross-complaint

   f. [ x ] other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. Party served *(specify name of party as shown on documents served):*
    Reliant Life Shares, LLC (aka Reliant Capital)

   b. [ x ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
    Christopher Moore Stevens (Registered Agent)

4. Address where the party was served:
   1475 Island Ave., # 1905, San Diego, CA 92101

5. I served the party *(check proper box)*

   a. [ x ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party  (1) on *(date):* 12-21-2022   (2) at *(time):* 9:10am

   b. [  ] **by substituted service.** On *(date):*   at *(time):*   I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

    (1) [  ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

    (2) [  ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

    (3) [  ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

    (4) [  ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):*   from *(city):*   or [  ] a declaration of mailing is attached.

    (5) [  ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |
|---|---|---|

POS-010

| PLAINTIFF/PETITIONER: Ed Baeza et. al.<br><br>DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital) et. al. | CASE NUMBER:<br>22STCV38080 |
|---|---|

5.  c.  ☐  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date):*                   (2)  from *(city):*

    (3)  ☐  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4)  ☐  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  ☐  **by other means** *(specify means of service and authorizing code section):*

    ☐  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a.  ☐  as an individual defendant.

  b.  ☐  as the person sued under the fictitious name of *(specify):*

  c.  ☐  as occupant.

  d.  ☒  On behalf of *(specify):* Reliant Life Shares, LLC (aka Reliant Capital)
    under the following Code of Civil Procedure section:

    ☒  416.10 (corporation)              ☐  415.95 (business organization, form unknown)
    ☐  416.20 (defunct corporation)         ☐  416.60 (minor)
    ☐  416.30 (joint stock company/association)   ☐  416.70 (ward or conservatee)
    ☐  416.40 (association or partnership)     ☐  416.90 (authorized person)
    ☐  416.50 (public entity)             ☐  415.46 (occupant)
                                     ☐  other:

7.  **Person who served papers**

  a.  Name: Eric Sanchez

  b.  Address: 3111 Camino Del Rio N. Ste. 400A San Diego, CA 92108

  c.  Telephone number: 619-399-3278

  d.  The fee for service was: $

  e.  I am:

    (1)  ☐  not a registered California process server.

    (2)  ☐  exempt from registration under Business and Professions Code section 22350(b).

    (3)  ☒  a registered California process server:

      (i)  ☐  owner   ☐  employee   ☒  independent contractor.

      (ii)  Registration No.: 3597

      (iii)  County: San Diego

8.  ☒  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9.  ☐  **I am a California sheriff or marshal** and I certify that the foregoing is true and correct.

Date: 12-28-2022

Eric Sanchez
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)                  (SIGNATURE)

    **PROOF OF SERVICE OF SUMMONS**     

For your protection and privacy, please press the Clear
This Form button after you have printed the form.     | Print this form |   | Save this form |     | Clear this form |

# EXHIBIT "44"

Electronically FILED by Superior Court of California, County of Los Angeles on 01/06/2023 03:11 PM David W. Slayton, Executive Officer/Clerk of Court, by A. Lopez,Deputy Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815<br><br>TELEPHONE NO.: 562-342-3011  FAX NO. *(Optional):* 562-724-7007<br>E-MAIL ADDRESS *(Optional):* jmurrin@murrinlawfirm.com<br>ATTORNEY FOR *(Name):* Ed Baeza, et. al. | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

| PLAINTIFF/PETITIONER: Ed Baeza, et. al.<br>DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | CASE NUMBER:<br>22STCV38080 |
|---|---|
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

    a. ☒ summons

    b. ☒ complaint

    c. ☒ Alternative Dispute Resolution (ADR) package

    d. ☒ Civil Case Cover Sheet *(served in complex cases only)*

    e. ☐ cross-complaint

    f. ☒ other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. Party served *(specify name of party as shown on documents served):*
    AXA Equitable Life Insurance Company

    b. ☐ Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
        under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:
    1290 Avenue of the Americas, New York City, NY 10104

5. I served the party *(check proper box)*

    a. ☐ **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
        receive service of process for the party  (1) on *(date):*      (2) at *(time):*

    b. ☐ **by substituted service.** On *(date):*      at *(time):*      I left the documents listed in item 2 with or
        in the presence of *(name and title or relationship to person indicated in item 3):*

        (1) ☐ **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
            of the person to be served. I informed him or her of the general nature of the papers.

        (2) ☐ **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
            place of abode of the party. I informed him or her of the general nature of the papers.

        (3) ☐ **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
            address of the person to be served, other than a United States Postal Service post office box. I informed
            him or her of the general nature of the papers.

        (4) ☐ I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
            at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
            *(date):*      from *(city):*      **or** ☐ a declaration of mailing is attached.

        (5) ☐ I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

**POS-010**

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Ed Baeza, et. al. | CASE NUMBER: |
| DEFENDANT/RESPONDENT:  Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |

5.  c.  [ x ]  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1)  on *(date):* December 20, 2022       (2)  from *(city):* Long Beach, CA

    (3)  [ ]  with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4)  [ x ]  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d.  [ ]  **by other means** *(specify means of service and authorizing code section):*

    [ ]  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

  a.  [ ]  as an individual defendant.

  b.  [ ]  as the person sued under the fictitious name of  *(specify):*

  c.  [ ]  as occupant.

  d.  [ x ]  On behalf of *(specify):* AXA Equitable Life Insurance Company

    under the following Code of Civil Procedure section:

| | |
|---|---|
| [ x ]  416.10 (corporation) | [ ]  415.95 (business organization, form unknown) |
| [ ]  416.20 (defunct corporation) | [ ]  416.60 (minor) |
| [ ]  416.30 (joint stock company/association) | [ ]  416.70 (ward or conservatee) |
| [ ]  416.40 (association or partnership) | [ ]  416.90 (authorized person) |
| [ ]  416.50 (public entity) | [ ]  415.46 (occupant) |
| | [ ]  other: |

7.  **Person who served papers**

  a.  Name:  Cameron R. Kleinberger

  b.  Address:  7040 E. Los Santos Dr., Long Beach, CA 90815

  c.  Telephone number: 562-342-3011

  d.  **The fee** for service was: $ 30.00

  e.  I am:

    (1)  [ ]  not a registered California process server.

    (2)  [ x ]  exempt from registration under Business and Professions Code section 22350(b).

    (3)  [ ]  a registered California process server:

      (i)  [ ]  owner    [ ]  employee    [ ]  independent contractor.

      (ii)  Registration No.:

      (iii)  County:

8.  [ x ]  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    **or**

9.  [ ]  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 1/6/2023

Cameron R. Kleinberger
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ *Cameron R. Kleinberger*
_____
(SIGNATURE)

# EXHIBIT "45"

Electronically FILED by Superior Court of California, County of Los Angeles on 01/06/2023 03:11 PM David W. Slayton, Executive Officer/Clerk of Court, by A. Lopez,Deputy Clerk

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |
|---|---|
| J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815<br><br>TELEPHONE NO.: 562-342-3011   FAX NO. *(Optional):* 562-724-7007<br>E-MAIL ADDRESS *(Optional):* jmurrin@murrinlawfirm.com<br>ATTORNEY FOR *(Name):* Ed Baeza, et. al. | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF  LOS ANGELES**
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

| | CASE NUMBER: |
|---|---|
| PLAINTIFF/PETITIONER: Ed Baeza, et. al.<br>DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [x] summons

   b. [x] complaint

   c. [x] Alternative Dispute Resolution (ADR) package

   d. [x] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [x] other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. Party served *(specify name of party as shown on documents served):*
      Bank of Utah

   b. [ ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
      under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:
   2605 Washington Blvd, Ogden, UT 84401

5. I served the party *(check proper box)*

   a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
      receive service of process for the party   (1) on *(date):*                (2) at *(time):*

   b. [ ] **by substituted service.** On *(date):*              at *(time):*            I left the documents listed in item 2 with or
      in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
              of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
              place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
              address of the person to be served, other than a United States Postal Service post office box. I informed
              him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
              at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
              *(date):*            from *(city):*              **or** [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

**Page 1 of 2**

Form Adopted for Mandatory Use
Judicial Council of California
POS-010  [Rev. January 1, 2007]

**PROOF OF SERVICE OF SUMMONS**

Code of Civil Procedure, § 417.10

POS-010

| PLAINTIFF/PETITIONER:  Ed Baeza, et. al. | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:  Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |

5.  c.  [x]  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

(1)  on *(date):* December 13, 2022          (2)  from *(city):* Long Beach, CA

(3)  [  ]  with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*) (Code Civ. Proc., § 415.30.)*

(4)  [x]  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

d.  [  ]  **by other means** *(specify means of service and authorizing code section):*

[  ]  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:

a.  [  ]  as an individual defendant.

b.  [  ]  as the person sued under the fictitious name of  *(specify):*

c.  [  ]  as occupant.

d.  [x]  On behalf of *(specify):* Bank of Utah

under the following Code of Civil Procedure section:

| | |
|---|---|
| [x]  416.10 (corporation) | [  ]  415.95 (business organization, form unknown) |
| [  ]  416.20 (defunct corporation) | [  ]  416.60 (minor) |
| [  ]  416.30 (joint stock company/association) | [  ]  416.70 (ward or conservatee) |
| [  ]  416.40 (association or partnership) | [  ]  416.90 (authorized person) |
| [  ]  416.50 (public entity) | [  ]  415.46 (occupant) |
| | [  ]  other: |

7.  **Person who served papers**

a.  Name:  Cameron R. Kleinberger

b.  Address:  7040 E. Los Santos Dr., Long Beach, CA 90815

c.  Telephone number: 562-342-3011

d.  **The fee** for service was: $ 30.00

e.  I am:

(1)  [  ]  not a registered California process server.

(2)  [x]  exempt from registration under Business and Professions Code section 22350(b).

(3)  [  ]  a registered California process server:

(i)  [  ]  owner     [  ]  employee     [  ]  independent contractor.

(ii)  Registration No.:

(iii)  County:

8.  [x]  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**or**

9.  [  ]  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 1/6/2023

Cameron R. Kleinberger
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

▶ *Cameron R. Kleinberger*
_____
(SIGNATURE)

# EXHIBIT "46"

Electronically FILED by Superior Court of California, County of Los Angeles on 01/10/2023 04:33 PM David W. Slayton, Executive Officer/Clerk of Court, by A. Lopez,Deputy Clerk

POS-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| J. Owen Murrin (SBN 75329)<br>MURRIN LAW FIRM<br>7040 E. Los Santos Drive<br>Long Beach, CA 90815<br><br>TELEPHONE NO.: 562-342-3011   FAX NO. *(Optional):* 562-724-7007<br>E-MAIL ADDRESS *(Optional):* jmurrin@murrinlawfirm.com<br>ATTORNEY FOR *(Name):* Ed Baeza, et. al. | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
STREET ADDRESS: 312 N Spring Street
MAILING ADDRESS: 312 N Spring Street
CITY AND ZIP CODE: Los Angeles 90012
BRANCH NAME: Spring Street Courthouse

| | CASE NUMBER: |
|---|---|
| PLAINTIFF/PETITIONER: Ed Baeza, et. al.<br>DEFENDANT/RESPONDENT: Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |
| **PROOF OF SERVICE OF SUMMONS** | Ref. No. or File No.: |

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.

2. I served copies of:

   a. [x] summons

   b. [x] complaint

   c. [x] Alternative Dispute Resolution (ADR) package

   d. [x] Civil Case Cover Sheet *(served in complex cases only)*

   e. [ ] cross-complaint

   f. [x] other *(specify documents):* Stmt of Dmgs; V.E.L. Stip; ADR Packet; NTC of Case Assignment; 1st Amnd. Gen. Order

3. a. Party served *(specify name of party as shown on documents served):*
      John Hancock Life Insurance Company

   b. [ ] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person
          under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*

4. Address where the party was served:
   84 State Street, Boston, MA 02109

5. I served the party *(check proper box)*

   a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to
          receive service of process for the party   (1) on *(date):*          (2) at *(time):*

   b. [ ] **by substituted service.** On *(date):*          at *(time):*          I left the documents listed in item 2 with or
          in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business
              of the person to be served. I informed him or her of the general nature of the papers.

      (2) [ ] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual
              place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing
              address of the person to be served, other than a United States Postal Service post office box. I informed
              him or her of the general nature of the papers.

      (4) [ ] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served
              at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on
              *(date):*          from *(city):*          **or** [ ] a declaration of mailing is attached.

      (5) [ ] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-010 [Rev. January 1, 2007] | **PROOF OF SERVICE OF SUMMONS** | Code of Civil Procedure, § 417.10 |
|---|---|---|

**POS-010**

| | |
|---|---|
| PLAINTIFF/PETITIONER:  Ed Baeza, et. al. | CASE NUMBER: |
| DEFENDANT/RESPONDENT:  Reliant Life Shares, LLC (aka Reliant Capital), et. al. | 22STCV38080 |

5.  c.  [ x ]  **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

   (1)  on *(date):* December 13, 2022          (2)  from *(city):* Long Beach, CA

   (3)  [   ]  with two copies of the *Notice and Acknowledgement of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*) (Code Civ. Proc., § 415.30.)*

   (4)  [ x ]  to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

   d.  [   ]  **by other means** *(specify means of service and authorizing code section):*

   [   ]  Additional page describing service is attached.

6.  The "Notice to the Person Served" (on the summons) was completed as follows:
   a.  [   ]  as an individual defendant.
   b.  [   ]  as the person sued under the fictitious name of  *(specify):*
   c.  [   ]  as occupant.
   d.  [ x ]  On behalf of *(specify):* John Hancock Life Insurance Company
      under the following Code of Civil Procedure section:

   | | |
   |---|---|
   | [ x ] 416.10 (corporation) | [   ] 415.95 (business organization, form unknown) |
   | [   ] 416.20 (defunct corporation) | [   ] 416.60 (minor) |
   | [   ] 416.30 (joint stock company/association) | [   ] 416.70 (ward or conservatee) |
   | [   ] 416.40 (association or partnership) | [   ] 416.90 (authorized person) |
   | [   ] 416.50 (public entity) | [   ] 415.46 (occupant) |
   | | [   ] other: |

7.  **Person who served papers**
   a.  Name:  Cameron R. Kleinberger
   b.  Address:  7040 E. Los Santos Dr., Long Beach, CA 90815
   c.  Telephone number: 562-342-3011
   d.  **The fee** for service was: $ 30.00
   e.  I am:
      (1)  [   ]  not a registered California process server.
      (2)  [ x ]  exempt from registration under Business and Professions Code section 22350(b).
      (3)  [   ]  a registered California process server:
         (i)  [   ] owner      [   ] employee      [   ] independent contractor.
         (ii)  Registration No.:
         (iii)  County:

8.  [ x ]  **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
   **or**
9.  [   ]  **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 1/10/2023

Cameron R. Kleinberger
_____
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

*Cameron R. Kleinberger*
_____
(SIGNATURE)

# EXHIBIT "47"

Electronically FILED by Superior Court of California, County of Los Angeles on 01/17/2023 11:58 PM David W. Slayton, Executive Officer/Clerk of Court, by A. Lopez,Deputy Clerk

1  **WALTON & WALTON, LLP**

2  L. RICHARD WALTON, ESQ. (SBN 226703)
   *RWalton@taxtriallawyers.com*

3  BRIAN M. KANDEL, ESQ. (SBN 180952)
   *BKandel@taxtriallawyers.com*

4  13700 Marina Pointe Drive, Suite 920
   Marina del Rey, CA 90292

5  Ph: (310) 363-7321

6  Fax: (310) 464-3057

7  *Attorneys for Defendants Reliant Life Shares, LLC*
   *and Bank of Utah*

8

9  Christopher Moore Stevens (State Bar No. 153548)
   1010 Wilshire Boulevard, Suite 1011

10  Los Angeles, California 90071
    Telephone:    (310) 990-0459

11  Facsimile:    (213) 402-3224
    E-mail:    stevens.rsn@gmail.com

12  *Attorneys for* Defendant SCOTT L. GRADY

13

14

15  **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

16  **FOR THE COUNTY OF LOS ANGELES**

17

18  ED BAEZA, an individual, et al.          Case No. 22STCV38080

19       Plaintiffs,                         **ANSWER; DEMAND FOR JURY TRIAL**

20           v.

21  RELIANT LIFE SHARES, LLC, a California
    limited liability company, et al,

22

23       Defendants.

24

25       COME NOW, Defendants Reliant Life Shares, LLC ("Reliant"), Bank of Utah ("Bank of

26  Utah"), and Scott L. Grady ("Grady," and together herein, "Defendants") who answer Plaintiffs'

27  unverified Complaint on file herein as follows:

28

*Left margin (vertical):* **WALTON & WALTON LLP**
**13700 MARINA POINTE DRIVE, SUITE 920**
**MARINA DEL REY, CALIFORNIA 90292**

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

Pursuant to Code of Civil Procedure section 431.30, subdivision (d), Defendants deny, generally and specifically, each of the material allegations of the unverified Complaint, and each and every purported cause of action contained therein. Defendants further deny that Plaintiffs have sustained, or will sustain, damages as a result of any alleged act, omission, breach of duty or obligation on the part of Defendants. Plaintiffs are also not entitled to any other form of legal or equitable relief against Defendants, in any amount or form whatsoever.

## AFFIRMATIVE DEFENSES

In addition to the above general denial, Defendants, based on their information and belief and subject to further investigation and discovery, hereby allege the following affirmative defenses. Defendants reserve the right to amend this Answer pursuant to any and all remedies or rights available under any court or rules of procedure or evidence ultimately exercising jurisdiction over these respondents, to identify any additional statutory and/or decisional authorities supporting some or all of the affirmative defenses referenced below and/or claims, defenses and offsets of Plaintiffs. Defendants do not otherwise waive, and specifically reserve the right to assert, additional affirmative defenses based upon statutory and decisional authorities and equitable doctrines. Furthermore, Defendants reserve the right to amend, correct, delete or add additional defenses to the following affirmative defenses based upon Defendants' ongoing investigation and discovery regarding the facts, allegations, and claims alleged in the Complaint.

Each of these answering Defendants now jointly asserts its or his Affirmative Defenses to the Complaint, in an effort to promote efficiency and to save the Court and all Parties time on separate Answers.  That said, each of these Answering Defendants understand that the defenses asserted below may apply to each of them on different factual bases, or at all, and that separate and further delineated defenses may in future arise that may not apply to all of them, if at all.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Cause of Action)

As a first, separate and affirmative defense, Defendants allege, on information and belief, that neither the Complaint nor any cause of action therein states facts sufficient to constitute a cause of action against Defendants.

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

## SECOND AFFIRMATIVE DEFENSE

### (Statutes of Limitation)

As a second, separate and affirmative defense, Defendants allege, on information and belief, that the Complaint and each cause of action contained therein are barred by the applicable statute of limitations stated in Part Two, Title II, Chapter 3, of the Code of Civil Procedure, including, but not limited to, sections 335.1, 337, 337.1, 337.15, 338(a-k), 338.1, 339, 340(1-5), 340.5, 340.6, 343, 346, 347 and 430.10.

## THIRD AFFIRMATIVE DEFENSE

### (Comparative Negligence)

As a third, separate and affirmative defense, Defendants allege, on information and belief, that Plaintiffs themselves were negligent and/or careless in and about the matters alleged in the Complaint, and to the extent said negligence and/ or carelessness caused and/ or contributed to injuries and/or damages, if any, Plaintiffs' recovery should be barred or proportionately reduced.

## FOURTH AFFIRMATIVE DEFENSE

### (Neutral Intermediary)

As a fourth, separate and affirmative defense, Defendant Bank of Utah alleges that it was a neutral intermediary and the mere conduit for funds of Plaintiffs, that it owed Plaintiffs no duties beyond conveying their investment monies in accordance with their wishes, and that it did so. Defendant Bank of Utah further alleges that Plaintiffs and each of them were fully aware of the terms of its agreement to provide services regarding their investment, and that their knowledge of its very limited role fully and completely bars any recovery herein.

## FIFTH AFFIRMATIVE DEFENSE

### (Conduct of Others)

As a fifth, separate and affirmative defense, Defendants allege, on information and belief, that should Plaintiffs recover damages against Defendants, Defendants are entitled to have the amount abated, reduced or eliminated to the extent other third parties' fault caused or contributed to Plaintiffs' damages, if any.

///

**SIXTH AFFIRMATIVE DEFENSE**

**(Superseding/ Intervening cause)**

As a sixth, separate and affirmative defense, Defendants allege, on information and belief, that other people or entities' later misconduct and/or intentional acts were superseding and/or intervening causes for Plaintiffs' injuries and/or damages, if any there were, for which these answering Defendants cannot be responsible.

**SEVENTH AFFIRMATIVE DEFENSE**

**(Failure to Mitigate)**

As a seventh, separate and affirmative defense, Defendants allege, on information and belief, that Plaintiffs are barred from claiming or recovering any relief set forth in the Complaint and each and every cause of action therein because Plaintiffs failed to exercise reasonable care and diligence to mitigate any alleged damages, if any there were, and have further unreasonably delayed in the submission of their claims for any alleged loss.

**EIGHTH AFFIRMATIVE DEFENSE**

**(No Reliance)**

As an eighth, separate and affirmative defense, Defendants allege, on information and belief, that they did not make any representations to Plaintiffs and thus, Defendants are informed and believe and thereon allege that Plaintiffs did not reasonably rely, or rely in fact, upon any alleged actions or alleged inactions, alleged representations or alleged omission by Defendants.

**NINTH AFFIRMATIVE DEFENSE**

**(Investigation)**

As a ninth, separate and affirmative defense, Defendants allege, on information and belief, that Plaintiffs and/or Plaintiffs' agents and/ or employees, or both, conducted a complete unhindered inspection and investigation of the business transactions referred to in said Complaint prior to the time the transactions occurred, and Plaintiffs knew, or should have known, of the character and condition of said transactions, including those matters about which Plaintiffs now complain; and that by reason of said inspection and investigation, Plaintiffs are presumed to have relied upon their

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

own observations or on the observations of their agents and/or employees and not upon the representations asserted or made by Defendants, if any there were, completely barring recovery.

## TENTH AFFIRMATIVE DEFENSE

### (Ratification)

As a tenth, separate and affirmative defense, Defendants allege, on information and belief, that Plaintiffs ratified and confirmed the transactions which are the subject matter of the Complaint, and every representation, if any, made by these Defendants.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Superior Knowledge)

As an eleventh, separate and affirmative defense, Defendants allege, on information and belief, that Plaintiffs are barred from claiming or recovering any relief set forth in the Complaint and each and every cause of action therein because Plaintiffs had superior knowledge in and about the matters alleged to have been represented by Defendants, if any, which knowledge precludes any recovery based thereupon.

## TWELFTH AFFIRMATIVE DEFENSE

### (No Breach of Duty)

As a twelfth, separate and affirmative defense, Defendants deny that they have breached any duty to Plaintiffs, giving rise to the damages alleged in the Complaint; and further allege any liability and damages incurred herein by Plaintiffs are due solely and totally to the acts or omissions of agents of Plaintiffs herein, for which Defendants have no responsibility.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (No Proximate Cause or Cause in Fact)

As a thirteenth, separate and affirmative defense, Defendants allege, on information and belief, that Plaintiffs are barred from claiming or recovering any relief set forth in the Complaint and each and every cause of action therein because Defendants were not the proximate cause or cause in fact of any injury alleged by Plaintiffs.

///

///

1

**FOURTEENTH AFFIRMATIVE DEFENSE**

2

**(Standing)**

3

As a fourteenth, separate and affirmative defense, Defendants allege, on information and

4

belief, that Plaintiffs are barred from claiming or recovering any relief set forth in the Complaint

5

and each and every causes of action therein because Plaintiffs lack standing.

6

**FIFTEENTH AFFIRMATIVE DEFENSE**

7

**(Immunities)**

8

As a fifteenth, separate and affirmative defense, Defendants allege, on information and

9

belief, that statutory and common law immunities apply to the acts and/or omissions complained of

10

in the Complaint on file herein.

11

**SIXTEENTH AFFIRMATIVE DEFENSE**

12

**(Good Faith)**

13

As a sixteenth, separate and affirmative defense, Defendants allege, on information and

14

belief, that all their actions were taken in good faith and with a reasonable belief that such actions

15

were lawful. These answering Defendants' practices, particularly those pertinent to allegations in

16

the Complaint, are or were lawful in that these answering Defendants have complied with any and

17

all applicable statues, regulations and common law requirements.

18

**SEVENTEENTH AFFIRMATIVE DEFENSE**

19

**(Contractual and/or Equitable Indemnity)**

20

As a seventeenth, separate and affirmative defense, Defendants allege, on information and

21

belief, that if answering Defendants are found in some manner responsible to Plaintiffs for the

22

claims set forth in the Complaint, any such injuries, damages, or other costs were proximately and

23

solely caused by and contributed to by the negligence, fault, acts, or omissions of other individuals

24

or entities or Defendants for whose conduct Defendants are not responsible and whom are subject to

25

Defendants' right of contractual and/or equitable indemnity, and whom are hereby put on notice of

26

such claim.

27

///

28

///

**WALTON & WALTON LLP**
**13700 MARINA POINTE DRIVE, SUITE 920**
**MARINA DEL REY, CALIFORNIA 90292**

**WALTON & WALTON LLP**
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Intentional Acts of Others)

As an eighteenth, separate and affirmative defense, Defendants allege, on information and belief, that the sole and/or proximate cause of the damages claimed by Plaintiffs was and is due to the willful and intentional acts of persons and/or entitles other than Defendants.

## NINETEENTH AFFIRMATIVE DEFENSE

### (Business Judgment)

As a nineteenth, separate and affirmative defense, Defendants allege, on information and belief, that Plaintiffs are barred from claiming or recovering any relief set forth in the Complaint and each and every cause of action alleged therein on the grounds that Defendants exercised reasonable care, prudence, skill, and business judgment with respect to Plaintiffs and Defendants' decisions affecting Plaintiffs, and such reasonable care, prudence, skill, and business judgment bars the recovery sought.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Assumption of Risk)

As a twentieth, separate and affirmative defense, Defendants allege, on information and belief, that Defendants are informed and believe and thereon allege that Plaintiffs assumed the risk, if any there was, at the time and place of the incident(s) referred to in the Complaint.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Punitive Damages)

As a twenty-first, separate and affirmative defense, Plaintiffs' improperly seek punitive damages herein, which are not warranted by any of the facts or causes of action in the Complaint. In seeking punitive damages, Plaintiffs are improperly attempting to take advantage of statutory laws of the State of California and decisions of the California Supreme Court with respect to allowing punitive damages. The decisions of law, if applied in this case, would contravene these Defendants' constitutional rights to substantive and procedural due process of law as preserved for these Defendants by the Fourteenth Amendment of the United States Constitution, and further would constitute a denial by this Court of these Defendants' constitutional right to equal protection

**WALTON & WALTON LLP**
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

under the law as provided by the Fourteenth Amendment; and further would constitute cruel and unusual punishment as well as an excessive fine as proscribed by the Eighth Amendment; and further would constitute a taking of private property for public use without just compensation, and such taking would contravene these Defendants' constitutional rights preserved by the Fourteenth Amendment.

### TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Consent)

As a twenty-second, separate and affirmative defense, Defendants allege, on information and belief, that Plaintiffs consented to all the acts of the Defendants complained of in the Complaint, and that said consent was both express and implied.

### TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Avoidable Consequences)

As a twenty-third, separate and affirmative defense, Defendants allege, on information and belief, that Plaintiffs are barred from claiming or recovering any relief set forth in the Complaint and each and every cause of action alleged therein on the grounds that Plaintiffs' damages, if any, should have been foreseen by Plaintiffs and could have been avoided by the reasonable efforts of the Plaintiffs. Recovery for such damages should, therefore, not be allowed.

### TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Remote and Speculative Damages)

As a twenty-fourth, separate and affirmative defense, Defendants allege, on information and belief, that Plaintiffs are barred from claiming or recovering any relief set forth in the Complaint and each and every cause of action alleged therein on the grounds that the damages sought are excessively remote and speculative, and thus are not cognizable, compensable, or recoverable.

### TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Laches)

As a twenty-fifth, separate and affirmative defense, Defendants allege that Plaintiffs are barred from recovery under the Complaint by the doctrine of laches.

///

ANSWER TO COMPLAINT

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

### TWENTY-SIXTH AFFIRMATIVE DEFENSE

**(Estoppel)**

As a twenty-sixth, separate and affirmative defense, Defendants allege that Plaintiffs are barred from recovery under the Complaint by the doctrine of estoppel.

### TWENTY-SEVENTH AFFIRMATIVE DEFENSE

**(Waiver)**

As a twenty-seventh, separate and affirmative defense, Defendants allege, on information and belief, that each claim in the Complaint has been waived in whole or in part by reason of Plaintiffs' own acts and omission and any acts and omissions of its agents, and, to the extent waived, is barred.

### TWENTY-EIGHTH AFFIRMATIVE DEFENSE

**(Unclean Hands)**

As a twenty-eighth, separate and affirmative defense, Defendants allege, on information and belief, that Plaintiffs have been guilty of inequitable conduct with respect to the matters alleged in the Complaint, and such inequitable conduct shall absolutely bar Plaintiffs' recovery herein under the equitable doctrine of unclean hands.

### TWENTY-NINTH AFFIRMATIVE DEFENSE

**(Authorization, Excuse, Justification and/or Privilege)**

As a twenty-ninth, separate and affirmative defense, Defendants allege, on information and belief, that Defendants' alleged actions, if done at all, are justified and/or privileged since, at all relevant times herein, Defendants acted in accordance with and as authorized by applicable statutes, regulations, ordinances, other laws, and/or under authorities expressly or impliedly granted by Plaintiffs.  As a matter of law, any conduct or actions undertaken by or on behalf of Defendants regarding Plaintiffs were done in good faith, without malice, and pursuant to the reasonable conduct of business, and thus were privileged.

///

///

///

**WALTON & WALTON LLP**
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

1

2

### THIRTIETH AFFIRMATIVE DEFENSE

### (Failure to Join Indispensable / Necessary Parties)

As a thirtieth, separate and affirmative defense, Defendants allege, on information and belief, that any harm or damage suffered by Plaintiffs as alleged in the Complaint was caused by the actions of other parties or entities not currently named in this suit, and which may be indispensable and/or necessary parties to this suit, and that to proceed with this litigation without such parties' or entities' involvement would be contrary to the interests of justice, and that the Complaint is subject to dispositive action by the Court.

### THIRTY-FIRST AFFIRMATIVE DEFENSE

### (Reliant Life Shares does not broker "securities")

As a thirty-first, separate and affirmative defense, Defendants allege that the life settlement products brokered by Defendants are not securities under California and federal regulations, including without limitation: (i)77c 3(a)(11) because they are only offered intrastate, (ii) 15 U.S.C. § 77c 3(a)(8) as insurance policies, and (iii) 17 C.F.R. § 230.1001 as being compliant with relevant California exemptions.

### THIRTY-SECOND AFFIRMATIVE DEFENSE

### (Exempt from Registration as Broker or Dealer)

As a thirty-second, separate and affirmative defense, Defendants allege, on information and belief, that Defendants are exempt from registering as a broker or dealer because the life settlement products offered by Defendant Reliant Life Shares are exempt from registration.

### THIRTY-THIRD AFFIRMATIVE DEFENSE

### (Disclaimers/Exclusions)

As a thirty-third, separate and affirmative defense, Defendants allege, on information and belief, that Plaintiffs' false representation claims, however averred, are barred by written disclaimers, notices and/or exclusions set forth on controlling documents.

///

///

///

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

### THIRTY-FOURTH AFFIRMATIVE DEFENSE

**(No Economic Loss)**

As a thirty-fourth, separate and affirmative defense, Defendants allege, on information and belief, that Plaintiffs cannot recover from Defendants because Plaintiffs have not suffered any economic loss or damages.  Further, Defendants allege that Plaintiffs have not been damaged and cannot be damaged, because the policy benefits will eventually mature, providing Plaintiffs the fixed rate of return they bargained for.

### THIRTY-FIFTH AFFIRMATIVE DEFENSE

**(No Requisite Intent)**

As a thirty-fifth, separate and affirmative defense, Defendants allege that they did not act with the requisite intent with regard to the acts alleged by Plaintiffs. Plaintiffs are therefore barred from recovery of any damages from Defendants.

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

**(No Alter-Ego/Derivative Liability)**

As a thirty-sixth, separate and affirmative defense, Defendants allege that they are or were a successor-in-interest, predecessor-in-interest, parent, subsidiary, or alter ego of any Defendants named in the Complaint. Defendants are therefore not liable for any acts or omissions of any other defendant herein under an alter-ego or derivative liability theory.

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

**(No Fraud/Oppression/Malice – Civil Code §3294)**

As a thirty-seventh, separate and affirmative defense, Defendants allege that the Complaint fails to state facts sufficient to constitute fraud, oppression or malice as those terms are used in Civil Code §3294, and therefore fails to state a claim that can support an award of punitive damages.

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

**(Inherent Risk)**

As a thirty-eighth, separate and affirmative defense, Defendants allege, on information and belief, that Defendants allege that at all times relevant to the matters alleged in the Complaint, Plaintiffs knew or should have known of the inherent hazards, risks or potential dangers of the

financial products alleged to be at issue, and were therefore a sophisticated and knowledgeable user of each such financial product. As such, Defendants is not liable to Plaintiffs for any alleged failure to warn, inform, or apprise of such hazards, risks or dangers.

## THIRTY-NINTH AFFIRMATIVE DEFENSE

### (Lack of Privity)

As a thirty-ninth, separate and affirmative defense, Defendants allege that there is no relationship between Defendants and Plaintiffs that legally warrants a monetary recovery or otherwise,  and as a consequence, any recovery by plaintiffs ought to be diminished or barred.

## FORTIETH AFFIRMATIVE DEFENSE

### (Failure to Perform Conditions under Contract)

As a fortieth, separate and affirmative defense, Defendants allege, on information and belief, that Plaintiffs have not fully and fairly performed all necessary conditions under the alleged contract(s), to the extent they exist.

## FORTY-FIRST AFFIRMATIVE DEFENSE

### (Performance and Discharge)

As a forty-first, separate and affirmative defense, Defendants allege, on information and belief, that Defendants have completely and fully performed and discharged any and all obligations and duties arising under the alleged contract(s), to the extent they exist.

## FORTY-SECOND AFFIRMATIVE DEFENSE

### (Anticipatory Breach)

As a forty-second, separate and affirmative defense, Defendants allege, on information and belief, that all Defendants herein were fully excused from performance of the alleged contract(s), to the extent it/they exist(s), or any condition precedent thereto, by Plaintiffs' anticipatory breach of the alleged contract(s), to the extent it/they exist(s).

## FORTY-THIRDAFFIRMATIVE DEFENSE

### (Lack of Notice)

As a forty-third, separate and affirmative defense, Defendants allege, on information and belief, that Plaintiffs are barred from any recovery, because of Plaintiffs' lack of notice to Defendants.

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

**WALTON & WALTON LLP**
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

### FORTY-FOURTH AFFIRMATIVE DEFENSE

**(Failure of Performance)**

As a forty-fourth, separate and affirmative defense, Defendants allege, on information and belief, that Plaintiffs are barred from recovery of damages or other relief to the extent that they or others failed to perform conditions precedent, concurrent or subsequent under the alleged contract(s), to the extent it/they exist(s).

### FORTY-FIFTH AFFIRMATIVE DEFENSE

**(Failure of Consideration)**

As a forty-fifth, separate and affirmative defense, Defendants allege, on information and belief, that Plaintiffs are barred from any recovery because Defendants did not receive the consideration arising in the alleged contract(s), to the extent it/they exist(s).

### FORTY-SIXTH AFFIRMATIVE DEFENSE

**(No Treble Damages)**

As a forty-sixth, separate and affirmative defense, Defendants allege that treble damages are unwarranted on the facts or causes of action pled by Plaintiff.

### FORTY-SEVENTHAFFIRMATIVE DEFENSE

**(Improper Venue)**

As a forty-seventh, separate and affirmative defense, Defendants allege that venue of this matter is properly had in arbitration before JAMS, pursuant to a contract signed with Plaintiff.

### RESERVATION OF RIGHTS

Each of these answering Defendants has asserted its or his Answer and Affirmative Defenses to the Complaint jointly, in an effort to promote efficiency and to save the Court and all Parties time on separate Answers. That said, each of these Answering Defendants understand that the defenses asserted above may apply to each of them on different factual bases, and that further separate defenses may in future arise that may not apply to all of them. They thus reserve the right to, in future, clarify how each of these Affirmative Defenses applies to each of them, and to assert new, different, or additional affirmative defenses above and beyond those pled above.

1      Further, Defendants presently have insufficient knowledge or information upon which to

2 form a belief as to whether they may have additional, as yet unasserted, affirmative defenses.

3 Defendants therefore reserve their rights to assert additional affirmative defenses in the event that

4 further proceedings, pleadings, discovery, or other future developments indicate such would be

5 appropriate.

6 **PRAYER FOR RELIEF**

7      WHEREFORE, Defendants request judgment as follows:

8      1.   That Plaintiffs take nothing by way of their Complaint;

9      2.   That the Complaint be dismissed with prejudice;

10      3.   That Plaintiffs' agency allegations and defenses thereto be adjudicated by a bench trial

11 and not a jury trial, as such issues are equitable in nature;

12      4.   That if Defendants are found liable, the degree of legal responsibility of Plaintiffs and

13 others, and liability for the resulting damages for that legal responsibility, be determined and

14 apportioned in accordance with California Civil Code §1431 *et seq.*;

15      5.   That Defendants recover their costs of litigation, including reasonable attorney's fees, as

16 allowed by law;

17      6.   That this matter be hear by the proper venue; and

18      7.   That the Court order such other and further relief as it deems proper and just after

19 hearing the merits of this matter.

20           Respectfully submitted,

21 DATED: January 17, 2023        WALTON & WALTON, LLP

22

23           By: _____

24           L. Richard Walton
          *Attorneys for Defendants Reliant Life Shares, LLC*

25           *and Bank of Utah*

26

27

28

**WALTON & WALTON LLP**
**13700 MARINA POINTE DRIVE, SUITE 920**
**MARINA DEL REY, CALIFORNIA 90292**

14

Dated:  January 17, 2023

LAW OFFICES OF CHRISTOPHER M. STEVENS

By:_____

Christopher M. Stevens
*Attorney for Scott L. Grady*

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

15

1

**<u>DEMAND FOR JURY TRIAL</u>**

2          COMES NOW Defendants, Reliant Life Shares, LLC, Bank of Utah, and Scott Grady, and

3 hereby request that any trial which may be had of this matter occur before a jury of their peers, as to

4 all issues so triable.

5                                        Respectfully submitted,

6 DATED: January 17, 2023           WALTON & WALTON, LLP

7

8 By: _____

9 L. Richard Walton
*Attorneys for Defendants Reliant Life Shares, LLC and Bank of Utah*

10

11 Dated:  January 17, 2023           LAW OFFICES OF CHRISTOPHER M. STEVENS

12

13 By: _____

14 Christopher M. Stevens
*Attorney for Scott L. Grady*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 4640 Admiralty Way, Fifth Floor, Marina del Rey, California 90292.

On January 17, 2023, I served the foregoing document described as **ANSWER TO COMPLAINT AND DEMAND FOR JURY TRIAL** on the interested parties in this action by using the OneLegal eservice application, and generally as follows:

J. Owen Murrin
Murrin Law Firm
7040 E. Los Santos Drive
Long Beach, CA 90815
Email:  jmurrin@murrinlawfirm.com
*Attorney for Plaintiffs*

☐  **BY PERSONAL SERVICE:** I caused the above entitled document to be hand-delivered to the parties listed above

☒  **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address ssalgado@taxtriallawyers.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒  (State) I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Executed on January 17, 2023, at Fontana, California.


SHARON SALGADO

WALTON & WALTON LLP
13700 MARINA POINTE DRIVE, SUITE 920
MARINA DEL REY, CALIFORNIA 90292

**<u>PROOF OF SERVICE</u>**

I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 13700 Marina Pointe Drive, Suite 920, Marina del Rey, California 90292.

On January 20, 2023, I served the foregoing document described as **NOTICE OF REMOVAL BY DEFENDANT BANK OF UTAH, TRUSTEE OF THE RELIANT LIFE SHARES SERIES STATUTORY TRUST (ERRONEOUSLY SUED AS BANK OF UTAH), PURSUANT TO 28 U.S.C. §§ 1331, 1441 & 1446** on the interested parties in this action by using the Court's Cm/ECF filing system, and generally as follows:

J. Owen Murrin
Murrin Law Firm
7040 E. Los Santos Drive
Long Beach, CA 90815
Email:  jmurrin@murrinlawfirm.com
*Attorney for Plaintiff*

☐  **BY PERSONAL SERVICE:** I caused the above entitled document to be hand-delivered to the parties listed above

☒  **BY E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent from e-mail address ssalgado@taxtriallawyers.com to the persons at the e-mail addresses listed in the Service List.  I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒  (State) I declare under penalty of perjury under the laws of the state of California that the foregoing is true and correct.

Executed on January 20, 2023, at Fontana, California.

SHARON SALGADO