J. Owen Murrin (SBN 75329)
**Murrin Law Firm**
7040 E. Los Santos Drive
Long Beach, California 90815
Phone: 562-342-3011
Fax: 562-724-7007
**E-mail: jmurrin@murrinlawfirm.com**
Attorneys for PLAINTIFF INVESTORS

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES - SPRING STREET COURTHOUSE

PLAINTIFFS:
ED BAEZA, an individual;
CONCEPCION BAEZA, an individual;
BASSIR ANSARY, an individual;
PAUL BUGLER, an individual;
WALTER BUGLER, an individual;
JAMES CIRILE, an individual;
NATHAN COLEMAN, an individual;
GAMAN, LLC;
GENE GOLDEN, an individual;
JOSEPH GOODALE, an individual;
RACHEL GILA, an individual;
TRUDY BELINDA JOHNSON, an individual;
CHARLES LAWRENCE, an individual;
ORSON K. LEONG, an individual;
PETER J. LOWE, an individual;
BARBARA THORSELL, an individual;
MARK THORSELL, an individual;
CLIFFORD RITZ, an individual;
STEVEN C. ROEMER, an individual;
GREG SCHMITT, an individual;
JOHN STOCKSDALE, an individual;
JENNIFER VANCE, an individual
YEYO, LLC;

              Plaintiffs,
        v.
RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.;

Case No.
**SECOND AMENDED COMPLAINT**
1. VIOLATION OF CORPORATE CODE §§25401 & 25501
2. BREACH OF FIDUCIARY DUTY
3. CONVERSION
4. NEGLIGENCE – GROSS NEGLIGENCE
5. SELLING UNREGISTERED SECURITIES
6. VIOLATIONS OF CORPORATE CODE §§25004 & 25501.5; AND C.C.P. §1029.8
7. INTENTIONAL MISREPRESENTATION /FALSE PROMISE
8. VIOLATION OF CORPORATE CODE 3372
9. ACCOUNTING
10. VIOLATION OF SECTION 5 OF THE SECURITIES ACT (UNREGISTERED SECURITY)
11. VIOLATION OF SECTION 15 OF THE EXCHANGE ACT BY ACTING AS A BROKER-DEALER OR AGENT OF SAME WITHOUT REGISTRATION
12. BREACH OF CONTACT/RECISSION
13. UNFAIR COMPETITION AND VIOLATION OF CODE SECTION 17200 et seq.
14. FINANCIAL ELDER ABUSE (Welfare and Institutions Code § 15600 et seq.)
15. AIDING AND ABETTING FRAUD AND BREACH OF FIDUCIARY DUTY
16. VIOLATION OF SEC RULE 10-B-5
17. CONSPIRACY
18. VIOLATION OF CONSUMER LEGAL

1
**SECOND AMENDED COMPLAINT**

RMS TRUST;
PRINCIPLE FINANCIAL SERVICES, INC.;
SCOTT GRADY;
PAUL ROY;
DAVID UNDERWOOD;
SHAWN DAVENPORT;
LARRY BAGBY;
BRENT BORCHERT;
MARK SANSOUCY;
LARRY TUPLER;
JOEL KLEINFELD;
RLM TRUST;
VINCENT BOVINO;
UMB BANK N.A.;
BANK OF UTAH;
FIRST WESTERN TRUST BANK;
PACIFIC LIFE INSURANCE COMPANY;
LINCOLN FINANCIAL GROUP;
PRINCIPLE FINANCIAL GROUP;
AVIVA LIFE AND ANNUITY;
NASSAU LIFE INSURANCE COMPANY
AKA REINSURANCE GROUP HOLDINGS,
L.P, .AND FORMERLY KNOWN AS
PHOENIX COMPANIES; THE PENN
MUTUAL LIFE INSURANCE COMPANY;
LINCOLN BENEFIT LIFE;
BENEFICIAL LIFE INSURANCE CO.;
PHL VARIABLE INSURANCE COMPANY;
RELIASTAR LIFE INSURANCE COMPANY;
AXA EQUITABLE LIFE INSURANCE
COMPANY;
ZURICH AMERICAN LIFE INSURANCE
COMPANY;
JOHN HANCOCK LIFE INSURANCE
COMPANY OF NEW YORK;
and DOES 1-20

   Defendants

REMEDIES ACT
19. CONSTRUCTIVE TRUST/RECEIVERSHIP
20. ALTER EGO
21. FRAUDULENT TRANSFER
22. CONSTRUCTIVE FRAUD
23. RESCISSION
24. VIOLATION OF PENAL CODE §496

**JURY TRIAL REQUESTED**

   PLAINTIFFS, referred to as investors or customers (singular or plural), allege the following for themselves but also for others similarly situated, the following based upon personal knowledge, and

upon information and belief as to all other matters, based upon, inter alia, the investigation conducted by and through their attorneys, which included among other things, a review of the Defendants' records, public documents, announcements, United States Securities and Exchange Commission (S.E.C.) filings, wires and releases issued by Defendants, and information obtained on the Internet. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth hereinafter after reasonable discovery as follows:

## NATURE OF CASE

1.    Defendants are categorized into three groups for ease of understanding. One group is the Reliant Defendants.  When the term Defendants is used hereinafter, by default that is referring to the Reliant Defendants, the first group of Defendants, and includes all Defendants who are not Insurance Companies or Bank/ escrow companies and include persons or entities engaged in developing, selling, or servicing the life settlement products to Plaintiffs which products are the subject matter of this suit. Specifically it includes all Defendants except defendants in the next two groups. The second group of Defendants are the Insurance company Defendants, generally referred to as such. The third group of Defendants are those acting as bank/escrow companies and named such. It is alleged, upon information and belief that the Reliant Defendants movement of their policies of insurance that they sell to investors from Christiana Bank to UMB Bank, to Bank of Utah, to First Western Trust Bank is indicative of issues that are disturbing and go to revealing acts of impropriety of the sort alleged herein and go to show that the Reliant Defendants used these banks to further their deceptive practices against investors generally and these investors in particular.   The latter two groups are mainly sued as accessories, aiders and abettors and are also liable for themselves not doing due diligence, monitoring and oversight.

2.    The reason there is confusion over who the Reliant Defendant are is because Defendants have purposefully made it so. Defendants frequently use the term "Reliant" but what and who Reliant is, is something these Defendants try to maintain as a mystery. This confusion is the crux of various deceptive causes of action alleged herein especially the cause of action alleging violation of the Civil Code §1770 et seq.   Reliant uses different names and including deviations of the name "Reliant" or its

initials including Reliant Life Shares or RLM.  Sometimes especially in commercials, it uses Reliant Capital. Reliant uses all sorts of other terms covered in the complaint. Even if they are not part of Reliant, if they are not an insurance company or a Bank/escrow company, they are considered a Reliant Defendant for this complaint.    Also, when Reliant is used, it refers to any number these Reliant Defendants which includes companies that work with and through Reliant.  For example, found in a Reliant purchase agreement in 2016, is reference to a 2010 Irrevocable Trust of the BBC, the RLM Trust, and Joel Kleinfeld so they come under the umbrella of the term Reliant when used in this complaint.  Later in a purchase agreement dated July 13, 2017, there is reference to the RLM Trust and Joel Kleinfeld. Therefore the are also included in the umbrella of the term Reliant for purposes of this complaint   By February of 2018, there is reference to a RLM Trust and RLS Trust in a Reliant purchase agreement, and a month later there is reference to an SLG Trust in a purchase agreement, so these entities are included in the term Reliant when used in this complaint. How all these defendants are related is not explained to the investors by Reliant or its sales force, although it is believed that these individuals or entities are controllers and operators of an "endeavor" or "enterprise" that for purpose of this complaint are referred to as Reliant as well.   Also when terms like "endeavor" or "enterprise" are used in this complaint, they are included under the term Reliant as used in this complaint.  Note whenever the term "investors" is used, it refers to Plaintiffs)

3.    At the same time that all the above  individuals and entities are in the Reliant umbrella, they all will want to  declare themselves independent, separate, and apart from Reliant.  While Plaintiffs dispute this, it does not matter, because for purposes of this complaint, Reliant by definition refers to all but the insurance companies, the bank and escrow companies. The facts will show that all these entities and individuals are not separate and distinct from themselves no matter what name they use or who they try to create legal distinctions.  The endeavor or enterprise these individuals and entities work for is shrouded in mystery.  Some of these companies claim to be separate and apart from Reliant but the facts will show they are not.   They work together and use each other's staff, and they will claim some of these investments are not operated by Reliant Defendants, but operated by RLS Financial Services, Inc, Principle Financial Services, Inc., and any of the other Reliant Defendants. These companies will try to claim a separate existence from Reliant, but that separate existence appears blurry and is a sham,  as the

4

**SECOND AMENDED COMPLAINT**

companies are so intertwined that it leaves Plaintiffs or any consumer confused an tricked thereby. Also it appears these companies were formed to appear separate in light of the impending downfall or complaints surrounding Reliant are a conduit to continue in a different form-thus the fraudulent transfer causes of action as to these companies.  Investors (including the Plaintiffs herein) are led to believe that they are dealing with Reliant when these other companies appear on the paperwork. Also the same persons seem to be operating having arisen from Reliant and Principle Financial Services, Inc or RLS Financial Services.  They share and operate together in such a way that it is alleged there is a merger of identity. Therefore, whenever there is a reference to Reliant, it applies equally to Principle Financial Services, RLS Financial Services Inc. and the other companies listed herein and these companies.

4.      As a result of the above, these Reliant Defendants misrepresented themselves to the investors as far as the source, sponsorship, approval, or certification of services with one another, all-in violation of Civil Code §1770 et seq. It is alleged that these Defendants are also moving targets, as Reliant is constantly being reconfigured or is a loose group of people who want to claim that they do their own thing separately, but they are all interrelated and sued as such, thus the terms "endeavor" or "enterprise" are appropriate terms for Reliant or the group of people behind the scenes that operate Reliant. They all use the same model of making insurance policies on others as a syndicated item to multiple investors. These insurance policies are sourced from the same methods.   They all use the same sales techniques, and misrepresentations regarding the need for future premiums.  It is alleged upon information and belief that they all procure their policies from the same source, which source is alleged to be a criminal enterprise.   As will be seen, one investor on the same day, bought two groups of Life settlement investments, one from Reliant and the other from Principle Financial Services. As far as he knew, it was the same company with which he was dealing. This is a problem because it means that there is uncertainty of how and who will handle the distributions if and when the policies mature, and who is responsible to keep the investors informed. This is true even though they all claim to use the independent bank or trust model.

5.      The above-mentioned Defendants (the Reliant Defendants along with their endeavor and enterprise) developed a misleading narrative about how good the investments and how extraordinary their services were that were they sold to Plaintiffs.  These Defendants engaged in conduct that created

the false impression that the life settlements were restructured and sold with minimal risks and would pay off within the expected time period. These Defendants misrepresented the risk to the investors of having to pay future of out-of-pocket payments to keep the policies in force.  These Defendants told the Investors, "it rarely if ever happens," that the projected premium reserves would not cover future premiums.  These Defendants failed to disclose material information that future premiums would increase substantially as the insured got older or who the premiums are calculated.  These defendants misled investors about their projected annual returns and falsely represented to investors that their investments were safe and were independently protected.    Investors were kept in the dark as to information about the insured, including the names and other important characteristics of the insureds they were supposedly investing in and how that policy was procured.  If they knew how the policy was procured, they would be alarmed and would not want to be a part of this investment and/or it would have exposed this investment for what it is, a devious investment in a devious industry.

6.    The only way that Reliant Defendants could sell this investment to anyone is if they overstated the safety and benefits of the investments, if they did not adhere to security and other laws, and if they hid all the bad facts and bad reviews on the internet, and if they emphasized the occasional winners to make new investors believe, he or she he will benefit from a quick death benefit and high return on investment.  The reality is that there is a higher probability that investors will have to pay additional premiums, than what was represented or implied in the sales materials.  They were deceived about the need to pay additional premiums, how those premiums might affect them and their heirs, and the return on this would on this investment, sometimes to the point that that the return would be negative.  Unfortunately, Defendants do not tell Plaintiffs the real odds of realizing a distribution right away. Early distributions do not seem to happen that often, as many investors have become extremely disappointed over the years for having to pay a premium that they were not expecting based upon the sales presentation.   Having to pay premiums saddles the investor and/or their heirs with obligations that are often unpredictable and hard to meet.  This is not fully explained by Defendants in the sales presentation, and makes the investment not suitable or in the investor's best interests.   The attrition rate (investors who drop out of this investment because of the hardship to pay additional premium) is alleged to be significant and is not disclosed but this is a deceit too because Defendants sales pitch to

new investors includes the opportunity to get out of the investment with their money back whenever they want, but this has been turned around to not be honored  except upon onerous conditions that do not make sense.   Again, this is another big deceit.  What this means is that the only way Defendants can sell this investment to investors like this plaintiff is if Defendants are deceptive and that is how they sold this to Plaintiffs.

7.    Any adverse reviews or criticism of the Reliant program is monitored by these defendants and manipulated out of public view so Defendants will not be tainted by negative internet reviews.  This manipulation which is a purge of bad internet reviews is not only deceptive but also violates securities and other laws because it involves the concealment of material facts. All Defendants need to be held accountable- this includes the Reliant Defendants but any of the Insurance companies, named herein and or the bank/escrow companies to the extent they allow the above all-around deception program to be perpetrated on innocent investors which in this case is what happened to these Plaintiffs.

8.    Defendants misrepresented material facts and omitted to disclose material facts. The real odds of how well a person will do in the Reliant Defendants' investment is not properly conveyed to the investors by Defendants, nor are the problems.  What happens if the insured outlives the investor?  Are the heirs of the investor on the hook?  How often are investors paying out more in premiums than they will realize once the death benefit is distributed, or how often is there a negative return on investment?  Defendants characterize these investments as mainstream investments, and "better than the stock market" when they know or should know otherwise.   In fact, they claim these investments do not correlate with the stock market. Defendants claim in their marketing material and on their website that big time investors, such as Warren Buffet and Bill Gates, invest in these kinds of investments. First of all, that is not true that Warren Buffet or Bill Gates invests in this kind of fractional life settlement investment. Warren Buffet or Bill Gates only invests in undivided interests in such death benefits and then in multiple policies at once which is not what these investors can do.  He does not invest in fractionalized portfolios of policies, which carries a load.  Still, even if Warren Buffet did invest in the same type of investment, it does not justify selling a product that is not suitable for the Plaintiffs herein who are not in the same position as Warren Buffet to cover premiums indefinitely in the future.

**SECOND AMENDED COMPLAINT**

9.      Reliant Defendants also do not give basic information about the insureds.  Defendants do this under the justification that the insureds' privacy is paramount. That does not justify violating security and other laws that obligate promoters of investments (of securities) to make full disclosure. Failure to disclose material facts is a securities violation even if an insured is entitled to his privacy. The solution is don't sell it.  Defendants keep the investor from being able to do any inquiry, or have any specific knowledge of the insured, a determinative and material factor of the investment.  Although this is a deceit because it is well known in the industry that this information can be obtained and is available when defendants or their agents bought the policy, so under these circumstances this information needed to be disclosed and should be disclosed right now.

10.     Another deception perpetrated by Defendants is that investors can get their principal back at any time. See Exhibit 27 which is a letter from one of the plaintiff investors described how he was represented to have been told this in more detail and how this was a misrepresentation.  This has turned out to be false, because if true, this suit could have been averted by returning the principal which was requested and declined by Defendants.  In other words, Defendants were given the opportunity to rescind the agreement but did not do so, even without having to pay interest which is normally required. Therefore, Defendants had the opportunity to avoid this suit completely and chose otherwise. Defendants blatantly claim people can get their money back at any time during the sales presentations as Exhibit 27 exemplified. The Plaintiffs, especially Mr. Goodale, indicated they would accept the return of their principal in lieu of bringing the suit, but Defendants were not able to perform within a reasonable amount of time or commit to a satisfactory agreement to do so. Defendants also have a history of reneging on such promises of paybacks for example in the Gerald Frank case where Mr. Frank hired a lawyer to get his money back and Defendants agreed to give it back but they reneged on it. The elephant in the room is the allegation by Plaintiffs, alleged upon information and belief, is that the insurance policies are not what they are represented to be, or the insurance policies are manipulated and do not exist as represented, do not exist or will not be available upon maturity or that Defendants have developed a scheme in the form of a Ponzi scheme where new life settlements (or the back office that procures policies for themselves and others) covers premiums on life settlements sold years earlier which had not matured, and this is what has exhausted the so called "premium reserves". These things

8

**SECOND AMENDED COMPLAINT**

alone are reason to pursue this case because Plaintiffs do not have adequate assurances that any of the above exist and want assurances that the policies they bought are real and in effect, and that the Insurance companies are ready willing and able to pay them as promised.   A factual and legal determination needs to be made on this point, to prove that Defendants have not squandered any of these policies, although this case does not bank on this, just because of the evasiveness of the Reliant Defendants suit is necessary.  Proof of this evasiveness is a compilation of internet complaints against the Reliant Defendants attached hereto as Exhibit 26. Suit on this point is necessary, whether these policies were squandered or not, because Defendants do not respond to these Plaintiff /investors, or when Defendants do not properly answer the questions. As a result of the above, Defendants credibility is lacking such that court determination is necessary as to the existence of these policies.  Alleged on information and belief is that members of the Reliant Defendant's enterprise have taken advantage of the polices in the investment that have not matured for their benefit, and not for the investors' benefit, and not properly disclosed such facts and doing such things, for example, alleged upon information and belief, using the policies for collateral, or misappropriating the death benefit for themselves.

11.    The Reliant Defendants claim that they have a series of policies on insureds, that the insureds have assigned the policies to Plaintiffs (i.e., assigned their death benefit), but that the assignment does not go into effect until the insured dies. Defendants claim that these are individual investments, but each of the Plaintiff's investment seems to involve two or more life settlements policies/death benefits and no two groups of investors are generally exactly the same. These life settlements assigned to Plaintiffs are sold to Plaintiffs as an investment and some of the policies are from other disgruntled Reliant investors who want out.  This is not revealed to Plaintiffs when they purchase. Since the insured are insured by insurance companies, not the Reliant Defendants, these insurance companies become accessories to Defendants' wrongful and illegal endeavor. Defendants use these various insurance companies to bolster Defendants' credibility and to suggest that the investment is safe, using these insurance companies net worth to substitute for the lack of their own net worth. They do the same when they use the name of Defendant Banks/Escrow Company but this is deception because they have moved from bank to bank and no explanation for that is given.  It is alleged that if the explanation was given it would be an additional fact that would be a material fact that an investor

1  should have known that was deprived these Plaintiffs.  This itself is another deception because it not

2  revealed properly and still has not.  Further Reliant Defendant's net worth is not disclosed and still has

3  not. The bank/escrow and the insurance companies are a part of this deception which violates Civil

4  Code §1770 et seq. because all defendants are passing off (or allowing the passing off of) goods and

5  services as those of another. The defendants are merged together to create confusion over the other

6  origin and source of the product, or the goods or services purchased in violation of Civ. Code, §

7  1770(a)(4) which is a deceptive representation or designation.

8      12.    The Reliant Defendants use the real insurance companies (referring to the defendant

9  insurance companies) as well as Warren Buffet and Bill Gates to bolster Reliant' s credibility and the

10  company's credibility wrongfully, improperly, and illegally. This confuses investors as to who is the

11  sponsor and who owns the investment, who is in charge and so many more thing as outlined in Civil

12  Code §1770 et seq. and in other causes of action.

13      13.     This complaint alleges Defendants, and their endeavor or enterprise, are rife with violations

14  of the Deceptive Trade Practices Act including violating Civ. Code, § 1770(a)(9) [advertising goods or

15  services with intent not to sell them as advertised].) The insurance companies are implicated even more

16  because they have been allowing this to happen apparently because it provides cash flow directly to

17  them on insurance policies that might otherwise lapse.  Defendants as well as the insurance companies

18  are sued because they are both furthering Reliant Defendants' investment program(s) which they know

19  are preying on innocent, mostly older, victims who are struggling with all these issues set forth

20  throughout this Complaint. It is not just the insurance companies that are intertwined, and implicated, it

21  is the banks, trust companies, and the escrow companies; and under securities laws they are issuers or

22  agents of the issuers, and as a result they are liable for any security law causes of action and other

23  causes of action for the acts of the Reliant Defendants.  Therefore, these non-Reliant Defendants are

24  sued in this capacity as well as aiders and abettors and co- conspirators.

25      14.    It is irrelevant that the individuals that make up the Defendants and the entities named in this

26  complaint have gone their separate ways, re-organized or have their own disputes between themselves.

27  If they were a part of the mix that allowed this investment to be peddled illegally or improperly, to any

28  of these innocent people, they are alleged to be at fault and responsible.   Each Defendant is sued for

his, her, or its own wrongful conduct or for participating in selling this product, aiding, and abetting it, and not putting an end to it when they had a chance.   This investment was a scheme then and is a scheme now designed to take advantage of innocent investors and to enrich themselves.

15.     It is alleged that everyday this investment continues, it is perpetrating a new wrongful act or breach of contract to the extent that Defendants are carrying on a deceptive program and are not allowing Defendants to cash out as promised and to the extent that premiums mean the purchase is still not a completed transaction.

16.     On December 14, 2022, the State of California Business, Consumer Services and Housing Agency of the Department of Financial Protection and Innovation issued Desist and Refrain Order on Reliant Life Shares, LLC from offering or selling any security in California. According to the Department's order, Reliant Life Shares, LLC, "agents made untrue statements of material fact and material omissions to potential investors." Specifically, the department quoted Reliant Life Shares, LLC, sales' material, which stated "the history of actual maturities for life settlement policies shows that, like a bell curve, approximately half of all policies mature before the estimated life expectancy date, and half after." The department went on to say, "this statement implied to investors that Reliant had the same performance when it did not." This is another example of deceit. Plaintiffs relied upon this false statement to buy their investments, and/or to stay invested in it longer than they would have otherwise. Had Plaintiffs known the truth, they would not have invested. This false statement, along with other deceit herein alleged, is a substantial reason for Plaintiffs' suffering investment losses set forth herein. Consequently, this complaint takes the Department's allegation on information and belief and incorporates it into this complaint.

## PARTIES

17.     At all times herein, PLAINTIFF INVESTOR PAUL BUGLER (hereinafter referred to as "INVESTOR PAUL BUGLER" was and is a resident of the City of South San Francisco, County of San Mateo, State of California.

18.     At all times herein, PLAINTIFF INVESTOR WALTER BUGLER (hereinafter referred to as "INVESTOR WALTER BUGLER" was and is a resident of the City of South San Francisco, County of San Mateo, State of California.

**SECOND AMENDED COMPLAINT**

19.     At all times herein, PLAINTIFF INVESTOR CONCEPCION BAEZA (hereinafter referred to as "INVESTOR CONCEPCION BAEZA" was and is a resident of the City of Los Angeles, County of Los Angeles, State of California.

20.     At all times herein, PLAINTIFF INVESTOR ED BAEZA (hereinafter referred to as "INVESTOR ED BAEZA" was and is a resident of the City of Los Angeles, County of Los Angeles, State of California.

21.     At all times herein, PLAINTIFF INVESTOR BASSIR ANSARY (hereinafter referred to as "INVESTOR BASSIR ANSARY" was a resident of the Union City, County of Alameda, State of California at the time of sale. Currently BASSIR ANSARY is a resident of the City of Fairfax, County of Fairfax, State of Virginia.

22.     At all times herein, PLAINTIFF INVESTOR JAMES CIRILE (hereinafter referred to as "INVESTOR JAMES CIRILE" was and is a resident of the City of Los Angeles, County of Los Angeles, State of California.

23.     At all times herein, PLAINTIFF INVESTOR NATHAN COLEMAN (hereinafter referred to as "INVESTOR NATHAN COLEMAN" was and is a resident of the City of Murrieta, County of Riverside, State of California.

24.     At all times herein, PLAINTIFF INVESTOR GAMAN LLC (hereinafter referred to as "INVESTOR GAMAN LLC" is a company operating pursuant to the laws of the State of California doing business in Los Angeles, County of Los Angeles, State of California.

25.     At all times herein, PLAINTIFF INVESTOR GENE GOLDEN (hereinafter referred to as "INVESTOR GENE GOLDEN" was and is a resident of the City of Winnetka, County of Los Angeles, State of California.

26.     At all times herein, PLAINTIFF INVESTOR JOSEPH GOODALE and RACHEL GILA (hereinafter referred to as "INVESTOR JOSEPH GOODALE and RACHEL GILA" were and are residents of the City of Rohnert Park, County of Sonoma, State of California.

27.     At all times herein, PLAINTIFF INVESTOR TRUDY BELINDA JOHNSON (hereinafter referred to as "INVESTOR TRUDY BELINDA JOHNSON" was and is a resident of the City of Carson, County of Los Angeles, State of California.

**SECOND AMENDED COMPLAINT**

28.     At all times herein, PLAINTIFF INVESTOR CHARLES LAWRENCE (hereinafter referred to as "INVESTOR CHARLES LAWRENCE" was a resident of the City of San Pedro, County of Los Angeles, State of California.  He currently lives in Orange County.

29.     At all times herein, PLAINTIFF INVESTOR ORSON K. LEONG (hereinafter referred to as "INVESTOR ORSON K. LEONG" was and is a resident of the City of Pleasanton, County of Alameda, State of California.

30.     At all times herein, PLAINTIFF INVESTOR PETER J. LOWE (hereinafter referred to as "INVESTOR PETER J. LOWE" was and is a resident of the Union City, County of Alameda, State of California.

31.     At all times herein, PLAINTIFF INVESTOR MARK THORSELL and BARBARA THORSELL (hereinafter referred to as "INVESTOR MARK THORSELL and BARBARA THORSELL" were and are residents of the City of Sacramento, County of Sacramento, State of California. They currently live in Arizona.

32.     At all times herein, PLAINTIFF INVESTOR CLIFFORD RITZ (hereinafter referred to as "INVESTOR CLIFFORD RITZ" was and is a resident of the City of Richmond, County of Contra Costa, State of California.

33.     At all times herein, PLAINTIFF INVESTOR STEVEN C. ROEMER (hereinafter referred to as "INVESTOR STEVEN C. ROEMER" was and is a resident of the City of San Anselmo, County of Marin, State of California.

34.     At all times herein, PLAINTIFF INVESTOR GREGORY SCHMITT (hereinafter referred to as "INVESTOR GREGORY SCHMITT" was and is a resident of the City of San Rafael, County of Marin, State of California.

35.     At all times herein, PLAINTIFF INVESTOR JOHN STOCKSDALE (hereinafter referred to as "INVESTOR JOHN STOCKSDALE" was and is a resident of the City of Santa Rosa, County of Sonoma, State of California.

36.     At all times herein, PLAINTIFF INVESTOR JENNIFER VANCE (hereinafter referred to as "INVESTOR JENNIFER VANCE" was and is a resident of the City of Corte Madera, County of Marin, State of California.

37.     At all times herein, PLAINTIFF INVESTOR YEYO LLC (hereinafter referred to as "INVESTOR YEYO LLC" is a company operating pursuant to the laws of the State of California doing business in Los Angeles, County of Los Angeles, State of California.

38.     At all times herein, Defendant RELIANT LIFE SHARES LLC (herein referred to as "RELIANT") was a limited liability corporation operating pursuant to the laws of the State of California. Reliant Capital is a trade name or term RELIANT uses to market itself. It is not associated with the collection company.

39.     RLS FINANCIAL SERVICES, INC. is interrelated with RELIANT and serves as its agent of records. When RLS FINANCIAL SERVICES, INC. (hereinafter "RLS") is referred to, RLS is interdependent on RELIANT and is a sham and a manipulation of reality to separate it from RELIANT because they play off of each other to do the same thing by making money off of investors who purchase RELIANT marketed life shares like the ones purchased herein. In the alternative, it is alleged that RLS is the alter ego of RELIANT behind the scenes ratifying or covering up the bad outcomes for investors. This entity is also referred as a RELIANT associated company. When RELIANT is referred to hereinafter generally, it includes RLS FINANCIAL SERVICES, INC. unless otherwise noted.

40.     RMS TRUST is a trust operating in the state of California that had control over the perpetrators of all endeavors described herein who permitted, condoned, and allowed wrongful things to happen.

41.     At all times herein, Defendant PRINCIPLE FINANCIAL SERVICES, INC.; (herein referred to as "PFSI") was a corporation operating pursuant to the laws of the State of California. It is believed operating through or with Reliant and posing itself as Reliant.

42.     At all times herein, Defendant SCOTT GRADY (hereinafter GRADY) was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent and associate of RELIANT and/or JOEL KLEINFELD or his company, believed to be RMS Trust, or together they controlled the investments described herein. In the alternative, GRADY is the decision-maker and chief salesperson when it comes to the sale of these life settlement products which are the subject matter of this complaint. He controlled some of the events herein. GRADY has ratified or maintained all the wrongful

**SECOND AMENDED COMPLAINT**

conduct set forth in this Complaint. Although he was a seller of these products, he is not licensed to sell Life Settlement and his involvement to do so is believed illegal.  More about him below.

43.     At all times herein, Defendant PAUL ROY was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL KLEINFELD or his company above mentioned. He controlled some of the events herein. ROY was a decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint.

44.     At all times herein, Defendant DAVID UNDERWOOD was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL KLEINFELD or his company above mentioned. He controlled some of the events herein. He was a decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint.

45.     At all times herein, Defendant SHAWN DAVENPORT was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL KLEINFELD or his company above mentioned. He controlled some of the events herein. He was a decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint.

46.     At all times herein, Defendant LARRY BAGBY was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL KLEINFELD or his company above mentioned. He controlled some of the events herein. He was a decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set forth in this complaint.

47.     At all times herein, Defendant BRENT BORCHERT was a salesperson to one or more of Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL

**SECOND AMENDED COMPLAINT**

1   KLEINFELD or his company above mentioned. He controlled some of the events herein. He was a

2   decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this

3   complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set

4   forth in this complaint. More about him below.

5      48.    At all times herein, Defendant MARK SANSOUCY was a salesperson to one or more of

6   Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL

7   KLEINFELD or his company above mentioned. He controlled some of the events herein. He was a

8   decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this

9   complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set

10   forth in this complaint. More about him below.

11      49.    At all times herein, Defendant LARRY TUPLER was a salesperson to one or more of

12   Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL

13   KLEINFELD or his company above mentioned. He controlled some of the events herein. He was a

14   decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this

15   complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set

16   forth in this complaint.

17      50.    At all times herein, Defendant VINCENT BOVINO was a salesperson to one or more of

18   Plaintiffs and acted as a high-level employee/agent/manager and associate of RELIANT and/or JOEL

19   KLEINFELD or his company above mentioned. He controlled some of the events herein. He was a

20   decision-maker and assisted in selling the viatical or life settlement which is the subject matter of this

21   complaint. In addition, or in the alternative, his acts served to ratify and maintain the wrongful acts set

22   forth in this complaint.

23      51.    At all times herein, Defendant JOEL KLEINFELD has been and is the owner, operator, and

24   controller of the enterprise known as RELIANT and either individually or through his company Doe 1

25   controlled or manipulated the outcomes affecting the investments contained and referenced in this

26   complaint. He or his company are alleged to be a Reliant associated company and operator and

27   controller of RELIANT, RELIANT associated companies, and Defendants herein when it comes to

28   these life share investments. More about him below.

**SECOND AMENDED COMPLAINT**

52.     At all times herein, Defendant RLM TRUST (herein referred to as "RLM") is a trust owned and operated by JOEL KLEINFELD and is operative in or around the United States and is believed to be a responsible entity allowing the occurrences (including wrongdoing) set forth in this complaint to happen. It is alleged upon information and belief that it is a RELIANT associated company.

53.     Doe 1 is JOEL KLEINFELD 's company used to manipulate, and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint. It is alleged upon information and belief that he is or was during relevant times the founder, operator, and controller of RELIANT or Reliant associated companies and Defendants herein when it comes to these life share investments.

54.     UMB BANK N.A. acts as RELIANT'S escrow agent and is believed to be located 1010 Grand Blvd, 4th Floor., Kansas City, MO. It is believed to be responsible and liable for the wrongdoing set forth in this complaint because of its association, ratification, and knowledge of this wrongdoing..

55.     BANK OF UTAH acts as RELIANT'S escrow agent and is believed located at 200 East South Temple, Suite 210, Salt Lake, Utah. It is believed to be responsible and liable for the wrongdoing set forth in this complaint because of its association, ratification, and knowledge of this wrongdoing.

56.     FIRST WESTERN TRUST BANK acts as RELIANT'S escrow agent and has locations in Colorado, Wyoming, Arizona, and California. It is believed to be responsible and liable for the wrongdoing set forth in this complaint because of its association, ratification, and knowledge of this wrongdoing.

57.     PACIFIC LIFE INSURANCE COMPANY is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

58.     LINCOLN FINANCIAL GROUP is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

59.     PRINCIPAL FINANCIAL GROUP is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

**SECOND AMENDED COMPLAINT**

60.     AVIVA LIFE AND ANNUITY is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

61.     NASSAU LIFE INSURANCE COMPANY AKA REINSURANCE GROUP HOLDINGS, L.P, .AND FORMERLY KNOWN AS PHOENIX COMPANIES.   Phoenix is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

62.     THE PENN MUTUAL LIFE INSURANCE COMPANY is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

63.     LINCOLN BENEFIT LIFE is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

64.     BENEFICIAL LIFE INSURANCE CO. is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

65.     PHL VARIABLE INSURANCE COMPANY is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

66.     RELIASTAR LIFE INSURANCE COMPANY is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

67.     AXA EQUITABLE LIFE INSURANCE COMPANY is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

68.     ZURICH AMERICAN LIFE INSURANCE COMPANY is an insurance company used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint and is a company authorized to do business in the State of California

18

**SECOND AMENDED COMPLAINT**

69.     JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK is an insurance company doing business in California that was used to manipulate and control outcomes related to the occurrences (including wrongdoing) set forth in this complaint.

70.     PLAINTIFFS are informed and believe and upon such information and belief allege that Defendants, DOES 1-20, inclusive, and at all relevant times were, residents of Los Angeles County, California. PLAINTIFFS do not know the true and accurate names and capacities of DOES 1-20, thus DOES 1-20 are fictiously named. PLAINTIFFS will seek leave to amend this Complaint to allege their true names when ascertained.

71.     PLAINTIFFS are unaware of the true names and capacities of DOE Defendants sued herein as DOES 1-20, and therefore sue those Defendants by such fictitious names. PLAINTIFFS will seek leave to amend this Complaint to allege their true and accurate names and capacities when ascertained. PLAINTIFFS are informed and believe and upon such information and belief allege that each of the fictiously named Defendants are responsible for the acts and/or omissions herein alleged, and that PLAINTIFF 's injuries and damages as herein alleged were proximately caused by the acts and/or omissions of such fictiously named Defendants

## JURISDICTION

72.     DEFENDANTS reside or do business in California, so California is the proper forum.  Los Angeles County, California is where the most sales and transactions took place and where the chief DEFENDANTS congregate, live, work and are headquartered. Therefore, California Superior Court of Los Angeles County is the proper court and forum for this case.

## ALTER EGO, AGENCY, AND SUCCESSOR IN INTEREST

73.     Plaintiffs are informed and believe, and thereon allege that there exists such a unity of interest and ownership between DEFENDANTS and DOES 2-20, that the individuality and separateness of DEFENDANTS have ceased to exist.

74.     Plaintiffs are informed and believe, and thereon allege that the DEFENDANTS and/or DOES 2-20 conspired to break the laws alleged herein.  This is part of a joint activity, joint endeavor, joint enterprise, and/or joint adventure, carried out by all DEFENDANTS and DOES 2-20.

**SECOND AMENDED COMPLAINT**

75.     Plaintiffs are informed and believe, and based thereon allege that despite the formation of purported corporate existence, DEFENDANTS and/or DOES 2-20 are in reality, one and the same Defendant, because of, but not limited to, the following reasons:

a.  DEFENDANTS are completely dominated and controlled by one another and DOES 2-20, who personally committed the frauds and violated the laws as set forth in this complaint, and who have hidden and currently hide behind DEFENDANTS to perpetrate frauds, circumvent statutes, or accomplish some other wrongful or inequitable purpose.

b.  DEFENDANTS and DOES 2-20, derive actual and significant monetary benefits by and through one another's unlawful conduct, and by using one another as the funding source for their own personal expenditures.

c.  DEFENDANTS and DOES 2-20, while really one and the same, were segregated to appear as though separate and distinct for purposes of perpetrating a fraud, circumventing a statute, or accomplishing some other wrongful or inequitable purpose.

d.  DEFENDANTS do not comply with all requisite corporate formalities to maintain a legal and separate corporate existence.

e.  The business affairs of DEFENDANTS and DOES 2-20 are, and at all times relevant were, so mixed and intermingled that the same cannot reasonably be segregated, and the same are in inextricable confusion. DEFENDANTS are, and at all times relevant hereto were, used by DEFENDANTS, one and another, and DOES 2-20 as a mere shell and conduit for the conduct of certain of DEFENDANTS' affairs, and are, and were, the alter ego of DEFENDANTS, one and another and DOES 2-20.  The recognition of the separate existence of DEFENDANTS would not promote justice, in that it would permit DEFENDANTS to insulate themselves from liability to PLAINTIFFS for violations of the Labor and Government Codes and other statutory regulations. The corporate existence of any Corporate DEFENDANTS and DOES 2-20 should be disregarded in equity and for the ends of justice because such disregard is necessary to avoid fraud and injustice to PLAINTIFFS herein.

76.     Accordingly, DEFENDANTS constitute the alter ego of other DEFENDANTS, one and another, DOES 2-20, and the fiction of their separate corporate existence must be disregarded.

**SECOND AMENDED COMPLAINT**

77.     As a result of the aforementioned facts, Plaintiffs are informed and believes, and based thereon alleges that DEFENDANTS and DOES 2-20 are joint employers by virtue of a joint enterprise, and that DEFENDANTS are employees of other DEFENDANTS and DOES 2-20.  DEFENDANTS performed services for each other to the mutual benefit of all DEFENDANTS who shared control, either directly or indirectly, of the manner in which DEFENDANTS' business was and is conducted.

## GENERAL ALLEGATIONS

78.     Upon information and belief, RELIANT is a conduit for getting rid of the least desirable viatical or life settlement in the business. DEFENDANTS take these "left over" viaticals and fractionalize and syndicate them which creates a higher load on the investment compared to lump sum purchase of a viatical or a lump sum purchase of multiple viaticals like Warren Buffett or Bill Gates does. Yet DEFENDANTS not only do not disclose this, but they actively equate their product to the viaticals that Warren Buffett and Bill Gates have purchased.  Defendants website and oral representations suggest that Warren Buffett and Bill Gates endorse this product. DEFENDANTS intentionally use the  fact that Warren Buffett and Bill Gates bought viaticals as a selling point to all Plaintiffs, in newsletters,  and on their website, making Plaintiffs think falsely that what RELIANT offers is equivalent to what Warrant Buffett and Bill Gates bought,  and that if it is good for Buffett and Gates, it is good for RELIANT investors. Buffett and Gates buy great quantities of viaticals without as many middlemen and the load that RELIANT products carry. Buffett and Gates did not purchase fractionalized or syndicated viaticals like the kind RELIANT sold to these investors. Buffett and Gates bought true viaticals. What Plaintiffs were sold are life settlements fractionalized as a pool and syndicated. Examples where these kinds of investments lead to poor outcomes, including a string of failures are exemplified in the Oxford Financial and Pacific West Group programs, which is material information about this industry that was not disclosed to these investors. DEFENDANTS did not make a full, complete, fair, and balanced disclosure of its industry and portrayed it as all upsides. That is false and deceptive. Warren and Gates are portrayed in marketing materials as if they are sponsors for RELIANT, which they are not. This is a material deception that caused people to buy when they normally would not have had they been given full and complete disclosure of the material facts.

**SECOND AMENDED COMPLAINT**

79.     RELIANT groups viaticals and puts them into a purported trust and then sells a fractional interest in another person's life insurance policy or an "insured's" death benefit. The investment value is based upon the life expectancy of the insured because the premium has to be paid each year. The premium is often more expensive the older the insured gets. This investment is not suitable for people approaching retirement, and especially those who are already retires if they are living on a modest or fixed income, as retirees often do. There is an ongoing obligation to pay a premium that may be burdensome to retirees, or their heirs. The RELIANT product has inherent problems that regular viaticals do not have because RELIANT pools and fractionalizes the viatical, it has overhead to carry and hold them, and RELIANT has to pay a salesperson which adds to the load to market the viatical. This load is not disclosed at least as far as how that impacts the rate of return compared to a standalone or large quantity viatical purchase.

80.     PLAINTIFFS have found the process to be oppressive for several reasons including the continuing and sometimes ever-increasing premiums that were never fully disclosed prior to PLAINTIFFS investing.

81.     PLAINTIFFS are bringing this suit to obtain PLAINTIFFS' money back plus damages. PLAINTIFFS were told that this was a guaranteed investment, but the investment is not guaranteed to vest until the insured dies. It does not vest if the premiums lapse, plus the return on investment can be diminished the longer the insured lives. Also, an insurance death benefit does not usually last beyond a certain date, typically it lapses if the insured reaches 100 years old. This was not properly disclosed. The rate of return of past investments was not disclosed, and the creditworthiness of RELIANT or the companies behind the scenes supporting it were not disclosed. Also not disclosed were the companies and circumstances relating to investor buyouts. None of these risk factors were sufficiently communicated to PLAINTIFFS. All of these things were not properly explained. These things were misrepresented or concealed to PLAINTIFFS and would be material to any decision to invest.

82.     RELIANT and its enterprise used untrained and unqualified (or not adequately trained or supervised) salespeople who do not understand the product, did not understand securities law and the obligation to provide balanced information, and did not adequately endeavor to know one's customer before selling these RELIANT products. RELIANT salespeople were not bound (like FINRA

salespersons) by the obligation to conduct business with high standards of commercial honor and just and equitable principles of trade. The salespersons would have been bound by the above concepts and securities rules and regulations had they been properly licensed as securities agents, and if they were licensed/registered brokers and operated through a broker dealer (which they should have been and were not). Instead, this was a renegade sales operation that violated securities law when selling these securities as was done here. Further, these sales were the result of salespeople who did not know or did not follow basic security rules, regulations, and ethical requirements. If this sales force was legitimately and properly trained and registered, these sales would not and could not be made. None of this was explained to PLAINTIFFS.

83.     RELIANT's program implies Warren Buffett and other prominent persons endorse or use its product. There is a picture of Warren Buffett on the RELIANT website and mention of Buffet on a RELIANT's radio advertisements referencing Warren Buffett in a way that causes investors to believe Warren Buffett endorses and or uses RELIANT's products or products like it. It is believed that this was put on RELIANT'S website without Warren Buffett's permission or consent and is deceptive for this reason further set for herein.

84.     RELIANT's website reads, "The flexibility of this account allows investors to withdraw their money any time without a penalty." This caused Plaintiffs to invest when they otherwise would not. Customers and Plaintiffs were led to believe that they could get their money back. This is not true.

85.     This product is touted as the "best kept secret in Wall Street." Reliant' s website also contains a picture of Warren Buffett.  However, this product is cloaked with secrecy and sold as if premiums and transfer at death are not issues, however these are major issues of material facts that were not properly communicated or explained.

86.     DEFENDANTS failed to give all necessary, relevant, and material information about this product necessary for a reasonable investor to properly evaluate this investment  including providing 1) overall rate of return historically, 2) the percentage of time RELIANT estimated the life expectancy (reserves) correctly, 3) the average age of death of an insured historically, 4) the number of these investments that have gone full circle, 5) the number of repeat customers, 6) the number and percentage of people and all their investment that made money, 7) the load on the investment, 8) the number of

persons that put money in a RELIANT program or the fact that people did invest and took losses to get out of the program. DEFENDANTS failed to provide basic statistics and information regarding the insureds living beyond the premium reserve, or how RELIANT projects life expectancies as less than the social security life expectancy to create the false impression that the investment is better than it is. Again, DEFENDANTS failed to provide information as to how many insureds exceeded RELIANT's disclosed life expectancy, which is a basic fact any investor needs to know before investing in these products. DEFENDANTS failed to disclose how many investors dropped out, forfeited, or had to suffer a restructuring of their investment due to premium requirements. Defendants did not tell Plaintiffs that RELIANT acquired abandoned insurance policies that are not taken by higher end investors or that they acquire insurance policies in less than appropriate circumstances. Investors are not told that fractional share programs, is an aberration and not allowed in many other states.

87.    RELIANT is ingenuine and manipulative when it comes to posting references and ratings about itself. It uses a service to rid itself of negative but important information that should be in the public domain or be accessible to future investors.

88.    RELIANT falsely claims it does better than Wall Street without statistics to back that up. RELIANT sells viaticals, life settlements, or Fractional Shares to consumers through an advertising program designed to lure in persons without regard to their knowledge and sophistication about viatical or life settlements and fractional and syndicated interests and without presenting a fair and balanced picture of this investment.

89.    Most RELIANT investors are elderly or approaching retirement and are encouraged to use retirement monies to invest in RELIANT products.  This results in a loss of liquidity, which is not in a customers' best interest nor is it suitable for retirement. The product RELIANT offers is not suitable to anyone and certainly not these PLAINTIFFS.

90.    RELIANT wrongfully encouraged PLAINTIFFS to use their IRA or 401k protected money to buy these products. This is inappropriate and negligent and violative of security laws. It violates the principle requiring a seller of securities to know their customer and to observe just and equitable principles of trade.

**SECOND AMENDED COMPLAINT**

91.     Comparing these investments with shares of a stock in a publicly traded company is erroneous and deceptive. Yet this is done on Reliant' s website and in numerous radio and other marketing endeavors. RELIANT is also acknowledging that it engages in the sale of securities as stock in a publicly traded company, a clear reason why a security needs significant regulation.

92.     Most PLAINTIFFS were influenced to invest after hearing several RELIANT radio advertisements, many played on a Christian radio station. PLAINTIFFS assumed that hearing the advertisement on the Christian radio station meant that the station had vetted and endorsed RELIANT. RELIANT played that up to their benefit in a way that was deceptive. These commercials are false, misleading, and deceptive under all the circumstances.

93.     The RELIANT investment program fails to meet all of the provisions of the Corporate Code §25102(q) and other provisions of California law. Because of that, they cannot claim an exemption.  In violation of registration and qualification laws of the State of California, as DEFENDANTS wrongfully claim, an exemption for all syndication which is contrary to law and practice.

94.     Corporate Code §25102(q)(F) requires that the issuer adequately describe the issue and fully disclose the directors, officers, partners, members, or trustees of the issuer.  This was not done. It is also believed that the failure to disclose SCOTT GRADY'S disbarment violates security provisions of full disclosure and the requirement of full and balanced disclosure.

95.     Corporate Code §25102(q)(3)(E) requires that if the issuer retains ownership or becomes the beneficiary of the insurance policy, the following must be obtained: an audit report of an independent certified public accountant together with a balance sheet and related statements of income, retained earnings, cashflow sheets that reflect the issuer's financial position, the documents that show the results of the issuer's operations, and the issuer's cashflows as of a date within 15 months before the date of the initial issuance of the securities. This was not done even though RELIANT or its personnel and or agents (vendors) took over policies and effectively became owners or arranged for others to do it with improper and undisclosed kick back arrangements. RELIANT or associated persons or entities constructively acted as owners of the insurance policies and/or controlled them tantamount to owners.

96.     Corporate Code §25102(q)(3)(Q) requires that Defendants provide the names, addresses, telephone numbers of the persons who will be insurance policy owners and/or the persons who will be

responsible for the premiums. Defendants failed to provide this. RELIANT has interfered with investors' ability to obtain information from each other, advocate for themselves, organize, and have access to their rights available by law.

97.     RELIANT also violated the provisions of Corporate Code §25102(q)(3)(O) which requires that the insurance policy premiums and terms of premium payments be disclosed. They were not adequately disclosed, or were disclosed in a fashion that was misleading, inaccurate, sloppy, or dishonest.

98.     Corporate Code §25102(q)(3)(L) requires that Defendants advise investors of the rate of increased premiums as the insureds become older.  This was not disclosed or adequately addressed and constitutes misrepresentation and deception. This also violates Corporate Code §25102(q)(U) because the commissioner requires full disclosure. The omission of these material facts becomes a form of deceit and violated the suitability requirement and the requirement that the investment be in the best of PLAINTIFFS.

99.     Upon information and belief, several investors were told that RELIANT does not check the net worth of its investors. Corporate Code §25102(q)(1) requires that the sales of securities should be made only to qualified purchasers, and that the issuer must make a reasonable inquiry as to qualifications of the purchaser, including net worth, and the percentage of net worth these investments would constitute to their total net worth. RELIANT in doing the above has failed to properly qualify purchasers to the program, which is reflective of RELIANT'S failure to comply with securities laws or "knowing one's customer." A failure to follow the above makes the whole program vulnerable to failure and deceit on all investors.

100.     Upon information and belief, Defendants failed to take reasonable steps to verify if PLAINTIFFS were qualified purchasers and or had knowledge and experience in financial and business matters and that PLAINTIFFS were capable of evaluating the merits and risks of the prospective investment. Also, DEFENDANTS did not verify whether or not PLAINTIFFS had a large enough portfolio so that PLAINTIFFS' total investments in these policies did not exceed 10% of their portfolio. It is alleged upon information and belief that RELIANT allowed people to invest who were not accredited or made purchases of these investments which constituted more than 10% of their net worth.

**SECOND AMENDED COMPLAINT**

101.    DEFENDANTS failed to have appropriate backup plans if and when certain investors failed to make premiums. If they had a backup plan, it needed to be disclosed but it was not. The plan also involved a conflict of interest to the extent that it allowed RELIANT associates or affiliates to profit when an investor quits the program. It also makes the entire program vulnerable when investors leave; it means someone has to cover that person's premium. How this was to be handled when an investor fails to pay premiums or drops out or dies was not disclosed as it is a material fact that all investors need to know because it affects the viability and saying power of the program.

102.    It is further believed that the whole method of selling these investments was brought about by Defendants acting as brokers or broker dealers without licenses or registration and without proper authority to act as broker dealers or agents of broker dealers under the law and regulations governing securities. That is illegal and grounds for disgorgement and other remedies asserted herein. Whether licensed or not, the salesmen (Defendants) were employing tactics to misrepresent these investments as more legitimate and profitable than they truly were in order to make a sale. They did not disclose the full dark side of this industry and deceit that pervades it. The sales were based on taking advantage of insureds' desperate situation by a player who takes a lot of the profit themselves before either in the acquisition of the policy, set-up, and syndication of it.

103.    Upon information and belief, various investors were excused from having to pay premiums while other investors were not excused. This is not disclosed, and it creates inequality among investors in the program. It creates a conflict of interest, and it is an unpredictable arrangement used at the whim of the promoter as a manipulation device.

104.    PLAINTIFFS were induced into this program by manipulated reviews that did not represent a true status of the RELIANT situation. This is an additional deception where DEFENDANTS used deceptive reviews wrongfully. It was deceit to manipulate these reviews.

105.    The sale of this product violates securities laws that require full disclosure. Full disclosure cannot be given or was not given because the name of the insureds were not given to protect the identity of the insured. In addition, DEFENDANTS used this as an excuse not to give out insured medical records. This is per se a violation of security laws which requires full disclosure. By withholding names

**SECOND AMENDED COMPLAINT**

of the insured like RELIANT did, the most material fact, the name of the insured, is not disclosed that violates the first principal of securities law; full disclosure.

106.    DEFENDANTS further misrepresented that this investment is state and federal tax exempt, which it is not.

107.    DEFENDANTS used improper general solicitation and marketing and misleading advertising to sell these investments to PLAINTIFFS. This involved meeting investors personally to make sales at restaurants, in their homes, and other places in violation of personal solicitation roles.

108.    DEFENDANTS' prior model of selling viatical life policies consisted of selling one policy to one group at a time. To make themselves less obligated to group participation, DEFENDANTS moved away from that model, and in these investments, they sold each person an interest in multiple policies, like a package of fractionalized interests in several policies. The previous model allowed investors to know each other, to band together and communicate. The present model used in these investments make it almost impossible or difficult for any investor to interact with other investors to advocate together. This new arrangement allows RELIANT to keep investors in the dark as far as investors knowing and contacting each other. This violates security laws which requires full disclosure and the right of investors to organize, participate and advocate for each other. In a publicly traded stock company, a shareholder can vote out management to change things and/or to improve events and outcomes. This program was intentionally designed to prevent any power and information to leak to investors, the PLAINTIFFS herein.

109.    This investment hails from a tortured history where dishonesty is part of its culture. This is depicted in the attached declaration of Gloria Wolk that was available to Reliant from previous litigation. See Exhibit A all the allegations of which are incorporated by reference as though fully set forth hereat.   RELIANT and DEFENDANTS had a duty to disclose all material facts. Without disclosing the information contained in Wolk's declaration, RELIANT's self-serving version of its products is not fair and balanced nor is it in compliance with securities law. RELIANT also was involved in a series of litigation involving American General Insurance Policy PSH 20052L, which it did not disclose to these investors, which was a material concealment. Failure to fully disclose all

**SECOND AMENDED COMPLAINT**

material facts that investors needed to know constitutes intentional negligence or grossly negligent concealment of material facts.

110.    RELIANT and its associated Defendant and persons and entities have gone to great lengths and are still going to great lengths by hiring a reputational improvement company to scrub or make information about RELIANT and investor experiences unavailable to the public.  This is contrary to what is required, which is full and balanced disclosure where the investors have access to all facts. In fact, negative reviews are deemed negative for sales. This is an anathema to what should be allowed and is an indicator of purposeful intent by RELIANT and other Defendant associated persons and entities alleged herein to deceive and manipulate this investment by controlling information available.

111.    On October 10, 2016, PLAINTIFF INVESTOR PAUL BUGLER was sold five policies.

112.    PLAINTIFF INVESTOR PAUL BUGLER was influenced, in addition to the allegations above, as well as the allegations in this Complaint, to invest by being told that RELIANT's investments were not correlated to the stock market. PLAINTIFF BUGLER was led to believe that an investment in RELIANT's product would be a way to diversify his investment portfolio. But the investment arranged by RELIANT had issues that were not explained as described above. This PLAINTIFF INVESTOR PAUL BUGLER (as well as the other PLAINTIFFS herein) was led to believe that this RELIANT investment had less risk than the stock market. This turned out not to be true and his investment in RELIANT left him undiversified.

113.    This PLAINTIFF (as well as the other PLAINTIFFS) was influenced by the rate of return that RELIANT promised, but this rate turned out to be a misrepresentation of a material fact and not true.

114.    Reputable securities salespeople and securities professionals would not sell these investments to PLAINTIFFS.

115.    PLAINTIFFS put DEFENDANTS to their proof to prove that RELIANT is a legitimate organization, that RELIANT actually has life insurance policies behind these investments and that life insurance policies are not being manipulated by RELIANT in conjunction with the life settlement industry. PLAINTIFFS find it hard to believe that so many investors can be carrying investments for years, where so many insured have lived longer than what was represented or projected.  PLAINTIFFS

29

find it hard to believe that the projected reserves have not been manipulated by RELIANT and associated persons and entities. In the alternative, it is negligence to set reserves determining the life expectancy (or creating the impression) that there is a shorter life expectancy than what is reasonable. This is alleged to be a fraud, or else another aspect of negligence in creating a false message and not knowing and describing one's product honestly.

116.    PLAINTIFFS were influenced to invest by hearing that RELIANT's investments were not correlated to the stock market, so PLAINTIFFS were led to believe that an investment in RELIANT's product would be a way to diversify their investment portfolio. But the investment arranged by RELIANT had its own diversity issues and problems that were not explained and properly disclosed.

117.    DEFENDANTS failed to disclose in a more transparent and prominent manner that if premiums were not continually paid, that PLAINTIFFS could lose their entire investment, which is not synonymous with the advertised representation that allows PLAINTIFFS to get their money back at any time. This exemplifies RELIANT's policy and those associated with it that allows it to portray it in the way most helpful to sell rather than in a consistently fair, balanced, and honest way. This is fraud, deceit, and violation of securities law.

118.    DEFENDANTS misrepresented that this investment would have little to no risk as the insured would eventually pass away and the policy would pay off. DEFENDANTS stated that there would be little to no risk of the investor not receiving a return on their investment, it would only be a matter of when. PLAINTIFFS reasonably relied on this misrepresentation, not realizing that the premium payments would escalate prohibitively.  This was not adequately disclosed or explained to PLAINTIFFS, in fact the exact opposite was told to PLAINTIFFS, that very rarely are premiums needed beyond the prepaid reserves.

119.    DEFENDANTS allowed PLAINTIFFS to invest in several policies. PLAINTIFFS were influenced by the fact that RELIANT allowed them to invest in several different polices of different insured to spread out risk and chance for return on investments. This diversification did not substantially lower the risk of the investment.

**SECOND AMENDED COMPLAINT**

120.    PLAINTIFF INVESTOR PAUL BUGLER originally purchased $50,000 of viatical life settlement investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled or allowed him and the other investors to be swindled.

121.    INVESTOR PAUL BUGLER should never have been sold this or any RELIANT investment. DAVID UNDERWOOD sold INVESTOR PAUL BUGLER this investment under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

122.    PLAINTIFF PAUL BUGLER was 49 years old when he first invested in RELIANT in 2016.

123.    PLAINTIFF INVESTOR WALTER BUGLER originally purchased $50,000 of viatical life settlement investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR WALTER BUGLER.

124.    INVESTOR WALTER BUGLER should never have been sold this or any RELIANT investment. DAVID UNDERWOOD sold INVESTOR WALTER BUGLER this investment under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

125.    PLAINTIFF WALTER BUGLER was 50 years old when he first invested in RELIANT in 2016.

126.    INVESTOR WALTER BUGLER invested in 5 policies.

127.    In 2020, PLAINTIFF INVESTORS ED BAEZA and CONCEPCION BAEZA were sold fourteen policies by LARRY TUPLER.

128.    PLAINTIFFS INVESTORS ED BAEZA and CONCEPCION BAEZA were 67 and 61 years old respectively when they first invested in 2020.

129.    PLAINTIFF INVESTORS ED BAEZA and CONCEPCION BAEZA originally purchased $982,138 of viatical life settlement investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTORS ED BAEZA and CONCEPCION BAEZA.

130.    INVESTORS ED BAEZA and CONCEPCION BAEZA should never have been sold this or any RELIANT investment. LARRY. TUPLER sold INVESTORS ED BAEZA and CONCEPCION

BAEZA this investment under the auspices of SCOTT GRADY, VINCENT BOVINO, JOEL KLIENFELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST and others.

131.     INVESTORS ED BAEZA and CONCEPCION BAEZA invested in approximately policies.

132.     In 2017, PLAINTIFF INVESTOR BASSIR ANSARY was sold five policies by PAUL ROY and DAVID UNDERWOOD who were operating under the auspices of SCOTT GRADY, JOEL KLIENFELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

133.     INVESTOR BASSIR ANSARY should never have been sold this or any RELIANT investment.

134.     PLAINTIFF INVESTOR BASSIR ANSARY originally purchased $50,000 of viatical life settlement investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR BASSIR ANSARY

135.     PLAINTIFF INVESTOR JAMES CIRILE originally purchased $40,000 of viatical life settlement investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR JAMES CIRILE.

136.     INVESTOR JAMES CIRILE should never have been sold this or any RELIANT investment. MARK SANSOUCY and BRENT BORCHERT sold INVESTOR JAMES CIRILE this investment under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST. On further examination, the contract as against CIRILE was unsigned so it is invalid and justifies return of his money back.

137.     INVESTOR JAMES CIRILE invested into policies.

138.     PLAINTIFF JAMES CIRILE was 47 years old when he first invested in RELIANT in 2013

139.     In 2017, PLAINTIFF INVESTOR NATHAN COLEMAN was sold six policies by LARRY TUPLER and PAUL ROY acting under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

140.     PLAINTIFF INVESTOR NATHAN COLEMAN should never have been sold this or any RELIANT investment.

141.     INVESTOR NATHAN COLEMAN invested in 6 policies.

142.   PLAINTIFF COLEMAN was 57 years old when he invested in RELIANT in 2017.

143.   PLAINTIFF INVESTOR NATHAN COLEMAN originally purchased $60,000 of viatical life settlement investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR NATHAN COLEMAN.

144.   In 2018, PLAINTIFF INVESTOR GENE GOLDEN was sold eleven policies by LARRY TUPLER under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

145.   INVESTOR GENE GOLDEN should never have been sold this or any RELIANT investment.

146.   INVESTOR GENE GOLDEN invested and 11 policies.

147.   PLAINTIFF GOLDEN was 69 years old when he invested in RELIANT in 2018.

148.   DEFENDANTS represented that this investment was beneficial for retirement accounts, which at that time PLAINTIFF GOLDEN had to liquidate from his American Standard IRA account to invest in RELIANT'S product. Recommending and allowing this was improvident or at least negligent on the part of RELIANT and associate persons and entities.

149.   PLAINTIFF GOLDEN was influenced by RELIANT salesperson LARRY TUPLER who stated several times that the investments were so sound and predictable that premium calls were very rare. This turned out not to be true. LARRY TUPLER also assured PLAINTIFF GOLDEN that if there were premiums due, the premiums would only amount to a few hundred dollars per year

150.   RELIANT salesperson LARRY TUPLER guaranteed PLAINTIFF GOLDEN that there was a theoretical risk that the policies PLAINTIFF invested in would extend beyond the reserve date, but it would actually never happen. However, there have been premium "calls" for more money since the reserves have run out in most of the insurance policies in this matter. This was a serious misrepresentation of material fact.

151.   PLAINTIFF was influenced to invest by RELIANT's Agent LARRY TUPLER who assured him that the investments always pay out. As it has later turned out, no Plaintiff has actually gotten paid out and almost all are continuing to get premium calls. It is believed that it is a misrepresentation or a

1   deceit to say there is a guaranteed fixed rate of return when there is a possibility investor will pay out

2   more than they will receive from this investment.

3   152.   Defendant MARK SANSOUCY was also present for several of the discussions and he

4   facilitated or assisted and was aware of the bad sales tactics.

5   153.   All of the salespersons on this matter were under the auspices of SCOTT GRADY, JOEL

6   KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

7   154.   <u>PLAINTIFF INVESTOR GENE GOLDEN originally purchased $103,000 of viatical life</u>

8   <u>settlement investments through DEFENDANTS.</u> DEFENDANTS engaged in a course of conduct as

9   described above that swindled INVESTOR GENE GOLDEN.

10  155.   In 2016, PLAINTIFFS INVESTORS JOSEPH GOODALE and RACHEL GILA were sold

11  two policies by LARRY TUPLER.

12  156.   INVESTORS JOSEPH GOODALE and RACHEL GILA should never have been sold this

13  or any RELIANT investment.

14  157.   INVESTORS JOSEPH GOODALE and RACHEL GILA invested into policies.

15  158.   PLAINTIFFS GOODALE and RACHEL GILA invested in RELIANT in 2016.

16  159.   PLAINTIFFS were pressured and harassed by Defendant LARRY TUPLER. They were

17  coerced into investing in RELIANT. Defendant LARRY TUPLER even guaranteed PLAINTIFFS that

18  insureds usually die in the first 2 years of their policies and the return of this investment is guaranteed.

19  This is another example how RELIANT's people manipulate the truth or say favorable things whether

20  they are true or not.

21  160.   <u>PLAINTIFFS INVESTORS JOSEPH GOODALE and RACHEL GILA originally purchased</u>

22  <u>$30,000 of viatical life investments through </u>DEFENDANTS. DEFENDANTS engaged in a course of

23  conduct as described above that swindled INVESTORS JOSEPH GOODALE and RACHEL GILA.

24  LARRY TUPLER was acting under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT,

25  RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

26  161.   In 2015, PLAINTIFF INVESTOR TRUDY BELINDA JOHNSON was sold four policies by

27  SHAWN DAVENPORT, who was acting under the auspices of SCOTT GRADY, JOEL KLIENDELD,

28  RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

162.    INVESTOR TRUDY BELINDA JHNSON should never have been sold this or any RELIANT investment.

163.    INVESTOR TRUDY BELINDA JOHNSON invested in 4 policies.

164.    PLAINTIFF JOHNSON was 53 years old when she first invested in RELIANT in 2015.

165.    PLAINTIFF INVESTOR TRUDY BELINDA JOHNSON originally purchased $38,000 of viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR TRUDY BELINDA JOHNSON.

166.    In 2016, PLAINTIFF INVESTOR CHARLES LAWRENCE was sold five policies by LARRY TUPLER under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

167.    INVESTOR CHARLES LAWRENCE should never have been sold this or any RELIANT investment.

168.    INVESTOR CHARLES LAWRENCE invested in 5 policies.

169.    PLAINTIFF LAWRENCE was 59 years old when he first invested in RELIANT in 2016. When PLAINTIFF LAWRENCE's company closed its 401K program, PLAINTIFF LAWRENCE needed to find a safe place to roll his 401K, consisting of $249,000. TUPLER and others from RELIANT assured PLAINTIFF LAWRENCE that the investment was safe and authorized by the State of California as appropriate for retirement funds, and that there was minimal risk.   All of PLAINTIFF LAWRENCE's 401K consisting of $249,000 was rolled over and invested in RELIANT.

170.    DEFENDANTS represented that this investment was beneficial for retirement accounts. PLAINTIFF reasonably relied on this representation but was not aware that the premiums would be continually escalating and difficult to pay on a fixed retirement income. PLAINTIFF was forced to postpone his retirement because of the lack of performance of these investment products.

171.    DEFENDANTS misrepresented that this investment would have little to no risk as the insured would eventually pass away and the policy would pay off. DEFENDANTS stated that there would be little to no risk of the investor not receiving a return on their investment, it would only be a matter of when. This PLAINTIFF (as well as all PLAINTIFFS) reasonably relied on this misrepresentation, not realizing that the premium payments would escalate in a way that could take any

35

**SECOND AMENDED COMPLAINT**

profit from the investment. If there is not profit, then the concept behind this investment makes no sense, which makes this investment a deception.

172.    PLAINTIFF was further influenced by the fact that the investment qualified for use of 401K money. That gave PLAINTIFF a false sense of security. He was wrongly encouraged to use this account, a non-compatible retirement investment that is against prudent investment advice and the law.

173.    PLAINTIFF INVESTOR CHARLES LAWRENCE originally purchased $249,400 of viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR CHARLES LAWRENCE.

174.    In 2015, PLAINTIFF INVESTOR ORSON K. LEONG was sold four policies by PAUL ROY who was operating under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

175.    INVESTOR ORSON K. LEONG should never have been sold this or any RELIANT investment.

176.    ORSON K. LEONG was 60 years old when he first invested in RELIANT in 2015.

177.    PLAINTIFF was influenced by DEFENDANTS DAVID UNDERWOOD and PAUL ROY to invest in this scheme and claimed that these policies have a 90% statistical chance of paying within the time before the reserves ran out.

178.    PLAINTIFF INVESTOR ORSON K. LEONG originally purchased $80,000 of viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR ORSON K. LEONG.

179.    In 2016, PLAINTIFF INVESTOR PETER J. LOWE was sold five policies by LARRY TUPPLER who was operating under the auspices of SCOTT GRADY, JOEL KLIENFELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

180.    INVESTOR PETER J. LOWE should never have been sold this or any RELIANT investment.

181.    PETER J. LOWE was 79 years old when he first invested in RELIANT in 2016.

**SECOND AMENDED COMPLAINT**

182.     PLAINTIFF was influenced by DEFENDANT LARRY TUPPLER to invest in this scheme and claimed that these policies have a 90% statistical chance of paying within the time before the reserves ran out.

183.     PLAINTIFF INVESTOR PETER J. LOWE originally purchased $100,000 in five viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR PETER J. LOWE.

184.     Between 2014 and 2015, PLAINTIFFS INVESTORS MARK THORSELL and BARBARA THORSELL were sold four policies by DAVID UNDERWOOD who was acting under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

185.     INVESTORS MARK THORSELL and BARBARA THORSELL should never have been sold this or any RELIANT investment.

186.     INVESTORS BARBARA THORSELL and MARK THORSELL but 4 policies.

187.     PLAINTIFFS BARBARA THORSELL and MARK THORSELL first invested in RELIANT in 2014.

188.     PLAINTIFFS INVESTORS MARK THORSELL and BARBARA THORSELL originally purchased a total of $60,000 of viatical life investments through DEFENDANTS. PLAINTIFF INVESTOR MARK THORSELL invested $40,000 while PLAINTIFF INVESTOR BARBARA THORSELL invested $20,000. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTORS MARK THORSELL and BARBARA THORSELL.

189.     In 2016, PLAINTIFF INVESTOR CLIFFORD RITZ was sold five policies by LARRY BAGBY who was acting under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

190.     INVESTOR CLIFFORD RITZ should never have been sold this or any RELIANT investment.

191.     INVESTOR CLIFFORD RITZ but 5 policies.

192.     PLAINTIFF RITZ was 55 years old when he first invested in RELIANT in 2016.

**SECOND AMENDED COMPLAINT**

193.    PLAINTIFF INVESTOR CLIFFORD RITZ originally purchased $100,000 of viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR CLIFFORD RITZ out of PLAINTIFF's money.

194.    In October of 2015, PLAINTIFF INVESTOR STEVEN C. ROEMER was sold four policies.

195.    INVESTOR STEVEN C. ROEMER should never have been sold this or any RELIANT investment by DAVID UNDERWOOD who was acting under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

196.    INVESTOR STEVEN C. ROEMER 4 policies.

197.    PLAINTIFF ROEMER was 59 years old when he first invested in RELIANT in 2015.

198.    PLAINTIFF was influenced by Defendant DAVID UNDERWOOD by stating that he himself invested in RELIANT and assured PLAINTIFF that the policies were almost certain to mature within 4 to 5 years.

199.    Defendant DAVID UNDERWOOD had assured PLAINTIFF that premium calls are highly improbable to happen and further claimed that in his seven years with RELIANT, Defendant DAVID UNDERWOOD only experienced 2 premium calls upon information that this is not true and deceptive.

200.    DEFENDANTS failed to disclose in a more forceful and prominent manner that if premiums were not continually paid, that PLAINTIFF could lose their entire investment.

201.    PLAINTIFF INVESTOR STEVEN C. ROEMER originally purchased $130,000 of viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR STEVEN C. ROEMER.

202.    Between 2016 and 2019, INVESTOR GREGORY SCHMITT was sold five policies by DAVID UNDERWOOD who was acting under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

203.    INVESTOR GREGORY SCHMITT should never have been sold this or any RELIANT investment.

204.    INVESTOR GREGORY SCHMITT bought 5 policies.

205.    PLAINTIFF SCHMITT was 49 years old when he first invested in RELIANT in 2016.

206.     PLAINTIFF was influenced by Defendant DAVID UNDERWOOD to invest in these policies after being assured that these investments were very low risk with a guaranteed 12% return upon information that this is not true.

207.     PLAINTIFF INVESTOR GREGORY SCHMITT originally purchased $100,000 of viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR GREGORY SCHMITT.

208.     In 2016, PLAINTIFF INVESTOR JOHN STOCKSDALE was sold five policies by DAVID UNDERWOOD who was acting under the auspices of SCOTT GRADY, JOEL KLIENDELD, RELIANT, RELIANT CAPITAL, RLS FINANCIAL SERVICES, and RMS TRUST.

209.     INVESTOR JOHN STOCKSDALE should never have been sold this or any RELIANT investment.

210.     INVESTOR JOHN STOCKSDALE but 5 policies.

211.     PLAINTIFF STOCKSDALE was 68 years old when he invested in RELIANT in 2016.

212.     PLAINTIFF was influenced to invest after hearing several RELIANT radio advertisements played on the San Francisco Giants radio station. PLAINTIFF assumed that hearing the advertisement on the radio station meant that the station had vetted and endorsed RELIANT.

213.     DEFENDANTS told PLAINTIFF STOCKSDALE that premium payments would be between $300 to $500 per year. This was misleading, as premiums on a $12,000 investment have been as high as $2300 per year.

214.     PLAINTIFF INVESTOR JOHN STOCKSDALE originally purchased $60,000 of viatical life investments through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR JOHN STOCKSDALE.

215.     In 2016, PLAINTIFF INVESTOR JENNIFER VANCE was sold three policies by DAVID UNDERWOOD.

216.     INVESTOR JENNIFER VANCE should never have been sold this or any RELIANT investment.

217.     INVESTOR JENNIFER VANCE bought 3 policies.

218.     PLAINTIFF VANCE was 55 years old when she first invested in RELIANT in 2016.

219.   <u>PLAINTIFF INVESTOR JENNIFER VANCE originally purchased $30,000 of viatical life investments</u> through DEFENDANTS. DEFENDANTS engaged in a course of conduct as described above that swindled INVESTOR JENNIFER VANCE.

220.   This investment does not represent a viable retail investment by any of the above.

221.   When dealing with an unethical sales force like this one, with no training, guidelines, standards, supervision, policy and procedures and all other factors alleged, it is easy to make sales, but it is unfair. That is what happened here. It is alleged that the participating DEFENDANTS are responsible for this. Without the above training, guidelines, standards, supervision, policy and procedures, DEFENDANTS were able to represent and promise anything whether completely true or not. That is what happened here to all these PLAINTIFFS. RELIANT and associated person or entities were able to slant things in an untruthful manner, which is what was done here in all of the above areas but especially suggesting that these viaticals covered the life of someone who is terminally ill or in that category of very poor health. As it turns out, the people making up the insureds in this investment were relatively healthy but, by ingenuously using medical records, DEFENDANTS were able to make an insured appear close to their death, but the life expectancies used to project premium reserves in these policies are far less than the social security life expectancy that it bespeaks of fraud, deceit, manipulation, or negligence.

222.   It is alleged upon information and belief that this investment, in the way it was procured and sold, has Ponzi-like characteristics, and is tantamount to a criminal enterprise.

223.   Even if this investment can be suitable and defendable as a viable investment product, DEFENDANTS did not make sure the above-mentioned PLAINTIFFS did not overconcentrate PLAINTIFF'S portfolio with RELIANT products. Along these lines, when purchasing this product, DEFENDANTS needed to assure that investors set aside monies or have other investments sufficient to cover premiums comfortably. DEFENDANTS did not do this, which is part of their negligence or fraud alleged herein.

224.   Civil Code §1770(a)(19) prohibits inserting an unconscionable provision in the contract. Many unconscionable provisions are covered in this compliant in detail.

225.    Civil Code §1770(a)(26) prohibits advertising, offering for sale, or selling a financial product that is illegal under state or federal law.

226.    For all the reasons set forth in this complaint including the fact that this financial product is not registered under state and federal law and does not have an exemption from registration.  This makes it illegal, which further supports the fact that the salesforce selling a security without a SEC license or registration makes this financial product illegal. Even if the stock can be exempt from registration, it is still illegal if it violates the anti-fraud provisions under securities laws. There have been plenty of allegations above of violations of the anti-fraud provisions making the financial product illegal. To avoid the anti-fraud provisions in the sale of securities requires full disclosure. Going around and hiding facts that are important to investors are not permitted, yet that is exactly what Defendants did. They scrubbed negative ratings from the internet so that when people looked online, they could not get the real facts. Plus, a lot of facts as outlined in the Gloria Wolk declaration, was known to Defendants but none of that is portrayed on their website, making their story one-sided, unfair, and unbalanced. This is a violation of the anti-fraud provision.

227.    Plaintiffs sent key Defendants via certified mail on July 19, 2022, a letter notice giving them the required 30 days to correct, repair or rescind, and/or do any of what is allowed or required by California Civil Code §1770 et seq.  Defendants have not done anything to respond.  Defendants still have the chance to make good as Plaintiffs will give any Defendant served herewith 30 days from the date this complaint is served upon them to comply with California Civil Code §1770 et seq.  Assuming Defendants do not comply, Plaintiffs are therefore entitled to the damages and remedies set forth in California Civil Code § 1780 and related sections, against all Defendants.

228.    The activities described above are the backbone of a fraudulent enterprise that has been fostering fraud for about a decade. Although not the first criminal  type activity, the enterprise, including Grady, Borchert, Murphy Kleinfeld, and successors, preyed on investors and have taken money from investors or put them in bad investments for years. In the alternative, it is alleged upon information and belief that Defendants have squandered investor money on investments that make more sense for Defendants than investors and it is alleged, upon information and belief , that this  fraudulent enterprise includes a procurement process that includes fraud , on its own, in acquiring policies for

these investments that are later sold in the fractional interest program that these Plaintiffs are part of. This allows Defendants to cherry pick policies and send the better policies elsewhere rather than into the kind of fractional interest investments that became part of this program.   What happens is Plaintiff/ investors only get the left-over policies and policies Defendants manipulated for their advantage to the disadvantage of these Plaintiff defendants.   They also tapped into these policies; policies that were supposed to be set aside for investors.   All this is fraud, abuse of trust and tantamount to theft and conversion.    There has been at least many occasions where this happened already. One was the taking of the Duffy policy, which became the subject of a court case in L.A. Superior Court. In a statement of decision, Judge Frank Johnson said, "The sale of the Duffy policy was also accompanied by an attempt to withhold hundreds of thousands of dollars in the form of continued legal bills or used investor money as a set aside fund for future legal defense, none of which was warranted or allowed under the trust or purchase agreement and was tantamount to an outright theft." See statement of decision in the case known as Reliant Life Shares, LLC vs. Brad Lawrence (hereinafter referred to as the Duffy case), Court file number LC098847, Superior Court State of California, County of LA (consolidated with other cases). As a result of that case and the prosecution of a case by the Securities and Exchange Commission (SEC) against Andrew Calhoun and Pacific West Capital Group, (US Dist. Ct of the Central District of California, (case 2:15:-cv-02563(FMO) (FFM) Defendants tried  to develop  a legally compliant program, but Defendants culture was so warped that it fails on many fronts which are the subject of the following causes of action, primary of (all incorporated into all causes of action)  is the failure of Defendants to present a balanced product, which is a basic mandate of those that sell securities and which Defendants to not abide by precisely because there is no  appropriate over sight either by themselves of the sales force, a requirement of securities law, or because they claim to be able to operate unregistered and unlicensed except for the insurance license which is not a security license, and it is alleged does not allow defendants even those with this license to operate as full on securities sales organization of life settlement products.

229.    The new model created did attempt to make it harder for investors to contact each other and to organize for their own good.  This was done by no longer putting the same investors into the same policies but placing investors in many different policies with different investors (which makes each

**SECOND AMENDED COMPLAINT**

investors interest unique and not as unified as before).   Plaintiffs in this case, are in multiple polices and do not know each other except by extraordinary efforts that happened to allow these Plaintiffs to come together for this suit. This makes it harder for investors to organize and file a joint lawsuit based on one policy that may have been wrongfully manipulated by Defendants.  .This is also a violation of required in securities which requires complete transparency.    Now,  the way this matter is now set up, it takes many investors dealing with many different policies to obtain Defendants' attention and it makes it harder and more laborious to check many policies when no one investor shares the same mix of policies with any other investor. This is part of the plan of deception which is the hallmark of defendants' conspiracy or enterprise.

230.    It is alleged on information and belief that this is the state this investment was in when it was sold to Gerald Frank.  Exhibit 26 exemplifies and what happened in the case of Gerald Frank. Frank invested about $40,000, one in a series trust known as Trust MW8350, Account CH145206-0, and Policy number VF51798350, which closed on or about May 12, 2015. This case (called the Frank case) along with the Duffy, above mentioned are examples that show the Reliant Defendants have been engaged in a continuity of deceptive practices over time.

231.    Frank effectively invested approximately $40,000 and lost it all to the enterprise or these Defendants were based upon false pretenses. For proof that he was criminally swindled, see Exhibit 25, which is a letter to Andrew Murphy of the Reliant organization and/or enterprise where he is realizing he was deceived and cheated and Mark Sansoucy is further defrauding him or depriving him when it comes to the premium issue.

232.    Since the Duffy and Frank matters, the Reliant Defendant enterprise was on notice that it obligated people to premiums especially the elderly that were not handling it well. This should have been a red flag that needed to be fully disclosed, rectified, or not sold to others as unsuitable even with a full explanation if just is right.   Unfortunately, the enterprise was okay with a minimal disclosure in writing but allowing salesperson to represent it was assessable when it was not without a penalty as described by one the Plaintiffs as set forth in Exhibit 27 which arose out of a sale in 2016.   This  did not deter the Reliant Defendants but they only doubled down.   Complaints continue to mount from investors as noted in Exhibit 26, yet the Reliant Defendants continue their course.   By 2020, one would

43

**SECOND AMENDED COMPLAINT**

think they had gotten the message and clamped down on misinformation about an investor being able to cash in or cancel or get out of the plans with money back.  That is not the case as shown in Exhibit 16, a letter from Ed Baeza to the California Department of Financial Protection and Innovation.   Ed Baeza and his wife and or their business/trust(s) invested about a $1,000,000 in Defendants fractional life settlement in many policies.   Mr. Baeza outlined in this letter how the Reliant Defendants had told him basically, that (paraphrased) he could " evacuate" or "cancel" at any time and get his money back plus principal.   Similar stories and or other irregularities and deceptions can be found in the cases of Raymond E. Douglass, Ed Baeza, Paul Bugler, James Cirile, Gene Golden, Joseph Goodale, Rachel Gila, Trudy Johnson, Charles Lawrence, Orson Leong, Barbara Thorsell, and many more. All were utilized by the Reliant Defendant enterprise to sell investments under false pretenses to innocent people. These investments were not suitable, did not pay out as promised, saddled investors with nebulous premiums, and not fully explained. The results were that investors were cheated and continue to be cheated each day by suggesting there is a buyout but presenting one with penalties. The most recent was presented to them within the last six months which is a continuation of the deceitful enterprise against Plaintiffs.   All of these sales, frauds, and thefts were at a criminal level such that they are ongoing and constitute racketeering activity. They are continuing to this day. The facts alleged herein reflect the intentional and willful acts surrounding Defendants' continuing attempt to bait and switch – that is now that the time is coming for investors to need to cash in the Reliant investors are not coming through and or changing the terms.

233.    Reliant, the name most often used by the criminal enterprise, is far from a respected business. It is the umbrella for the Defendant Principle Financial Services, Inc.  Its operator, Mark Sansoucy, is one of the higher-level administrator of the Reliant enterprise.   He and Scott Grady, unlicensed are point men for the enterprise. They are fully aware of what is happening, and all the things alleged above, They are continuing to carry on the deception and without them it could not continue. They have involved in all activities of the enterprise since nearly the beginning of its existence.

234.    Brent Borchert masquerades as a compliance officer for Reliant Life Shares, LLC but in reality, he is providing protection and covers for all of Reliance wrongful and deceptive activity. He has

full knowledge of all the facts but continues to operate and assist the enterprise carry on the above deceit. The money comes to the Reliant Defendants' enterprise when a sale is made, whether or not the investment benefits the investor.

235.   Joe Kleinfeld was the founder of the enterprise or a funder who provided funding and assistance knowing all the wrongful and deceitful conduct that went on as above alleged.  He is therefore a perpetrator of the alleged false pretenses and wrongful conduct.   He has profited off of it. He works behind the scenes for the enterprise. Alleged on information and belief is that he and/or other members of the Reliant Defendant's enterprise have taken advantage of the polices in the investment that have not matured for their benefit, and not for the investors benefit, and not properly disclosing this fact and doing such things, for example alleged upon information and belief, using the policies for collateral, or misappropriating the death benefit for themselves. It is alleged upon information and believe that he is not licensed to sell life settlements.

236.   Andrew Murphy has had his hand in all aspects of most of the sales alleged herein, and  was involved in high level operations maintaining  and setting policy for Reliant -wide operations and assisting in personally making sales including perpetrating false pre-tenses to make the sales on unsuitable persons for these investments. It is alleged upon information and believe that he is not licensed to sell life settlements.

237.   All the named Defendants in this cause of action know they are selling this investment or allowing it to be sold without disclosing the downsides and all the above matters in a balanced and full disclosure manner. Also, Defendants and the enterprise ignore and go out of their way to buy down, pay off, or eliminate bad reviews or criticism. The fact that they do this means that they see and/or know about their deficiencies as disclosed in the reviews, but they would rather silence them or buy the review off rather than stop selling investments under false pretenses. These named individuals in this cause of action continue to make money off the backs of investors who struggle with this investment because they are not candid and forth coming.

238.   It is also believed that leftover policies are given to the investors and one of the things the enterprise does is acquire more policies with bitter prospects, which they keep for themselves.

**SECOND AMENDED COMPLAINT**

239.    It is believed that this enterprise is kept alive by taking on its critics by either buying them off or entering into confidential settlements that prevent public and investor knowledge of the truth of the enterprise's activities and its track record.

240.    Each act of wrongdoing, fraud, or negligence, noted above and which make up the causes of action could not be discovered with reasonable diligence nor was it even possible or capable of being discoverable under the circumstances whereby Defendants hid these things and it took the attorney to discover and appreciate them.  In other words,  none of the above were truly capable of being discovered without attorney assistance in light of the evasiveness of Defendants and therefore were not discovered until not more than within the applicable statute of limitations assuming they even accrued, which it is alleged they did  not until within the same time period. Even if they did equity applies to toll the Statute of limitations where Defendants had notice and acted in a way to thwart their rights by engaging in misrepresentations as Exhibit 27 indicates.  Defendants used further deceit to deter action on behalf of Defendants, including eliminating contact between investors, manipulating reviews, and purging and or buying down bad comments and public criticism. In addition to this thwarting suit, it gave investors the false impression that there is nothing that can be done.  In addition, the parties entered into negotiations with each other through their attorneys, or attorneys that represented their interest, such that at the time the suit was filed, the statute of limitations was tolled by agreement or implied agreement of the parties.   By reason of equity and fairness, the court should declare and /or permit this action to proceed. Of course, because of the continuing nature of this case and because such a program needs to be shut down as it continues every day, injunctive relief is not affected by any statute of limitation. Nor does the statute of limitations apply to matters where breaches and violations are happening every day.

241.    Part of the deceit is that many of the high-level persons that are creating, administering, conducting oversight of the sale of the investment to Plaintiffs were not licensed as life agents, none of them are registered as having security licenses.  Also the Reliant Defendant entities that are creating and syndicating the life settlements set forth herein and sold to Plaintiffs were and are not properly registered or licensed with the Department of Insurance as a providers such that they are allowed to make life settlement sales. Therefore all sells are not authorized and therefore must be set aside. This is

46

another reason why there is a breach of contract, why rescission is appropriate, why these investments should not have been sold, and why the companies associated with them should be shut down or enjoined from further activity. It is a deceit and fraud to characterize or even imply that these insurance policies became owned by Plaintiff investors, which is what was done here.

242.    If any of the named parties in this cause of action are not considered sellers, they are nonetheless liable as well. Pursuant to California Corporations Code sections 25504 and 25504.1, by reason of their controlling broker deal or materially assisting status, which it is alleged each of them were if not an actual seller and liable thereby, is liable for being a controller, materially assistor broker dealer or any other characteristic the law makes liable.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

243.    This is a class action on behalf of persons or entities who purchased or otherwise acquired investments (also called securities) from Defendants (the "class."). Plaintiff seeks to recover comprehensible damages caused by Defendants' violation of all causes of action especially the violations of Civil Code 1770 et seq.

244.    Plaintiff brings this action as a class action. The class includes persons, trusts, or entities who purchased a life settlement investment (also called securities) from any Defendant named herein (the "class."). It is believed and alleged that all the Defendants named herein are in some way related to "Reliant" or purposely pawned off from Reliant or came from its formal or informal network, but it will take discovery to obtain the full details.   Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest. Excluded also are any entities or persons not associated or identified with "Reliant" or its network or came from "Reliant" or its network.

245.    The members of the Class are so numerous that joinder of all members is impracticable. The exact number of Class members is unknown to Plaintiff at this time. They can be ascertained only through appropriate discovery.  Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records

**SECOND AMENDED COMPLAINT**

maintained by the Company or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

246.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of laws and causes of action set forth herein.

247.    The Representative Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

248.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a.    Whether Defendants' acts as alleged against the law;

    b.    Whether Defendants' statements to the investing public during the Class Period misrepresented material facts about the financial condition, business, operations, and management of the Company;

    c.    Whether Defendants' statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

    d.    Whether the Individual Defendants caused the Company to issue false and misleading statements during the Class Period;

    e.    Whether Defendants acted knowingly or recklessly in issuing false and misleading statements during the Class Period;

    f.    Where the money went and what assets are viable

    g.    Whether the members of the Class have sustained damages and, if so, what is the proper measure of damages?

    h.    Whether injunctive relief is necessary for the benefit of all and the public.

249.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered

by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will little difficulty in the management of this action as a class action.

**FIRST CAUSE OF ACTION**
**VIOLATION OF CORPORATE CODE §§ 25401 & 25501**
**Against**
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO;**

250.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint.

251.    DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC., RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC. , SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY, LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, VINCENT BOVINO, and PRINCIPLE FINANCIAL SERVICES, by reason of the of above mentioned facts as set forth in the General Allegations and contained in allegations subsequently helped sell, are selling, or sold PLAINTIFFS securities in violation of Corp. Code § 25401, which prohibits offers or sales of securities including investment opportunities by means of a written or oral communication that contain: "Untrue statement[s] of a material fact or omits to state a material fact necessary in order to make the statement[s] made, in light of the circumstances under which they were made, not misleading."

252.    Since the investment requires premium payments, the sale is not final.

253.    The areas of untrue statements, concealment and or violations that also go to the elements of fraud, breach of fiduciary duty, and wrongdoing, include:

a.    The investment per se violates California Corporate Code §25401 and full disclosure because the names of the insureds were not and are not provided meaning there is

**SECOND AMENDED COMPLAINT**

withholding and concealment material facts ( which is an omission of material facts necessary in order to make statements about this investment not misleading or necessary to fully understand the investment.)

b.   Paperwork does not match up indicating manipulation of documents.

c.   DEFENDANTS selling the above-described RELIANT death benefit without the proper back- up policy as represented or supposed to be associated with it and/or not explaining the circumstances or properly giving the background to the buyer that would explain such a long time for the policy to mature.

d.   DEFENDANTS failure to describe the various aspects of this investment to Plaintiffs that make it unsuitable or not in their best interest like continuing and rising  premiums, like the possibility the insured may live longer than certain plaintiffs, like the inability of heirs to inherit without the obligation that could render the entire investment worthless or lost.

e.   DEFENDANTS representing that the above-mentioned RELIANT investments were equivalent to the viatical investments that Warren Buffett and Bill Gates have bought or buy on the open market. This is further explained in the General allegations of the complaint but it is even more deceptive and false when  DEFENDANTS failed to describe some of the failures of similar investments like this that failed namely the Oxford financial, Pacific West  ones, and further by not describing Defendant's involvement in shady activities and a shadow industry as set forth in the Gloria Wolk's declaration attached hereto.

f.   DEFENDANTS sold this to PLAINTIFF investors knowing it would likely not serve the purposes needed nor do what it represented it would do-provide a quick return that did not correlate to the stock market.

g.   DEFENDANTS impliedly represented that these RELIANT investments were better than a stock market investment without providing any evidence or proof, and not advising it was not true in certain cases.

h. DEFENDANTS did not properly portray the statistics associated with prior RELIANT investments concerning its ability to meet its life expectancy estimates after a decade of being in business and not portraying truthfully the consequences of what happens when the life expectancy premium reserves are used up.

i. DEFENDANTS failing to advise it had an untrained, inexperienced, incompetent, unlicensed and unregistered salesforce, and/or a salesforce that was not be bound by the ethical standards required in the securities industry.  As a result, concepts that would have protected plaintiffs, were not available to plaintiffs and plaintiffs were sold this investment when they should not have been. These concepts included the salesforce should "know your customer" and the requirement that the salesperson must "observe just and equitable principles of trade."

j. DEFENDANTS indicate on their website "the flexibility of this account allows investors to withdraw their money any time without penalty." Investors were specifically told they could get their money back at any time albeit they would lose the upside of this investment.   This has not been allowed to the PLAINTIFF investors, so it is believed this is not the policy and is a false statement.

k. DEFENDANTS failing to give the specific rate of return one would likely to expect based upon RELIANT' s previous ten-year history.  Defendants otherwise glossed over the rate of return and glossed over the fact that this investment lacked liquidity and diversity (being captive to only RELIANT selected life settlements).

l. DEFENDANTS failing to disclose that this investment was not exempt and violated securities laws.

m. DEFENDANTS failed to provide the required information of Corporate Code §225102q about the issuer and or information about the issuer important to know including but not limited to the information required in Corporate Code §225102q (3) (A—G)-especially omitted were the names directors, officers, partners, members, or trustees of the issuer. In effect Defendants fail to explain who owns and operates the issuer as required by law.

n. DEFENDANTS failure to advise or disclose of Scott Grady's disbarment.

o.  DEFENDANTS failure to provide proper audited reports as required by law and needed to understand the investment.

p.  DEFENDANTS failure to advise of fellow investors names and contact information.

q.  DEFENDANTS failure to advise in advance the need for insurance premiums and terms of premiums associated with all of Plaintiffs' investments.

r.  DEFENDANTS failure to enforce the net worth requirements required by securities law of Plaintiffs, which put this entire investment at risk, and /or failing to disclose to investors that they permitted unqualified investors.  Again this put the investment at risk for multiple reasons.

s.  DEFENDANTS covering up important details up, even though such details were requested prior to the filing of this complaint.

t.  DEFENDANTS orchestrating and manipulating false, deceptive, or less than complete reviews and ratings.

u.  DEFENDANTS failing to disclose their policy of preventing investors knowledge or each other and thwarting transparency.

v.  DEFENDANTS not advising or disclosing their policy of paying premiums and placating some investors but not other investors, and their policy of letting some investors out of the investment (or bailing them out) while letting others fend for themselves and take the loss. Defendants also "agreed" to buy out some investors, but never actually did they pay Plaintiffs as promised in the "buy out." All this constituted fraudulent and deceptive manipulation.

w.  DEFENDANTS telling Plaintiffs prior to their purchasing,  that there was a theoretical risk that the insurance policies that Plaintiffs invested in would extend beyond the reserves but in the same breath, as part of the selling process to Plaintiffs, telling most investors that premium calls hardly ever happens or if a premium call does happen,  that premiums are minimal around $300 or $500. In reality, premiums can be as high as $12,000 which RELIANT knew or should have known but purposely deceived Plaintiff investors.

**SECOND AMENDED COMPLAINT**

x.  DEFENDANTS failed to advise that the sale is not complete until all premiums are paid in full.  This does not happen until all the insured are dead.  Some insured live longer than the investors themselves.

254.   DEFENDANTS sold fractional life settlements by making false and misleading statements as set forth above and subsequently. DEFENDANTS knew or should have known that the statements were false and/or that they were concealing material facts. DEFENDANTS knew or should have known that there were important facts that needed to be known to make a proper informed decision on the investments. As a result, the investments were portrayed in a false light and Plaintiffs did not have sufficient material facts to make an informed decision.

255.   It was also an improper, deceitful, or negligent to do the above and take INVESTOR's money under the circumstances set forth in this Complaint. DEFENDANTS intentionally failed to describe the investment truthfully especially when describing how debilitating the premiums can become as the insured ages, and how the rising premiums affects the rate of return, and that premiums are still required if the investment is passed to the heirs. Also, the history, culture, and illegal nature of the salesforce and the unregistered, unqualified nature of the stock are all things that needed to be disclosed that were not. Further, it is believed that this whole investment scheme is a sham as it presented no viable investment opportunity within the reasonable life spans of the insured in light of the premiums.

256.   Selling securities and/or an investment opportunity like this under these false pretenses or while omitting material facts is a deception and involved misrepresentation of material facts in violation of the law and as describe in the general allegations of this complaint. PLAINTIFFS contributed money to DEFENDANTS thinking they had made an investment that would perform better than it was capable of performing because of DEFENDANTS misstatements, deceit, and/or the unsupervised negligence of the salesforce. DEFENDANTS are less than candid not to explain how monies are distributed from paid out death benefits when one investor loses the investment when that investor's premiums were not paid. This portion of the payout does not appear to go to the other investors. Not explaining this is a lack of material disclosure and if this portion of the payout goes to benefit the DEFENDANTS, or RELIANT, that is a conflict of interest.

**SECOND AMENDED COMPLAINT**

257.   All DEFENDANTS listed above knew that they were part of an organization which sold PLAINTIFFS the product while knowing all the above deficiencies and nuances which they did not disclose.

258.   PLAINTIFFS relied upon the above to make these investments. The reliance was reasonable and justified based upon their circumstances.

259.   By reason of the above, PLAINTIFFS are entitled to rescission and damages, and or the damages set forth in Civil Codes sections 25501 or 25501.5, or according to all remedies available by law.

260.   If any of the named parties in this cause of action are not considered sellers, they are nonetheless liable as well. Pursuant to California Corporations Code sections 25504 and 25504.1, by reason of their controlling broker deal or materially assisting status, which it is alleged each of them were if not an actual seller and liable thereby, is liable for being a controller, materially assistor broker dealer or any other characteristic the law makes liable.

261.   DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFF and constitutes oppression, fraud, and malice such that punitive damages are appropriate, and hereby requested under either Civil Code 3294 or 3345 or both.

262.   PLAINTIFFS seek all damages allowed by law for the above-described wrongdoing including costs of suit, investigation, and attorneys' fees.

263.   PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statute.

## SECOND CAUSE OF ACTION
## BREACH OF FIDUCIARY DUTY
### Against
**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

264.   PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

**SECOND AMENDED COMPLAINT**

265.   DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC., RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC. , LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO were in a fiduciary relationship and had a fiduciary duty to PLAINTIFFS when presenting the product, they sold to retail investors like PLAINTIFFS. This product was not suitable for these PLAINTIFF INVESTORS. It was a violation of DEFENDANTS' fiduciary duty to put their own economic interest to make money over the best interest of the customers. There was an over concentration of PLAINTIFFS' assets in RELIANT products based on PLAINTIFFS' net worth. This eliminated proper diversity or the ability of the investor to have money set aside to pay premiums. This eventually became a hardship for PLAINTIFFS, a matter that the PLAINTIFFS should have been better informed of. DEFENDANTS were also in a conflict-of-interest situation that was not fully advised.

266.   Under the circumstances DEFENDANTS wrongfully took PLAINTIFFS' money. The money became illiquid. PLAINTIFFS would not have consented to their money being taken had they known all the facts and full truth about this investment. PLAINTIFFS were tricked and became the subject of undue influence by DEFENDANTS. DEFENDANTS did not obtain sufficient informed consent because they did not make full disclosures. Fiduciaries have a duty not to make a sale when the situation presents as above stated. DEFENDANTS did so anyway because it served their own financial interests.

267.   Selling securities and/or an investment opportunity like this under these false pretenses or while omitting material facts is a deception and involved misrepresentation of material facts in violation of the law. PLAINTIFFS contributed money to DEFENDANTS thinking they had made an investment that would perform better than it was capable of performing because of DEFENDANTS' misstatements, concealment, deceit, and/or unsupervised negligence which all violate fiduciary duties. DEFENDANTS are less than candid not to explain how monies are distributed from paid out death benefits when one investor loses the investment when that investor's premiums were not paid. This portion of the payout does not appear to go to the other investors. Not explaining this is a lack of

material disclosure and if this portion of the payout goes to benefit the DEFENDANTS, or RELIANT, that is a conflict of interest. Not explaining this is a lack of material disclosure and is a further breach of its fiduciary duty and a conflict of interest.

268.    DEFENDANTS, together, breached their fiduciary duty in association with each other.

269.    The areas of untrue statements, concealment and or violations that also go to the elements of fraud, and breach of fiduciary duty, and wrongdoing, and which have been alleged elsewhere in detail, include:

    a. The investment per se violates California Corporate Code §25401 and full disclosure because the names of the insureds were not and are not provided meaning there is withholding and concealment material facts (which is an omission of material facts necessary in order to make statements about this investment not misleading or necessary to fully understand the investment.

    b. Paperwork does not match up indicating manipulation of documents.

    c. DEFENDANTS selling the above-described RELIANT death benefit without the proper back- up policy represented or supposed to be associated with it and/or not explaining the circumstances or properly giving the background to the buyer that would explain such a long time for the policy to mature.

    d. DEFENDANTS failure to describe the various aspects of this investment to Plaintiffs that make it unsuitable or not in their best interest like continuing and rising  premiums, like the possibility the insured may live longer than certain plaintiffs, like the inability of heirs to inherit without the obligation of paying continuing premiums that could render the entire investment worthless or lost.

    e. DEFENDANTS representing that the above-mentioned RELIANT investments were equivalent to the viatical investments that Warren Buffett and Bill Gates have bought or buy on the open market. This is further explained in the General allegations of the complaint but it is even more deceptive and false when  DEFENDANTS failed to describe some of the failures of similar investments like this that failed namely the Oxford financial, Pacific West  ones, and further by not describing Defendant's

56

**SECOND AMENDED COMPLAINT**

involvement in shady activities and a shadow industry as set forth in the Gloria Wolk's declaration attached hereto.

f.  DEFENDANTS sold this to PLAINTIFF investors knowing it would likely not serve the purposes needed or do nor what it represented it would do-provide a quick return not correlated to the stock market.

g.  DEFENDANTS impliedly represented that these RELIANT investments were better than a stock market investment.

h.  DEFENDANTS not properly portraying the statistics associated with prior RELIANT investments concerning its ability to meet its life expectancy estimates in a decade of being in business and not portraying truthfully the consequences of using up the life expectancy premium reserve.

i.  DEFENDANTS failing to advise it had an untrained, inexperienced, incompetent, unlicensed and unregistered salesforce, and/or a salesforce that was not be bound by the ethical standards required in the securities industry.  As a result, concepts that would have protected plaintiffs, were not available to plaintiffs and plaintiffs were sold this investment when they should not have been. These concepts included the salesforce should "know your customer" and the requirement that the salesperson must "observe just and equitable principles of trade."

j.  DEFENDANTS indicate on their website "the flexibility of this account allows investors to withdraw their money any time without penalty." Investors were specifically told they could get their money back at any time albeit they would lose the upside of this investment.   This has not been allowed to the PLAINTIFF investors, so it is believed this is not the policy and is a false statement.

k.  DEFENDANTS failing to give the specific rate of return likely to expect based upon RELIANT' s previous ten-year history.  Defendants otherwise glossing over the rate of return and glossing over the fact that this investment lacked liquidity and diversity (being captive to only RELIANT selected life settlements).

**SECOND AMENDED COMPLAINT**

l.   DEFENDANTS failing to disclose that this investment was not exempt and violated securities laws.

m.   DEFENDANTS failed to disclose the directors, officers, partners, members or trustees of the issuer of these investments as well as RELIANT and RLS Financial Services, Inc., and JOEL KLEINFELD 'S companies that control this investment and to also fail to explain who the issuer was or when it comes to the owner and operator of this investment, obfuscating that issue and being non-responsive about it.

n.   DEFENDANTS failure to advise or disclose of Scott Grady's disbarment.

o.   DEFENDANTS failure to provide proper audited reports as required by law and needed to understand the investment.

p.   DEFENDANTS failure to advise of fellow investors.

q.   DEFENDANTS failure to advise of insurance premiums and terms of premiums of associated with all of Plaintiffs' investments.

r.   DEFENDANTS failure to enforce the net worth requirements required by securities law of Plaintiffs, which put this entire investment at risk, and/or failing to disclose to investors that they permitted unqualified investors. Again this put the investment at risk for multiple reasons.

s.   DEFENDANTS covering up important details up, even though such details were requested prior to the filing of this complaint.

t.   DEFENDANTS orchestrating and manipulate. false, deceptive, or less than complete reviews and ratings.

u.   DEFENDANTS failing to disclose their policy of preventing investors knowledge or each other and thwarting transparency.

v.   DEFENDANTS not advising or disclosing their policy of letting some investors out of the investment and not letting some out and or covering the premium for them and not others. In addition, Defendants "agree" to buy out some investors, but never actually pay the Plaintiff investor.

**SECOND AMENDED COMPLAINT**

w.  DEFENDANTS telling people that there was a theoretical risk that the insurance policies that plaintiffs invested in would extend beyond the reserves but in the same breath, as part of the selling process to Plaintiffs, telling them that this never happens. This is less than honest rendition of DEFENDANTS' policy.

270.   PLAINTIFFS were harmed because of the above-mentioned reasons as set forth in the General Allegations section of this complaint and in subsequent allegations. PLAINTIFFS investments are now illiquid and are forced to sell at a distressed sale or lose their investment. By reason of the above-described breach of fiduciary duty, DEFENDANTS have caused substantial harm to PLAINTIFFS INVESTOR.

271.   PLAINTIFFS suffered from pain, suffering, and mental anguish for which reimbursement is sought.

272.   DEFENDANTS'  conduct was in reckless disregard for the rights and safety of PLAINTIFFS, and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested under either Civil Code 3294 or 3345 or both.

273.   PLAINTIFFS seek all other damages allowed by law for the above-mentioned wrongdoing including costs of suit, investigation, and attorneys' fees.

274.   PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statue.

<u>**THIRD CAUSE OF ACTION**</u>
<u>**CONVERSION**</u>
<u>**Against**</u>
**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

275.   PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

276.   DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC., RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC. , SCOTT GRADY; PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT

59

BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.,

LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO engaged in a course

of conduct as described above that swindled INVESTORS out of their money. Presently, PLAINTIFFS'

investments are lost to their immediate use for all of the reasons above and subsequently alleged.

277.    PLAINTIFFS were told by some DEFENDANTS that PLAINTIFFS could get a total refund

of their investment, including fees and surrender charges. LARRY TUPLER told some PLAINTIFFS

he could not do it in two weeks' time, but thirty days' time would not be a problem. LARRY TUPLER

was asked to put that in writing, he did put it in writing, but did not perform on his promise.

PLAINTIFFS have demanded the money back to no avail. Several PLAINTIFFS have never received

any money back pursuant to this promise by LARRY TUPLER.

278.    In addition, if premiums are not paid by one or more parties, it puts stress on the investment.

No one has disclosed how the premium situation is handled if a person cannot make their payment. This

is tantamount to theft by swindle, and conversion.

279.    PLAINTIFFS seek all other damages allowed by law and/or the return of the money.

280.    DEFENDANTS' conduct was in reckless disregard for the rights and safety of

PLAINTIFFS, and constitutes oppression, fraud, and malice such that punitive damages are appropriate

and requested.

**FOURTH CAUSE OF ACTION**
**NEGLIGENCE/GROSS NEGLIGENCE**
**Against**
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL; RLS FINANCIAL SERVICES;  RMS TRUST; RLS FINANCIAL SERVICES, INC.; SCOTT GRADY; BRENT BORCHERT; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; LARRY BAGBY; JOEL KLEINFELD; RLM TRUST; VINCE BOVINO; DOES 1-20)**

281.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth

herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general

allegations section of this complaint and such allegation in any previous cause of action.

282.    DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS

FINANCIAL SERVICES, RMS TRUST, RLS FINANCIAL SERVICES, INC. , SCOTT GRADY,

BRENT BORCHERT; PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, MARK

60

**SECOND AMENDED COMPLAINT**

SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, LARRY BAGBY, JOEL KLEINFELD, RLM TRUST, and VINCE BOVINO were negligent for the reasons above mentioned because they failed to engage in conduct up to industry standards while selling securities to PLAINTIFFS. In fact, what was done was so extreme that it constitutes gross negligence. This investment should not have been sold to these PLAINTIFFS for all of the reasons set forth subsequently and for all of the reasons set forth in the general allegation section of this complaint. The cumulative violations contribute to making this a grossly negligent operation, activity, and endeavor. DEFENDANTS carried out their negligence in association with each other, compounding the negligence.

283.    As a result of the abovementioned acts of DEFENDANTS, PLAINTIFFS are damaged by reason of the above allegations, as well as the loss of property, money, and expenses necessary to get this money back.

284.    As a result of the above acts, PLAINTIFFS claim general damages for mental and emotional distress, pain, and suffering, caused by DEFENDANTS subject to proof at the time of trial.

285.    DEFENDANTS'   conduct was a substantial factor in causing PLAINTIFFS harm as described above. PLAINTIFFS seek reimbursement for the costs and expenses of having to handle, figure out and recover these investments, including legal fees incurred for having to recover the property.

286.    PLAINTIFFS seek all other damages allowed by law for the above-mentioned wrongdoing including costs of suit, investigation, attorneys' fees, and especially the value of the loss of their investments.

287.    Plaintiffs seek attorney fees as it is provided by the parties' contract and also by statue.

**FIFTH CAUSE OF ACTION**
**SELLING UNREGISTERED SECURITIES**
**VIOLATION OF CORPORATE CODE §§ 25401 & 25501**
**Against**
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; UMB BANK N.A.; BANK OF UTAH; FIRST WESTERN TRUST BANK DOES 1-20)**

**SECOND AMENDED COMPLAINT**

288.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

289.    The above- mentioned facts show, and it is alleged that the DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, VINCENT BOVINO, UMB BANK N.A., BANK OF UTAH, and FIRST WESTERN TRUST BANK sold or instituted a process of sale of the various life settlements above alleged PLAINTIFF INVESTORS unregistered or unqualified securities in violation of Corporations Code, particularly§§ 25110, 25130, & 25102(q) and/or in violation of other provisions of federal law requiring registration of securities. As described above, DEFENDANTS claimed exemptions did not exist as the excuse for having an unregistered security.

290.    It was below the standard of care for a seller to sell unregistered securities in this manner. When an unregistered security is sold, the transaction must be unwound, and rescission be mandated and or damages allowed.

291.    By reason of the above, DEFENDANTS are liable to PLAINTFF INVESTORS and PLAINTFF INVESTORS are entitled to get their money back through rescission or damages for violating the allegations of this cause of action.

292.    It was also improper, illegal, deceitful, or negligent to sell unregistered or unqualified securities to PLAINTIFFS and take PLAINTIFFS' money under these circumstances.

293.    By reason of the above, and as a proximate result of selling unregistered or unqualified securities, PLAINTIFFS have been harmed because if the securities were registered or qualified, there would have been more protections and disclosures provided to allow an investor to make a more informed investment decision. Even if PLAINTIFFS would have been no better off, RELIANT's failure to register or qualify this security automatically allows for damages or rescission with or without

62

**SECOND AMENDED COMPLAINT**

showing prejudice. It is illegal and against the law to sell unregistered or unqualified securities. By reason of the above, PLAINTIFFS are entitled to rescission and damages. They seek their money back with interest thereon. Additionally, they seek all damages allowed by law for selling unregistered/unqualified securities.

294.    By reason of the above-mentioned conduct, PLAINTIFFS are entitled to treble damages and attorneys' fees and costs in the discretion of Court, which they request.

295.    DEFENDANTS'   conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice such that punitive damages are appropriate, and hereby requested under either Civil Code 3294 or 3345 or both.

296.    PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statue

## SIXTH CAUSE OF ACTION
### VIOLATIONS OF CORPORATIONS CODE §§ 25004 & 25501.5; and C.C.P. § 1029.8 Against
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20)**

297.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

298.    DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, VINCENT BOVINO, especially, MARK SANSOUCY, and RELIANT acted and still act as brokers and broker-dealers. Yet, under Corp. Code §§ 25004 & 25501.5 and comparable Federal Law, they are not allowed to have sold this security to these PLAINTIFFS and RELIANT and other DEFENDANTS were not properly licensed but were and are engaged in allowing a business to engage in the act of being a broker-dealer without a license. This

itself is a violation of the law and justifies voiding this transaction and returning PLAINTIFFS the return of all monies given to DEFENDANTS. As a result, DEFENDANTS are also in violation of Code Civil Procedure § 1029.8. Also, DEFENDANTS acted as AGENTS of broker-dealers, even if they can claim they are broker-dealers, which they cannot, they are still just as liable for acting as agents of broker-dealers without a license or registration.

299.    Code Civil Proc. § 1029.8 states "unlicensed persons who cause injury or damage … as a result of providing goods or services for which a license is required… shall be liable to the injured person for treble the amount of damages… "Had PLAINTIFFS been dealing with a licensed person instead of unlicensed people such as DEFENDANTS, PLAINTIFFS would have been protected and this situation would not have happened because no reputable licensed person would sell these securities to persons preparing for retirement. Even if that is not the case these sales by unlicensed persons activate the statute and allow for the remedies set forth in Corporate Code §25501.5, which PLAINTIFFS seek.

300.    In addition to the above-mentioned remedies, PLAINTIFFS have been damaged, in having to suffer significant losses as above described, including pain and suffering, loss of interest or the loss of the value of a well-managed account, loss of this principal, in the amount of $5,000,000

301.    By reason of the above-mentioned conduct, PLAINTIFFS are entitled to treble damages and attorneys' fees and costs at the discretion of Court, which they request.

302.    DEFENDANTS'   conduct was in reckless disregard for the rights and safety of PLAINTIFFS, and constitutes oppression, fraud, and malice and justifies punitive damages under either Civil Code 3294 or 3345 or both.

303.    PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statue.

**SEVENTH CAUSE OF ACTION**
**INTENTIONAL MISREPRESENTATION/FALSE PROMISE**
**Against**
**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

64
**SECOND AMENDED COMPLAINT**

304.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

305.    This cause of action relates to the following DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO.

306.    DEFENDANTS' conduct was fraudulent because not all the necessary information was provided, and what was provided was not truthful or complete. All this has been outlined before. There was omission of material facts and misrepresentation of material facts. There was material concealment as well. DEFENDANTS sold PLAINTIFFS a product that was inappropriate for these investors, Plaintiffs.

307.    DEFENDANTS also provided and sold these products to PLAINTIFFS as investments that DEFENDANTS know could not do what was claimed and was less attractive than represented especially as set forth in the General Allegation where DEFENDANTS represented these fractionalized life settlements as the same or equivalent to the kind of viatical investments Warren Buffett and Bill Gates bought.  See Exhibit B. This amounts to intentional misrepresentation and based on this and other matters set forth in the general allegations as a false promise. DEFENDANTS did not intend that the product they were providing would meet PLAINTIFFS' needs or was suitable for them, yet DEFENDANTS sold the product as if it would with knowledge that it was inadequate.

308.    These DEFENDANTS also failed to advise this was a poor vehicle for a retirement investment because it placed a burden on retirees, or their heirs to pay the continuing premium something that would make the investment undesirable for PLAINTIFF Investors. It is also a purposeful deception and lack of disclosure not to be able to quantify the inadequacy of the life expectancy reserves.

**SECOND AMENDED COMPLAINT**

309.   PLAINTIFFS reasonably relied upon DEFENDANTS' promises.

310.   DEFENDANTS did not perform on their promises. DEFENDANTS gave PLAINTIFFS a sub-standard product and sub-standard service. In fact, DEFENDANTS sold what they knew was inappropriate, unsuitable, onerous, and deceptive to PLAINTIFFS.

311.   PLAINTIFF INVESTORS were harmed.

312.   PLAINTIFF INVESTORS' reliance on DEFENDANTS' promise was a substantial factor in causing the present harm.

313.   PLAINTIFF INVESTORS suffered pain, and mental anguish as a result of the above.

314.   By reason of the above-mentioned conduct. PLAINTIFFS are entitled to treble damages and attorneys' fees and costs in the discretion of Court, which they request.

315.   DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice and justifies punitive damages under either Civil Code 3294 or 3345 or both.

316.   PLAINTIFFS seek all damages available by law.

317.   Plaintiff seeks all other damages allowed by law including as an alternative remedy an accounting of all policies each defendant has in association with Reliant as to any Plaintiff named  in this complaint, this would include dates and policies that has lapsed, time left to next premium, the length of any restatement period, how many times has any policy gone into lapse, who paid premiums and when. The date the policy was taken out, prior owners, date converted from term if applicable, all agents of record for the insurance, how many times has any insurance company dealt with other policies where any of the Defendants in this case were involved.

318.   PLAINTIFF requests the full and complete accounting of all records related to the programs as well as all PLAINTIFFS' transactions so a complete picture can be seen and so PLAINTIFF will have all records related to what was purchased.

319.   PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statute.

### EIGHTH CAUSE OF ACTION
### VIOLATION OF CIVIL CODE §3372
### Against
### RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL

### SECOND AMENDED COMPLAINT

**SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; RLM TRUST; VINCENT BOVINO; DOES 1-20**

320.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

321.    DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO held themselves out as investment advisors, financial advisors, and related terms. DEFENDANTS held themselves out as persons engaged in the business of advising others for compensation and as experts with respect to investments, generally, and particularly in the viatical life settlement space.  DEFENDANTS did a poor job and allowed PLAINTIFFS to purchase unsuitable products. In particular, DEFENDANTS represented themselves to be an expert with respect to the investment decisions in such viatical life settlement space and implied that they were acting in the capacity of the terms listed in Civil Code §3372 such as financial adviser, financial counselor, or investment adviser. As a result, DEFENDANTS are liable to PLAINTIFFS under that law.

322.    DEFENDANTS obtained compensation as a result of the financial advice rendered to PLAINTIFFS, but they failed to render the financial advice with due care and skill reasonably expected of a person who is an expert as defined by and required by Civil Code §3372. DEFENDANTS were not properly licensed and/or registered to act as an expert, as defined in Civil Code §3372, or as they represented or implied.  This is further against the law for which DEFENDANTS are liable.

323.    PLAINTIFFS relied on DEFENDANTS' services and advice to be at a level reasonable expected and set forth in Civil Code §3372. PLAINTIFFS were damaged by reason of PLAINTIFFS' reliance on DEFENDANTS' services in the form of losing his entire principal invested.

324.   DEFENDANTS' services were not rendered with due care as reasonably expected because of the expertise portrayed. DEFENDANTS' services were instead rendered through fraud, deceit, dishonesty, ignorance, and/or lack of due diligence. PLAINTIFFS expected DEFENDANTS to render sound financial advice. DEFENDANTS did not.

325.   PLAINTIFFS were to be the recipient of DEFENDANTS' advisory services as defined above by reason of the above-mentioned statue. DEFENDANTS are liable to PLAINTIFFS for the damages caused to PLAINTIFFS to the tune of $5,000,000 or to be determined according to proof at trial.

326.   PLAINTIFFS also requests all damages afforded by law including disgorgement of fees covered by this statue and/or as allowed by law including attorney's fees and costs of suit.

327.   DEFENDANTS'   conduct was in reckless disregard for the rights and safety of Plaintiff and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested under either Civil Code 3294 or 3345 or both.

### NINTH CAUSE OF ACTION
### ACCOUNTING
### (Against all Defendants)

328.   PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

329.   PLAINTIFFS request the full and complete accounting of all records to support the fact that these are current polices in effect validating and supporting each of the PLAINITFFS' investments and the policy or policies that have not lapsed and that RELIANT and UMB or BANK OF UTAH are in line to receive the death benefit to support each of the above investments.

330.   PLAINTIFFS are entitled to this information.  Accounting is a normal right of any investor on the subject matter of their investment and where DEFENDANTS are holding a death benefit for the benefit of another.

331.   Plaintiff seeks all other damages allowed by law including as an alternative remedy an accounting of all policies each defendant has in association with Reliant as to any Plaintiff named  in this complaint, this would include dates and policies that has lapsed, time left to next premium, the

length of any restatement period, how many times has any policy gone into lapse, who paid premiums and when. The date the policy was taken out, prior owners, date converted from term if applicable, all agents of record for the insurance, how many times has any insurance company dealt with other policies where any of the Defendants in this case were involved.

332.    PLAINTIFF requests the full and complete accounting of all records related to the programs as well as all PLAINTIFFS' transactions so a complete picture can be seen and so PLAINTIFF will have all records related to what was purchased.

333.    PLAINTIFFS seek attorney's fees and costs in obtaining a full accounting.

**TENTH CAUSE OF ACTION**
**VIOLATION OF SECTION 5 OF THE SECURITIES ACT (UNREGISTERED SECURITY)**
**Against**
**VIOLATION OF CORPORATE CODE §§ 25401 & 25501**
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20)**

334.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

335.    By reason of above mentioned conduct, DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, VINCENT BOVINO,  willfully violated Section 5 of the Securities Act (15 U.S. Code § 77(e) and 15 U.S. Code § 17), which states that "[unless] a registration statement is in effect as to a security, it shall be unlawful for any person, directly or indirectly, (1) to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell such securities or a

medium of any perspective, or (2) to carry or cause to be carried through the mails for an interstate commerce, by any means or instruments of transportation, any such security for the purpose of sale or for the delivery after sale." Also, similar sections of federal law were violated.

336.    As a result of the conduct described above, DEFENDANTS, willfully violated Section 5 of the Exchange Act, which states that "[it] shall be unlawful for any person, directly or indirectly, to make use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell or offer to buy through the use or medium of any perspective or otherwise any security, unless a registration statement has been filed as to such security."

337.    By reason of the above, the remedy is rescission or disgorgement of all monies paid.

338.    PLAINTIFFS seek all damages allowed by law by reason of DEFENDANTS acting and selling unregistered securities.

339.    DEFENDANTS'   conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice and justify punitive damages under either Civil Code 3294 or 3345 or both.

340.    PLAINTIFFS seeks all damages available by law.

341.    By reason of the above, PLAINTIFFS are entitled to rescission and damages, and or the damages set forth in Civil Codes §25501 or 25501.5, or whatever else is available by law.

**ELEVENTH CAUSE OF ACTION:**
**VIOLATION OF SECTION 15 OF THE EXCHANGE ACT BY ACTING AS A**
**BROKER-DEALER OR AGENT OF SAME WITHOUT REGISTRATION**
**Against**
**VIOLATION OF CORPORATE CODE §§ 25401 & 25501**
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL**
**SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT**
**GRADY; PAUL ROY;**
**DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT**
**BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL**
**SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; VINCENT BOVINO; DOES**
**1-20)**

342.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

343.    DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO, were acting as unregistered brokers selling securities which is illegal but which was done in this case. This violates Section 15 of the Exchange Act. As a result of the conduct described above, DEFENDANTS  willfully violated Section 15of the Exchange Act (15 U.S. Code § 780.3), which makes it unlawful for any broker or dealer "to effect any transactions in, or to induce or attempt to induce the purchase or sale of, any security . . . unless such broker or dealer is registered in accordance" with Section 15(b) of the Exchange Act. Section 3(a)(4) of the Exchange Act defines "broker" generally to mean "any person engaged in the business of effecting transactions in securities for the account of others."

344.    DEFENDANTS acted as brokers without being registered.

345.    By reason of the above, the remedy is rescission of all monies paid plus interest.

346.    In the alternative PLAINTIFFS seek all damages allowed by law by reason of DEFENDANTS acting as brokers, being unregistered, and selling in the way above mentioned.

347.    PLAINTIFFS seek all damages allowed by law.

348.    PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statue.

**TWELFTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
**Against**
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; UMB BANK N.A.; BANK OF UTAH;FIRST WESTERN TRUST BANK DOES 1-20)**

71

349.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

350.    PLAINTIFFS were promised certain benefits above described including the right to receive their money back at any time during the investment.

351.    Defendants are refusing to honor the above although demand. Defendants refuse to return the Plaintiffs money except on terms not disclosed and not favorable to Plaintiffs. This is a breach of contract.

352.    As to PLAINTIFF JAMES CIRILE, who never received a signed contract from RELAINT, so there is no contract or it is void and his money needs to be returned.

353.    Plaintiffs now seek their money back plus interest for not returning it promptly when requested or as a result of their breach.

354.    DEFENDANTS' failure to deliver the money as promised, or an investment that met with the promise made is a further breach of the contract for which return of Plaintiffs money is requested.

355.    Also Defendants have failed to deliver a life settlement policy that did not mature in the time represented, which also constitutes a breach.

356.    Plaintiffs now seek their money back plus interest for not returning it promptly when requested or as a result of their breach or whatever is the proper remedy for breach of this contract. .

357.    In the alternative, PLAINTIFFS elect to void the contract and seek their money back or seek declaratory relief or damages or they seek the value that their investment was supposed to provide which ever gives them the most value.

**THIRTEENTH CAUSE OF ACTION**
**UNFAIR COMPETITION AND VIOLATION OF CODE SECTION 17200 et seq.**
**Against**
**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

**SECOND AMENDED COMPLAINT**

358.    PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

359.    PLAINTIFFS suffered an injury in the form of loss of money, loss of value of money, the loss of use of money, the loss of capital to use for other investments, and a return of a property performing investment.

360.    DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO acted unlawfully, unfairly, and fraudulently in their business and practice consisting of engaging an unfair business practice. This all the things referenced above and in the General Allegations part of this complaint and includes running an unregistered broker dealer and selling unregistered and unqualified securities without an exemption. This and the other things set forth in this complaint, violates Business and Professions Code 17200 and constitutes unfair business practices.

361.    As a result of this practice, DEFENDANTS have benefited from the use of PLAINTIFFS' money, which is equivalent to receiving ill-gotten gains. It gives DEFENDANTS an unfair advantage in raising money compared to businesses that obey the law.

362.    It is unfair because it allows DEFENDANTS' businesses to reap the benefit of money that could have gone to legitimate businesses that could have truly benefited investors and provided a just return to PLAINTIFFS. Instead PLAINTIFFS money is tied up or lost.

363.    It is further fraudulent because of the specific fraud allegations set forth above.

364.    There is a direct link between the alleged unfair competition including unlawful, unfair, or fraudulent business practices and PLAINTIFFS' loss of use of their money and the diminishment of the value of that money compared to if the money was invested or loaned elsewhere.

365.    As a further result, PLAINTIFFS have sustained harm due to DEFENDANTS' actions as described throughout this complaint.

**SECOND AMENDED COMPLAINT**

366.     PLAINTIFFS seek relief against DEFENDANTS preventing DEFENDANTS from spending the money PLAINTIFFS contributed until the case is resolved.

367.     PLAINTIFFS seek all other remedies allowed by law including restoration of lost monies or the value of the loss of monies or money lost including the loss of money PLAINTIFFS would have made if PLAINTIFFS's money was placed in a proper (legal and non-fraudulent) investment, security, or business.

368.     PLAINTIFFS seek restitution to be restored to the status as Plaintiff would have been had their money not been placed in DEFENDANTS' unfair business endeavor.

369.     PLAINTIFFS seek equitable and injunctive remedies including attorney fees necessary to force DEFENDANTS to follow the law or their closure.

370.     PLAINTIFFS seek all damages and relief allowed by law including punitive damages under either Civil Code 3294 or 3345 or both as allowed by law as DEFENDANTS action involved fraud, malice, and oppression.

371.     Attorney's fees are requested as it is allowed in the parties' contract.

### FOURTEENTH CAUSE OF ACTION
### FINANCIAL ELDER ABUSE (Welfare and Institutions Code § 15600 et seq.)
### (JOHN STOCKSDALE; GENE GOLDEN; JOSEPH GOODALE; ED BAEZA; PETER J. LOWE)
### Against
### SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; ANDREW MURPHY; LARRY TUPLER

372.     PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

373.     As a "elder," within the meaning of Welf. & Inst. Code § 15610.27, JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA were entitled to the heightened rights and special statutory protections provided by California's Elder and Dependent Adult Civil Protection Act ("EADACPA"), set forth in Welf. & Inst. Code § 15600 et sec.  Under Welf. & Inst. Code § 15610.30, a person is liable for financial elder abuse or for assisting financial elder abuse if they obtained the elder's property when they knew or should have known that the conduct is likely to be

Case 2:23-cv-00474-SB-PD   Document 13   Filed 01/27/23   Page 75 of 96   Page ID #:577

harmful to the elder, including: (1) hiding, taking, retaining, obtaining and/or misappropriating Plaintiff's property, which is what has been alleged, or (2) assisting in doing the above. DEFENDANTS did not limit the sale to just one sale and to one senior; they conducted multiple sales to multiple persons, including: JOHN STOCKSDALE, GENE GOLDEN, and ED BAEZA. JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA. These people did not need investments that might not materialize in their lifetime and would burden them or their beneficiaries or heirs to pay ongoing, multiple, and exorbitant ever rising premiums to keep the investments alive. JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA did not need a policy that would take so long to mature, possibly out living them without the use of their money for retirement needs. This sale is based on fraud and deceit, wrongdoing and lack of disclosure set forth in the general allegations and prior cause of action. Under the circumstances, it was unconscionable and in bad faith to sell this product to these seniors.

374.    DEFENDANTS SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, ANDREW MURPHY, and LARRY TUPLER's conduct in selling JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA these investments, was a predatory practice employed to take advantage of a vulnerable elderly persons for their own financial gain or if not intended to do so, it had that effect, and after knowing this, these defendants kept doing it, implying total purposeful intent to take advantage instead of protect these individuals.

375.    The Center for Research at Boston College, Aging Brain, says that older people are particularly susceptible to deception and predatory practices. Many elderly adults (roughly half) suffer from cognitive decline, which impacts financial management skills, results in poor decision-making, leaving them particularly vulnerable to fraudulent marketing tactics.

376.    Broker-dealers or people who sell securities or products like this one play a critical role in preventing financial abuse of elderly persons. Reputable broker-dealers or salespersons of securities or this kind of product need to follow the rules and regulations to prevent older people from buying investments that are not right for them or which might be onerous for them to maintain and deal with. It is believed that DEFENDANTS were negligent in not having such rules and regulations or not monitoring their sales force if they did or in preying upon these elderly gentlemen.

**SECOND AMENDED COMPLAINT**

377.     DEFENDANTS knew each sale was over the top for a person of JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA's age and financial sophistication, but DEFENDANTS persisted to continue to sell to older persons before and after wrongfully and egregiously selling it to JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA.

378.     Despite being the only entity or persons in possession of the above facts, DEFENDANTS knowingly assisted and turned a blind eye and callous heart to the outrageous pilfering of JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA's money. JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA's age should have been red flags to DEFENDANTS, but DEFENDANTS did not care and instead were happy to take advantage of them and condoned and contributed to these sales.

379.      DEFENDANTS, including DOES 1-20, committed the above by knowingly assisting financial elder abuse.

380.     DEFENDANTS' financial abuse has caused JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA harm including emotional stress and frustration because of the loss of all the money they spent on this product. This has deprived JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA or their beneficiaries or heirs of financial security. DEFENDANTS knew or should have known that their conduct was likely harmful to JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA all in violation of the Laws particularly Welfare and Institutions Code. § 15600.30.

381.     DEFENDANTS or DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested.

382.     Plaintiffs JOHN STOCKSDALE, GENE GOLDEN, JOSEPH GOODALE, PETER J. LOWE and ED BAEZA seek all damages allowed by law including that damages be trebled, and attorney's fees allowed by statute and/or contract between the parties. Defendants' conduct was in

**SECOND AMENDED COMPLAINT**

reckless disregard for the rights and safety of Plaintiffs and constitutes oppression, fraud, and malice

such that punitive damages are appropriate and requested under either Civil Code 3294 or 3345 or both.

### FIFTEENTH CAUSE OF ACTION
### AIDING AND ABETTING FRAUD AND BREACH OF FIDUCIARY DUTY
### (Against all Insurance Company Defendants and Bank Defendants)

383.   PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth

herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general

allegations section of this complaint and such allegation in any previous cause of action.

384.   Defendant RELIANT, and Defendant RELIANT associated companies including the

named individual DEFENDANTS committed fraud, breach of fiduciary duty, conversion and

intentional wrongdoing as set forth in causes of actions number 2, 3, 5, and 7 of this complaint. This

includes any above-mentioned DEFENDANTS that participated in a sale not backed or no longer

backed by an insurance policy or death benefit as of the date of the filing of this complaint. In addition

to the already named DEFENDANTS, the following DEFENDANTS are named as aiders and abettors:

  a. UMB, N.A, relating to those RELIANT sales it provided escrow services.

  b. Bank of Utah, relating to those RELIANT sales it provided escrow services

  c. PACIFIC LIFE INSURANCE COMPANY related to Policy Code MW8350, or any others not known at this time.

  d. LINCOLN FINANCIAL GROUP related to DC0249, or any others not known at this time.

  e. PRINCIPLE FINANCIAL GROUP related to DL0468, or any others not known at this time.

  f. AVINA LIFE AND ANNUITY related to GJ9510, or any others not known at this time.

  g. PHL VARIABLE INSURANCE CO. --> NASSAU RE related to PS0272, or any others not known at this time.

  h. THE PENN MUTUAL LIFE INSURANCE COMPANY related to MS0229, or any others not known at this time.

  i. LINCOLN BENEFIT LIFE related to WP7826, or any others not known at this time.

### SECOND AMENDED COMPLAINT

j.  BENEFICIAL LIFE INSURANCE CO. related to MR8412, or any others not known at this time.

k.  PHL VARIABLE INSURANCE COMPANY related to MV4552, or any others not known at this time.

l.  RELIASTAR LIFE INSURANCE COMPANY related to 4014954, or any others not known at this time.

m.  AXA EQUITABLE LIFE INSURANCE COMPANY related to codes SA6304 and LS4268, or any others not known at this time

n.  ZURICH AMERICAN LIFE INSURANCE COMPANY related to FR1977, or any others not known at this time.

o.  JOHN HANCOCK LIFE INSURANCE COMPANY OF NEW YORK related to 2013-2, or any others not known at this time.

372.   These above DEFENDANTS are responsible as aiders and abettors because they:

a.  knew that RELIANT and associated Defendant Companies and the other named individual DEFENDANTS were engaged in the reselling through syndication policy of its insured and knew that the above kinds of things were continuing to be employed by RELIANT and its associated person and entities and allowed it to happen without adequate attempts to stop it from the protection of both the insured and the investors.

b.  gave substantial assistance or encouragement to RELIANT, associated Defendant companies and each individual named defendant, as they continued selling this product to vulnerable people even after knowing there were complaints and issues of wrongdoing associated with the manner, method, integrity, honesty, and type of activity that RELIANT and its people were engaged.  Instead of taking stock, they continued to assist allowing the escrows and relationship to go forward by contributing its policies to a fraudulent endeavor that breaks fiduciary duty at many levels, not the least of which to make sure its policy is being used properly and not to swindle investors as above described. The subsequent sales of the abovementioned policies could not happen without these DEFENDANTS (the ones set forth in the paragraph immediately

78

**SECOND AMENDED COMPLAINT**

preceding this one) participating and issuing their escrows and insurance services to help RELIANT defraud these investors or breach fiduciary duties against PLAINTIFFS.

c. That the DEFENDANTS (the ones set forth in the paragraph immediately preceding this one) conduct was a substantial factor in causing harm to PLAINTIFFS.

373.   DEFENDANTS' (the ones set forth in the paragraph immediately preceding this one) conduct was in reckless disregard for the rights and safety of PLAINTIFFS and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested under either Civil Code 3294 or 3345 or both.

374.   Plaintiff seeks all other damages allowed by law including as an alternative remedy an accounting of all policies each defendant has in association with Reliant as to any Plaintiff named  in this complaint, this would include dates and policies that has lapsed, time left to next premium, the length of any restatement period, how many times has any policy gone into lapse, who paid premiums and when. The date the policy was taken out, prior owners, date converted from term if applicable, all agents of record for the insurance, how many times has any insurance company dealt with other policies where any of the Defendants in this case were involved.

**SIXTEENTH CAUSE OF ACTION**
**VIOLATION OF SEC RULE 10-B-5**
**Against**
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; UMB BANK N.A.; BANK OF UTAH; FIRST WESTERN TRUST BANK; DOES 1-20)**

375.   PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

376.   DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.,

LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, VINCENT BOVINO, UMB BANK N.A., BANK OF UTAH, and FIRST WESTERN TRUST BANK's conduct listed above for this cause of action have engaged in a totality of activities set forth in detail in earlier allegations and causes of action that constitute a violation of Rule 10b-5 which prohibit the use of manipulating and deceptive practices in regard to the purchase and sale of securities. It reads as follows:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

377.   Some of the allegations are misrepresentations, some are lack of full disclosure, and some are omission, all detailed in prior allegations of this complaint. The conduct and activity is in violation of the Rule 10b-5 and is continuing as more money is being demanded and the same allegations of misrepresentation, manipulation, lack of disclosure and omission are still operating and are in play more than ever.

378.   PLAINTIFFS have been and continue to be injured by reason of the loss of their money contributed to this investment and the failure, even if not lost, to realize what was promised.

379.   PLAINTIFFS relied upon on the representations and claims made as outlined above but they were also subject to omissions which caused them injury where reliance is not required but assumed. Where applicable, investor reliance was reasonable and it was DEFENDANTS intent that investors would rely on and they did except where omissions occurred, in which case reliance is not necessary.

380.   PLAINTIFFS have suffered the harm in the loss of use of their money and the loss of an investment that was supposed to return a fixed rate of return sooner than now.

381.   All of the above is material under the law and constitutes what a reasonable investor would consider important.

382.   It was further a deception and manipulation for DEFENDANTS to portray this an appropriate retirement investment for all the reasons set forth above.

80

383.   DEFENDANTS did not perform on their promises. They gave PLAINTIFFS a sub-standard product and sub-standard service. In fact, DEFENDANTS sold what they knew was inappropriate, unsuitable, onerous, and deceptive to INVESTOR.

384.   PLAINTIFF INVESTORS were harmed.

385.   PLAINTIFF INVESTORS' reliance on DEFENDANTS'   promise was a substantial factor in causing the present harm.

386.   PLAINTIFF INVESTORS suffered pain, and mental anguish as a result of the above.

387.   DEFENDANTS' conduct was in reckless disregard for the rights and safety of INVESTOR and constitutes oppression, fraud, and malice and justifies punitive damages under either Civil Code 3294 or 3345 or both.

388.   PLAINTIFFS seek all damages available by law.

389.   PLAINTIFFS seek attorney fees as it is provided by the parties' contract and also by statute.

<u>SEVENTEENTH CAUSE OF ACTION</u>
<u>CONSPIRACY</u>
<u>Against all Defendants</u>

390.   PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

391.   DEFENDANTS formed a combination of two or more individuals whose objective was to sell life shares even though it was against securities laws and involved fraud and breach of fiduciary duty and other torts listed in this compliant.

392.   DEFENDANTS had a meeting of mind on the object to be accomplished and the means to which the parties would accomplish it.

393.   DEFENDANTS each committed one or more unlawful act, namely violating securities laws, and committing the intentional torts including fraud and breach of fiduciary duty relating to causes of action Number 2, 3, 5, and 7.

394.   The agreement to commit these unlawful acts between DEFENDANTS was made orally, sometimes confirmed in writing or implied by written material or the conduct of the parties.

81

395.   Each Defendant named above was aware of the co-conspirator's plans and conduct. They received calls and letters from frantic investors overs the years.

396.   DEFENDANTS agreed with the other conspirators and intended the wrongful acts be committed. The above conspiracy can be inferred from circumstances including the nature of the acts done, the relationship between the parties, and the interest of the alleged conspirators.

397.   PLAINTIFFS need not prove that DEFENDANTS personally committed a wrongful act or that he or she knew all the details of the agreement or the identities of the participants. In this case, the DEFENDANTS did more than just become aware of what was going on. By agreeing to it, they actually engaged in a wrongful act and further supported it, which is not normally a required element of a conspiracy.

398.   Defendants' conduct was in reckless disregard for the rights and safety of Plaintiffs and constitutes oppression, fraud, and malice such that punitive damages are appropriate and requested under either Civil Code 3294 or 3345 or both

### EIGHTEENTH CAUSE OF ACTION
### VIOLATION OF CONSUMER LEGAL REMEDIES ACT
### Against
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; UMB BANK N.A.; BANK OF UTAH; FIRST WESTERN TRUST BANK;  ALL DEFENDANT INSURANCE COMPANIES, DOES 1-20)**

399.   PLAINTIFF incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action, especially information set forth under the heading of "Nature of the Case."

400.   This cause of action refers to the above-named defendants listed in the title to this cause of action. including DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT

BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.,
LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, VINCENT BOVINO, UMB BANK N.A.,
BANK OF UTAH, and FIRST WESTERN TRUST BANK have engaged in activities that violate
California Civil Code 1770 in many ways set forth above and below..

401.   Defendants have violated many aspects of Civil Code §1770 - 1782 et seq. this includes:
passing off goods as those of another, false sponsorship, false or confusing, misrepresentation of
affiliations all outlined in detail above and violating Civil Code §1770a (1) and (2). This is important
because it goes to who is handling the investment and who is going to pay premiums after the premium
reserves are used up.  It also goes to Plaintiffs buying into what it thought was a credible upstanding
organization being a splintering make up of rogue people and companies working in a weird way and
not being reputable, the result being that the investment was anything the salespersons wanted it to be
and not what the organization could deliver and a less than appropriate product and service. Since
Reliant works through various entities like Reliant life Shares,  RLS FINANCIAL SERIVCE, RMS,
RELIANT CAPITAL, RELIANT CAPITAL SHARES, Principle Financial Services, it accentuates
confusion over the source of the product. All of these appear to present a different face on who the
issuer and sponsor is, and who the investor is investing in.   This is not clarified. It is believed that all of
these defendant  entities pawn off their names with others causing the belief that they are all part of an
associated entity- all affiliated with each other and under the umbrella of something called RELIANT,
and regulated by responsible entities and government agencies,  but this is not the case and is deceptive.

402.   Defendants   also violated Civil Code §1770a (9) making it a violation to advertise goods or
services with the intent not to sell them as advertised which as discussed above involved portraying the
product as being able capable of being cancelled with a return of the money back and interest at any
time with no penalty.  This also violates Civil Code §1770a (14).  There are numerous other bait and
switch matters associated with this investment which are nothing more than ploy's used to sell this
investment outlined in detail above that bring many aspects of Civil Code §1770  into play including
ploys where Defendants misrepresented or concealed the premium effect on the investment, the rate of
return, and who all invests in this product like Warren Buffett and Bill Gates.  It is based on getting
average investors the benefits that institutional investors receive which is a fiction and a false pretense.

403.    It should be noted that ED BAEZA,  with his wife, bought hundreds and thousands of dollars' worth of life settlements through Defendants in October of 2020.   Their purchases are believed made the same month, one with "RELIANT" (whoever that really is)  and the other with Principal Financial Services, Inc. (whoever that is), all sold by the same Reliant salesmen giving the buyers the belief that they bought from the same entity or enterprise.  It is confusing as to why the purchase agreements appear with different parties as the differences are not explained and apparent to the parties. It creates the question of who is running the operation or enterprise and this is a form of passing off or hiding the real operator which it is alleged is the case. This appears to be passing off goods and services as those of another or misrepresentation of affiliations or connections all in violation of a number of provisions of Civil Code §1770 et seq. It is really deceptive if now these organization claim they are different entities.

404.    In addition to the above, Defendants violate Civil Code §1770a (14) representing itself as having confirming rights and remedies it does not have like being suitable compared to a mainstream investment, and better than an investment in the stock market.

405.    In addition these investments to these Plaintiffs is Reliant investors selling a financial product that is illegal under state or federal law in violation of Civil Code §1770a (26).  It is illegal because the investments are not allowed to be sold or developed,  if sold by unlicensed people and in violation of securities laws.   Violations of this has been set forth in detail in other causes of action incorporated hereto as fully set forth hereat and particularly in causes of action 6, 10, and 11.

406.    Plaintiff relied on the above and it was reasonable and justifiable. They were led to believe that they were dealing with a reputable securities dealers and brokers, but this organization is made up of unlicensed unqualified securities people that are not trained in or skilled in the requirement necessary to sell securities that people licensed by the SEC or the Financial Industry Regulatory Authority, ("FINRA") are required to follow which requires observance of high standards of commercial honor and principles of trade, a requirement that all presentations be balanced and transparent, and most of all that investments be vetted through the performance of proper due diligence. In fact these investments peddled by Defendants do not meet the suitability requirement and best interest requirements of the SEC and FINRA.   Without proper training and proper information, salesmen are free to use any

**SECOND AMENDED COMPLAINT**

method to make a sale which is what happened here and is still happening.   Then, investors do not obtain the protection and the quality of services that the securities industry has become known for. Failure to tell customers this limitation in their salesforce is itself a deception and a material omission as it prevents investors from protecting themselves by gong to another investment or hiring their own financial advisor with these qualifications among other things.

407.   Civil Code 1770 (a)(19) prevents inserting an unconscionable provision in the contract. Many unconscionable provisions are covered in in the contracts between the parties particularly in the purchase agreement.

408.   Going around and hiding facts that are important to investors are not permitted, yet that is exactly what Defendants did. They scrubbed negative ratings from the internet so that when people looked online, they could not get the real facts. Plus, a lot of facts as outlined in the Gloria Wok declaration, was known to them but none of that is portrayed on their website, making their story one-sided, unfair, and unbalanced. This is a violation of the anti-fraud provision and many provisions of Civil Code §1770 because it goes to the identity of the product plaintiff bought. Whatever it was and public comments were hidden.

409.   By reason of the above-mentioned facts and all facts set forth in this compliant, activities of Defendants constitute a violation of the Consumer legal remedies act as set forth in Civil Code 1770 et seq. through 1782 et seq.

410.   By reason of the letter Plaintiffs submitted to Defendants dated July 19, 2022, sent via certified mail, and many follow up emails and phone calls to Defendants counsel, Defendants did not provide any correction, repair, replacement, or other remedy including rescission in the 30 days allowed by the code.  Because of these violations of California Civil Code §1770 et seq. Plaintiffs are entitled to the damages and remedies set forth in California Civil Code §17802.

411.   Plaintiffs suffered harm by reason of the conduct alleged above in violation of Civil Code §1770 et seq.

412.   Plaintiff seeks all damages allowed under Civil Code Section 1780, including actual and punctual damages and other reliefs the Court finds applicable such as attorney's fees.

413.    DEFENDANTS' conduct was in reckless disregard for the rights and safety of PLAINTIFF and constitutes oppression, fraud, and malice such that punitive damages are appropriate, and hereby requested under either Civil Code 3294 or 3345 or both.

**NINETEENTH CAUSE OF ACTION:**
**INJUNCTION/CONSTRUCTIVE TRUST/RECEIVERSHIP**
**Against**
**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

414.    Plaintiffs incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

415.    This cause of action relates to DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO.

416.    Plaintiff investors request constructive trust and/or a necessary receiver be appointed to liquidate Defendants' assets necessary to make Plaintiffs whole and/or to prevent injustice. All proceeds that have been diverted need to be accounted for and distributed to Plaintiffs. Plaintiff investors request a constructive trust be imposed on all proceeds generated by Defendants or their operations to the full extent of the law. Plaintiff investors seek injunctive relief to shut down Defendants or to prohibit Defendants from continuing to do business in the present form without approval and should only be able to continue to do business on terms that protect the public. Plaintiffs seek preliminary and permanent injunctive and equitable relief. When balancing the end benefit and the harm done by the sale of these investments, the harm outweighs the benefit and the irreparable harm will occur if injunctive and equitable relief is not granted.

417. Plaintiffs seek any remedies and damages requested in other causes of actions alleged herein or available by law to prevent repeat violations and Defendants from continuing to create public deception surrounding this investment.

418. In addition to the above-mentioned remedies, Plaintiffs have been damaged, in having to suffer significant losses as above described, including pain and suffering, loss of the use of their money, loss of interest or the loss of the value of a well-managed account, loss of their principal, all to the tune of approximately $20,000,000, including accrued interest, for which Plaintiffs seek reimbursement.

419. Plaintiff seek attorney fees pursuant to Cal. Civ. Code § 1021.5 for plaintiff's attorney services rendered a significant benefit for the public good as described more fully at Cal. Civ. Code §1021.5.

### TWENTIETH CAUSE OF ACTION:
### ALTER EGO
#### Against
**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

420. Plaintiffs incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

421. This cause of action involves DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC., RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO.

422. Defendants' corporate identities should be disregarded. They should all be found vicariously liable for each other's misconduct because they are all a part of it and they have subsumed Plaintiffs' assets (or assets in companies that were for the benefit of Plaintiffs) to their advantage and to the Plaintiff investors' disadvantage, basically leaving Plaintiffs with nothing. Therefore, any of the

Defendant corporations or individuals named herein that participated in any way in this should be pierced and/or declared liable under the alter ego doctrine. These entities used the illusion that they were separate entities when they were not, or the law does not consider them such. They used the illusion that they were subsidiaries when they were not. They were all being controlled by the same person or Defendant entity or motivated by some common goal that puts all Defendants in the same category helping solicit or raise investor funds and eventually turning those funds for their own benefit and personal gain contrary to the investment as proposed to Plaintiffs.

423.  Further, a corporate form of legal issues transfers assets out of fraudulent investor situations to self-dealing invasive corporate activities and structures should be set aside and declared illegal. In the alternative, the money should be disgorged, and profits of unjust conduct should be disgorged and returned to investors. Finally, these companies and persons were at all times undercapitalized for what their purposes were to do, and they need to be pierced and disregarded.

424.  Equity requires these companies and persons as one, and it promotes injustice and fraud to do otherwise.

425.  Plaintiffs have been damaged, in having to suffer significant losses as above described, including pain and suffering, loss of the use of their money, loss of interest or the loss of the value of a well-managed account, loss of their principal, all to the tune of approximately $20,000,000, including accrued interest, for which Plaintiffs seek reimbursement add to each and every party and in the investment scheme described in this complaint.

### TWENTY FIRST CAUSE OF ACTION:
### FRAUDULENT TRANSFER
### Against
**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

426.  Plaintiffs incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

427.  This cause of action relates to DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC., RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO.

428.  The Court should find actual or constructive fraud, or voidable activity that occurred here, when it comes to Defendant moving out assets from them to companies that are thought to be out of reach. Defendants are liable here under constructive fraud including California Civil Code 3439.05(A) that says, "A transfer made or obligation occurred by a debtor is voidable as to the creditor whose claim arose before the transfer was made or the obligation occurred if the debtor (in this case, all the Defendants or their predecessor companies) did the transfer and incurred the obligation without receiving reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation." That is alleged upon information and believed to be the case here. Plaintiffs have been damaged in that such activity by Defendants have left Plaintiffs without readily available sources of recourse and damage that are supposed to be paid. It is believed that one or more of the companies or persons named has acquired assets in way so as to constitute actual, constructive fraud or activity voidable by law. What has happened because of the actual or constructed fraud or the voidable activity is that all the money that was available for the investors have been bled out by these Defendants. Plaintiffs herein are directly injured by the activities of these Defendants.

429.  Plaintiffs seek all relief available by law including the return of their money, damages, attorney's fees, and any other remedy enumerated herein.

430.  In addition to the above-mentioned remedies, Plaintiffs have been damaged, in having to suffer significant losses as above described, including pain and suffering, loss of the use of their money, loss of interest or the loss of the value of a well-managed account, loss of their principal, all to the tune of approximately $20,000,000, including accrued interest, for which Plaintiffs seek reimbursement.

**TWENTY- SECOND CAUSE OF ACTION:**
**CONTRUCTIVE AND FRAUD**

**SECOND AMENDED COMPLAINT**

**(Against)**

**RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; DOES 1-20**

431.  Plaintiffs incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

432.  DEFENDANTS RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC., RMS TRUST, PRINCIPLE FINANCIAL SERVICES, INC., SCOTT GRADY, PAUL ROY, DAVID UNDERWOOD, SHAWN DAVENPORT, LARRY BAGBY, BRENT BORCHERT, MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC., LARRY TUPLER, JOEL KLEINFELD, RLM TRUST, and VINCENT BOVINO were fiduciaries supposed to be acting for the benefit of Plaintiffs.

433.  The Defendants were the promoters, salesmen and women who were marketing, selling, and operating these investments.

434.  There was concealment of material facts and omission of material facts that was disclosed covering critical reviews and analysis of their operation that Defendants kept from investors and in fact a concerted effort was utilized to keep basic important information from getting out and so many more things already alleged in  prior causes of action, incorporated by reference as though fully set forth hereat.  Defendants concealed the fact that their promise that people could get out early from the investment by getting one's principal back was not being honored consistently and was a product of manipulation. These things constitute constructive fraud as defined in Civil Code § 1573 and actionable even if actual fraud is not deemed present.

435.  There were many concealments including not disclosing the real and true relationship of all the parties and entities working on the investment and the behind-the-scenes calculations. If the inner working of the investment was described, Plaintiffs would have never invested in these investments. It is believed that this concealment, and the other things referenced in the earlier paragraph was done on purpose.

**SECOND AMENDED COMPLAINT**

436. Defendants also knew or were reckless in not knowing, and thus not telling Plaintiffs, that the investments were not a suitable investment for these Plaintiffs or in their best interest, as they were not and they should not have been sold them in violation of the laws, securities, rules, and regulations governing their product. Defendants are further liable for acting as unregistered brokers and using unlicensed people selling the security to Plaintiffs.

437. Also, Defendants did not keep Plaintiffs appraised of basic facts as described in detail above and in fact Defendants purposely made sure negative facts about Defendants and about these investments were to be taken down or scrubbed from the internet. Defendants told people they could get their money back at any time without penalty which really was not true.

438. Plaintiffs were harmed for all the reasons and in all the ways above stated in other causes of action. The above was committed by Defendants to gain an advantage over Plaintiffs.

439. Defendant's actions were a substantial factor in causing Plaintiff's present harm including the loss of their investment.

440. Plaintiff justifiably and reasonably relied on the above to their detriment.

441. Plaintiffs were substantially harmed including from not only the loss of their investment but the suffering, pain, and mental anguish that followed the loss.

442. Defendants' conduct was in reckless disregard for the rights and safety of Plaintiffs and constitutes oppression, fraud, and malice and justify punitive damages under either Civil Code 3294 or 3345 or both.

443. Plaintiffs seek all damages available by law.

## TWENTY THIRD CAUSE OF ACTION
## RECSISSSION
### Against
**(RELIANT LIFE SHARES LLC aka RELIANT CAPITAL, RLS FINANCIAL SERVICES, INC.; RMS TRUST; PRINCIPLE FINANCIAL SERVICES, INC.; SCOTT GRADY; PAUL ROY; DAVID UNDERWOOD; SHAWN DAVENPORT; LARRY BAGBY; BRENT BORCHERT; MARK SANSOUCY and his company PRINCIPLE FINANCIAL SERVICES, INC.; LARRY TUPLER; JOEL KLEINFELD; RLM TRUST; VINCENT BOVINO; UMB BANK N.A.; BANK OF UTAH; FIRST WESTERN TRUST BANK DOES 1-20)**

444. PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

91

**SECOND AMENDED COMPLAINT**

445. PLAINTIFFS were promised certain benefits above described including the right to receive their money back at any time during the investment.

446. Defendants are refusing to honor the above although demand has been made and Defendants will not return their principal as promised except on terms not disclosed and not favorable to Plaintiffs. This is a breach of contract.

447. Another reason for rescission is the deceit surrounding the fact that there are high level persons that are creating, administering, conducting oversight of the sale of the investment to Plaintiffs that were and are not licensed as life agents entitled to sell life settlements and none of them are registered as having security licenses. Also the Reliant Defendant entities that are creating and syndicating the life settlements set forth herein and sold to Plaintiffs were and are not properly registered or licensed with the Department of Insurance as a providers such that they are allowed to make life settlement sales. Therefore all sales are not authorized and therefore must be set aside. This is another reason why there is a breach of contract, why rescission is appropriate, why these investments should not have been sold, and why the companies associated with them should be shut down or enjoined from further activity, and why rescission is appropriate and should accompany this process.

448.    It turns out that other facts make rescission possible by reason of Civil Code 1689, and the following facts which exist here:

(1) The consent of the party rescinding, or of any party jointly contracting with him, was given by mistake, or obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party.

(2) The consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the Reliant Defendants.

(3) The consideration for the obligation of the rescinding party becomes entirely void for cause. This is the case where the whole operation is not properly licensed including many of the salespersons as noted above.

(4) The consideration for the obligation of the rescinding party, before it is rendered to him, fails in a material respect from any cause.

(5) The contract is unlawful for causes which do not appear in its terms or conditions, and the parties are not equally at fault.

(6) The public interest will be prejudiced by permitting the contract to stand.

449. As to PLAINTIFF JAMES CIRILE, who never received a signed contract from RELIANT, so there is no contract or it is void and his money needs to be returned.

**SECOND AMENDED COMPLAINT**

450.  Plaintiffs now seek their money back plus interest for not returning it promptly when requested or as a result of their breach.

451.  DEFENDANTS' failure to deliver the money as promised, or an investment that met with the promise made is a further breach of the contract for which return of Plaintiffs money is requested.

452.  Also Defendants have failed to deliver a life settlement policy that did not mature in the time represented, which also constitutes a breach.

453.  Plaintiff gave Defendants the right to rescind before bringing suit to which Defendants declined.

454.  Plaintiffs now seek their money back plus interest for not returning it promptly when requested or as a result of their breach.

455.  Because of all these reasons, Rescission is an appropriate remedy. PLAINITFFS seek rescission, which is the return of their principal, plus any payments made and interest at the appropriate legal rate. PLAINITFFS seek all fees allowed by law.

456.  PLAINTIFFS elect to void the contract and seek their money back or seek declaratory relief or damages. At a minimum, PLAINTIFFS seek their money back. In a best-case scenario, they seek the value that their investment was supposed to provide.

**TWENTY FOURTH CAUSE OF ACTION**
**VIOLATION OF PENAL CODE §496**
**SCOTT GRADY; BRENT BORCHERT; MARK SANSOUCY; JOEL KLEINFELD; ANDREW MURPHY**

457.  PLAINTIFFS incorporate by reference all the above paragraphs as though fully set forth herein, including each wrongdoing, deceit, and lack of disclosure already alleged in the general allegations section of this complaint and such allegation in any previous cause of action.

458.  It is alleged in the alternative that if the facts bear out that these policies are not left untouched in an escrow account for the benefit and protection of Plaintiff but became available for Defendants or their associates to use or manipulate or outright steel, and they in fact did this or allowed this to happen then this is alleged to be conversion and theft.  This would be the kind of theft that violates Civil Code Section 496 prohibits and allows a civil penalty. For purposes of this complaint, it is

**SECOND AMENDED COMPLAINT**

alleged in the alternative, and upon information and belief, that the persons listed above qualify as persons receiving money that has been stolen or has been obtained in a manner constituting theft or extortion, knowing the property to be stolen or obtained, wrongfully.

459.  In addition, GRADY, SANSOUCY, MURPHY, BORCHERT, and KLIENFELD engaged in activity that amounts to receiving or buying property that has been stolen or obtained in a manner that constitutes theft or extortion, knowing the property to be stolen or obtained by concealing, selling, and withholding these policies in violation of Penal Code §486. Said activity would involve withholding the property that flowed from investor money. It is alleged that these Defendants did it knowing they were wrongfully using investor money or investor policies and they were not giving them what was represented or the benefit of the death benefit from the multiple insurance policies the Plaintiff investors bought. Also the way Defendants moved these insurance policies around constitutes theft of these policies in violation of Penal Code §486.

460.  The named Defendants received a salary or compensation  or profit distribution that is derived from the illegal proceeds of Plaintiffs' theft above described.

461.  By reason of the above violation and by reason of Plaintiffs losing the value of their money, Plaintiffs seek all relief allowed by this statute, which is three times the amount of their actual loss plus costs and reasonable attorney's fees.

Wherefore, PLAINTIFFS pray for judgment against the DEFENDANTS as follows:

1.   For general damages of no less than $5,000,000 or according to proof at trial;

2.   For special damages according to proof at trial;

3.   Damages for pain suffering and mental anguish;

4.   Declaratory relief;

5.   Rescission/return of all money plus pre-judgement interest;

6.   Injunctive and equitable remedies;

7.   Punitive damages as allowed by law;

8.   For costs of suit incurred herein; and attorney fees as allowed by law;

///

///

**SECOND AMENDED COMPLAINT**

9.   For such other and further relief as this Court deems just and proper.


Dated:  January 27, 2023                          MURRIN LAW FIRM


                                                  _____

                                                  J. Owen Murrin
                                                  Attorney for PLAINTIFF INVESTORS

**SECOND AMENDED COMPLAINT**

**DECLARATION OF J. OWEN MURRIN PURSUANT TO CIVIL CODE §1780 (D):**

I, J. Owen Murrin, make the following declaration on behalf of Plaintiffs, particularly lead Plaintiff Ed Baeza, based upon my own knowledge, and believe the information set forth herein to be reliable and admissible and if called upon as a witness, I could and would testify competently thereto regarding the following:

1. At all times herein, all activities and contacts the subject of this matter occurred in California, and the class is California based.

2. The lead Plaintiff, Ed Baeza resided in Los Angeles County, in the city of Los Angeles when he bought his securities from the relevent Defendants. He therefore sustained all his losses in Los Angeles Country. He presently still lives in Los Angeles, Los Angeles, Country, California. A substantial number of other Plaintiffs in this action also reside or did business related to this matter in Los Angeles County, California.

3. The key Defendants reside in L.A. where the corporate headquarters are.

4. Therefore, jurisdiction and venue is proper in California Superior Court, Los Angeles County. Civil Code § 1780 (d).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: January 27, 2023



_____

J. Owen Murrin

**SECOND AMENDED COMPLAINT**